UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMNESTY INTERNATIONAL USA, CENTER FOR CONSTITUTIONAL RIGHTS, INC. and WASHINGTON SQUARE LEGAL SERVICES, INC., <br><br>Plaintiffs, <br><br>v. <br><br>CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF JUSTICE, DEPARTMENT OF STATE, AND THEIR COMPONENTS <br><br>Defendants. | ECF CASE <br><br>07 CV 5435 (LAP) |

**DECLARATION OF DANIEL L. REGARD IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DEPARTMENT OF HOMELAND SECURITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND <u>CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

I, Daniel L. Regard, of full age, declare as follows:

1. I am a managing director in the Washington, DC office of Intelligent Discovery Solutions, Inc., an expert services firm which provides independent expert testimony and analysis, original authoritative studies, and strategic consulting services to clients.

2. I have been consulting in the computer industry for 20 years, and have testified nationally on electronic discovery and computer forensic and litigation issues. I am a participating member of the Sedona Conference Working Group on Electronic Document Retention and Production, an e-discovery think-tank dedicated to the advanced study of Law and

Policy. I hold a BS in computer science from the University of Southwestern Louisiana and a JD, MBA, and certificate in European legal studies from Tulane University. I am a board member of the Institute for Computer Forensics Professionals. I am a member of the High Tech Computer Investigator's Association. I am a member of the Certified Fraud Examiner's (CFE) association. I am member of the Law Technology News editorial advisory board. I am a director with the Georgetown Advanced Institute for e-Discovery.

3. Prior to forming Intelligent Discovery Solutions, Inc., I was the 3-year national director of e-discovery for FTI Consulting, Inc. I was also the 3-year national director of e-discovery for LECG, LLP. My CV is attached as Exhibit 1.

4. In writing this Certification, I relied upon documents provided to me by counsel at Wilmer Cutler Pickering Hale and Dorr LLP, specifically the DHS' motion for summary judgment, declarations related to said motion, and their attachments.

5. Having reviewed these documents and, based on my experience as an expert in electronic discovery and as a consultant on numerous cases involving electronic discovery searches and disclosures, I make the follow observations and opinions:

6. The Amnesty International Request indicates that Plaintiffs sought records pertaining to individuals deprived of their liberty under secret or irregular conditions in connection with the U.S. government's anti-terrorism efforts. The Request states that individuals falling within the scope of the Request have been referred to, "among other things," as "ghost detainees/prisoners," "unregistered detainees/prisoners," "CIA detainees/prisoners," and "Other Governmental Agency (OGA) detainees."

7. To the extent that electronic search procedures and protocols were detailed in the materials I reviewed, those searches relied on these illustrative labels, or variations on them, as their search terms.

8. The Request, to the best of my understanding and expertise, did not intend these illustrative labels to be an actual or exclusive list of search terms. Instead, the Request appears to use this language to convey the secret detention concept so that the agency, which knows more than Plaintiffs' about its activities and its files, can apply reasoned judgment to identify responsive records.

9. I have seen no documentation reflecting an agreement or stipulation between the parties to limit searches to a particular key term list. I would have expected such documentation to exist if a limitation on search terms had been agreed to.

10. In my opinion, the entities that used the illustrative labels as an exclusive finite list of search terms did so erroneously and, as a result, conducted their searches too narrowly.

11. Furthermore, the search terms used by DHS entities were often even narrower than the illustrative labels. For example, the searches described in the Lockett, Page, and Pavlik-Keenan declarations did not include the term "other governmental agency" or "OGA" detainee, and the searches described in the Page declaration appear to have added further restrictions to the illustrative labels, such as requiring the term "unregistered detainees" to be used with the term "ghost."

12. In my experience, using compound phrases such as "unregistered detainees" as search terms is generally an ineffective strategy, depending upon the tool(s) used and the

expected language in the documents. Putting compound phrases into search tools does not account for variations in spacing, spelling, or phrasing that exist in real-world documents. For example, a search for "unregistered detainees" or "CIA detainees" may fail to locate documents discussing "detainees that are unregistered" or "detainees of the CIA," or even documents referring to a single "unregistered detainee" or "CIA detainee." In my opinion, depending upon the tool used and the expected language in the documents, a search relying on compound phrases would not be reasonably likely to locate all responsive documents.

13.  A more appropriate strategy would have been to use broad and inclusive search terms such as single words or roots (e.g., "detain!," "detention," "prison!," "CIA," "ghost!," "rendition," "transfer!," "interrogat!")[1] or proper last names (e.g., "Arar," "Masri"). Such an approach would reduce the likelihood of improperly excluding responsive documents simply because they use varied phrasing to describe the relevant concept. Documents located with such searches could then be examined to assure responsiveness.

14.  The descriptions of the electronic searches conducted by the DHS entities contained in the declarations filed in support of the DHS motion for summary judgment do not contain sufficient detail for me to comment with certainty on other aspects of the searches. In order to do so, I would need further information about the software, platform, or document management system being searched, the search tool, and the operating system.

---

[1] The exclamation points here serve as root expanders. Their function is to locate all words beginning with the letters preceding the exclamation point. Thus, a search for "detain!" is equivalent to a search for all documents containing "detain," "detains," "detained," "detaining," "detainee," or "detainees." In other systems, the asterisk ("*") may have the same function, such as "detain*". In others it may be the percent sign ("%"), such as "detain%".

15.     Many systems, for example, allow for flexible and inclusive searching using root expanders, Boolean operators, or wildcard characters.[2] It is common industry practice to use such capabilities when they are available and failing to do so would reflect unfavorably on the adequacy of a search. If a system's search capabilities are limited, or if a search tool does not reach certain documents in a system, then an electronic search alone may not be adequate to locate responsive records. For example, the search of the "text" of the Executive Secretary's email described in the Lockett declaration may not have reached email attachments—potentially a significant population of documents.

16.     In sum, in my opinion, the search terms listed in the declarations are too narrow and not reasonably designed to locate all records responsive to the Request. Moreover, if the purpose of the declarations was to fully describe the searches in order to establish their adequacy, then in my opinion the declarations are inadequate.

---

[2] Boolean searching enables a searcher to locate documents that contain multiple words or phrases even if those words or phrases are not in a particular order. For example, a search for <CIA and detainee> would return all documents containing those two words, even if the document does not use the exact phrase "CIA detainee." Boolean searches may also enable a searcher to locate documents containing multiple words or phrases within a specified proximity of each other, containing certain words or phrases but not others, or containing at least one of a list of words or phrases. Like root expanders, wild card characters locate variants of a word. For example, a search for "Qa?da" would return documents using the spelling "Qaeda" and "Qaida." The exact functionality is dependent upon the tools, but most tools, even default tools with Microsoft Windows, UNIX, and Mac OS X, allow for wild card searches.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Daniel L Regard II

DATED: January 4, 2008