# EXHIBIT #24
# TO
# DEYOUNG DECLARATION



U.S. Department of Homeland Security
Washington, DC 20229

U.S. Customs and
Border Protection

June 1, 2006

DIS-2-OFO:FP DG
2006F0783

Ms. Catherine K. Ronis
Counsel to Amnesty International USA
Wilmer Hale
2445 M Street
Washington, DC 20037

Dear Ms. Ronis:

This is in response to your Freedom of Information Act (FOIA) and/or Privacy Act request that we received in our office.

Enclosed are four (4) pages of requested documents. Certain portions of these documents are exempt from disclosure pursuant to 5 USC 552 (b)(2), as they are administrative markings and are related solely to the internal administrative practices of this agency. In addition, specific sections are excepted from revelation pursuant to exemption (b)(7)(C) of the FOIA, as they are names of individuals the disclosure of which would constitute an unwarranted invasion of personal privacy.

If you consider the deletions to constitute a partial denial of your request for disclosure, you may appeal to the Assistant Commissioner, Office of Regulations and Rulings, U.S. Customs and Border Protection. Your appeal must be made in writing within 35 days after the date of this notification. An information sheet is enclosed.

Sincerely,

*Dorothy Pullo*

Kathleen Dailey McKevitt
Acting Director, Field Programs
Office of Field Operations

Enclosures

Definitions of the Exemptions Under The Freedom of Information Act-5 U.S.C. 552

## EXEMPTIONS

Pursuant to 5 U.S.C. 552 (b), the Freedom of Information Act does not apply to matters that are--

- (1)(A) specifically authorized under rules established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified under such order;

- (2) related solely to the internal personnel rules and practices of an agency;

- (3) specifically exempt from disclosure by statute, provided that such statute

    (A) requires that the matters be withheld from the public so as to leave no discretion on the issue or,

    (B) established particular criteria for withholding or refers to particular kinds of matters to be withheld;

- (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

- (5) inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency;

- (6) personnel and medical files and similar files the disclosure of which constitutes a clearly unwarranted invasion of personal privacy;

- (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information

    (A) could reasonably be expected to interfere with enforcement proceedings,

    (B) would deprive a person of a right to a fair trial or impartial adjudication,

    (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy,

    (D) could reasonably be expected to disclose the identity of a confidential source, including State, local, or foreign agency or authority, or any private institution which furnished information on a confidential basis, and for a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence Investigation, information furnished by a confidential source,

    (E) would disclose techniques and procedures for law enforcement investigations or prosecutions or procedures or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or

    (F) could reasonably be expected to endanger the life or physical safety of any individual;

- (8) contained in or related to examination, operating or condition reports prepared by or for any agency responsible for the regulation or supervision of financial institutions; or

- (9) geological and geophysical information about wells, including maps.

# SIGNIFICANT INCIDENT REPORT
# NORFOLK SUB-OFFICE

1. The date and time of the incident

   Friday, April 5, 2002 -

2. The name and telephone number of the person making the report

   b7c [redacted] Acting Officer in Charge, Norfolk

3. The location of the nearest INS office with jurisdiction over the personnel involved

   Washington District Office
   Norfolk Sub-Office
   [redacted] - b7c
   Norfolk, VA 23513
   Tel: [redacted]
   Fax: [redacted]

4. A brief description of the incident

   "American Taliban" to be flown from Guantanamo Bay to Norfolk Naval Air Station on Friday, April 5, 2002.

5. The identity and current location of any injured or deceased person(s), including an assessment of the extent of the injuries

   Not applicable.

6. The identity and current location of:

   a) INS personnel involved in the incident

      Inspections personnel upon arrival of subject.

   b) Witnesses (INS and civilian)

      Not applicable.

7. Firearms incidents only: The type of firearm used, number of shots fired, and the current location of all firearms used in the incident

   Not applicable.

