# EXHIBIT #26
# TO
# DEYOUNG DECLARATION

WILMERHALE

July 13, 2006

Catherine Kane Ronis

+1 202 663 6380 (t)
+1 202 663 6363 (f)
catherine.ronis@wilmerhale.com

**By Certified U.S. Mail and Facsimile**

Sandra L. Bell
Acting Assistant Commissioner,
Office of Regulations and Rulings
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, N.W.
Washington, D.C. 20229

Re: *FOIA Appeal: Case Nos. 051606-01 and 051606-02*

Dear Assistant Commissioner Bell:

On April 25, 2006 Amnesty International USA[1] ("Amnesty") and Washington Square Legal Services ("WSLS") filed two requests for information under the Freedom of Information Act regarding detainees secretly transferred or held by the United States Government, including "Ghost Detainees/Prisoners," "Unregistered Detainees/Prisoners" and "CIA Detainees/Prisoners" ("the Requests"). Your agency, the Department of Homeland Security, U.S. Customs and Border Protection ("CBP"), Office of Anti-Terrorism ("Office of Anti-Terrorism"), assigned the Requests case numbers 051606-01 and 051606-02 and responded to the Requests on June 8, 2006.

Although another office of the CBP, the Office of Field Operations, produced documents responsive to our request, your office determined that "the records of the type [we] seek would not be reasonably expected to be located in any office of U.S. Customs and Border Protection."[2] Copies of the Requests and your response letters are attached. *See* Exhibits A-D.

In the replies, your agency states that CBP's priority mission is "to protect the American public from terrorists and the instruments of terror." As you understand our Requests, CBP "does not process or hold 'ghost detainees/prisoners,' 'unregistered detainees/prisoners,' or 'CIA detainees/prisoners,' and [you] do not use the term 'Other Governmental Agency Detainees ('OGA Detainees'),' therefore [you] do not believe CBP has records responsive to [our] request." You also state that your agency has no involvement with the topics or documents we requested pertaining to (1) Memoranda of Understanding regarding "off the record" detainees,

---

[1] Amnesty International USA is the U.S. Section of Amnesty International. *See* http:///www.amnestyusa.org/about/.

[2] On June 1, 2006, the Office of Field Operations provided documents in response to an identical FOIA request. These documents pertained to Yasser Hamdi, who was evidently "processed" in some form by the INS (CBP predecessor).


**WILMERHALE**

U.S. Customs and Border Protection
July 13, 2006
Page 2

(2) Department of Defense Detainee Reporting, (3) Reports to Certain U.N. Committees and (4) the Draft Convention on the Protection of All Persons from Enforced Disappearance.

   Pursuant to 5 U.S.C. §552(a)(6), Amnesty and WSLS hereby appeal the adequacy of the Office of Anti-Terrorism's search for relevant documents. Your agency does not provide any information about its search methods. Given that another office of the CBP did provide responsive documents, as well as your agency's involvement in anti-terrorism activities, you have not adequately demonstrated that the Office of Anti-Terrorism complied with its FOIA obligations.[3] We therefore respectfully request that you conduct a more thorough search of your files and provide a more detailed explanation of your search methods.[4]

   As an initial matter, as noted in the Requests, there have been numerous reports of detainees secretly transferred or held by the United States Government, including "Ghost Detainees/Prisoners," "Unregistered Detainees/Prisoners" and "CIA Detainees/Prisoners.[5] Since the Requests were filed, there have been numerous recent additional reports of this practice.[6]

---

[3] "The fundamental principle animating FOIA is public access to government documents. Accordingly, (courts) require agencies to make more than perfunctory searches, and . . . to follow through on obvious leads to discover requested documents. An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F. 3d 321, 326 (DC Cir. 1999).

[4] *See Oglesby v. U.S. Dept of the Army*, 920 F 2d 57, 68 (DC Cir. 1990) (the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested).

