# EXHIBIT #31
# TO
# DEYOUNG DECLARATION

# WILMERHALE

July 13, 2006

Catherine Kane Ronis

**By Certified U.S. Mail and Facsimile**

+1 202 663 6380 (t)
+1 202 663 6363 (f)
catherine.ronis@wilmerhale.com

Chief Privacy Officer/Chief FOIA Officer, Privacy Office
Department of Homeland Security
TSA Headquarters Building, 601 S. 12th E3-S,
Arlington, VA 22202

Re: *Freedom of Information Act Appeal: Case Nos. PREP06F145 and PREP06F146*

Dear Chief Privacy Officer:

On April 25, 2006, Amnesty International USA[1] ("Amnesty") and Washington Square Legal Services ("WSLS") filed two requests for information under the Freedom of Information Act regarding detainees secretly transferred or held by the United States Government, including "Ghost Detainees/Prisoners," "Unregistered Detainees/Prisoners" and "CIA Detainees/Prisoners," as well as any memoranda of understanding or other record reflecting agreement between agencies concerning the handling of ghost or unregistered detainees ("the Requests").

Your agency, the Department of Homeland Security (DHS), Office of Intelligence and Analysis ("Office of Intelligence and Analysis"), assigned the Requests case numbers PREP06F145 and PREP06F146 and responded to Request number PREP06F146 on May 15, 2006.[2] You stated that "after a thorough search of the Office of Intelligence and Analysis files, no records responsive to [our] request were identified." Copies of the Requests and your response letters are attached. *See* Exhibits A-E.

Pursuant to 5 U.S.C. §552(a)(6), Amnesty and WSLS hereby appeal the adequacy of the Office of Intelligence and Analysis' search for relevant documents. Your agency did not provide any information about its search methods or indicate that it conducted a search for documents responsive to both of the Requests. Your response therefore does not adequately demonstrate that the Office of Intelligence and Analysis complied with its FOIA obligations.[3]

---

[1] Amnesty International USA is the U.S. Section of Amnesty International. *See* http:///www.amnestyusa.org/about/.

[2] You sent two interim responses on April 27, 2006, one for each request. To date, we have only received one "no records" finding, regarding case number PREP06F146. However, since the statutory 20-day time limit has passed within which your agency must determine whether to comply with our request, pursuant to 5 U.S.C. §552(a)(6)(A)(i), we construe your single reply letter to cover, and this appeal covers, both Requests.

[3] "The fundamental principle animating FOIA is public access to government documents. Accordingly, (courts) require agencies to make more than perfunctory searches, and . . . to follow through on obvious leads to discover requested documents. An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F. 3d 321, 326 (DC Cir. 1999).

WILMERHALE

Department of Homeland Security
July 13, 2006
Page 2

     As an initial matter, as noted in the Requests, there have been numerous reports of detainees secretly transferred or held by the United States Government, including "Ghost Detainees/Prisoners," "Unregistered Detainees/Prisoners" and "CIA Detainees/Prisoners.[4/] Since the Requests were filed, there have been numerous recent additional reports of this practice.[5/]

     Amnesty and WSLS have reason to believe that the Office of Intelligence and Analysis gathers and disseminates intelligence relating to these programs and that it is likely that the agency possesses documents responsive to the Requests. We therefore respectfully request that

---

[4/] See Josh White, *Army, CIA Agreed on 'Ghost' Prisoners*, WASH. POST, Mar. 11, 2005, at A16. *See also* Dana Priest, *Wrongful Imprisonment: Anatomy of a CIA Mistake: German Citizen Released After Months in Rendition*, WASH. POST., Dec. 4, 2005; Brian Ross and Richard Esposito, *Exclusive: Sources Tell ABC News Top Al Qaeda Figures Held in Secret CIA Prisons*, ABC NEWS, Dec. 5, 2005, *at* http://abcnews.go.com/WNT/Investigation/story?id=1375123; Jane Mayer, *A Deadly Interrogation: Can the C.I.A. Legally Kill a Prisoner?*, NEW YORKER, Nov. 14, 2005, at 44 (discussing the practice, particularly with respect to the death of Manadel al-Jamadi); Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1. *See also* the following Department of Defense documents released to the American Civil Liberties Union (ACLU) pursuant to a *Freedom of Information Act* request, all available at http://www.aclu.org/torturefoia/released/030905/: Transcript of deposition of Brig. Gen. Janis L. Karpinski, Appendix to Fay/Jones/Kern Report (July 18, 2004); Statement of MNF-I, C2, IMIR CW2, Annex to Fay/Jones/Kern Report (June 16, 2004); Sworn Statement of E-5, 519th MI Bn, Annex to Fay/Jones/Kern Report (June 4, 2004); Sworn Statement of 372nd MP Co SPC, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of 372nd MP Co SPC, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of [UNREADABLE], Annex to Fay/Jones/Kern Report; Sworn Statement of Deputy CJ2, CJTF-7, Annex to Fay/Jones/Kern Report; Sworn Statement of SGT, 372nd MP, Camp Victory, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of SPC/E4, B Co., 66th MI Group, 202nd MI BN, Annex to Fay/Jones/Kern Report (May 24, 2004); Sworn Statement of SGT, Member of GTMO team, "Shut Up Group," Annex to Fay/Jones/Kern Report (June 4, 2004); Sworn Statement of CW2, A/519th MI Bn, Annex to Fay/Jones/Kern Report (May 19, 2004); Sworn Statement of SGT, 372nd MP Co, Annex to Fay/Jones/Kern Report (May 7, 2004); Statement of B/Co, 470th MI Grp. SGT, Annex to Fay/Jones/Kern Report (May 18, 2004). *See further* HUMAN RIGHTS FIRST, BEHIND THE WIRE: AN UPDATE TO ENDING SECRET DETENTIONS 6 (2005), *available at* http://www.humanrightsfirst.org/us_law/PDF/behind-the-wire-033005.pdf (providing overview of the practice of ghosting in military facilities); HUMAN RIGHTS WATCH, THE UNITED STATES' DISAPPEARED: THE CIA'S LONG-TERM "GHOST DETAINEES" 5-15 (2004), *available at* http://www.hrw.org/backgrounder/usa/us1004/ us1004.pdf (outlining practice of keeping CIA prisoners in military detention generally).

