# EXHIBIT #35
# TO
# DEYOUNG DECLARATION

# INTERNATIONAL HUMAN RIGHTS CLINIC
## WASHINGTON SQUARE LEGAL SERVICES, INC.

245 SULLIVAN STREET, 5th FLOOR, NEW YORK, NY 10012, USA
TEL: +1-212 998-6431 - FAX: +1-212- 995-4031

MARGARET L. SATTERTHWAITE
*Clinic Director*

SMITA NARULA
*Clinic Director*

October 24, 2007

Jeannette A. Vargas, Esq.
Brian Marc Feldman, Esq.
United States Attorney's Office
Southern District of New York

86 Chambers Street
New York, NY 10007

RE:   **Amnesty International, et al. v. Central Intelligence Agency, et al.**
      **07 Civ. 5435 (LAP)**

Dear Jeannette and Brian,

As we discussed at our meeting in your offices last Friday, October 19, we believe that
the Department of Homeland Security ("DHS" or "the Department") and several of its
component agencies possess records responsive to our FOIA requests, in addition to the records
which you acknowledge are within DHS possession. This letter pertains only to the Amnesty
International/WSLS "general" FOIA request, in conjunction with the request submitted by the
Center for Constitutional Rights (together, "our Requests"). However, based on your
representations to us at our Friday meeting, we understand that the Department has located
numerous documents that would be responsive to our "specific" request. We therefore renew
our request that DHS provide us with a response and a *Vaughn* index for these records as soon as
possible. We also reiterate our dissatisfaction with the Department's "no records" response to
our Requests for the reasons explained below.

As we have previously explained in our administrative appeals, DHS is in possession of
records related to several incidents which demonstrate its knowledge of, and participation in, the
rendition and secret detention programs. One such incident is the detention and extraordinary
rendition of Mr. Maher Arar. Ample evidence suggests that Mr. Arar was in fact transferred
irregularly from DHS (at the time INS) custody. While in transit at John F. Kennedy
International Airport in New York in September 2002, Mr. Arar was taken into custody by U.S.
officials. Mr. Arar was deported to Syria despite the fact that he is a Canadian citizen and had
resided in Canada for 17 years. His pleas to officials to allow him to proceed to his destination
in Canada were ignored, and he was sent to Syria where he was interrogated and tortured. We
believe that Mr. Arar's detention and transfer was coordinated between DHS, other U.S.
government agencies, and certain branches of the Canadian government, and involved a
perversion of the ordinary inspection and removal processes.

Mr. Arar's detention and extraordinary rendition has been the most widely-publicized
case of DHS involvement in such programs, with both Mr. Arar's recent October 18, 2007

Jeannette Vargas and Brian Feldman, Assistant U.S. Attorneys
October 24, 2007
Page 2

testimony before two Subcommittees of the U.S. House of Representatives and a 2006 Canadian Government special commission report on the events relating to his rendition garnering significant attention in the media. However, it is also apparent that Mr. Khaled El-Masri's December 3, 2005 denial of entry to Hartsfield International Airport in Atlanta implicates DHS coordination with other government agencies involved in carrying out extraordinary rendition and secret detention. Mr. El-Masri was abducted in Macedonia on December 31, 2003 and detained in CIA custody for five months. After Mr. El-Masri was transferred to Afghanistan, CIA officials reportedly realized that they had detained an innocent man, and George Tenet was notified of the situation. Mr. El-Masri was eventually released on a hillside in Albania. At some point in this process, it appears that Mr. El-Masri's name was placed on a DHS watch list, which prevented him from entering the country despite the fact that he had been released and that Secretary of State Rice reportedly acknowledged to the German government that his apprehension had been a mistake.

The widely-publicized interactions between Mssrs. Arar and El-Masri and DHS component agencies at U.S. airports over the past several years demonstrate that the Department has had some involvement in activities covered by the scope of our Requests. It must therefore be in possession of responsive records which should be turned up in any agency search pursuant to our Requests. The following three items are examples of the type of documents that are in the DHS's possession and should be made available to us:

- The special removal order signed by Larry Thompson that the INS ultimately used to deport Maher Arar in October, 2002.[1]

- Any documents relating to communications with Canadian officials concerning US intentions concerning Arar; the amount of information or lack thereof to be used to charge Arar; the scheduled immigration hearing for Arar; procedures or issues pertaining to Arar's dual citizenship status; or any documents simply stating that Arar had been sent to Syria via Jordan.[2]

- Any documents relating to Khaled El-Masri's denial of entry into the United States on December 3, 2005, when he arrived at Hartsfield International Airport in Atlanta, Georgia. In particular, any documents indicating how and why Mr. El-Masri's name was placed on a watch list.[3] It bears repeating that these are only examples; we believe that

---

[1] *His Year In Hell*, CBS NEWS, January 21, 2004, http://www.cbsnews.com/stories/2004/01/21/60II/main594974.shtml (referring to "a special removal order signed by John Ashcroft's former deputy, Larry Thompson" in the Arar case).

[2] Commission of Inquiry Into the Actions of Canadian Officials in Relation to Maher Arar, *Report of the Events Relating To Maher Arar: Analysis and Recommendations* 29, 148, 151–54, 182 (2006).

[3] ACLU letter to Secretaries Rice and Chertoff, Dec. 8, 2002, *available at* http://www.aclu.org/images/extraordinaryrendition/asset_upload_file605_22380.pdf; *see also* Scott Shane, *German Held in Afghan Jail Files Lawsuit*, N.Y. TIMES, Dec. 7, 2005 at A25 (noting that U.S. CBP spokesperson Kristi Clemens had "confirmed that Mr. [El-] Masri was denied entry" and that denial was "based on information received from other American agencies."), *and* Glenn Kessler, *Rice to Admit German's Abduction Was an Error*, Wash. Post, Dec. 7, 2005 at A18 (reporting that Mr. El-Masri was "turned away because his name was on a Homeland Security watch list.").

Jeannette Vargas and Brian Feldman, Assistant U.S. Attorneys
October 24, 2007
Page 3

the DHS possesses many additional documents regarding Mssrs. Arar and El-Masri that are responsive to our Requests.

The well-publicized treatment of these individuals by DHS, as described above, demonstrate that the Department played some role in rendition and secret detention, even if it did not play a leading role. These well-known cases suggest that there likely have been similar interactions with other individuals whose circumstances may not be as widely known as those described here. All such interactions would generate documents that we believe would be responsive to our Requests.

We expect that you will pass along this information to your client at your earliest convenience, and that DHS will produce documents which are in its possession and/or provide us with a *Vaughn* index covering those records which it believes are covered by a specific statutory exemption.

At our meeting on Friday, we also discussed the possibility of identifying subcomponents of the DHS that we believe do not possess documents responsive to our Requests so that these subcomponents would not need to take part in any summary judgment briefing that may be necessary on this issue. However, it is now apparent to us that we simply do not have sufficient information regarding the organization of the DHS or its participation in the rendition or secret detention of detainees to provide such a list at this time.

Thank you for your attention to this matter.

Sincerely yours,

Margaret Satterthwaite
International Human Rights Clinic
Washington Square Legal Services, Inc.
245 Sullivan Street
New York, NY 10012