UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

AMNESTY INTERNATIONAL USA, CENTER
FOR CONSTITUTIONAL RIGHTS, INC.,
and WASHINGTON LEGAL SERVICES, INC.,

       Plaintiffs,

       v.

CENTRAL INTELLIGENCE AGENCY,
DEPARTMENT OF DEFENSE, DEPARTMENT
OF HOMELAND SECURITY, DEPARTMENT
OF JUSTICE, DEPARTMENT OF STATE, and
THEIR COMPONENTS

       Defendants.

07 CV 5435 (LAP)

**DECLARATION OF JAMES W. MCNEELY**

---

I, James W. McNeely, hereby declare and state as follows:

1. I am an Attorney-Advisor within the Office of Chief Counsel and Counsel for Civil Liberties Programs, Office for Civil Rights and Civil Liberties ("CRCL"), U.S. Department of Homeland Security ("DHS" or the "Department"). I make this declaration in further support of the Department of Homeland Security's Motion for Partial Summary Judgment and in opposition to "Plaintiff's Cross Motion for Partial Summary Judgment and Opposition to Department of Homeland Security's Motion for Partial Summary Judgment." The statements I make in this declaration are made on the basis of personal knowledge, my review of files within CRCL, and information I have received in the performance of my official duties.

### Receipt Of Plaintiffs' FOIA Request

2. By letter dated April 25, 2006, Plaintiffs Amnesty International and Washington Square Legal Services, Inc. (collectively, "Plaintiffs") submitted a Freedom of Information Act

("FOIA") request addressed to the DHS FOIA Office, entitled "Request Submitted Under the Freedom of Information Act for Records Concerning Detainees, including 'Ghost Detainees/Prisoners,' 'Unregistered Detainees/Prisoners,' and 'CIA Detainees/Prisoners'" (the "FOIA Request" or "Plaintiffs' FOIA Request"). Plaintiffs' FOIA Request specifically sought information relating to "individuals who were, have been, or continue to be deprived of their liberty by or with the involvement of the United States and about whom the United States has not provided public information." A true and complete copy of the Plaintiffs' FOIA Request is attached as Exhibit A to the Declaration of Vania T. Lockett, dated November 29, 2007.

3. Plaintiffs did not send the FOIA Request directly to CRCL, and CRCL was not initially tasked by the DHS FOIA Office to search for documents responsive to the FOIA Request. During the course of processing a different FOIA request on behalf of Plaintiffs, however, the DHS FOIA Office identified a handful of CRCL documents as potentially responsive to Plaintiffs' FOIA Request.[1] Accordingly, thereafter, in December 2007, the DHS FOIA Office tasked CRCL with searching for documents responsive to the FOIA Request. This declaration details the results of that CRCL search.

**Description of the Office for Civil Rights and Civil Liberties**

4. CRCL is headed by the Officer for Civil Rights and Civil Liberties ("CRCL Officer"), who reports directly to the Secretary of DHS. CRCL is responsible for developing policies, monitoring DHS activities, and responding to requests for assistance in an effort to ensure DHS implements homeland security programs in a manner that is consistent with civil

---

[1] The documents were identified while processing a separate FOIA request submitted by Plaintiffs on April 25, 2006, entitled, "Request Under the Freedom of Information Act for Records Concerning Ghost Detainee Memoranda, Department of Defense Detainee Reporting, Reports to Certain U.N. Committees, and the Draft Convention on Enforced Disappearance."

rights and civil liberties. See 6 U.S.C. § 345. CRCL also investigates allegations of ethnic, racial or religious profiling, allegations of abuses of civil rights and civil liberties, and other alleged abuses by DHS employees. To fulfill these duties, CRCL is divided into two primary components, an Equal Employment Opportunity Office, which focuses on the Department's internal employment discrimination complaints, and Programs and Compliance, which focuses on allegations of violations of civil rights, civil liberties, human rights or other allegations of abuse or misconduct by DHS employees and provides policy advice in those topic areas.

