## Feldman, Brian (USANYS)

| | |
|---|---|
| From: | Kelliher, Brian D [IMCEAEX-_O=INS_OU=IRM_CN=RECIPIENTS_CN=BRIAN+20D+20KELLIHER@HQ.DHS.GOV] |
| Sent: | Monday, February 28, 2005 4:34 PM |
| To: | Giovagnoli, Mary E; Groom, Molly M; Kelliher, Brian D; Lay, Dorothea B; Rosenberg, Ron M; Smith, Alice J; Whitney, Ronald W |
| Subject: | A challenge to U.S. policy on torture |

The Washington Times
www.washingtontimes.com

-------------------------------------------------------------------------

**A challenge to U.S. policy on torture**
By Nat Hentoff
Published February 28, 2005

-------------------------------------------------------------------------

In view of the ceaseless 24-hour news cycle and the abundance of various media, there are sometimes limits to what a print journalist can do to create sufficient impact on Congress to act on an issue the majority of members want to avoid. A possible exception may be an article in the 80th anniversary of the New Yorker (Feb. 14-21): "Outsourcing Torture" by Jane Mayer, concerning the Bush administration's covert approval of sending prisoners in the war on terror to other countries to be tortured.

For three years, I and other journalists around the world have been writing about the "extraordinary renditions" by which the CIA has secretly sent suspected terrorists for extreme interrogation to countries known for torturing prisoners, Egypt and Jordan among them.

A 1998 statute, the Foreign Affairs Reform and Restructuring Act, has declared such renditions unlawful. So does Article 49 of the Geneva Convention, which was ratified by the United States in 1955. Yet, President Bush has repeatedly declared that he will never order or condone torture.

However, the continuing existence of these "extraordinary renditions" by which the CIA outsources torture, which began under the Clinton administration, has been clearly and extensively documented by Human Rights Watch, among other groups. HRW's October 2004 briefing paper is titled: "The United States' 'Disappeared': The CIA's Long-Term 'Ghost Detainees.' " My own research leaves me no doubt about the existence of these extralegal practices of the CIA.

Some members of Congress have tried to get information about such extreme interrogations, along with other facts about the treatment of detainees. During the Senate action on the intelligence-reform bill last year, Richard Durbin, Illinois Democrat, and Joseph Lieberman, Connecticut Democrat, introduced such legislation, but the House Republican leadership and the White House killed it.

Sens. Patrick Leahy, Vermont Democrat and Christopher Dodd, Connecticut Democrat, have also tried and failed, and Sen. John McCain is concerned. Not incidentally, the September 11 commission was denied the ability to ask questions about these "extraordinary renditions." The publication of "Outsourcing Torture" in the New Yorker could gather support for the reintroduction of bills to activate the authority in the Constitution for Congress to make "rules concerning captures on land and water" (Article I, Section 8).

A primary obstacle to a substantive congressional investigation with subpoena power into the treatment of prisoners is the continued, determined opposition of the House Republican leadership and the White House.

But during an interview with Ms. Mayer for her New Yorker article on outsourcing torture, John Yoo, formerly with the Bush administration, made what amounts to an arrogant challenge to Congress that may also awaken some Republicans who deeply adhere to the rule of law.

Now a professor at the University of California Law School, Boat Hall, Mr. Yoo, a deputy attorney general under John Ashcroft, was a principal adviser to higher echelons of the administration, including the president, on how to slide past both American and international laws against torture. These texts of Mr. Yoo's memoranda appear in the new, invaluable 1,249-page book, "The Torture Papers: The Road to Abu Ghraib" (Cambridge University Press), which was edited by Karen Greenberg, executive director of New York University Law School's Center on Law and Security, and attorney Joshua Dratel, an attorney much experienced in these matters as a litigator.) This is Mr. Yoo's challenge to Congress and to those Americans concerned that the administration's use of torture as part of its plan to spread democracy worldwide will cause this mission to lose much credibility: Ms. Mayer writes "As Mr. Yoo saw it (in the interview with her), Congress doesn't have the power to 'tie the President's hands in regard to torture as an interrogation technique. ... It's the core of the commander in chief function. They can't prevent the president from ordering torture.' " How about torture ending in murder? "[Mr. Yoo] went on to suggest that Mr. Bush's victory in the 2004 election, along with the relatively mild challenge to Attorney General Alberto Gonzales mounted by the Democrats in Congress, was 'proof that the debate is over. ... The issue is dying out. The public has had its referendum.' "

Not so fast, Mr. Yoo. There is the beginning of a bipartisan movement in the Senate Intelligence Committee to inquire into the CIA's renditions and "ghost prisoners," but surely it has to include subpoena powers and be a real investigation to be meaningful. With mounting reports from within the FBI, and other agencies, of continuing extreme abuses of our detainees in many parts of the world, what kind of country are we becoming? Mr. Yoo's country?

Copyright © 2005 News World Communications, Inc. All rights reserved.

Brian D. Kelliher
Associate Counsel
Refugee & Asylum Law Division
Office of the Chief Counsel
U.S. Citizenship & Immigration Services
Department of Homeland Security
(b)(2)(low) tel: ▮▮▮▮▮▮▮
Brian.Kelliher@dhs.gov