**Lockett, Vania**

| | |
|---|---|
| From: | Prendergast, Kathy |
| Sent: | Friday, May 25, 2007 2:28 PM |
| To: | Montgomery, Kathleen; Courtwright-Rodriguez, Susan |
| Subject: | FW: UN Spec Rapporteur's preliminary findngs today |
| Attachments: | press release USA 25 May 07 revised 11am.doc |

Katy, Susan:

Fyi, this is something Heritage scholar Steve Groves wrote prior to the release of the report (posted on Heritage site yesterday).

I have cut and pasted it below for you.

May 24, 2007

# The U.S. Deserves a Fair Report from the U.N. Human Rights Envoy

by Steven Groves
WebMemo #1470

From time to time, the United Nations deploys human rights experts—called "special rapporteurs"—to the United States and elsewhere to report on alleged human rights abuses. Over the years, the United States has tolerated the presence of these special envoys to investigate human rights practices regarding various issues, such as the death penalty, freedom of religion, violence against women, and the right to education.[1]In 2005, the now-defunct U.N. Commission on Human Rights created a new special rapporteur position based on the theory that counterterrorism operations were resulting in grave violations of human rights.[2]Finnish academic Martin Scheinin was appointed to the position, and he will be visiting the United States from May 16 to 25 to conduct research for a report to the new U.N. Human Rights Council. In crafting his report, Special Rapporteur Scheinin should take care to keep in mind U.S. sovereignty, the American constitutional system, and that system's basis in the consent of the governed and not forsake these principles for ill-defined international norms to which the U.S. has never acceded.

**A Report on Rights**
During his visit, Special Rapporteur Scheinin will meet with U.S. officials from the Departments of State, Defense, Justice, and Homeland Security, as well as other government officials and non-governmental organizations.[3]He has indicated that he intends to explore a wide range of issues, including the Military Commissions Act, the Patriot Act, "extraordinary" rendition, "secret" CIA prisons, and immigration policy. Scheinin has said he will review U.S. counterterrorism practices for compliance with U.S. human rights treaty obligations, such as those enshrined in the International Covenant on Civil and Political Rights and the Convention Against Torture.

Scheinin plans to issue a report to the new U.N. Human Rights Council in Geneva detailing his findings on the U.S. human rights record. If it is to be credible, this report must reflect a deep understanding of U.S. international treaty obligations and the international legal framework of the war on terrorism. More importantly, Scheinin's report will be credible and

worthy of consideration only if it reflects a fundamental appreciation of and respect for American sovereignty and the nation's heritage and tradition of protecting individual rights and freedoms even while conducting armed conflicts and fighting terrorism. Despite what the European Union and many internationalists seek to persuade the American public and the rest of the world to believe, no nation has a longer and more distinguished history of protecting the rights that human rights advocates now consider essential than does the United States.

### Scheinin's Criticism of the Military Commissions Act

In *Hamdan v. Rumsfeld*, the U.S. Supreme Court, through the application of convoluted logic and precedent, held that Common Article 3 of the Geneva Conventions applies to the detention of unlawful enemy combatants. The Court interpreted existing statutes to require that any military commission used to try enemy combatants conform (with the exception of certain practical deviations) to the procedures of the Uniform Code of Military Justice (UCMJ) and the Geneva Conventions.[4] Congress responded to *Hamdan* with the Military Commissions Act of 2006 (MCA), which modeled the military commission process on the UCMJ.[5] The MCA provides crucial guarantees for fair trials, including the presumption of innocence, the right to be informed of charges, the assistance of counsel, the right to be present at trial, and the privilege against self-incrimination.[6] Rapporteur Scheinin nevertheless lambasted the MCA in a sharply worded press release issued shortly after its passage.[7] Scheinin's criticisms ignore the plain language of the MCA and do not accurately reflect the treaty obligations of the United States.

For example, Scheinin's press release claimed that "a number of provisions of the MCA appear to contradict the universal and fundamental principles of fair trial standards and due process enshrined in Common Article 3 of the Geneva Conventions." As an example, it stated that, under the MCA, unlawful enemy combatants do not have "the right to see exculpatory evidence if it is deemed classified information...." The MCA, however, ensures detainees the right to review exculpatory evidence—even if it is classified—by providing them with a summary of the classified information or a statement of the facts that the classified information would establish.[8]

The use of such substitutions or summaries of raw, classified information is fair and reasonable, and it is consistent with U.S. domestic law governing the use of classified information in U.S. courts.[9] Additionally, defense counsel for detainees being tried by military commission may review and use classified materials in preparing the detainee's defense and at trial, a fact that is absent from Scheinin's press release.[10] Contrary to Scheinin's implied premise, unrestricted access to classified information for terrorist suspects is not a "universal and fundamental principle" of a fair trial. To maintain otherwise misinterprets Common Article 3, which only requires that trials be conducted while "affording all the judicial guarantees which are recognized as indispensable by civilized peoples."[11] To the extent that there exists an acknowledged set of indispensable judicial guarantees, unfettered access to classified information is not among them.

