

U.S. Department of Homeland Security
Washington, DC 20528

# Homeland Security

Privacy Office, Mail Stop 0550

February 1, 2008

Mr. Kyle M. DeYoung, Esq.
Wilmer Cutler Pickering Hale and Dorr, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

Re: **DHS/OS/PRIV 06-527**

Dear Mr. DeYoung:

This is the final response from this office to the April 25, 2006, Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), entitled "Request Under the Freedom of Information Act for Records Concerning Ghost Detainees/Prisoners,' and 'CIA Detainees/Prisoners.'"

In our January 16, 2008 letter, we released to you 3 documents, consisting of 228 pages, found to be responsive to your request. These documents were released to you in their entirety. Further, in our January 31, 2008 letter, we released to you 9 documents, consisting of 34 pages. Of these documents, 1 was released to you in its entirety, and 8 documents were released with certain information withheld pursuant to 5 U.S.C. § 552 (b)(2)(low) and (b)(6).

We have now completed our review of 1 additional document, consisting of 3 pages, found to be responsive to your request. After carefully reviewing the document, it was determined that it is appropriate for public release with certain redactions. Specifically, certain information is withheld pursuant to 5 U.S.C. § 552 (b)(2)(low) and (b)(6).

This concludes our processing of your request entitled "Request Under the Freedom of Information Act for Records Concerning Ghost Detainees/Prisoners,' and 'CIA Detainees/Prisoners.'" Meanwhile, this office continues to process your request entitled "Request Under the Freedom of Information Act for Records Concerning Ghost Detainee Memoranda, Department of Defense Detainee Reporting, Department of Defense Detainee Reporting, Reports to Certain U.N. Committees, and the Draft Convention on Enforced Disappearance."

Because this matter is in litigation, we request that any communications regarding the processing of this request be made through our counsel at the United States Attorney's Office for the Southern District of New York.

Sincerely,

Vania T. Lockett
Associate Director, Disclosure & FOIA Operations

Enclosure: As stated, 3 pages

Cc:  Jeanette A. Vargas, Esq., Assistant United States Attorney
     Brian M. Feldman, Esq., Assistant United States Attorney
     Emily E. Daughtry, Esq., Special Assistant United States Attorney
     86 Chambers Street, Third Floor
     New York, New York 10007

Feldman, Brian (USANYS)

| | |
|---|---|
| From: | Kelliher, Brian [Brian.Kelliher@HQ.DHS.GOV] |
| Sent: | Monday, May 15, 2006 5:30 PM |
| To: | Monheim, Thomas; HarrisRK2@state.gov; Edney, Michael; Tobi.Longwitz@usdoj.gov; McIntosh, Brent <DOJ>; BentesJW@state.gov; ▮▮▮▮▮▮▮ (b)(6) ▮▮▮▮▮▮▮; ▮▮▮▮▮▮▮; WaxmanM@state.gov; HainesAD@state.gov; Davis, Mike P; Rosenberg, Ron M; ▮▮▮▮▮▮▮ DoD (b)(6) ▮▮▮▮▮▮▮ LagonMP@state.gov; HillSR@state.gov; SchouNE@state.gov; NoyesJV@state.gov; HodgkinsonSL@state.gov; ▮▮▮▮▮▮▮ Torres, John P; Dixon, Brian |
| Subject: | The Economist - "Straightening the record" (5-11-06) |

FYI



Human rights

# Straightening the record

**Some welcome signs of a change of tone from the Bush administration**

COULD it be that the penny has finally dropped? Ever since the terrorist attacks on September 11th 2001, dismay has grown around the world at the Bush administration's apparent willingness to ignore both domestic and international laws in pursuit of its war on terror. "We will take the gloves off!" Donald Rumsfeld, the defence secretary, famously declared. In retrospect, that seemed like a euphemism for what was to follow: Guantánamo, Abu Ghraib, the torture memos, indefinite detention without trial, extraordinary rendition, warrantless eavesdropping, secret CIA prisons, "ghost" detainees.

Could this really be the America of human rights and the rule of law? Patrick Leahy, a Democratic senator from Vermont, has called Guantánamo Bay "the primary recruiting tool for our enemies…a national disgrace". Lord Goldsmith, Britain's attorney-general, described it on May 10th as "unacceptable", tarnishing America's traditions. Even Tony Blair, Britain's prime minister and one of America's staunchest allies in its war on terror, has at last agreed that "it would be better if it was closed".

For a long time, the administration responded to such criticism with a defiant "we-can-do-what-we-like" attitude. America had suffered the worst-ever foreign-inflicted atrocity on its soil. Nearly 3,000 civilians had been killed. The armed conflict against al-Qaeda was a new kind of war that required new rules. The Guantánamo detainees were brutal killers, "evil men". America had a right to protect itself. All true, but was it worth the cost of losing allies and making even more enemies?

For the past year or so, the tone coming out of Washington, DC, has been getting noticeably softer. The most flagrant abuses appear to have stopped. The rules have been tightened. The worst culprits are being called to account, and the detainees are (slowly) getting access to the courts. Now President George Bush

1

has said that he would "very much like to end Guantánamo". Although that is unlikely to happen soon, this marks a new approach.

