UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
AMNESTY INTERNATIONAL USA, CENTER
FOR CONSTITUTIONAL RIGHTS, INC., and
WASHINGTON SQUARE LEGAL SERVICES,
INC.,

      Plaintiffs,

  v.

CENTRAL INTELLIGENCE AGENCY,
DEPARTMENT OF DEFENSE, DEPARTMENT
OF HOMELAND SECURITY, DEPARTMENT
OF JUSTICE, DEPARTMENT OF STATE, and
THEIR COMPONENTS,

      Defendants.
---------------------------------------------------------------x

**ECF CASE**

07 CV 5435 (LAP)

DECLARATION OF
PAUL P. COLBORN

I, Paul P. Colborn, declare as follows:

1. I am a Special Counsel in the Office of Legal Counsel ("OLC" or the "Office"), a component of the Department of Justice. I am a career member of the Senior Executive Service. I joined OLC in 1986 and have had the responsibility since 1987 of supervising OLC's responses to requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In connection with that responsibility, I have supervised OLC's consultations with the Central Intelligence Agency (the "CIA" or the "Agency") concerning the FOIA requests submitted to the Agency by Plaintiffs in the above-captioned case. I submit this declaration in support of the CIA's Motion for Summary Judgment. This declaration is based on my personal knowledge, information, and belief, and on information disclosed to me in my official capacity.

## PART I

### OLC'S RESPONSIBILITIES

2. The principal function of OLC is to assist the Attorney General in his role as a legal adviser to the President of the United States and to departments and agencies in the Executive Branch. In connection with this function, OLC often provides advice and prepares documents addressing a wide range of legal questions involving Executive Branch operations. OLC is authorized to render advice and opinions on legal questions, especially those of particular complexity and importance, presented to OLC by clients throughout the Executive Branch, including the CIA. See 28 C.F.R. § 0.25. A significant portion of OLC's work involves performing a purely advisory role as legal counsel to the Attorney General, providing confidential legal advice and analysis to the Attorney General and, through him or on his behalf, to agencies of the Executive Branch.

3. In this capacity, OLC performs a purely advisory role, providing confidential legal advice to client agencies. Although OLC's legal advice and analysis may inform the decisionmaking of its clients, the legal advice is not itself dispositive as to any policy adopted by an agency. OLC itself does not purport, and in fact lacks the authority, to make any policy decisions.

## PART II

### DOCUMENTS AT ISSUE

4. On March 10, 2008, the Agency asked OLC to review twenty-one classified documents that originated with the Office but that the CIA located in its files while processing Plaintiffs' FOIA requests. The twenty-one documents consist of letters and memoranda prepared by the Office in the course of providing legal advice to the CIA regarding the detention and

interrogation of certain high value al Qaeda terrorists. The dates of the documents span from September 6, 2004, to February 16, 2007. Eight of the documents—three memoranda (Nos. 6, 7, and 16) and five letters (Nos. 70, 75, 78, 83, and 87)—were formally signed and issued by the head or acting head of the Office. The remaining thirteen documents (Nos. 1, 8, 9, 10, 11, 12, 13, 19, 25, 30, 65, 68, and 86) are non-final, incomplete drafts of letters and memoranda that the Office shared with the Agency in the course of developing its legal advice. True and accurate descriptions of each document are included in the <u>Vaughn</u> index attached as Exhibit A to the declaration of Ralph S. DiMaio, Information Review Officer for the National Clandestine Service, Central Intelligence Agency.

5. The Office drafted each of the twenty-one documents in its role of assisting the Attorney General in the discharge of his responsibilities as legal adviser to the President and the heads of the Executive Branch departments and agencies. In preparing the documents, OLC performed a purely advisory role, providing legal advice and assistance requested by the Agency about classified and highly sensitive activities. OLC prepared each of the twenty-one documents at issue with the expectation that they would be held in confidence.

6. The majority of OLC memoranda remain confidential. The Office has, however, a limited publication project whereby certain memoranda are reviewed and selected for publication. Memoranda are selected for publication only where the Department determines, in consultation with the agencies or offices for which the memoranda were written, that it is in the public interest that they be disclosed. According to OLC's records, OLC has never published or otherwise made public any of the twenty-one documents at issue in this case. Instead, OLC records indicate that OLC has maintained the confidentiality of all twenty-one documents, as well as the legal advice and analysis contained within them.

