UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

Amnesty International USA, et al.,

    Plaintiffs,

        v.

Central Intelligence Agency, et al.,

    Defendants.

Civil Action No. 07-CV-5435 (LAP)

---

DECLARATION OF JOHN F. HACKETT

I, John F. Hackett, declare and state as follows:

1. I am the Director of the Information Management Office ("IMO") for the Office of the Director of National Intelligence ("ODNI"). I have been in this position since April 2006. Prior to my arrival in the ODNI, I held similar positions in the National Counterterrorism Center and the Terrorist Threat Integration Center. I am the final decision-making authority for the IMO, which receives, processes, and responds to requests for ODNI records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2. I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties. I submit this declaration in support of the CIA's Motion for Summary Judgment.

## Background

3. Congress created the position of the Director of National Intelligence ("DNI") in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending sections 102 through 104 of Title I of the National Security Act of 1947). Subject to the authority, direction, and control of the President, the DNI serves as the head of the United States Intelligence Community and as the principal advisor to the President for intelligence matters related to the national security. The DNI also serves as the Intelligence Advisor to the National Security Council ("NSC"), and the Homeland Security Council. 50 U.S.C. § 403(b)(1), (2).

4. The responsibilities and authorities of the DNI are set forth in the National Security Act of 1947, as amended. These responsibilities include ensuring that national intelligence is provided to the President, heads of the

departments and agencies of the Executive Branch, the Chairman of the Joint Chiefs of Staff and senior military commanders, and the Senate and House of Representatives and committees thereof. 50 U.S.C. § 403-1(a)(1). The DNI is charged with establishing objectives for the intelligence community, as well as determining the requirements and priorities for the collection, analysis, production, and dissemination of national intelligence by elements of the intelligence community. The DNI is also charged with managing and directing the tasking of collection, analysis, production, and dissemination of national intelligence. 50 U.S.C. § 403-1(f)(1)(A)(i) and (ii).

5. In addition, the National Security Act of 1947, as amended, states that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1). Consistent with this responsibility, the DNI establishes and implements guidelines for the Intelligence Community for the classification of information under applicable law, Executive Orders, or other Presidential directives and for access to and dissemination of intelligence. 50 U.S.C. § 403-1(i)(2)(A), (B).

6. Finally, the National Security Act of 1947, as amended, created an Office of the Director of National

Intelligence. The function of this Office is to assist the DNI in carrying out the duties and responsibilities of the Director under the Act and other applicable provisions of law, and to carry out such other duties as may be prescribed by the President or by law.

7. The purpose of this declaration is to explain the disposition of twelve documents that were referred to the Office of the Director of National Intelligence by the CIA in connection with the above-captioned FOIA litigation.

## ADMINISTRATIVE PROCESSING OF REFERRALS FROM CIA

8. The ODNI received referrals of twelve documents, totaling 106 pages, from the CIA for review. As described in more detail below, the ODNI determined that one document (Document 79 on CIA's Vaughn index), totaling four pages, could be released in part and eleven documents (Documents 3,4, 103-104, 107-111, 130, and 243 on CIA's Vaughn index), totaling 102 pages, should be withheld in full. I understand that the CIA is preparing a declaration and Vaughn index supporting the withholding of certain information in these documents pursuant to FOIA Exemptions 1 and 3, 5 U.S.C. § 552(b)(1), (3). I also understand that the Department of State and the Department of Defense are preparing declarations supporting the withholding of certain information in Document 103 pursuant to FOIA Exemption 5. I submit this declaration

to explain why ODNI also invokes FOIA Exemptions 5 to withhold information in these twelve documents.

DOCUMENT DESCRIPTIONS

9. <u>Document 79</u>: Document 79 on the CIA's <u>Vaughn</u> index is a four-page document from a member of the United States Congress to the Director of National Intelligence. It seeks a classification review of certain statements regarding the details of the CIA's Terrorist Detention and Interrogation program. The first page is a one-page fax cover sheet. The remaining three pages consist of a one-page letter from a member of Congress and a two-page attachment.

