UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN B. LONG <br><br> and <br><br> DAVID BURNHAM <br><br> Plaintiffs <br><br> v. <br><br> OFFICE OF PERSONNEL MANAGEMENT <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 5:5cv1522 (NAM/DEP) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

---

### SECOND DECLARATION OF MICHAEL B. DONLEY

---

I, Michael B. Donley, declare under penalty of perjury that the following information is true and correct to the best of my knowledge.

1. This declaration supplements my prior declaration dated June 6, 2006, which was filed in the above-captioned case. I am the Director, Administration and Management ("DA&M"), Office of the Secretary of Defense ("OSD"), and have held that position since May, 2005. As DA&M, I am the principal staff assistant to the Secretary of Defense for the U.S. Department of Defense ("DoD") Organizational and Management Planning. I also serve as the Agency Chief Freedom of Information Act ("FOIA") Officer, and as such I oversee the Defense Freedom of Information Policy Office, which is responsible for implementation of the DoD FOIA Program and issuance of agency-wide policy guidance and instruction on FOIA matters. Additionally, I oversee

the Pentagon Force Protection Agency, which is responsible for the antiterrorism, security, and law enforcement programs concerning DoD facilities within the National Capital Region, including the Pentagon. Other positions I have held in the government include Deputy Executive Secretary and Director of Defense Programs on the National Security Council, Assistant Secretary of the Air Force (Financial Management and Comptroller), and Acting Secretary of the Air Force.

2. The statements made in this supplemental declaration are based upon my personal knowledge and information made available to me in the performance of my official duties. The purpose of this supplemental declaration is to address comments made by plaintiffs in their September 22, 2006, Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiffs' Motion for Summary Judgment ("Memo").

**Exemption 6: Extremely Strong Privacy Interest:**

3. In their memorandum, plaintiffs speculate that releasing the names of U.S. Department of Defense ("DoD") employees would not make them more vulnerable to a terrorist attack. They mention that my previous declaration discusses the September 11, 2001, attack on the Pentagon as a reason underlying the policy of not releasing lists of names of DoD civilian employees. Plaintiffs also state that this attack was directed "at government facilities and a symbol of America itself," not at individual employees. However, plaintiffs fail to understand the relevance of the references to the events of September 11, 2001. (Brief at 10) The references in my previous declaration were made to show the Court that those events have dramatically changed the way the federal government, especially the Department of Defense, conducts the United States of

2

America's business. These events, and the wars the country is currently engaged in in Afghanistan and Iraq, have heightened the Defense Department's security awareness, and that in turn has caused us to look at ways to prevent future terrorist attacks and better ensure the safety of our personnel by proactive security precautions. Numerous security measures are now in place for just the purpose of preventing future attacks and protecting DoD personnel. The idea behind such security measures is that a layered response is most effective in dealing with threats that are as yet unknown. The policy to withhold the names of DoD personnel is not the "silver bullet" that will by itself prevent an attack such as the one on the Pentagon; however, it is part of a larger security system designed to enable DoD to prevent attacks directed at any and all DoD personnel. The Department of Defense, through changes in security procedures and regulations including the policy at issue here, is trying to make it as difficult as possible for adversaries to collect valuable information that will enable them to carry out attacks on DoD personnel.

4. Moreover, I remind the Court that immediately after September 11, 2001, government officials received letters that contained anthrax, and the perpetrator or perpetrators of these anthrax attacks are not known. These officials were targeted simply because of who they were. Therefore, especially given the fact that the DoD is currently engaged in a worldwide conflict against terrorism and that international terrorist organizations have the demonstrated will and ability to carry out attacks on American soil targeting DoD personnel, it is reasonable to believe that DoD personnel have a very real privacy interest in keeping their identities and duty stations from the public. The attack on the Pentagon on September 11, 2001, and these anthrax attacks leave no doubt that <u>ALL</u> DoD personnel in <u>ALL</u> DoD locations are vulnerable to

harassment or attack, contrary to the plaintiffs' flippant reference to lifeguards, military academy professors and commissary employees.

5. The privacy interest of employees is highest when the request seeks a comprehensive list of names and identifying information in electronic format which would lend itself to searches for potential targets. The plaintiffs base their argument on speculation about who the terrorists will attack and who they will not. The Defense Department's balancing of public and privacy interests in this case, on the other hand, is not based on speculation about our adversaries' intentions, but on the real risk to personnel associated with the volume, detail and media of the information requested. Based on our strong beliefs that <u>ALL</u> Defense Department employees are potential targets, <u>ALL</u> are valuable and deserve protection from this threat and the Defense Department has a responsibility to protect <u>ALL</u> DoD personnel in the United States and around the world, DoD determined that the extremely strong privacy interest that <u>ALL</u> DoD personnel have in their names and other personal information, no matter their career field or grade level, particularly when compiled in a computerized database, heavily outweighs the virtually non-existent public interest in such information.

6. Plaintiffs also note that the DoD policy of not releasing lists of names of DoD personnel has not been incorporated into its FOIA regulation, 32 C.F.R. § 286. However, since it was believed that this would only be a temporary policy, a change to the regulation was not implemented. Even though it is still hoped that this policy is temporary, it will be incorporated into the next change to the regulation, which is currently under revision. It also should be noted that in its 2002 and 2004 editions of the <u>Freedom of Information Act Guide and Privacy Act Overview</u>, the Department of

Justice referenced the policy and included the web link for Mr. Cooke's November 9, 2001, memorandum.