# SIGNIFICANT INCIDENT REPORT
# NORFOLK SUB-OFFICE

8. **Other law enforcement organizations notified - Have any of these initiated an investigation?**

    United States Attorney, AUSA ▓▓▓▓▓▓, Norfolk    b7c

9. **Actual or expected media interest, including information released to the media**

    High level of media interest expected.

10. **Narrative of events.**

    News reports indicate that Yasser Esam Hamdi, 22 years old with Saudi parents, may arrive at the Norfolk Naval Air Station on Friday, April 5, 2002. Although the subject has produced a birth certificate possibly establishing US citizenship by birth in the US, a final determination of citizenship has not been made.

    Per the United States Attorney's office in Norfolk, the subject is to remain in the custody of the military and will be placed in the 'brig' until citizenship has been determined and until a determination as to charges to be levied has been made.

    Unless other direction is received, upon arrival, we will parole the subject into the custody of the Department of Defense (US Navy and/or Marine Corps).

# SIGNIFICANT INCIDENT REPORT
# NORFOLK SUB-OFFICE

1. The date and time of the incident

   April 5, 2002, 1400 Hours

2. The name and telephone number of the person making the report

   b7c ▮▮▮▮, Acting OIC, Norfolk, Virginia ▮▮▮▮ b7c

3. The location of the nearest INS office with jurisdiction over the personnel involved
   Washington District Office
   Norfolk Sub-Office
   ▮▮▮▮
   Norfolk, VA 23513  } b7c
   Tel: ▮▮▮▮
   Fax: ▮▮▮▮

4. A brief description of the incident

   "American Taliban" arrived at Norfolk and inspection deferred per Assistant Commissioner for Inspections, ▮▮▮▮

5. The identity and current location of any injured or deceased person(s), including an assessment of the extent of the injuries

   Not applicable.

6. The identity and current location of:

   a) INS personnel involved in the incident

   b7c
   SII ▮▮▮▮, Norfolk, Virginia
   II ▮▮▮▮, Norfolk, Virginia
   APD ▮▮▮▮, Dulles, Virginia
   (A) OIC ▮▮▮▮, Norfolk, Virginia

   b) Witnesses (INS and civilian)

   Not applicable.

7. Firearms incidents only: The type of firearm used, number of shots fired, and the current location of all firearms used in the incident.

   Not applicable.

# SIGNIFICANT INCIDENT REPORT
# NORFOLK SUB-OFFICE

8. **Other law enforcement organizations notified - Have any of these initiated an investigation?**

   ████████████████████████████████████████████ b2

   representatives on site during inspection.

9. **Actual or expected media interest, including information released to the media**

   High level of media interest expected.

10. **Narrative of events.**

    On April 6, local news articles stated that the second "American Taliban" would be arriving in the Norfolk area on this date. Inquiries to the US Attorney's local office provided information that the subject would be first arriving at Dulles and then would travel to Norfolk Naval Air Station where he would be placed in military custody until a determination as to citizenship could be made and until the US Attorney could decide on the charges to be levied against the individual.

    At approximately 1200 hours, the aircraft touched down at Dulles where US Immigration officers boarded the aircraft and retrieved information on the crew and subject. The aircraft was not inspected by US Immigration at that time. Per instructions from HQ Inspections, upon arrival at Norfolk NAS, SII ████████ and II ████████ } b7c boarded the aircraft and completed the inspection of the crew and subject. IBIS queries were conducted by Dulles personnel while the aircraft was in transit from Dulles to Norfolk.

    The subject, Yasser Esam HAMDI, DOB November 17, 1980, COB unknown, was paroled for 30 days for deferred inspection "To determine citizenship". Form I-259, Notice to Detain, Remove, or Present Alien, was served on Captain ████████ b7c Commanding Officer, Naval Station Norfolk.

    Upon arrival of the aircraft at Norfolk, media crews were disbursed by Military Police as they positioned themselves around the perimeter of the field in hopes of capturing footage of the subject.