[5] *See* Josh White, *Army, CIA Agreed on 'Ghost' Prisoners*, WASH. POST, Mar. 11, 2005, at A16. *See also* Dana Priest, *Wrongful Imprisonment: Anatomy of a CIA Mistake: German Citizen Released After Months in Rendition*, WASH. POST., Dec. 4, 2005; Brian Ross and Richard Esposito, *Exclusive: Sources Tell ABC News Top Al Qaeda Figures Held in Secret CIA Prisons*, ABC NEWS, Dec. 5, 2005, *at* http://abcnews.go.com/WNT/Investigation/story?id=1375123; Jane Mayer, *A Deadly Interrogation: Can the C.I.A. Legally Kill a Prisoner?*, NEW YORKER, Nov. 14, 2005, at 44 (discussing the practice, particularly with respect to the death of Manadel al-Jamadi); Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1. *See also* the following Department of Defense documents released to the American Civil Liberties Union (ACLU) pursuant to a *Freedom of Information Act* request, all available at http://www.aclu.org/torturefoia/released/030905/: Transcript of deposition of Brig. Gen. Janis L. Karpinski, Appendix to Fay/Jones/Kern Report (July 18, 2004); Statement of MNF-I, C2, IMIR CW2, Annex to Fay/Jones/Kern Report (June 16, 2004); Sworn Statement of E-5, 519th MI Bn, Annex to Fay/Jones/Kern Report (June 4, 2004); Sworn Statement of 372nd MP Co SPC, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of 372nd MP Co SPC, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of [UNREADABLE], Annex to Fay/Jones/Kern Report; Sworn Statement of Deputy CJ2, CJTF-7, Annex to Fay/Jones/Kern Report; Sworn Statement of SGT, 372nd MP, Camp Victory, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of SPC/E4, B Co., 66th MI Group, 202nd MI BN, Annex to Fay/Jones/Kern Report (May 24, 2004); Sworn Statement of SGT, Member of GTMO team, "Shut Up Group," Annex to Fay/Jones/Kern Report (June 4, 2004); Sworn Statement of CW2, A/519th MI Bn, Annex to Fay/Jones/Kern Report (May 19, 2004); Sworn Statement of SGT, 372nd MP Co, Annex to Fay/Jones/Kern Report

WILMERHALE

U.S. Customs and Border Protection
July 13, 2006
Page 3

      Amnesty and WSLS have reason to believe that the Office of Anti-Terrorism is involved in these programs and that it is likely that the agency possesses documents responsive to the Requests.

      As a Commissioner's Staff Office within the CBP, the Office of Anti-Terrorism plays a key role in the U.S. Government's anti-terrorism efforts. The CBP is an agency of the Department of Homeland Security and is "responsible for protecting our nation's borders in order to prevent terrorists and terrorist weapons from entering the United States, while facilitating the flow of legitimate trade and travel."[7] According to the CBP website, "[a]ll CBP homeland security operations are supplemented by the Office of Anti-Terrorism, which gathers and disseminates international intelligence on emerging risks and passes on that information to effected [sic] CBP locales."[8]

---

(May 7, 2004); Statement of B/Co, 470th MI Grp. SGT, Annex to Fay/Jones/Kern Report (May 18, 2004). *See further* HUMAN RIGHTS FIRST, BEHIND THE WIRE: AN UPDATE TO *ENDING SECRET DETENTIONS* 6 (2005), *available at* http://www.humanrightsfirst.org/us_law/PDF/behind-the-wire-033005.pdf (providing overview of the practice of ghosting in military facilities); HUMAN RIGHTS WATCH, THE UNITED STATES' DISAPPEARED: THE CIA'S LONG-TERM "GHOST DETAINEES" 5-15 (2004), *available at* http://www.hrw.org/backgrounder/usa/us1004/ us1004.pdf (outlining practice of keeping CIA prisoners in military detention generally).