[5/] *See, e.g.,* Craig Smith, *Algerian Tells of Dark Term in U.S. Hands,* The New York Times (July 7, 2006); Jan Sliva, *EU concedes rendition flights took place,* The Herald, (June 28, 2006); Ike Seamans, *Above the law,* The Miami Herald, (June 25, 2006); *MIDDLE EAST: Region still lacks support for torture victims, say observers*, Reuters Foundation, (June 25, 2006); *The Detention Dilemma,* The Washington Post, (June 19, 2006); Barrie Dunsmore, *Ugly portrait emerges dot by dot,* Times Argus, (June 18, 2006); Josh White, *Bad Advice Blamed For Banned Tactics,* The Washington Post, (June 17, 2006); Anemona Hartocollis, *Judges Press CIA Lawyer Over Withheld Documents,* The New York Times, (June 13, 2006); *Court Weighs ACLU Request on CIA Terror Documents,* New York Sun, (June 13, 2006); Larry Neumeister, *Court Urges to Protect CIA Detention Info,* Guardian Unlimited (June 13, 2006); *Euro MP's to Extend Probe Into CIA Activities,* Expatica, (June 13, 2006); *Court Will Investigate Alleged CIA Flights,* Los Angeles Times, (June 13, 2006); Jeremy Smith, *EU Lawmakers Back Report on CIA Terror Kidnappings,* Reuters, (June 12, 2006); Jan Sliva, *Probe of CIA Prisons Implicates EU Nations,* Forbes, (June 7, 2006); *see further* Committee on Legal Affairs and Human Rights, *Alleged secret detentions and unlawful inter-state transfers involving Council of Europe member states,* Draft report – Part II (Explanatory memorandum), 7 June 2006; Council of Europe, Parliamentary Assembly, Resolution 1507 *Alleged secret detentions and unlawful inter-state transfers of detainees involving Council of Europe member states* (2006).

WILMERHALE

Department of Homeland Security
July 13, 2006
Page 3

you conduct a more thorough search of your files and provide a detailed explanation of your search methods.[6/]

The DHS, of which the Office of Intelligence and Analysis is a component, was established in large part to coordinate the "…vast national network of organizations and institutions involved in efforts to secure our nation."[7/] According to the DHS website, the DHS' mission is to lead a "unified national effort to secure America," by preventing terrorist attacks and protecting against and responding to threats to the nation.[8/]

DHS has explained that the role of the Office of Intelligence and Analysis is to use "information and intelligence from multiple sources to identify and assess current and future threats to the United States."[9/] Indeed, the Office of Intelligence and Analysis ensures that information is "gathered from all relevant field operations and other parts of the intelligence community; analyzed with a mission-oriented focus; informative to senior decision-makers; and disseminated to the appropriate federal, state, local, and private sector partners." The Office is "[l]ed by a Chief Intelligence Officer reporting directly to the Secretary…" and "…is comprised of analysts within the former Information Analysis directorate and draws on expertise of other department components with intelligence collection and analysis operations."[10/] Thus, because the Office of Information and Analysis is responsible for gathering intelligence information from field operations and disseminating that information to senior decision-makers, we believe that it possesses documents responsive to the Requests.

Moreover, in a recent book by an investigative journalist, high-profile terrorist threat information was sourced to detainees held secretly by the United States. Ron Suskind reports in *The One Percent Doctrine: Deep Inside America's Pursuit of Its Enemies Since 9/11* that

---

[6/] See *Oglesby v. U.S. Dept of the Army*, 920 F 2d 57, 68 (DC Cir. 1990) (the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested).

[7/] See Department of Homeland Security website, *available at* http://www.dhs.gov/dhspublic/interapp/editorial/editorial_0413.xml.

[8/] See Department of Homeland Security website, *available at* http://www.dhs.gov/dhspublic/interapp/editorial/editorial_0413.xml.