5.  Programs and Compliance is further divided into two sections: (1) Review and Compliance and (2) Civil Liberties Programs. Review and Compliance conducts investigations into allegations involving racial, ethnic or religious profiling, or other alleged abuses or violations of civil rights and civil liberties or human rights by DHS employees. The Civil Liberties Program consists of three sections: (1) the Engagement Team, (2) Disability and Emergency Preparedness, and (3) Policy. The Engagement Team performs a community relations function, providing information about DHS activities to certain communities, and also functions as a feedback channel for those communities to offer suggestions or to communicate to DHS how its policies are received and understood. The Disabilities and Emergency Preparedness section works with individuals with disabilities, emergency preparedness planners, first responders and advocacy groups to ensure that emergency preparedness and response operations meet the needs of persons with disabilities. The Policy section carries out CRCL's statutory duty to, "assist the Secretary, directorates, and offices of the Department to develop, implement, and periodically review Department policies and procedures to ensure that the protection of civil rights and civil liberties is appropriately incorporated into Department programs and activities." 6 U.S.C. § 345(a)(3).

## The Office for Civil Rights and Civil Liberties' Search

6. CRCL began its search by identifying every individual and office within CRCL that could reasonably be expected to have responsive records, if any such records existed at CRCL. After making inquiries with senior staff familiar with the operations and records of the office, I determined that if CRCL possessed any responsive records, the following four individuals would be most likely to have such records in their purview: (1) the CRCL Administrator (who tracks all materials incoming to the CRCL Officer), (2) the Deputy Officer for Programs and Compliance, (3) the Director of Review and Compliance, and (4) the Director of Civil Liberties Programs.

7. I asked each of those four individuals by e-mail to search their hard copies and electronic files for responsive records. My e-mail to them included a copy of the FOIA Request itself. The e-mail also included certain key words to guide the searches of electronic files, including email accounts. These terms included: ghost detainees/prisoners, unregistered detainees/prisoners, CIA detainees/prisoners, Other Governmental Agency Detainees, and OGA Detainees. I also asked each of these individuals to identify any of his or her staff members who might have responsive records, and then to task those staff with searching for responsive records. In addition, I asked the Director of the Civil Liberties Programs to search CRCL's classified holdings. I then had conversations with each of the individuals, explaining the basic nature of the request, the types of material sought, and the requirement that they expedite the search. The four individuals were asked to respond by providing a positive or negative result. Additionally, I searched my own email account and electronic documents for responsive records, with negative results.

8. In response to my e-mail, the CRCL Administrator searched her own e-mail account

4

and the CRCL Officer's email account. The CRCL Administrator also searched the CRCL Executive Correspondence Tracking system account, which tracks items referred to CRCL for action through the Executive Secretariat, to identify any Departmental correspondence requesting that CRCL comment on any issues related to the FOIA Request. For both searches, the CRCL Administrator used the search terms suggested in the e-mail tasking. The Administrator found no responsive records.

9. The Deputy Officer for Programs and Compliance also searched his records in response to my e-mail. The Deputy Officer has occupied a senior position within CRCL since December 2003. Prior to becoming the Deputy Officer, he served as CRCL's Chief Counsel. His current and past responsibilities give him direct knowledge of all of CRCL's major activities. The Deputy Director stated that CRCL had neither handled any complaints nor advised Department leadership on any issues related to the FOIA Request, and thus that CRCL, including Programs and Compliance, was unlikely to have any responsive records. Nonetheless, he searched his own email and electronic files using the search terms suggested in the e-mail tasking. He found no responsive documents.