Scheinin also stated that the U.S. violated its treaty obligations under the International Covenant on Civil and Political Rights (ICCPR) by enacting the MCA: "Further, in manifest contradiction with article 9, paragraph 4 of the International Covenant on Civil and Political Rights the [MCA] denies non US citizens...in US custody the right to challenge the legality of their detention by filing a writ of habeas corpus...."[12] This statement assumes that the ICCPR applies to the detainees held at Guantanamo, which it does not. The ICCPR states that each party to the treaty "undertakes to ensure to all individuals *within its territory and subject to its jurisdiction* the rights recognized in the present Covenant...."[13] The

12/20/2007

naval base at Guantanamo Bay, Cuba, is on land that is leased from Cuba by the United States and is, therefore, not "within" U.S. territory.

The territorial limitation clause in the ICCPR is no accident. No less a figure than Eleanor Roosevelt insisted that the phrase "within its territory" be added to the draft text of the ICCPR to limit its territorial scope. She stated:

The purpose of the proposed ["within its territory"] addition [is] to make it clear that the draft Covenant would apply only to persons within the territory and subject to the jurisdiction of the contracting states. The United States [is] afraid that without such an addition the draft Covenant might be construed as obliging the contracting states to enact legislation concerning persons, who although *outside its territory were technically within its jurisdiction for certain purposes*. An illustration would be the occupied territories of Germany, Austria and Japan: persons within those countries were subject to the jurisdiction of the occupying states in certain respects, but were outside the scope of legislation of those states.[14]

Scheinin's press statement thereby disregards the plain language and history of the ICCPR. Scheinin either does not understand those concepts or has decided that the ICCPR somehow applies to the detainees at Guantanamo in spite of the facts and the law. If the latter, Scheinin would be effectively foisting a treaty obligation upon the United States that it has not consented to, namely the extraterritorial application of the ICCPR to persons outside of U.S. territory.

Scheinin's error is not original. A 2006 report on the status of detainees held at Guantanamo written by a team of U.N. special rapporteurs similarly ignored the law as well as the actual treaty obligations of the United States.[15] As set forth in the official U.S. reply to that report, the rapporteurs sought to spin treaty obligations out of thin air and then contend that the United States was in violation of those very same obligations.[16]

**Recommendations to Rapporteur Scheinin**

Several statements in Scheinin's October 2006 press release regarding the MCA require revision, and in his final report, he has the opportunity to set the record straight. To the extent that his final report addresses Guantanamo Bay, it should make clear that international humanitarian law (the law of armed conflict), and not international human rights law, applies to the detainees held there. If Scheinin's report repeats the mistaken conclusions of the earlier U.N. special rapporteurs' report on Guantanamo, its credibility, as well as Scheinin's, will be thrown into question.

Despite his press release regarding the MCA, Scheinin should be given the benefit of the doubt. It is unlikely that he has yet gained the necessary expertise in the American constitutional system and familiarity with the details of complex legislation such as the MCA and the Patriot Act. After he has had the opportunity to meet with U.S. officials and thoroughly review U.S. legislation and constitutional law, however, Scheinin must ensure that his report reflects a deep and thorough understanding of U.S. treaty obligations within the context of the ongoing war on terrorism. A final report that disregards the letter of the law or the plain language of treaties would smack of willful blindness or, worse, the existence of a biased agenda.

**Conclusion**

12/20/2007

Claims that the United States has violated its international treaty obligations merely because Congress or the President has not implemented a treaty in the same manner as the European Union are elitist and demonstrate a fundamental disrespect for U.S. sovereignty and the American system of constitutional government. According to the principles of this nation's founding, the people themselves are sovereign and the government derives its powers from their consent. Thus the American constitutional system was crafted, adopted, and ratified by the founders of this nation and the people of the United States. Most international laws and purported international norms were not. Even international treaties that the United States has ratified, such as the Geneva Conventions and the ICCPR, are subject to interpretation and implementation by U.S. elected representatives.

Ignoring these principles, many in the international human rights establishment refuse to credit U.S. protections of individual rights unless they conform to their conceptions of international legal norms. But Special Rapporteur Scheinin should not succumb to this fallacious notion. He should issue a report that respects the legal history and traditions of the United States and reflects the challenges faced by the U.S. government and armed forces in prosecuting the war on terrorism.