A similar change of attitude was evident at hearings in Geneva this week on America's compliance with the UN Convention Against Torture. In America's first appearance since 1999 before the Committee Against Torture, the UN watchdog on the treaty, a delegation of 25 officials led by John Bellinger, the State Department's chief legal adviser, fielded tough questions on the treatment of detainees with unusual candour and even deference.

Although he admitted that "shocking" errors had been committed in the past, Mr Bellinger claimed that these were relatively isolated incidents and that America's record had now "without question, improved". He insisted on America's "absolute commitment to upholding our national and international obligations to eradicate torture and prevent cruel, inhuman or degrading treatment or punishment anywhere", even in times of war. Asked about "waterboarding", a near-drowning technique allegedly used against at least one detainee, he said it had never been allowed and would be banned in the revised Army Field Manual.

Of the hundreds of thousands of American servicemen and women who had been deployed in Afghanistan and Iraq, around 800 had been the subject of investigations for the alleged mistreatment of prisoners, he said. Although in many cases no misconduct had been found, action had been taken against more than 250. Of these, 89 had been convicted by courts-martial, and 19 sentenced to at least one year's imprisonment. More than 100 others had received non-judicial punishments; 28 had been cashiered. About 170 investigations remained open. Contrary to the claims of some human-rights groups, he insisted that soldiers were indeed being held to account.

Earlier, at a stop-over in Brussels en route to Geneva, Mr Bellinger answered journalists' questions about the so-called CIA "torture" flights that have allegedly transported kidnapped terrorist suspects to third countries for harsh interrogation. Some accusations had become "so hyperbolic as to be absurd", he said. Only "an extremely small number" out of hundreds of CIA flights over Europe since the September 11th attacks had carried suspects, and not one had been "for the purposes of interrogation using torture". The last alleged case of "rendition" occurred nearly three years ago.

On the International Criminal Court, too, the administration has subtly changed its tune. No longer is the world's first permanent war-crimes tribunal reviled, in Tom DeLay's phrase, as "Kofi Annan's kangaroo court", to which America would remain forever opposed. Officials now talk of the need to "work constructively" with it, particularly over Darfur, and "to move beyond divisiveness on this issue". Some have even begun to agree in private that "there is a role for all types of tribunal, including the ICC".

It will take a while for people to accept again Mr Bush's assertion this week that "America is strong on human rights." But at least public relations are improving.

Copyright © 2006 The Economist Newspaper and The Economist Group. All rights reserved.

Brian D. Kelliher
Office of the General Counsel
U.S. Department of Homeland Security
Tel: ▮▮▮▮▮▮▮ / Fax: ▮▮▮▮▮▮▮   (b)(2)(low)
brian.kelliher1@dhs.gov

-----Original Message-----

2

From: Thomas.Monheim@usdoj.gov [mailto:Thomas.Monheim@usdoj.gov]
Sent: Thursday, May 11, 2006 3:49 PM
To: HarrisRK2@state.gov; Michael.Edney@usdoj.gov; Tobi.Longwitz@usdoj.gov; McIntosh, Brent <DOJ>; BentesJW@state.gov; [redacted (b)(6) DoD (b)(6)]
LowenkronBF@state.gov; WaxmanM@state.gov; HainesAD@state.gov; Davis, Mike P; Rosenberg, Ronald M; [redacted] LagonMP@state.gov; HillSR@state.gov; SchouNE@state.gov;
NoyesJV@state.gov; HodgkinsonSL@state.gov; [redacted]; Torres, John P; Dixon, Brian; Legal-L-HRR@state.gov;
Legal-L-PMSBU@state.gov; Brian.Kelliher1@dhs.gov; Michael.Davis2@dhs.gov
Cc: TDYSurenaA@state.gov; BettauerRJ@state.gov; WittenSM@state.gov; ThessinJH@state.gov
Subject: RE: Have lunch first - suggested arrival time is 1 pm


Thanks, Bob.

I don't know if it matters, but I note that these statements are "as prepared" -- not "as delivered." Will there be an "as delivered" summary (including the additional material we orally provided in response to questions on Monday)?

-----Original Message-----
From: HarrisRK2@state.gov [mailto:HarrisRK2@state.gov]
Sent: Thursday, May 11, 2006 3:14 PM
To: Edney, Michael; Longwitz, Tobi (CRT); Monheim, Thomas; McIntosh, Brent; BentesJW@state.gov; [redacted DoD (b)(6)] LowenkronBF@state.gov;
WaxmanM@state.gov; HainesAD@state.gov; Mike.Davis@dhs.gov; ron.rosenberg@dhs.gov; Kelliher, Brian (DHS); [redacted] LagonMP@state.gov; HillSR@state.gov; SchouNE@state.gov;
NoyesJV@state.gov; HodgkinsonSL@state.gov; [redacted]; john.torres@dhs.gov; brian.dixon@dhs.gov; Davis, Michael (DHS); Legal-L-HRR@state.gov; Legal-L-PMSBU@state.gov
Cc: TDYSurenaA@state.gov; BettauerRJ@state.gov; WittenSM@state.gov; ThessinJH@state.gov
Subject: RE: Have lunch first - suggested arrival time is 1 pm

Dear CAT delegation and others,

The documents from our CAT hearing will soon be on the State Department's website, but in the meantime can be found below on the US Mission Geneva's
website:

http://www.usmission.ch/ <http://www.usmission.ch/>

3