7.I understand that the CIA determined that the twenty-one documents are exempt from disclosure under FOIA Exemptions One, Three, and Five. I also understand that the CIA is preparing a declaration and *Vaughn* index supporting the withholding of the documents under these exemptions.

8.I submit this declaration to explain why certain records originating with OLC must be withheld under FOIA Exemption Five. Specifically, the twenty-one documents are protected from disclosure under FOIA Exemption Five because they are protected by the deliberative process and attorney-client privileges.

## PART III

## EXEMPTION FIVE

9.FOIA Exemption Five exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption has been construed to protect information privileged in the civil discovery context, including information protected by the deliberative process and attorney-client privileges.

### Deliberative Process and Attorney-Client Privileges

10.The deliberative process privilege protects the internal deliberations of the Government by exempting from release pre-decisional documents that reflect advisory opinions, recommendations, analysis, opinions, speculation, or other non-factual information prepared to assist policymakers in arriving at decisions. Similarly, the attorney-client privilege protects confidential communications between an attorney and his client relating to a legal matter for which the client has sought advice.

11. The twenty-one documents fall squarely within the deliberative process and attorney-client privileges. As discussed above, each of the documents are deliberative in nature—they reflect the Office's confidential legal advice to the CIA regarding the development of interrogation and detention policies for al Qaeda terrorists. Moreover, the twenty-one documents contain classified and highly sensitive information that OLC received from the Agency for the purpose of preparing its legal advice.

12. The documents are also pre-decisional. Thirteen of the twenty-one documents are non-final drafts. Creating and sharing draft documents is an integral part of deliberations within OLC. Through the drafting process, OLC attorneys articulate, focus, and refine their advice and analysis. Drafts do not represent the Office's formal legal advice or ultimate views. To the contrary, drafts are, by their very nature, pre-decisional and deliberative. They are part of the exchange of ideas that accompanies sound decisionmaking, and they reflect the preliminary assessments and suggestions of OLC attorneys. As a matter of Office policy, OLC attorneys exchange draft documents with each other and with other Executive Branch attorneys for input, comments, edits, and suggestions (as the CIA's possession of draft documents indicates occurred in this case). Inevitably, initial drafts of documents differ substantially from the final versions, as attorneys adjust their analyses in response to input from their colleagues.

13. The eight signed memoranda and letters are also pre-decisional documents. Although OLC's legal advice and analysis may inform decisionmaking, the legal advice is not itself dispositive as to any policy adopted by the Executive Branch, including the CIA. OLC itself does not purport, and in fact lacks authority, to make any policy decisions. OLC's role is to provide advice and analysis as to, inter alia, the legal implications of particular policy decisions, not to mandate that an agency adopt any particular policy. Here, the signed

5

documents are pre-decisional because, like the unsigned drafts, they were prepared to assist the CIA in arriving at decisions regarding the treatment and detention of high value al Qaeda terrorists.

14. Compelled disclosure of the twenty-one advisory and pre-decisional documents would cause serious harm to the deliberative processes of the Office and the Department of Justice and would disrupt the attorney-client relationship between OLC and agencies in the Executive Branch. Agencies often ask OLC for legal advice and analysis on very difficult and unsettled legal issues. Frequently, such issues arise (as in this case) in connection with highly complex and sensitive operations that implicate national security interests. It is essential to the mission of the Executive Branch that OLC's legal advice, and the development of that advice, not be inhibited by concerns about public disclosure. Protecting the confidentiality of documents such as the twenty-one records at issue here is essential to ensure that the Executive Branch examines creative and even controversial legal arguments and theories candidly, effectively, and in writing and to ensure that Executive Branch officials will continue to request legal advice, especially on sensitive matters. In light of the Nation's ongoing fight against global terrorism and the public interest in the effective performance of these activities, the need of the President and the heads of the Executive Branch departments and agencies for candid, thoroughly considered legal advice in considering potential executive action is compelling.

## PART IV

### SEGREGABILITY

15. An OLC attorney who is under my supervision and is cleared into the classified program to which the twenty-one documents relate has carefully reviewed the documents for

segregation of non-exempt information, and he has determined that no portions of the documents can be released without disclosing information protected under FOIA Exemption Five.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: Washington, D.C.
April 21, 2008

*Paul P. Colborn*
PAUL P. COLBORN
Special Counsel
Office of Legal Counsel