10. The fax cover sheet and the letter are releasable in full and are being provided to plaintiffs. These documents, when separated from the attachment, are unclassified. The two page attachment, however, contains classified information. In addition, the two-page attachment contains handwritten notes regarding the statements contained in the attachment.

11. <u>Document 3</u>: Document 3 on the CIA <u>Vaughn</u> index is a one-page memorandum from the Principal Deputy Director of National Intelligence to the National Security Advisor and pertains to a possible decision to be made by the President.

12. <u>Document 4</u>: Document 4 on the CIA's <u>Vaughn</u> index is a four-page memorandum from the Director of National

Intelligence to the National Security Advisor, dated August 6, 2005, and contains the assessments, recommendations, and analyses of the intelligence community regarding certain intelligence operations on an issue related to a possible decision to be made by the President.  In addition to being identified as Document 4 on the CIA's Vaughn index, the identical document was included as an attachment to Document 3 on the CIA's Vaughn index.

13.  Both of these documents bear the classification TOP SECRET, and Document 3 also bears markings for sensitive compartmented information.

14.  Documents 103-104, 107-111, 130, and 243:  These 9 documents, and their attachments, were created or collected by the NSC and its Principals and Deputies Committees for the purpose of considering United States policy regarding detainees and making recommendations to the President.  The documents were authored by the Executive Secretary of the NSC Principals or Deputies Committees, and either discuss the agenda for upcoming NSC Principals or Deputies Committee meetings, or summarize those meetings.

15.  The NSC is the President's principal forum for considering national security and foreign policy matters with his senior national security advisers and cabinet officials.  The President presides over meetings of the NSC.  The NSC

includes the Vice President, the Secretary of State, and the Secretary of Defense as statutory members, and its meetings are also regularly attended by the Secretary of the Treasury, the Attorney General, the Assistant to the President for National Security Affairs, the Counsel to the President, and the Chief of Staff to the President. The Chairman of the Joint Chiefs of Staff serves as the NSC's Military Advisor. The Director of National Intelligence serves as the NSC's Intelligence Advisor.

16.  The NSC formulates its recommendations for potential presidential decisions through two primary committees: the Principals Committee and the Deputies Committee.  The NSC Principals Committee serves as the senior interagency forum for consideration of policy issues affecting the national security, and is chaired by the Assistant to the President for National Security Affairs ("National Security Advisor").  The Assistant to the President and Deputy National Security Advisor serves as the Executive Secretary of the Principals Committee.  Regular attendees include the Vice President, the Secretary of State, the Secretary of Defense, and the Secretary of the Treasury.  The Chairman of the Joint Chiefs of Staff, Attorney General, Counsel to the President, and Director of National Intelligence attend where issues

pertaining to their responsibilities and expertise are to be discussed.

17.  The NSC Deputies Committee serves as the senior sub-cabinet interagency forum for consideration of policy issues affecting the national security, and is chaired by the Assistant to the President and Deputy National Security Advisor.  Its regular attendees include the Deputy Secretary of State, Deputy Secretary of Defense or Under Secretary of Defense for Policy, Under Secretary of the Treasury or Under Secretary of the Treasury for International Affairs, Vice Chairman of the Joint Chiefs of Staff, the Deputy Attorney General, the Assistant to the President and Deputy Chief of Staff to the President for Policy, and the Principal Deputy Director of National Intelligence.

EXEMPTIONS CLAIMED

   A.  FOIA Exemption 5 – Deliberative Process and
       Presidential Communications Privilege

18.  *Deliberative Process Privilege* - Exemption 5 protects inter-agency or intra-agency records covered by certain privileges, including the deliberative process privilege.  This exemption is intended to protect the candid views and advice of U.S. Government officials in their pre-

decisional deliberations respecting policy formulation and administrative direction.

19. Disclosure of material containing such deliberations, or of material on which such deliberations are based, would prejudice the free flow of internal recommendations and other necessary exchanges. It would severely hamper the ability of responsible officials to formulate and carry out executive branch programs. The handwritten notes contained on the two-page attachment to Document 79, as well as Documents 3, 4, 103-104, 107-111, 130, and 243, have been withheld pursuant to the deliberative process privilege.