**Exemption 3:**

7. In their memorandum, plaintiffs also challenge OPM's withholding of DoD personnel names and duty stations pursuant to 10 U.S.C. § 130b under Exemption 3. The individuals whose names and duty stations DoD has requested OPM to withhold pursuant to Exemption 3 all fall within 10 U.S.C. § 130b because these are individuals assigned to units which are overseas, sensitive, or routinely deployable. See 10 U.S.C. § 130b. The names and duty stations of approximately 381,041 individuals have been redacted pursuant to Exemption 3. See Exhibit 1. The Defense Manpower Data Center ("DMDC"), working with OPM arrived at this number. However, it should be noted that this is not necessarily the full number of DoD civilian personnel assigned to overseas, sensitive, and routinely deployable units. A database with this information was created and maintained after 10 U.S.C. § 130b was enacted. Each military service made the determination of which of its units qualified for protection under this statute, and identified those units and the personnel assigned to those units to the DMDC on a regular basis. However, because the release policy of the DoD was changed after the issuance of Mr. Cooke's November 9, 2001, memorandum, DMDC no longer has a requirement to maintain this database, and does not currently maintain one. To recreate one at this time would require extensive coordination throughout the DoD which would be overly burdensome. Therefore, the DMDC used a different approach to arrive at the approximate number of personnel withheld pursuant to Exemption 3.

First, the DMDC was able to determine those personnel stationed overseas by their duty station. That number is under the column entitled "Outside US, inc territories"

at Exhibit 1. As for sensitive units, the DMDC used the number of DoD personnel, stationed stateside, within the various sensitive occupational codes withheld by OPM. These numbers are under the column "Sensitive inside US" at Exhibit 1. Overseas personnel with sensitive occupational codes were not counted, since they were already counted in the previous column. Even though this number is not an exact reflection of the personnel that would be protected as being assigned to a "sensitive unit," because many personnel within sensitive units would also have sensitive occupational codes, it is considered a close approximation. The DMDC did not consider civilians potentially assigned to "routinely deployable" units because military personnel and not civilians are, for the most part, considered deployable and because there are no occupational codes representing such personnel. All of the names and duty stations that OPM, at DoD's request, withheld under Exemption 3, OPM also withheld under Exemption 6.

8. Plaintiffs are incorrect that 10 U.S.C. § 130b does not cover duty stations. While a duty station does not include a full duty address, a complete duty address, which is protected by 10 U.S.C. § 130b, includes the duty station. To further explain this point, a duty address is defined, inter alia, as a "postal" address. 32 C.F.R. § 286.12(f)(2). A postal address includes both the street address AND city, state, and country information. For Department of Defense personnel, the duty station within a duty address is the same as the city information within a postal address. Many times, this is a specific military installation. Plaintiffs attempt to define duty address as simply a street address makes little sense. It is like saying that a DoD employee's office address is only his or her street and does not include the town the office is in. Therefore, duty station information for DoD personnel in overseas, routinely deployable,

and sensitive units is properly protected by 10 U.S.C. § 130b.

9. Additionally, if the duty station of a unit protected by 10 U.S.C. § 130b is released, a person with that information can ascertain other duty address information. First, as mentioned in the previous paragraph, the code translation for many DoD duty stations identifies the specific military installation. For example, duty station 133443095 is "MARINE CORPS LOGISTICS BASE, ALBANY," and 134715153 is "ROBINS AF BASE." Revealing the fact that a routinely deployable or sensitive unit is stationed at a specific military installation obviously contradicts the intention of 10 U.S.C. § 130b. Second, duty stations can be used to discover specific probable street addresses that are part of duty addresses. Combining the employee's agency code and duty station code in many cases would allow someone to identify a probable street address. For example, if the duty station of "Defense Supply Center – Columbus" was released, a visit to the organization's website reveals its street address. Therefore, even if plaintiffs are correct that the duty address protection afforded by 10 U.S.C. § 130b protects only the street address, which DoD does not agree with, the release of the duty station can, with only one additional step, reveal the duty address. Thus, 10 U.S.C. § 130b does cover duty stations.

I hereby declare under penalty of perjury that the matters and facts set forth in this Declaration fall within my official purview and, based upon my personal knowledge, information, and belief, are correct and true.

Dated this __2d__ day of November 2006, at the Pentagon, Arlington, Virginia.

Michael B. Donley

NOV 2 2006

|         | Total Actives | Outside US, inc territories | Sensitive inside US | b(3) exemptions | b(6) exemptions |
|---------|--------------|-----------------------------|---------------------|-----------------|-----------------|
| Mar2004 | 654,992      | 40,193                      | 14,428              | 54,621          | 600,371         |
| Jun2004 | 666,644      | 43,580                      | 14,697              | 58,277          | 608,367         |
| Sep2004 | 652,398      | 37,929                      | 14,854              | 52,783          | 599,615         |
| Dec2004 | 659,332      | 39,352                      | 15,174              | 54,526          | 604,806         |
| Mar2005 | 658,508      | 39,570                      | 14,023              | 53,593          | 604,915         |
| Jun2005 | 670,557      | 40,941                      | 14,323              | 55,264          | 615,293         |
| Sep2005 | 664,311      | 37,434                      | 14,543              | 51,977          | 612,334         |
|         | 4,626,742    | 278,999                     | 102,042             | 381,041         | 4,245,701       |