[6] *See, e.g.,* Craig Smith, *Algerian Tells of Dark Term in U.S. Hands,* The New York Times (July 7, 2006); Jan Sliva, *EU concedes rendition flights took place,* The Herald, (June 28, 2006); Ike Seamans, *Above the law,* The Miami Herald, (June 25, 2006); *MIDDLE EAST: Region still lacks support for torture victims, say observers,* Reuters Foundation, (June 25, 2006); *The Detention Dilemma,* The Washington Post, (June 19, 2006); Barrie Dunsmore, *Ugly portrait emerges dot by dot,* Times Argus, (June 18, 2006); Josh White, *Bad Advice Blamed For Banned Tactics,* The Washington Post, (June 17, 2006); Anemona Hartocollis, *Judges Press CIA Lawyer Over Withheld Documents,* The New York Times, (June 13, 2006); *Court Weighs ACLU Request on CIA Terror Documents,* New York Sun, (June 13, 2006); Larry Neumeister, *Court Urges to Protect CIA Detention Info,* Guardian Unlimited (June 13, 2006); *Euro MP's to Extend Probe Into CIA Activities,* Expatica, (June 13, 2006); *Court Will Investigate Alleged CIA Flights,* Los Angeles Times, (June 13, 2006); Jeremy Smith, *EU Lawmakers Back Report on CIA Terror Kidnappings,* Reuters, (June 12, 2006); Jan Sliva, *Probe of CIA Prisons Implicates EU Nations,* Forbes, (June 7, 2006); *see further* Committee on Legal Affairs and Human Rights, *Alleged secret detentions and unlawful inter-state transfers involving Council of Europe member states,* Draft report – Part II (Explanatory memorandum), 7 June 2006; Council of Europe, Parliamentary Assembly, Resolution 1507 *Alleged secret detentions and unlawful inter-state transfers of detainees involving Council of Europe member states* (2006).

[7] *See* Department of Homeland Security website, available at http://www.dhs.gov/dhspublic/display?theme=9.

[8] *See* http://www.cbp.gov/xp/cgov/border_security/antiterror_initiatives/border_security_overview.xml. The Office of Anti-Terrorism "monitors, coordinates, recommends, assesses and participates in the development of all policy, programs, training and matters related to anti-terrorism...OAT maximizes CBP's anti-terrorism efforts by leveraging and working within the broader federal law enforcement community and homeland security structure. OAT provides anti-terrorism expertise and supporting policy development, serving as a focal point for interaction and cooperation with the interagency community on terrorism-related issues." *See* http://www.cbp.gov/xp/cgov/toolbox/about/organization/comm_staff_off/antiterrorism_office.xml.

**WILMERHALE**

U.S. Customs and Border Protection
July 13, 2006
Page 4

In addition, several news articles and websites report the involvement of the CBP (or its predecessor agency, the INS, where applicable) with detainees who have been secretly or irregularly apprehended, transferred or detained on the basis of suspicion that they were connected to terrorism.

For example, Khaled El-Masri (a German citizen currently challenging in federal court his alleged secret detention by the U.S. government) was reportedly denied entry to the United States at Hartsfield International Airport, Atlanta, Georgia on December 3, 2005 by CBP.[9/] News sources suggest that there was information about El-Masri that prevented his entry.[10/] It is likely that information possessed by the CBP concerning his secret detention could have prevented this entry.

In another example, it has been reported that INS officials were involved in several stages of the initial detention, questioning, and decision to remove Maher Arar, a Syrian-born Canadian citizen who was taken into custody by officials from the FBI and INS while in transit at John F. Kennedy International Airport in September 2002 and kept in an administrative facility (the Metropolitan Detention Center in Brooklyn) for thirteen days prior to being transported to Jordan and then Syria.[11/]

---

[9/] On December 6, 2005, El-Masri filed suit in the U.S. District Court for the Eastern District of Virginia alleging that on December 31, 2003 he was "...forcibly abducted while on holiday in Macedonia, detained incommunicado, handed over to United States agents, then beaten, drugged, and transported to a secret prison in Afghanistan, where he was subjected to inhumane conditions and coercive interrogation and was detained without charge or public disclosure for several months." (see *El-Masri Complaint*, 12/06/05, available at http://www.aclu.org/images/extraordinaryrendition/asset_upload_file829_22211.pdf, para. 1[0]). His "processing" at Hartsfield International Airport was by the CBP: see Letter from U.S. Customs and Border Protection to Ms. Ann Beeson, ACLU: Exhibit H to Declaration of Khaled El-Masri in Support of Plaintiff's Opposition to the United States' Motion to Dismiss or, in the Alternative, for Summary Judgment, available at http://www.aclu.org/pdfs/safefree/elmasri_decl_exh.pdf

[10/] See Scott Shane, *German Held in Afghan Jail Files Lawsuit*, N.Y. TIMES, Dec. 7, 2005 at A25 (noting that CBP spokeswoman Kristi Clemens had "confirmed that Mr. [El-] Masri was denied entry" and that it was "based on information received from other American agencies"); Glenn Kessler, *Rice to Admit German's Abduction Was an Error*, Wash. Post, Dec. 7, 2005 at A18 (stating that El-Masri was "turned away because his name was on a Homeland Security watch list").