[9/] See http://www.dhs.gov/dhspublic/display?theme=9; *See also* Fact Sheet: U.S. Department of Homeland Security Announces Six Percent Increase in Fiscal Year 2007 Budget Request, *available at* http://www.dhs.gov/dhspublic/interapp/press_release/press_release_0849.xml (noting that "[t]he department's intelligence and information gathering and sharing capabilities are led by I&A, who ensures that information is collected from relevant field operations and critical participants in the intelligence community, analyzed with a mission-oriented focus; and disseminated to the appropriate federal, state, local and private sector partners.").

[10/] See http://www.dhs.gov/dhspublic/interapp/editorial/editorial_0646.xml; *see also* http://www.dhs.gov/dhspublic/interapp/editorial/editorial_0872.xml (recording that the Office of Policy Development "Works with the Office of Intelligence and Analysis to develop effective policies for the collection of information consistent with the law and American values.").

WILMERHALE

Department of Homeland Security
July 13, 2006
Page 4

information gleaned from U.S. interrogations of secret detainee Abu Zubaydah triggered massive responses to specific and general targets by federal agencies in the United States.[11] Although the Office of Intelligence and Analysis was not yet in existence, its predecessor offices would likely have played a role in assessing and responding to such threats, and therefore your agency likely has information regarding the subjects covered by the Requests.

There is also evidence that the DHS possesses information about cases of specific detainees held in the "war on terror." For example, the Office of the Inspector General, U.S. DHS is conducting an "inspection" into the case of Maher Arar, which reportedly includes an examination of "the policies and procedures that led to his detention and removal to Syria."[12] Human Rights Watch reported that the "inspection will focus not only on the specific case of Mr. Arar, but more generally on cases involving the removal of alleged terrorist suspects to a country where they may risk being subjected to torture."[13]

Based upon the Office of Intelligence and Analysis' critical role in intelligence gathering for the DHS and other agencies, evidence showing a link between secret detainees and terrorist threat information, the DHS's mission to assess threats and protect the United States from terrorist attacks, and its "inspection" activities concerning both specific examples and general aspects of U.S. policy on removal, we believe that the Office of Intelligence and Analysis possesses records documenting its involvement with individuals who have been secretly or irregularly apprehended, transferred and detained by or with the involvement of the United States. We therefore request that you conduct another search for responsive documents and provide an explanation of your search methods.

We look forward to your reply to this appeal within **twenty (20) working days**, as required under 5 U.S.C. §552(a)(6)(A)(ii).

---

[11] "Zubaydah told them [CIA interrogators] that shopping malls were targeted by al Qaeda. That information traveled the globe in an instant. Agents from the FBI, Secret Service, Customs, and various related agencies joined local police to surround malls." RON SUSKIND, THE ONE PERCENT DOCTRINE: DEEP INSIDE AMERICA'S PURSUIT OF ITS ENEMIES SINCE 9/11 (2006) at 115. The U.S. has acknowledged holding Abu Zubaydah, but has not provided information about his fate or whereabouts. *See* Center for Human Rights & Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"* (New York: NYU School of Law, 2005), available at http://www.nyuhr.org/docs/Whereabouts%20Unknown%20Final.pdf; Human Rights Watch, List of "Ghost Detainees" Possibly in CIA Custody, http://hrw.org/english/docs/2005/11/30/usdom12109.htm (last updated Dec. 1, 2005).

[12] A press release by Rep. John Conyers dated March 2, 2005, states that the IG's investigation was hampered by lack of cooperation from immigration officials, *available at* http://www.johnconyers.com/vertical/Sites/%7BEF00C507-612C-4BA3-84C0-446C97F7E413%7D/uploads/%7B151A3FDB-7B03-494B-A250-711A830191BD%7D.PDF. A Democratic Party campaign website includes text drawn from a letter written by the DHS IG to Rep. Conyers concerning obstacles the IG faced in his inspection into the Arar case, *available at* http://www.dccc.org/stakeholder/archives/002292.html.

[13] *See* Human Rights Watch website, *available at* http://hrw.org/english/docs/2004/09/15/usint9349_txt.htm.

WILMERHALE

Department of Homeland Security
July 13, 2006
Page 5

Sincerely,

*[signature: Curt Goering /KMD]*

Curt Goering
Deputy Director
Amnesty International USA
5 Penn Plaza
New York, NY 10001
Tel: (212) 807-8400
Fax: (212) 627-1451
E-mail: cgoering@aiusa.org

*[signature: Margaret Satterthwaite /KMD]*

Margaret L. Satterthwaite
Washington Square Legal Services, Inc.
Co-Director, International Human Rights Clinic
Faculty Director, Center for Human Rights &
Global Justice
NYU School of Law
245 Sullivan Street
New York, NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
E-Mail: margaret.satterthwaite@nyu.edu

*[signature: Catherine Ronis /KMD]*

Catherine K. Ronis
WilmerHale
1875 Pennsylvania Avenue
Washington, DC 20006
Tel: (202) 663-6380
Fax: (202) 663-6363
E-Mail: catherine.ronis@wilmerhale.com