10. The Director of Review and Compliance also conducted a search in response to my e-mail. The Director of Review and Compliance has occupied a senior position within CRCL since shortly after it was first established in March 2003. Prior to becoming Director of Review and Compliance, she served as a senior attorney in the CRCL Office of Chief Counsel. She reported that neither she nor her section had ever worked on any complaints related to "ghost detainees" or to any of the issues included in the FOIA Request. Nonetheless, using the suggested search terms, she searched her own email, hard copy and electronic files and found no responsive records. Moreover, a contractor under her supervision used the same search terms to

conduct a search of the automated system of records for Review and Compliance. The automated records system contains both tracking information and documents received and generated during the course of investigations of alleged violations of civil rights, civil liberties, and human rights, and other alleged abuses by DHS personnel. If any complaints on subjects related to the FOIA Request had been received, or any investigations initiated, records of those complaints or investigations would have been included in the automated records system. The contractor found no responsive records.

11. The Director of Civil Liberties Programs also conducted a search in response to my e-mail. He stated that he had not worked on any policies involving issues related to the FOIA Request. Nonetheless, he searched his email, hard copy and electronic records using the suggested search terms. He found no responsive records. The Director also conducted an electronic search of classified documents in CRCL's possession within the Department's classified communications system and found no responsive documents. Based on his personal knowledge of CRCL's very limited hard copy classified holdings, the Director confirmed that none of them were responsive to the FOIA Request. The Director then identified individual staff members in the Engagement Team and Policy sections who could have possibly worked on issues related to the FOIA Request, and I briefed those staff members regarding the nature of the records sought, and requested that they search their records using the search terms provided in the email tasking. The Engagement Team leader confirmed that the Engagement Team did not have any responsive records. All but one of the individuals in the Policy section reported that they had no responsive records. One Policy Advisor identified seven responsive documents, which were provided to the DHS FOIA Office for processing. In accordance with its standard practice, DHS treated e-mails and attachments as separate records.

12. By letter dated January 31, 2008, the DHS FOIA Office disclosed three of the six responsive records found in CRCL files, with redactions made pursuant to 5 U.S.C. § 552 (b)(2)(low) and (b)(6). A true and accurate copy of that letter and those records is attached to the Supplemental Locket Declaration, dated February 4, 2008, as Exhibit B. The three CRCL records are Exhibits B (7) ("Document Number Seven"), B (8) ("Document Number Eight"), and B (9) ("Document Number Nine").

13. The remaining four records were referred to the Department of State for direct response to the Plaintiffs.

14. Each step in handling this FOIA request was consistent with the DHS procedures for responding to FOIA requests. All files likely to contain responsive materials were searched.

**Exemptions**

**5 U.S.C. 552(b)(6) Personnel and Medical Files and Similar Files the Disclosure of Which Would Constitute a Clearly Unwarranted Invasion of Personal Privacy**

15. Section 552(b)(6) of Title 5 of the U.S. Code (the "(b)(6) exemption") exempts from mandatory disclosure "personnel and medical files and similar files the disclosure of which could constitute a clearly unwarranted invasion of personal privacy." This exemption protects both government officials and private third parties, whose identities are revealed in government records, from unwarranted invasions of their personal privacy that would not shed light on government activities.

16. The assertion of the (b)(6) exemption requires that each piece of withheld information be scrutinized to determine the nature and strength of the individual's privacy interest in that information. In withholding the information, the individual's privacy interest must be balanced against the public's interest in disclosure.

17.     In this case, the (b)(6) exemption has been applied to the name and other personal identifying information of the one private third party mentioned in these records. It was determined that whatever public interest there might be, if any, in knowing the name and other identifying information regarding the individual in the relevant records did not outweigh the privacy interests of said individual.

17.     The specific (b)(6) exemptions are as follows. In Document Number Seven, which is an e-mail chain initiated on May 25, 2007, the name, e-mail address, and telephone and fax numbers of the Director of Executive Branch Relations of the Heritage Foundation were redacted. In Document Number Eight, the same information was redacted from page five of a separate e-mail chain that branches from the same initial e-mail. In Document Number Nine, the same information was redacted from a third e-mail chain, which also branches from the same initial e-mail.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Signed this 4th day of February, 2008.

_____
JAMES W. MCNEELY