*Steven Groves is the Bernard and Barbara Lomas Fellow in the Margaret Thatcher Center for Freedom, a division of the Kathryn and Shelby Cullom Davis Institute for International Studies, at The Heritage Foundation.*

---

[1] See Office of the United Nations High Commissioner for Human Rights, "Country visits by Special Procedures Mandate Holders since 1998," at www.ohchr.org/english/bodies/chr/special/countryvisitsn-z.htm.

[2] United Nations Office of the High Commissioner for Human Rights, Commission on Human Rights Resolution 2005/80, "Protection of human rights and fundamental freedoms while countering terrorism," April 21, 2005.

[3] Rapporteur Scheinin met with a delegation from The Heritage Foundation on May 21. The discussion covered a wide range of issues relating to the U.S. legal system, the MCA, the Patriot Act, the REAL ID program, and other policies and practices relating to the war on terrorism.

[4] Hamdan v. Rumsfeld, 126 S.Ct. 2749 (2006).

[5] Military Commissions Act, P.L. 109-366, 120 Stat. 2615.

[6] Military Commissions Act, P.L. 109-366, 120 Stat. 2615, 10 U.S.C. §§ 949l, 948q, 948s, 948k, 949c(b)(3), 949d, 949a(b)(1)(B), and 948r.

[7] Office of the United Nations High Commissioner for Human Rights, "UN Expert on Human Rights and Counter Terrorism Concerned That Military Commissions Act is Now Law in United States," press release, October 27, 2006, at www.unhchr.ch/huricane/huricane.nsf/v-ow01/ 13A22426286180120125721400306A8092opendocument.

[8] Military Commissions Act, P.L. 109-366, 120 Stat. 2615, 10 U.S.C. § 949j(c), (d). During the meeting with Rapporteur Scheinin, the Heritage delegation inquired whether there were any misstatements in the October 2006 press release. Rapporteur Scheinin replied only that the statement regarding the use of classified, exculpatory information may require further elaboration.

[9] See Classified Information Procedures Act, P.L. 96-456.

[10] Military Commissions Act, P.L. 109-366, 120 Stat. 2615, 10 U.S.C. § 949c(b)(4).

12/20/2007

[11] Geneva Convention Relative to the Treatment of Prisoners of War, Article 3, August 12, 1949.

[12] Office of the United Nations High Commissioner for Human Rights, "UN Expert on Human Rights and Counter Terrorism Concerned That Military Commissions Act is Now Law in United States."

[13] International Covenant on Civil and Political Rights, Art. 2(1).

[14] U.N. ESCOR Hum. Rts. Comm., "Summary Record of the Hundred and Thirty-Eighth Meeting," 6th Sess., 138th mtg at 10, U.N. Doc. E/CN.4/SR.138 (1950) (emphasis added). As a specific example of what would *not* be included within the ICCPR's jurisdiction, Mrs. Roosevelt cited territories that one nation had leased from another. Such is the case here where the United States leases the territory encompassing Guantanamo Bay from Cuba.

[15] U.N. Economic and Social Council, "Situation of detainees at Guantanamo Bay," U.N. Doc. E/CN.4/2006/120, February 27, 2006, at http://daccessdds.un.org/doc/UNDOC/GEN/G06/112/76/PDF/G0611276.pdf?OpenElement.

[16] "Reply of the Government of the United States of America to the Report of the Five UNCHR Special Rapporteurs on Detainees in Guantanamo Bay, Cuba, March 10, 2006," at www.asil.org/pdfs/ilib0603212.pdf.

(b)(2)(low)
Kathy Prendergast
Public Liaison Officer
U.S. Department of Homeland Security
ph ▮
fx: ▮
kathy.prendergast@dhs.gov

(b)(6)
**From:** ▮ [mailto:▮@heritage.org]
**Sent:** Friday, May 25, 2007 1:29 PM
**To:** Haun, Kathryn (NSD); Baker, Stewart; Prendergast, Kathy M
**Subject:** UN Spec Rapporteur's preliminary findngs today

(b)(6)
▮ went to the press conference and there was a grad student there covering for UPI - who seems the only one with the widest wing span. Only about 4 or 5 reporters. C-Span may play it later, but I can't believe they even had a camera there.

He said he would give the US Govt his report for comments in August and then report in Sept to the UN Human Rights Commission.

He clearly was fristrated about GITMO, not getting access to detainees and CIA detention issues.

(b)(6)
Let us know if you guys hear more.... thanks ▮

(b)(6)
▮ **Director**
Executive Branch Relations
The Heritage Foundation
214 Mass. Ave., NE
Washington, D.C. 20002
(b)(6)
www.heritage.org/ ▮@heritage.org
(202) 608-▮   (202) 608-▮ fax

12/20/2007