20. The handwritten notes on the attachment to Document 79 reflect the thoughts, assessments, and analysis of the person reviewing the attachment. The eleven remaining documents (Documents 3,4, 103-104, 107-111, 130, and 243) were prepared, solicited or received as part of the process by which detainee policy was formulated, and contain information reflecting the deliberations of ODNI and other executive branch officials, including deliberations at NSC Principals and Deputies Committee meetings. Disclosure of this information, which is pre-decisional, portions of which are marked "draft," and which contains selected factual material

intertwined with opinion and analysis, would reveal the internal deliberations of senior government officials, and thereby inhibit candid internal discussion and the expression of recommendations and judgments regarding issues facing these officials and preferred courses of action. There are no reasonably segregable facts that may be disclosed in this deliberative material.

21. Because the officials involved in these pre-decisional deliberations would have reasonably expected that their candid discussions and recommendations regarding sensitive national security issues would remain confidential, release of these records would discourage open and frank discussions among executive branch officials in the future, thereby threatening the confidence needed to ensure the candor of future ODNI deliberations. The withheld information is, accordingly, exempt from release under FOIA Exemption 5.

22. *Presidential Communications Privilege* - Exemption 5 also protects from disclosure information covered by the presidential communications privilege. The presidential communications privilege protects confidential communications that relate to potential presidential decision-making and that involve the President, his senior advisors, or staff working for senior presidential advisors. The privilege protects communications in connection with the performance of the

President's responsibilities of his office and made in the process of shaping policies and making decisions.

23.  In addition to communications directly involving the President, the privilege protects communications involving presidential advisors, including communications which these advisors solicited and received from others as well as those they authored themselves.  Protecting the frank and candid deliberations of ideas and expression of views is essential in order to ensure that such advisors are able to thoroughly examine issues, formulate opinions, and provide appropriate advice to the President.  This privilege applies to documents in their entirety, and covers final and post-decisional materials as well as pre-decisional documents.

24.  ODNI, in consultation with White House Counsel and the Legal Advisor to the National Security Council, has invoked the presidential communications privilege, as incorporated under Exemption 5, as a basis for withholding eleven documents: Documents 3, 4, 103-104, 107-111, 130, and 243. These documents contain information reflecting communications solicited and received by senior presidential advisors from the Director of National Intelligence, the Principal Deputy Director of National Intelligence, and others, in the course of discussing issues related to

formulating recommendations and advice for presidential decision-making.

25. Documents 3 and 4 are memoranda authored by the Principal Deputy Director of National Intelligence and the Director of National Intelligence, respectively, to the National Security Advisor, on an issue related to a possible decision to be made by the President. Accordingly, they are withheld in their entirety pursuant to the presidential communications privilege.

26. Documents 103-104, 107-111, 130, and 243 reflect communications between senior presidential advisers, ODNI, and other United States government officials at NSC Principals and Deputies Committee meetings where presidential advisers solicited and received information and/or recommendations in the course of gathering information for decisions, or potential decisions, to be made by the President, including decisions on detainee policy. Among the public decisions made by the President regarding detainee policies are his signing of the Detainee Treatment Act of 2005 and the Military Commissions Act of 2006, and his presentation on September 6, 2006, of a speech announcing the transfer of detainees from CIA custody to Guantanmo Bay. Accordingly, these documents are withheld in their entirety pursuant to the presidential communications privilege.

27. The presidential advisers involved in these deliberations would have reasonably expected that their candid discussions and recommendations regarding sensitive national security issues would remain confidential. Disclosure of these communications and deliberations would necessarily inhibit advisers from engaging in precisely the type of fully informed, candid advice necessary to address the types of issues raised in the withheld material, thereby threatening the confidence needed to ensure the candor of advice to the President. Thus, all eleven documents are properly withheld pursuant to the presidential communications privilege.

* * * *

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 18th day of April 2008.

_____
John F. Hackett