[11/] See lawsuit filed by Arar against Attorney General John Ashcroft and other U.S. officials, Larry D. Thompson (then Acting Attorney General), J. Scott Blackman (then Regional Director of the Immigration and Naturalization Services for the Eastern District), Edward J. McElroy (formerly District Director for the Immigration and Naturalization Services for the New York City District and presently District Director of U.S. Immigration and Customs Enforcement), Robert Mueller (Director of the Federal Bureau of Investigation), and others: Complaint and Demand for Jury Trial, filed with the U.S. District Court for the Eastern District of New York in *Arar v. Ashcroft, et al.*, available at http://www.ccr-ny.org/v2/legal/september_11th/docs/ArarComplaint.pdf. This complaint

WILMERHALE

U.S. Customs and Border Protection
July 13, 2006
Page 5

      Finally, the CBP website also indicates that the National Targeting Center (NTC) (which was established under the Office of Field Operations in CBP) played a role in the identification of Jose Padilla, who like Mr. Hamdi, is a U.S. citizen who was detained in the U.S. as an "enemy combatant."[12]

      Given the CBP's and the Office of Anti-Terrorism's central role in advising on policy and practice concerning the handling of terrorism-related issues, and the general unsupported statement given by your office, we believe your responses to our requests were inadequate. We therefore request that you conduct another search for responsive documents and provide an explanation of your search methods.

      We look forward to your reply to this appeal within **twenty (20) working days**, as required under 5 U.S.C. §552(a)(6)(A)(ii).

---

specifically refers to INS officials (*see Arar v. Ashcroft*, para. 38, 43, 46, 47) or more generally to immigration officials or officers (*see Arar v. Ashcroft*, paras. 26, 27, 31, 35, 41). *See also* Dept. of State, Question Taken at October 6, 2003 Press Conference, *available at* http://www.state.gov/r/pa/prs/ps/2003/24965.htm; Commission of Inquiry into the Actions of Canadian Officials in Relation to Maher Arar, Sept. 15, 2005, argument of Lorne Waldman (Attorney to Arar) *available at* http://www.stenotran.com/commission/maherarar/2005-09-12%20volume%2046.pdf [11719-11728] (detailing information sharing between Canada and INS personnel); Dana Priest & Joe Stephens, *Secret World of U.S. Interrogation: Long History of Tactics in Overseas Prisons Is Coming to Light*, WASH. POST, May 11, 2004, at A1.

[12] Linda Kane, *A new team against terrorism*, Customs and Border Protection TODAY, June/July 2003, *available at* http://www.cbp.gov/xp/CustomsToday/2003/june_july/ ("Last spring, an NTC staffer spotted the name of Jose Padilla on a manifest of flights from Cairo to Chicago via Zurich. Padilla was allegedly working with al Qaeda to explore the feasibility of setting off a "dirty bomb," a conventional bomb salted with radioactive material, in an American city. Padilla is now in U.S. military custody as an enemy combatant."). Padilla was arrested at Chicago's O'Hare International Airport on May 8, 2002 after an international flight: *see generally Profile: Jose Padilla*, BBC NEWS, Nov. 22, 2005, *available at* http://news.bbc.co.uk/1/hi/world/americas/2037444.stm).

WILMERHALE

U.S. Customs and Border Protection
July 13, 2006
Page 6

Sincerely,

*[signature]* /KrD

Curt Goering
Deputy Director
Amnesty International USA
5 Penn Plaza
New York, NY 10001
Tel: (212) 807-8400
Fax: (212) 627-1451
E-mail: cgoering@aiusa.org

*[signature]* /KrD

Margaret L. Satterthwaite
Washington Square Legal Services, Inc.
Co-Director, International Human Rights Clinic
Faculty Director, Center for Human Rights &
Global Justice
NYU School of Law
245 Sullivan Street
New York, NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
E-Mail: margaret.satterthwaite@nyu.edu

*[signature]* /KrD

Catherine K. Ronis
WilmerHale
1875 Pennsylvania Avenue
Washington, DC 20006
Tel: (202) 663-6380
Fax: (202) 663-6363
E-Mail: catherine.ronis@wilmerhale.com