UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMNESTY INTERNATIONAL USA, CENTER FOR CONSTITUTIONAL RIGHTS, INC. and WASHINGTON SQUARE LEGAL SERVICES, INC., | **ECF CASE** |
| Plaintiffs, | 07 CV 5435 (LAP) |
| v. | |
| CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF JUSTICE, DEPARTMENT OF STATE, AND THEIR COMPONENTS, | |
| Defendants. | |

## DECLARATION OF GITANJALI S. GUTIERREZ

Gitanjali S. Gutierrez, pursuant to penalty of perjury under 28 U.S.C. § 1746, does hereby state the following:

1. I am an attorney with the Center for Constitutional Rights, Inc. ("CCR), one of three co-Plaintiffs in the above-captioned matter. The other co-Plaintiffs are Amnesty International USA ("AIUSA") and Washington Square Legal Services ("WSLS").

2. Among the Plaintiffs, there are four requests filed under the Freedom of Information Act ("FOIA") at issue in this litigation.

3. In the four requests ("Plaintiffs' Requests"), Plaintiffs seek records concerning rendition and secret detention of individuals in the "War on Terror," including records related to, *inter alia*, evaluations and authorizations, policies and procedures, identities of individuals and

locations, activities of private contractors and non-governmental actors, and treatment of, and injuries sustained by, individuals transferred or detained.

**FOIA Request of Co-Plaintiff CCR**

4.    Plaintiff CCR sent the first request ("CCR Request") to Defendant Central Intelligence Agency ("CIA") on December 21, 2004. The CCR Request sought records related to various aspects of the CIA program of secret detention, enhanced interrogation and extraordinary rendition. A copy of that request from then CCR Deputy Legal Director Barbara Olshansky is attached hereto as Exhibit A.

5.    In a letter dated February 2, 2005, Scott Koch, CIA Information and Privacy Coordinator, acknowledged receipt of the CCR Request and provided a reference number for processing. In the letter, the CIA denied CCR's fee waiver and expedited processing requests. A copy of that letter from CIA Information and Privacy Coordinator Scott Koch to then CCR Deputy Legal Director Barbara Olshansky is attached hereto as Exhibit B.

6.    In a letter dated February 25, 2005, CCR Staff Attorney Rachel Meeropol appealed the CIA's fee waiver denial, asserting that the FOIA request falls squarely within the standards for fee waivers as the disclosure of responsive documents is "in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the United States Government and is not primarily in the commercial interest of the requestor." Plaintiff CCR is seeking from Defendant CIA a final, signed copy of the Letter from CCR Staff Attorney Rachel Meeropol to the CIA Agency Release Panel and will provide it to the Court upon receipt.

7.    In a letter dated April 18, 2005, CIA Information and Privacy Coordinator Scott Koch acknowledged receipt of CCR's February 25, 2005 letter of appeal of the CIA's fee waiver

denial. A copy of that letter from CIA Information and Privacy Coordinator Scott Koch to CCR

Staff Attorney Rachel Meeropol is attached hereto as Exhibit C.

8.    During the administrative appeal stage, co-Plaintiff CCR never received a

substantive response from the CIA to our request or any responsive documents or

acknowledgement of the existence of documents responsive to their requests.

**FOIA Request of Co-Plaintiffs AIUSA and WSLS**

9.    Plaintiffs AIUSA and WSLS sent the second and third requests ("AIUSA and

WSLS Requests") to the CIA Information and Privacy Coordinator on April 25, 2006.  One

request sought the locations and identities of secret or irregular detainees, and records related to

their "apprehension, transfer, detention, and interrogation."  The other request sought

memoranda of understanding, reports, and documents created relating to U.S. reports to various

international bodies related to ghost or unregistered detainees.  A copy of those letters from

AIUSA Deputy Director Curt Goering and New York University ("NYU") International Human

Rights Clinic Director Margaret L. Satterthwaite are attached hereto as Exhibits D and E,

respectively.

10.    In two letters dated May 5, 2006, CIA Information and Privacy Coordinator Scott

Koch acknowledged receipt of the AIUSA and WSLS Requests, denied expedited processing

and assigned reference numbers to the two requests.  A copy of the letters from CIA Information

and Privacy Coordinator Scott Koch to Catherine Kane Ronis, WilmerHale Attorney and

formerly Counsel to AIUSA, are attached hereto as Exhibits F and G, respectively.

11.    In a letter dated July 3, 2006, AIUSA Deputy Director Curt Goering appealed the

CIA's denial of expedited processing in the two requests.  A copy of the letter from AIUSA

Deputy Director Curt Goering, International Human Rights Clinic Director Margaret L.

Satterthwaite and Catherine Kane Ronis, WilmerHale Attorney and formerly Counsel to AIUSA, to the CIA Information and Privacy Coordinator is attached hereto as Exhibit H.

12.    During the administrative appeal stage, co-Plaintiffs AIUSA and WSLS never received a substantive response from the CIA to their requests or any responsive documents or acknowledgement of the existence of documents responsive to their requests.

**Litigation**

13.    After exhausting administrative remedies without receiving a response from the CIA, co-Plaintiffs CCR, AIUSA and WSLS filed a joint complaint on June 7, 2007.

14.    Attorneys for the CIA and Plaintiffs met in September and October 2007, when parties agreed to (1) the use of a representative sample for *Vaughn* purposes and (2) the use of the sampling agreement reached in *ACLU, et al. v. DOD, et al.*, No. 04 Civ. 4151 (AKH), as a guide in negotiations.   Under the *ACLU* formula, Plaintiffs were entitled to 385 sample documents but proposed 350 in an effort to expedite processing of the records. The CIA refused, forcing Plaintiffs to decide between delaying processing of the records and receiving a fair representative set.  Plaintiffs chose to expedite processing and agreed to accept a 250 document sample.

15.    Plaintiffs' submission of suggested categories to the CIA was similarly refused. Citing workload and classified status concerns, the CIA only agreed to sort into a handful of categories: "source" categories—Office of Inspector General ("OIG"), Office of General Counsel ("OGC"), and non-OIG; and within each of those "source" categories, four "type" categories (memos/reports, emails, cables, and "miscellaneous").

16.    The agreements reached by parties were memorialized in a Stipulation dated April 21, 2008 ("Stipulation"), and so ordered by this Court on June 9, 2008.  In the Stipulation, the

CIA agreed to (a) process responsive records, (b) provide Plaintiffs with releasable information, and (c) provide a sample set of Withheld Records, which include records from OIG investigations closed prior to June 7, 2007 ("Representative Set"). The CIA also agreed to provide separately a representative set, for records from OIG investigations closed between June 7, 2007 and December 1, 2007 ("Additional OIG Representative Set"). Stipulation Preamble, ¶¶ 10-13.

**Co-Plaintiffs' Fourth FOIA Request**

17.     During their negotiations, co-Plaintiffs submitted a list of specific documents known to exist and likely to be in the CIA's possession and asked that these documents be *Vaughn* indexed outside the sample, similar to what was done in *ACLU, et al. v. DOD, et al.,* *supra.* After the CIA refused to do so, Plaintiffs filed a separate FOIA request for these documents.

18.     Co-Plaintiffs jointly filed their fourth request on December 28, 2007 ("Specific Documents Request"). This request sought seventeen specific documents or categories of documents known or believed to exist and be in the CIA's possession, and understood to be responsive to the co-Plaintiffs original requests. A copy of the letter from International Human Rights Clinic Director Margaret L. Satterthwaite to the CIA Information and Privacy Coordinator is attached hereto as Exhibit I.

19.     By letter dated January 30, 2008, the CIA approved the fee waiver request and denied expedited processing for co-Plaintiffs Specific Documents request. A copy of the letter from CIA Information and Privacy Coordinator Scott Koch to International Human Rights Clinic Director Margaret L. Satterthwaite is attached hereto as Exhibit J.

20. After receiving no substantive response to the Specific Documents Request, despite numerous inquiries to DOJ, Plaintiffs' amended their Complaint on June 6, 2008 to include this request in the above-captioned litigation, as consented to by the CIA. *See* Stipulation ¶ 19.

**Supplemental Attached Exhibits**

21. Attached hereto as Exhibit K is a true and correct copy of *ACLU, et al. v. DOD, et al.*, No. 04 Civ. 4151 (AKH), Hr'g Tr. 1, 28-33, Jan. 16, 2008.

22. Attached hereto as Exhibit L is a true and correct copy of Letter from Sean H. Lane, Assistant United States Attorney for the Southern District of New York, to Alvin K. Hellerstein, U.S. District Court Judge (Feb. 5, 2008) (acknowledging that the Director of the CIA "made disclosures to the Senate Select Committee on Intelligence concerning the CIA's past use of an interrogation technique known as waterboarding").

23. Attached hereto as Exhibit M is a true and correct copy of Letter from Sean H. Lane, Assistant United States Attorney for the Southern District of New York, to Melanca D. Clark, Gibbons Del Deo Attorney for the plaintiffs in *ACLU, et al. v. DOD, et al.*, *supra*, (May 23, 2008) (enclosing "redacted versions of those documents where the CIA determined that there is segregable information that can be produced" subsequent to the CIA Director's official disclosure of the agency's use of waterboarding detainees in U.S. custody, and less than two weeks after the Court in that case overruled certain of the CIA's FOIA exemption invocations).

Dated: June 25, 2008
       New York, NY

                                        /GSG/
                                GITANJALI S. GUTIERREZ

# Exhibit A

# centerforconstitutionalrights

666 broadway new york, ny 10012
212.614.6464 www.ccr-ny.org

*lost detainees*

December 21, 2004

Scott A. Koch
Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

**Re: Request Submitted Under the Freedom of Information Act**

Dear Freedom of Information Officer:

This letter constitutes a request ("Request") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (FOIA). The Request is submitted on behalf of the Center for Constitutional Rights ("Requester").

We are filing this Request simultaneously with the Department of Defense (including its components, the Departments of the Army, Navy, and Air Force, and the Defense Intelligence Agency), the Department of Justice (including its components, the Federal Bureau of Investigation and Office of Intelligence Policy and Review), the Department of State, and the Central Intelligence Agency. By this letter, we also request expedited processing pursuant to 5 U.S.C. § 552(a)(4)(E).

## Background on Records Requested

Recent news reports indicate that the Central Intelligence Agency "CIA") has been secretly operating a holding and interrogation center ("CIA Guantánamo Center" or "Center") within the larger American military-run prison at Guantánamo Bay, Cuba ("Guantánamo"). The reports further indicate that individuals apprehended after September 11, 2001, and held by the United States at Guantánamo ("Detainees") in the CIA Guantánamo Center have been separately interrogated by CIA agents.[1]

News reports also indicate that the CIA Guantánamo Center is "related to a network of holding centers operated by the CIA at undisclosed locations around the world"[2] since United States authorities began capturing individuals after the attacks of September 11, 2001.

---

[1] *See* David Johnston and Neil A. Lewis, "Officials Describe Secret C.I.A. Center at Guantánamo Bay," New York Time, December 17, 2004.
[2] *Id.*



Other news reports state that the "buildings used by the CIA are shrouded by high fences covered with thick green mesh plastic and ringed with floodlights ... [t]hey sit within the larger Camp Echo complex, which was erected to house the Defense Department's high value detainees and those awaiting military trials on terrorism charges."[3]  According to one military official, the "CIA's [Guantánamo] facility has been 'off-limits to nearly everyone on the base.'"[4]

According to a report by the Washington Post, in contrast to the majority of detainees held at Guantánamo, the CIA detainees "are held under separate rules and far greater secrecy."[5]  Under a presidential decree and policies approved by Administration attorneys, "the CIA is allowed to capture and hold certain classes of suspects without accounting for them in any public way and without revealing the rules for their treatment."[6]  According to other news reports, these detainees have not and will not receive review of their status through the Combatant Status Review Tribunals.[7]

In addition to the secret CIA Guantánamo Center, there have been numerous media reports during the last two years confirming the existence of CIA detention facilities located around the world, including one in an off-limits corner of the Bagram Airbase in Afghanistan, at Camp Cropper, a detention center on the outskirts of Baghdad International Airport,[8] on ships at sea,[9] on Britain's Diego Garcia Island in the Indian Ocean,[10] in a secret facility in Jordan,[11] and in secret locations outside of Iraq.[12]  According to a report by Human Rights Watch, detainees are being held in more than 24 secret detention facilities across the globe.[13]  Furthermore, government officials have admitted that even within known facilities, CIA officials have employed a policy under which "ghost prisoners" captured in Iraq and Afghanistan have been interrogated by CIA agents and have had their "identities and locations withheld from relatives, the International Red Cross and even Congress."[14]  Finally,

---

[3] Dana Priest and Scott Higham, "At Guantánamo, A Prison Within A Prison; CIA Has Run a Secret Facility for Some Al Qaeda Detainees, Officials Say," Washington Post, December 17, 2004, at AO1.
[4] Id.
[5] Id.
[6] Id.
[7] Suzanne Goldenberg, " 'Ghost Detainees' at Camp Delta: Pentagon Accused of Planning To Exclude Some Guantánamo Prisoners from Review," The Guardian, July 10, 2004 at 18.
[8] Eric Schmitt, "Abuse Inquiry Says Official Exercised Little Oversight," The New York Times, Dec. 4, 2004 at A10.
[9] Eric Schmitt & Douglas Jehl, "Army Says CIA hid More Iraqis than it Claimed," The New York Times, Sept. 9, 2003 at A1.
[10] Id.
[11] Inigo Gilmore & Robin Gedye, "Jordan Ghost Jail 'holds al-Qa'eda men' Israeli Intelligence Expert Claims to have Solved Mystery of Missing Terrorist Leaders Captured by American Forces in Past Three Years," The Daily Telegraph, Oct. 14, 2004 at 16.
[12] See Dave Goldiner, "Saddam's Pals on Hunger Strike," Daily News, December 13, 2004 at 20.
[13] Human Rights Watch, "The United States Disappeared: The CIA's Long Term 'Ghost Detainees'" October, 2004.
[14] Editorial, The Washington Post, "The CIA's Disappeared," October 26, 2004.

reports have stated that CIA agents have spirited detainees in Iraq to third countries for interrogation under conditions which might violated the requirements of international humanitarian law.[15]

The Washington Post reports that other detainees captured during the war in Iraq are being held under the custody of an Army task force, "Task Force 6-26, in a secret facility in Iraq. According to that report, the Pentagon does not officially acknowledge the existence of the unit.[16]

The Request seeks records relating to the identity of, transport and location(s) of, authority over, and treatment of all unregistered, CIA, and "ghost" Detainees interdicted, interrogated, and detained by any agency or department of the United States.

Both international and United States law unequivocally prohibit hiding individuals in such a manner even during wartime. The Geneva Conventions require the registration of all detainees with the Red Cross. They also prohibit "forcible transfers as well as deportations" of individuals, and ban all "physical or moral coercion . . . in particular to obtain information." The Convention Against Torture ("CAT"), which the United States has signed and ratified, prohibits the use of torture and the infliction of other cruel, inhuman or degrading treatment or punishment.[17] The prohibition against torture is also codified in United States law at 18 U.S.C. § 2340A.

The CAT further provides that "[n]o State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he

---

[15] Eric Schmitt & Douglas Jehl, "Army Says CIA hid More Iraqis than it Claimed," The New York Times, Sept. 9, 2003 at A1.

[16] Barton Gellman & R. Jeffrey Smith, "Report to Defense Alleged Abuse by Prison Interrogation Teams; Intelligence Official Informed Defense Dept. in June," The Washington Post, Dec, 8, 2004 at A1.

[17] In this Request, the terms "torture" and "cruel, inhuman or degrading treatment or punishment" have the meaning accorded them in the CAT, as interpreted by the United Nations Committee Against Torture. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, art. 1, S. Treaty Doc. No. 100-20 (1998), 1465 U.N.T.S. 85. The CAT defines "torture" as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Id. The United Nations Committee Against Torture has held that the following techniques constitute "torture" as defined under the CAT: (1) restraining in very painful conditions, (2) hooding under special conditions, (3) sounding of loud music for prolonged periods, (4) sleep deprivation for prolonged periods, (5) threats, including death threats, (6) violent shaking, and (7) using cold air to chill. See Report of the Committee Against Torture, U.N. GAOR, 52d Sess., Supp. No. 44, at para 257, U.N. Doc. A/52/44 (1997). Our use of these terms also encompasses torture and/or "cruel inhuman or degrading treatment or punishment" under any other United States constitutional or statutory provision.

3

would be in danger of being subjected to torture."[18] This provision is implemented in United States law by the Foreign Affairs Reform and Restructuring Act of 1998, which states that "[i]t shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States."[19]

To determine whether the United States is honoring its obligations under domestic and international law, Requesters seek the release of agency records as described in the numbered paragraphs below:

## RECORD REQUESTS

Please disclose the following records:

1.  All records that propose, authorize, report on, or describe, or that discuss the legality or appropriateness of holding Unregistered, CIA, and/or "Ghost" Detainees in special CIA or other agency facilities for purposes of interrogation.

2.  All records that discuss the creation, use and/or closure of the various centers at which the CIA and/or any other agency of the federal government has held, and/or continues to hold Unregistered, CIA, and/or "Ghost" Detainees.

3.  All records reflecting the use of any private companies, other U.S. officials or citizens, and/or officials or citizens of any foreign governments regarding the interdiction, arrest, transfer, detention, questioning, interrogation, and/or other treatment of any Unregistered, CIA, or "Ghost" Detainee.

4.  All records reflecting standards or policies governing who may be held as an Unregistered, CIA, and/or "Ghost" Detainee and what procedural protections or guidelines, if any, are used to review the arrest, detention, and treatment of these Detainees.

5.  Every location from September 11, 2001 to the present at which the CIA or any other governmental agency has been or is now holding Unregistered, CIA, or "Ghost" Detainees, the dates of operation of each such facility, whether the facility remains open at this time, the purpose of the facility, a complete list of the Detainees held at the facility (both past and current with indications as to this status), a list of

---

[18] CAT, art. 3.

[19] Pub. L. No. 105-277, § 2242(b), 112 Stat. 2681 (1999) (codified as Note to 8 U.S.C. § 1231).

techniques used for interrogation at each facility, and a list of personnel who have worked and those who continue to work at each Center.

6. All records concerning the treatment of the Unregistered Detainees held in any CIA or other governmental facility in the world. Please include all records discussing the following interrogation methods at such facilities, including but not limited to records discussing their legality or appropriateness: using "stress and duress" techniques on Detainees; using force against them; subjecting them to physical injury; requiring them to stand or kneel for prolonged periods; depriving them of sleep, food or water; holding them in awkward and painful positions for prolonged periods; denying them painkillers or medical treatment; administering or threatening to administer mind altering substances, "truth serums" or procedures calculated to disrupt the senses or personality; subjecting them to prolonged interrogation under bright lights; requiring them to be hooded, stripped, or blindfolded; binding their hands and feet for prolonged periods of time; isolating them for prolonged periods of time; subjecting them to violent shaking; subjecting them to intense noise; subjecting them to heat or cold; or threatening harm to them or other individuals.

7. All records setting forth or discussing policies, procedures or guidelines[20] relating to the detention, questioning, interrogation, transfer, and treatment (including, but not limited to the interrogation with the use of torture or other cruel, inhuman or degrading treatment or punishment) of the Unregistered, CIA, and "Ghost" Detainees, including but not limited to policies, procedures or guidelines relating to the methods listed above.

8. All records relating to measures taken, or policies, procedures or guidelines put in place, to ensure that CIA Detainees were not, are not or will not be tortured or subjected to cruel, inhuman or degrading treatment or punishment. Please include all records indicating how any such policies, procedures or guidelines were, are, or will be, communicated to personnel involved in the interrogation or detention of CIA Detainees.

9. All records indicating or discussing actual or possible violations of, or deviations from, the policies, procedures or guidelines referred to in Paragraph 4, above.

10. All records indicating or discussing serious injuries, illnesses, and/or deaths of any Unregistered, CIA, and/or "Ghost" Detainees.

11. All records, including autopsy reports and death certificates, relating to the deaths of any Unregistered, CIA, and/or "Ghost" Detainees.

---

[20] In this Request, the phrase "policies, procedures or guidelines" means policies, procedures or guidelines that were in force on September 11, 2001 or that have been put in place since that date.

12. All records relating to investigations, inquiries, or disciplinary proceedings initiated in relation to actual or possible violations of, or deviations from, the policies, procedures or guidelines referred to in Paragraph 4, above, including but not limited to records indicating the existence of such investigations, inquiries or disciplinary proceedings.

13. All records relating to the actual or alleged torture or other cruel, inhuman or degrading treatment or punishment of any Unregistered, CIA, and/or "Ghost" Detainee.

14. All records relating to policies, procedures or guidelines governing the role of health personnel in the interrogation of the Unregistered, CIA, and/or "Ghost" Detainees, including but not limited to the role of health personnel in the medical, psychiatric, or psychological assessment of Detainees immediately before, during or immediately after interrogation. Please include all records indicating how any such policies, procedures or guidelines were, are or will be communicated to personnel involved in the interrogation or detention of Detainees.

15. All records relating to medical, psychiatric or psychological assessment of any Unregistered, CIA, and/or "Ghost" Detainee or guidance given to interrogators by health personnel immediately before, during or immediately after the interrogation of any Unregistered, CIA, and/or "Ghost" Detainees.

16. All records indicating whether and to what extent the International Committee for the Red Cross ("ICRC") had, has or will have access to Unregistered, CIA, and/or "Ghost" Detainees, including but not limited to records related to particular decisions to grant or deny the ICRC access to any Detainee or group of Detainees.

17. All records indicating whether and to what extent any other non-governmental organization or foreign government had, has or will have access to the Unregistered, CIA, and/or "Ghost" Detainees, including but not limited to records related to particular decisions to grant or deny them access to any Detainee or group of Detainees.

### Fee Waiver

The Requester qualifies as "representatives of the news media" and the records are not sought for commercial use. Accordingly, fees associated with the processing of the Request should be "limited to reasonable standard charges for document duplication." 5 U.S.C. § 552(a)(4)(A)(ii)(II). These organizations are "entit[ies] that gather . . . information of potential interest to a segment of the public, use . . . [their] editorial skills to turn the raw

materials into a distinct work, and distribute . . . that work to an audience." *National Security Archive v. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

The CCR is a legal and public education not-for-profit organization that engages in litigation, legal research, and the production of publications in the fields of civil and international human rights. CCR also publishes newsletters, know-your-rights handbooks, and other similar materials for public dissemination. These materials are available through CCR's Development and Education & Outreach Departments. CCR also operates a website, www.ccr-ny.org, that addresses the issues on which the Center works. The website includes material on topical civil and human rights issues and material concerning CCR's work. All of this material is freely available to the public.

The records requested are not sought for commercial use, and the requesters plan to disseminate the information disclosed as a result of this FOIA request through the channels described above.

We also request a waiver of fees on the grounds that disclosure of the requested records is in the public interest and because disclosure "is likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester[s]." 5 U.S.C. § 552(a)(4)(A)(iii). This Request aims at furthering public understanding of government conduct, and specifically to help the public determine whether or not the government's commitment to domestic and international proscriptions against torture is honored in practice.

As indicated above, numerous news articles reflect the significant public interest in the records we seek. *See* articles cited *supra*; *see also Answers about Torture*, Washington Post, Mar. 16, 2003, at B06 ("The Bush administration has categorically denied that it is torturing people. But it has offered no details regarding its policies toward interrogations. . . . The secrecy surrounding U.S. policy makes any objective assessment of these allegations impossible. . . . The public is entitled to a fuller understanding."). Disclosure of the requested records will contribute significantly to the public's understanding of government conduct.

*    *    *

If our request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect you to release all segregable portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

Thank you for your prompt attention to this matter.

7

Please respond to Barbara Olshansky, Deputy Legal Director, Center for Constitutional Rights, 666 Broadway, 7th Floor, New York, New York 10012.

Signed by:

BARBARA OLSHANSKY
RACHEL MEEROPOL
MICHAEL RATNER
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

# Exhibit B



Central Intelligence Agency

Washington, D.C. 20505

2 February 2005

Ms. Barbara Olshansky
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

Reference:  F-2005-00498

Dear Ms. Olshansky:

This is in response to your Freedom of Information Act (FOIA) request, dated 21 December 2004, in which you requested certain documents pertaining to "unregistered, CIA and/or 'ghost' detainees." We will begin processing your request in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 431, as amended. If documents exist, to the extent your latest request covers any material requested in your previous requests for information pertaining to detainees (F-2004-01456 and F-2004-00066), it will be treated as a duplicate request and not processed. We assigned your request the number referenced above. Please refer to this number in future correspondence about this request.

I reviewed your request for a fee waiver, in accordance with the CIA's FOIA regulations, published in part 1900.13(b) of the Code of Federal Regulations. I have denied your request for a fee waiver because your request does not meet the standards for a fee waiver specified in the Agency's regulations. You have the right to appeal this determination to the Agency Release Panel. If you wish to do so, please submit your appeal to the Agency Release Panel, in my care, within 45 days of the date of this letter.

Based upon the information provided in your letter and the requirements of Agency regulations, I have determined that your request falls into the "all other" fee category, which means that you will be responsible for search costs, beyond the first two hours of search time, and reproduction costs, beyond the first 100 pages. In accordance with Agency regulations, copying costs will be assessed at the rate of ten cents per page.

I reviewed your request for expedited processing, in accordance with Agency regulations. Your request does not meet the standards for expedited processing specified in Agency regulations and therefore is denied. The Agency will process your request in accordance with its standard procedures.

Sincerely,

Scott Koch
Information and Privacy Coordinator

# Exhibit C



Central Intelligence Agency

Washington, D.C. 20505

18 April 2005

Rachel Meeropol, Esq.
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

Reference:  F-2005-00498 (Olshansky, Barbara)

Dear Ms. Meeropol:

    This acknowledges receipt of your 25 February 2005 letter in which you appealed the denial of a fee waiver for your 21 December 2004 Freedom of Information Act (FOIA) request for certain documents pertaining to "unregistered, CIA and/or 'ghost' detainees," referenced above.

    We accept your appeal of the fee waiver denial.  We will begin the fee waiver appeal process and advise you of the outcome.

Sincerely,

Scott Koch
Information and Privacy Coordinator

# Exhibit D

WILMERHALE

April 25, 2006

Catherine Kane Ronis

+1 202 663 6380 (t)
+1 202 663 6363 (f)
catherine.ronis@wilmerhale.com

<u>Via Facsimile, Email and U.S. Mail</u>

Information and Privacy Coordinator
Central Intelligence Agency
Washington D.C. 20505
(Ph.) 703-613-1287
(Fax) 703-613-3007

<u>*Re:     Request Submitted Under the Freedom of Information Act for Records Concerning Detainees, including "Ghost Detainees/Prisoners," "Unregistered Detainees/Prisoners," and "CIA Detainees/Prisoners"*</u>

Dear Freedom of Information Officer:

　　　　This letter constitutes a request ("Request") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The Request is submitted on behalf of Amnesty International ("AI") and Washington Square Legal Services, Inc. ("WSLS"). AI is a non-government organization and a world-wide movement of members who campaign for internationally-recognized human rights. WSLS is the corporation that houses the International Human Rights Clinic ("the Clinic") of the New York University School of Law ("NYU Law School"). The Clinic is a project of NYU Law School's Center for Human Rights and Global Justice ("CHRGJ").

　　　　We are filing this request simultaneously with the Department of Defense (including its components, the Department of the Army, Navy and Air Force, the Marine Corps, and the Defense Intelligence Agency), the Department of Justice (including its components, the Federal Bureau of Investigation and Office of Intelligence Policy and Review), the Department of State, the Central Intelligence Agency, and the Department of Homeland Security (including its components the Office of Intelligence and Analysis, the Directorate for Policy, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, U.S. Coast Guard, and U.S. Customs and Border Protection). By this letter, we also request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).

　　　　We are seeking the opportunity to inspect and copy, if necessary, all records in the possession of the Department, including any officers, divisions or bureaus thereof, on the topics listed below.

Wilmer Cutler Pickering Hale and Dorr LLP, 2445 M Street, NW, Washington, DC 20037

Baltimore   Beijing   Berlin   Boston   Brussels   London   Munich   New York   Northern Virginia   Oxford   Palo Alto   Waltham   Washington

WILMERHALE

FOIA Request
April 25, 2006
Page 2

## Definitions

For purposes of this request, the following terms shall be understood as described below:

The term "records" includes any and all reports, statements, examinations, memoranda, correspondence (including electronic mail), designs, maps, photographs, microfilms, computer tapes or disks, rules, regulations, codes, handbooks, manuals, or guidelines.

The term "government official" includes any U.S. government employee, and any person providing services to any agency of the United States government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the U.S. government.

The term "foreign official" includes any foreign government employee, and any person providing services to any agency of a foreign government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the foreign government.

The term "communication" means the giving, receiving, transmitting, or exchanging of information, including, but not limited to, any and all written, printed, telephonic, electronic, and in-person conversations by and with any person, and/or talk, gestures, or documents which memorialize or refer to any communications.

The term "detainee" means any person deprived of their liberty by one or more individuals or agencies who is prevented by any means from leaving the place in which he or she is being held. The term "detention" means depriving any person of their liberty such that they are prevented by any means from leaving the place in which they are held.

The term "place of detention" means any place or facility in which a "detainee" is kept, inside or outside the United States, regardless of whether it is officially recognized as a place of detention.

## Scope of Request

Unless otherwise stated, this request refers to *individuals who were, have been, or continue to be deprived of their liberty by or with the involvement of the United States and about whom the United States has not provided public information. These individuals have been referred to, among other things, as "ghost detainees/prisoners," "unregistered detainees/prisoners," "CIA detainees/prisoners" and "Other Governmental Agency Detainees" ("OGA Detainees").* These individuals have reportedly been held in various locations, including regular and irregular detention facilities, ships, aircraft, and military bases.

WILMERHALE

FOIA Request
April 25, 2006
Page 3

Although not limited to any specific geographic area, this request pertains particularly to the following places:

| | | | |
|---|---|---|---|
| Afghanistan | Azerbaijan | Bulgaria | Djibouti |
| Egypt | Germany | Indonesia | Iraq |
| Jordan | Kosovo | Macedonia | Morocco |
| Pakistan | Poland | Romania | Syria |
| Thailand | Turkey | Ukraine | |

United Kingdom (including Diego Garcia)
United States (including all territories under the S.M.T.J)
Uzbekistan    Yemen

This Request does not seek records related to the formal extradition of individuals.

Requested records pertain to persons apprehended since September 11, 2001.

### Background

Numerous media reports indicate that the United States is involved in the secret or irregular apprehension, transfer, and detention of individuals on foreign territory.[1] These reports suggest that the government secretly detains and transports individuals on U.S. ships, military bases, and U.S.-chartered planes, as well as in foreign states.[2]

---

[1] *See, e.g.*, Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1; Jan Cienski, Christopher Condon, Caroline Daniel, Guy Dinmore, Andrei Postelnicu, & Demetri Sevastopulo, *Evidence CIA Has Secret Jails in Europe*, FINANCIAL TIMES (LONDON), Nov. 3, 2005, at 1; Siobhan Gorman & Tom Bowman, *Reports of Secret CIA Prisons Prompt Concern*, L.A. TIMES, Nov. 3, 2005, at A4; Douglas Jehl & David Johnston, *CIA Now Acting Independently to Move Prisoners*, INT'L HERALD TRIB., Mar. 7, 2005, at 4; Dana Priest, *Wrongful Imprisonment: Anatomy of a CIA Mistake: German Citizen Released After Months in Rendition*, WASH. POST., Dec. 4, 2005; Brian Ross and Richard Esposito, *Exclusive: Sources Tell ABC News Top Al Qaeda Figures Held in Secret CIA Prisons*, ABC NEWS, Dec. 5, 2005, *at* http://abcnews.go.com/WNT/Investigation/story?id=1375123.; Eric Schmitt and Thom Shanker, *Rumsfeld Issued an Order to Hide Detainee in Iraq*, N.Y. Times, June 17, 2004, at A1; *US bars access to terror suspects*, BBC NEWS, Dec. 9, 2005; Josh White, *Army, CIA Agreed on 'Ghost' Prisoners*, WASH. POST, Mar. 11, 2005, at A16; *White House Mum on Secret CIA Prisons*, AGENCE FRANCE PRESSE ENGLISH WIRE, Nov. 2, 2005; *Yemen says U.S. sent prisoners to Europe*, UNITED PRESS INT'L (UPI), Dec. 11, 2005, *at* http://www.upi.com/InternationalIntelligence/view.php?StoryID=20051211-051738-9694r.

[2] *See, id. and further e.g.*, Craig Whitlock, *Europeans Probe Secret CIA Flights; Questions Surround Possible Illegal Transfer of Terrorism Suspects*, WASH. POST, Nov. 17, 2005, at A22; Eric Schmitt & Carolyn Marshall, *In Secret Unit's 'Black Room,' a Grim Portrait of U.S. Abuse*, N.Y. TIMES, Mar. 19, 2006.

WILMERHALE

FOIA Request
April 25, 2006
Page 4

Records Requested

Please disclose any records reflecting, discussing or referring to the policy and/or practice concerning:

    1.  The apprehension, transfer, detention, and interrogation of persons within the Scope of Request, including but not limited to:

        (a)  The transfer of intelligence by one or more U.S. agencies or government officials to one or more foreign agencies or officials, in connection with the apprehension or detention of a person.

        (b)  A request or direction by one or more U.S. agencies or government officials to one or more foreign agencies or officials regarding the apprehension of any person, and any related agreement concerning such apprehension.

        (c)  The apprehension of a person in a foreign country by, with the involvement of, or in the presence of one or more U.S. officials.

        (d)  The transfer of a person from any country to any other country for the purpose of detention and/or interrogation, at the direction or request or with the knowledge of one or more U.S. agencies or officials.

        (e)  The transfer of a person from one place of detention to another within the same country at the direction or request or with the knowledge of one or more U.S. agencies or officials.

        (f)  The detention of a person in a foreign country at the direction or request of one or more U.S. agencies or officials, including any agreement concerning the detention.

        (g)  One or more U.S. agencies or officials seeking and/or being granted access to a foreign national detained in a foreign country.

        (h)  One or more U.S. agencies or officials being present in a place of detention in a foreign country.  This does not include visits to U.S. citizens by U.S. officials pursuant to the Vienna Convention on Consular Relations.

        (i)  One or more U.S. agencies having control, direction, or administration of a subdivision, portion, or "cell" of a place of detention in a foreign country.

WILMERHALE

FOIA Request
April 25, 2006
Page 5

2. Current and former places of detention where individuals within the Scope of Request have been or are currently held, including but not limited to:

(a) Any place of detention in a foreign country being under the control, direction, or administration of one or more U.S. agencies.

(b) Any place of detention that is not under the control, direction or administration of one or more U.S. agencies, where a detainee is held at the request or instruction of one or more U.S. agencies or officials.

(c) Any subdivision, portion, or "cell" of a place of detention in a foreign country under the control, direction, or administration of one or more U.S. agencies.

(d) Any agreement between the U.S. government or one or more U.S. agencies or officials, and a foreign government or one or more foreign agencies or officials, in relation to a place of detention in a foreign country, regardless of whether that place of detention is foreign or U.S.—controlled.

3. The names and identities of detainees who fall within the scope of this request.[3]

### Fee Waiver

The requestors qualify as "representatives of the news media" and the records sought are not for commercial use. Moreover, this Request "is likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester[s]." 5 U.S.C. § 552(a)(4)(A)(iii).

Amnesty International is a non-governmental organization and a world-wide movement of members who campaign for internationally recognized human rights. AI publishes reports, press-briefings, newsletters and urgent action requests informing the public about human rights, including torture and disappearances. AI also disseminates information through its website www.amnesty.org.

---

[3] Because of the nature of their detention, the requesters do not know the names or identities of those within the scope of this request. For examples of individuals that the United States has acknowledged detaining, but about whom the United States has not provided public information, *see* Center for Human Rights and Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"*(2005), *available at* http://www.nyuhr.org/docs/Whereabouts%20Unknown%20Final.pdf; and Human Rights Watch, "List of 'Ghost Prisoners' Possibly in CIA Custody (2005), *available at* http://hrw.org/english/docs/2005/11/30/usdom12109.htm. The scope of this request extends far beyond these examples.

WILMERHALE

FOIA Request
April 25, 2006
Page 6

The Center for Human Rights and Global Justice is a research center at NYU Law School. CHRGJ aims to advance human rights and respect for the rule of law through advocacy, scholarship, education and training. CHRGJ publishes reports and operates a website www.nyuhr.org discussing human rights issues.

The International Human Rights Clinic is a project of CHRGJ and an official program at NYU Law School, composed of students and directed by clinical professors, who engage in research and advocacy on human rights issues.

Washington Square Legal Services is a not-for-profit corporation that houses the clinical program of NYU Law School.

The requesters plan to disseminate the information disclosed as a result of this Request through the channels described above.

### Expedited Processing

Expedited processing is warranted as there is a "compelling need" for the records sought in this Request. 5 U.S.C. § 552(a)(6)(E)(i)(I). This need arises because the requesters are "primarily engaged in disseminating information" and there is an "urgency to inform the public concerning actual or alleged Federal Government Activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). *See also* 32 C.F.R. § 286.4(d)(3)(ii) (DOD); 6 C.F.R. § 5.5(d)(1)(ii) (DHS); 28 C.F.R. § 16.5(d)(1)(ii) (DOJ); 22 C.F.R. § 171.12(b)(2) (DOS).

AI is primarily engaged in disseminating information about human rights, through its reports, newsletters, press-briefings, urgent action requests, and on its website. CHRGJ is engaged in disseminating information about human rights, including in particular, the Federal Government's role in upholding human rights. As indicated above, this information is disseminated through published reports and CHRGJ's website. The Clinic actively supports this work, and WSLS houses the clinic. As reflected in the media articles cited above, there is an urgent need to provide the public with information relating to the U.S. government's practices concerning unregistered or ghost detainees.

There is also a "compelling need" because failure to obtain the records on an expedited basis "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I). *See also* 32 C.F.R. § 286.4(d)(3)(i) (DOD); 6 C.F.R. § 5.5(d)(1)(i) (DHS); 28 C.F.R. § 16.5(d)(1)(i) (DOJ); 22 C.F.R. § 171.12(b)(1) (DOS). This Request arises in the context of allegations of ongoing unlawful detention and abuse of individuals with the involvement of U.S. agents abroad. Failure to publicly expose and thereby halt any such practices could reasonably be expected to pose an imminent threat to the physical

WILMERHALE

FOIA Request
April 25, 2006
Page 7

safety and lives of individuals whose identities we are unable to ascertain without the records sought herein.

AI and WSLS certify that the foregoing statements regarding the basis for expedited processing are true and correct to the best of their knowledge and belief. 5 U.S.C. § 552(a)(6)(E)(vi). *See also* 32 C.F.R. § 286.4(d)(3)(iii) (DOD); 6 C.F.R. § 5.5(d)(3) (DHS); 28 C.F.R. § 16.5(d)(3) (DOJ); 22 C.F.R. § 171.12(b) (DOS).

\*      \*      \*

If this Request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect release of all segregable portions of otherwise exempt material. We also reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

As indicated above, we are applying for expedited processing of this Request. Notwithstanding your determination of that application, we look forward to your reply to the Request **within twenty (20) days**, as required under 5 U.S.C. § 552(a)(6)(A)(i).

WILMERHALE

FOIA Request
April 21, 2006
Page 8

Thank you for your prompt attention.  Please direct all questions and future responses to:

CATHERINE K. RONIS
Counsel to Amnesty International USA
WilmerHale
2445 M Street Washington, D.C. 20037
Tel: (202) 663-6380
Fax: (202) 663-6363
E-mail: catherine.ronis@wilmerhale.com

If you need someone to reach by telephone, you may also contact Kyle DeYoung at WilmerHale at (202) 663-6785.

Sincerely,

CURT GOERING
Deputy Director
Amnesty International USA
5 Penn Plaza
New York, NY 10001
Tel: (212) 807-8400
Fax: (212) 627-1451
E-mail: cgoering@aiusa.org

MARGARET L. SATTERTHWAITE
Washington Square Legal Services, Inc.
Co-Director, International Human Rights Clinic
Faculty Director, Center for Human Rights &
Global Justice
NYU School of Law
245 Sullivan Street
New York NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
E-mail: margaret.satterthwaite@nyu.edu

# Exhibit E

WILMERHALE

April 25, 2006

Catherine Kane Ronis

+1 202 663 6380 (t)
+1 202 663 6363 (f)
catherine.ronis@wilmerhale.com

Via Facsimile, Email and U.S. Mail

Information and Privacy Coordinator
Central Intelligence Agency
Washington D.C. 20505
(Ph.) 703-613-1287
(Fax) 703-613-3007

Re:     *Request Under the Freedom of Information Act for Records Concerning Ghost Detainee Memoranda, Department of Defense Detainee Reporting, Reports to Certain U.N. Committees, and the Draft Convention on Enforced Disappearance*

Dear Freedom of Information Officer:

This letter constitutes a request ("Request") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The Request is submitted on behalf of Amnesty International ("AI") and Washington Square Legal Services, Inc. ("WSLS"). AI is a non-government organization and a world-wide movement of members who campaign for internationally-recognized human rights. WSLS is the corporation that houses the International Human Rights Clinic ("the Clinic") of the New York University School of Law ("NYU Law School"). The Clinic is a project of NYU Law School's Center for Human Rights and Global Justice ("CHRGJ").

We are filing this request simultaneously with the Department of Defense (including its components, the Department of the Army, Navy and Air Force, the Marine Corps, and the Defense Intelligence Agency), the Department of Justice (including its components, the Federal Bureau of Investigation and Office of Intelligence Policy and Review), the Department of State, the Central Intelligence Agency, and the Department of Homeland Security (including its components the Office of Intelligence and Analysis, the Directorate for Policy, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, U.S. Coast Guard, and U.S. Customs and Border Protection). By this letter, we also request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).

We are seeking the opportunity to inspect and copy, if necessary, all records in the possession of the Department, including any officers, divisions or bureaus thereof, on the topics listed below.

WILMERHALE

FOIA Request
April 25, 2006
Page 2

## **Definitions**

For purposes of this request, the following terms shall be understood as described below:

The term "records" includes any and all reports, statements, examinations, memoranda, correspondence (including electronic mail), designs, maps, photographs, microfilms, computer tapes or disks, rules, regulations, codes, handbooks, manuals, or guidelines.

The term "government official" includes any U.S. government employee, and any person providing services to any agency of the United States government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the U.S. government.

The term "foreign official" includes any foreign government employee, and any person providing services to any agency of a foreign government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the foreign government.

The term "communication" means the giving, receiving, transmitting, or exchanging of information, including, but not limited to, any and all written, printed, telephonic, electronic, and in-person conversations by and with any person, and/or talk, gestures, or documents which memorialize or refer to any communications.

The term "detainee" means any person deprived of their liberty by one or more individuals or agencies who is prevented by any means from leaving the place in which he or she is being held. The term "detention" means depriving any person of their liberty such that they are prevented by any means from leaving the place in which they are held.

The term "place of detention" means any place or facility in which a "detainee" is kept, inside or outside the United States, regardless of whether it is officially recognized as a place of detention.

Unless otherwise specified, this request relates to all records generated between September 11, 2001 and the present.

WILMERHALE

FOIA Request
April 25, 2006
Page 3

## Memoranda of Understanding

The practice of persons being kept as "off-the-record" detainees in military prisons has been well documented.[1] In this context, "ghost" or "unregistered" detainees are understood to refer to those detainees who were at some point during their detention, or remain: not "officially" registered at military facilities; "kept off the books"; and/or denied access to the International Committee of the Red Cross (ICRC).[2]  Documents produced by the Department of Defense on March 3, 2005 pursuant to an ACLU FOIA request[3] and a media report in the

---

[1] *See* Josh White, *Army, CIA Agreed on 'Ghost' Prisoners*, WASH. POST, Mar. 11, 2005, at A16. *See also* Jane Mayer, *A Deadly Interrogation: Can the C.I.A. Legally Kill a Prisoner?*, NEW YORKER, Nov. 14, 2005, at 44 (discussing the practice, particularly with respect to the death of Manadel al-Jamadi). *See also* the following Department of Defense documents released to the American Civil Liberties Union (ACLU) pursuant to a *Freedom of Information Act* request, all available at http://www.aclu.org/torturefoia/released/030905/: Transcript of deposition of Brig. Gen. Janis L. Karpinski, Appendix to Fay/Jones/Kern Report (July 18, 2004); Statement of MNF-I, C2, IMIR CW2, Annex to Fay/Jones/Kern Report (June 16, 2004); Sworn Statement of E-5, 519th MI Bn, Annex to Fay/Jones/Kern Report (June 4, 2004); Sworn Statement of 372nd MP Co SPC, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of 372nd MP Co SPC, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of [UNREADABLE], Annex to Fay/Jones/Kern Report; Sworn Statement of Deputy CJ2, CJTF-7, Annex to Fay/Jones/Kern Report; Sworn Statement of SGT, 372nd MP, Camp Victory, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of SPC/E4, B Co., 66th MI Group, 202nd MI BN, Annex to Fay/Jones/Kern Report (May 24, 2004); Sworn Statement of SGT, Member of GTMO team, "Shut Up Group," Annex to Fay/Jones/Kern Report (June 4, 2004); Sworn Statement of CW2, A/519th MI Bn, Annex to Fay/Jones/Kern Report (May 19, 2004); Sworn Statement of SGT, 372nd MP Co, Annex to Fay/Jones/Kern Report (May 7, 2004); Statement of B/Co, 470th MI Grp. SGT, Annex to Fay/Jones/Kern Report (May 18, 2004). *See further* HUMAN RIGHTS FIRST, BEHIND THE WIRE: AN UPDATE TO *ENDING SECRET DETENTIONS* 6 (2005), *available at* http://www.humanrightsfirst.org/us_law/PDF/behind-the-wire-033005.pdf (providing overview of the practice of ghosting in military facilities); HUMAN RIGHTS WATCH, THE UNITED STATES' DISAPPEARED: THE CIA'S LONG-TERM "GHOST DETAINEES" 5-15 (2004), *available at* http://www.hrw.org/backgrounder/usa/us1004/us1004.pdf (outlining practice of keeping CIA prisoners in military detention generally).

[2] *Id.*

[3] *See* Sworn Statement of [UNREADABLE], Annex to Fay/Jones/Kern Report, *in* Department of Defense FOIA Release, at 000719-000725, *available at* http://www.aclu.org/torturefoia/released/030905/ ("OGA and TF-121 routinely brought in detainees for a short period of time. The A/519th soldiers initiated the term 'ghost.' They stated they used this term as the detainees were not in-processed in the normal way via the MP database and were not yet categorized. It was difficult to track these particular detainees and I and other officers recommended that a Memorandum of Understanding be written up between OGA, the 205th MI BDE and the 800th MP BDE to establish procedures for a ghost detainee"); Sworn Statement of Deputy CJ2, CJTF-7, Annex to Fay/Jones/Kern Report, *in* Department of Defense FOIA Release, at 000726-000729, *available at* http://www.aclu.org/torturefoia/released/030905/ ("...in reference to Ghost detainees, OGA would bring in detainees for a short period of time. [REDACTED] brought them in. These particular ghost detainees were not yet categorized and OGA was working on that. It was very difficult keeping track of these OGA because they were not processed until OGA decided to turn them over to us. COL PAPPAS was not happy with that procedure.

WilmerHale

FOIA Request
April 25, 2006
Page 4

*Washington Post* dated March 11, 2005[4] indicate that this arrangement for "ghosting" was not "ad hoc" but was embodied in a Memorandum of Understanding (MOU) between military officials and the CIA.[5]  The exact contours of this arrangement are not publicly known as a copy of this MOU was not included in the documents released by the Department of Defense.[6]

<u>Records Requested</u>

We seek the following records relating to the arrangement described above:

1.  Any memorandum of understanding, or other record reflecting an agreement or proposed agreement between agencies, or between any agency and any subdivision or official, concerning the handling of ghost or unregistered detainees.  This includes but is not limited to:

    (a)    Any record reflecting communications about whether or not to draft any memorandum of understanding or agreement regarding unregistered or ghost detainees.

    (b)    Any record reflecting communications about the content of any memorandum of understanding or agreement regarding unregistered or ghost detainees.

2.  Any record reflecting a policy, whether formal or informal, about the reception, detention, or movement of unregistered or ghost detainees.

3.  Any memorandum of understanding, or other record reflecting an agreement between any agencies, or between any subdivision or official or any other agency, regarding the transfer of detainees from the custody of one agency to that of another.

---

[REDACTED] recommended that a Memorandum of Understanding be written up between OGA and MI on the procedures to drop off a ghost detainee. COL PAPPAS met with OGA and TF-121 and the memorandum on procedures for dropping ghost detainees was signed").

[4] Josh White, *Army, CIA Agreed on 'Ghost' Prisoners*, Wash. Post, Mar. 11, 2005, at A16.

[5] *Id.*

[6] Press Release, American Civil Liberties Union, Newly Released Army Documents Point to Agreement Between Defense Department and CIA on "Ghost" Detainees, ACLU Says: Declassified Annexes to Fay Report, Which Denied Link, Contain Further Evidence of Brutal Army Abuses (Mar. 10, 2005), *available at* http://www.aclu.org/safefree/general/17597prs20050310.html.

WILMERHALE

FOIA Request
April 25, 2006
Page 5

## Department of Defense Detainee Reporting

The Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005, Pub.
L. No. 108-375, 118 Stat. 1811 (2004) ("the Act"), requires the Department of Defense to submit
an annual report regarding certain detainees.

## Records Requested

4.   Any record generated in connection with the reporting requirement under Section 1093(c)
of the Act, regardless of whether or not such record was actually submitted in the final report,
and any record submitted to the Committee on Armed Services of the Senate and the Committee
on Armed Services of the House of Representatives pursuant to Section 1093(c) of the Act.[7]
This includes but is not limited to records reflecting:

(a)   Any notice of investigation into any violation of international obligations or laws of
the United States regarding the treatment of individuals detained by the U.S. Armed
Forces or by a person providing services to the Department of Defense on a
contractual basis.

(b)   Any discussions regarding whether any investigation described in Request 4(a)
should be reported.

(c)   The number of detainees held in Department of Defense custody, or released from
Department of Defense custody during the time period covered by the report,
broken down into the greatest number of time intervals for which such information
is available.

(d)   The number of detainees detained by the Department of Defense as "enemy
prisoners of war," "civilian internees," and "unlawful combatants," broken down
into the greatest number of time intervals for which such information is available.

(e)   The number of detainees detained by the Department of Defense under any status
other than "enemy prisoners of war," "civilian internees," and "unlawful
combatants," broken down into the greatest number of time intervals for which such
information is available.

---

[7]   Section 1093(e) of the Act mandates that the reports "be submitted, to the extent practicable, in unclassified form,
but may include a classified annex as necessary to protect the national security of the United States." To the extent
any records or portions of records responsive to this request are classified, please provide basic information as to the
date, sender, recipient, and subject matter of the classified records.

WILMERHALE

FOIA Request
April 25, 2006
Page 6

(f)    The transfer or proposed transfer of detainees by the Department of Defense to the jurisdiction of other countries, and the countries to which those detainees were transferred.

(g)    Any communications regarding decisions to include or not include information in the Department of Defense's report under Section 1093(c) of the Act and decisions as to whether to submit any information in unclassified or classified form pursuant to Section 1093(d) of the Act.

## United States Report to the Committee Against Torture

On May 6, 2005, the U.S. submitted its Second Periodic Report to the United Nations ("U.N.") Committee Against Torture, as required by the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.

### Records Requested

All records reflecting:

5.   Communications regarding the United States' Second Periodic Report to the Committee Against Torture, including but not limited to:

(a)    Communications regarding whether any individual, place of detention, or practice should be mentioned or discussed in the report to the Committee Against Torture.

(b)    Communications with a foreign government, or agency of a foreign government, regarding any provision of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment relating to apprehension, transfer and detention, (including Articles 1, 3, 5, 16), or whether any individual, place of detention, or practice should be mentioned or discussed in the report.

(c)    Proposed language or earlier drafts of the report to the Committee Against Torture.

## United States Report to the Human Rights Committee

On November 28, 2005, the U.S. submitted its Third Periodic Report to the U.N. Human Rights Committee, as required by the International Covenant on Civil and Political Rights.

WILMERHALE

FOIA Request
April 25, 2006
Page 7

Records Requested

All records reflecting:

6.  Communications regarding the United States' Third Periodic Report to the Human Rights Committee, including but not limited to:

    (a)    Communications regarding whether any individual, place of detention, or practice should be mentioned or discussed in the report to the Human Rights Committee.

    (b)    Communications with a foreign government, or agency of a foreign government, regarding any provision of the International Covenant on Civil and Political Rights relating to apprehension, transfer and detention, (including Articles 6, 7, 9), or whether any individual, place of detention, or practice should be mentioned or discussed in the report.

    (c)    Proposed language or earlier drafts of the report to the Human Rights Committee.

### The Convention on the Protection of all Persons from Enforced Disappearance

On September 23, 2005, a U.N. working group concluded the draft text of the Convention on the Protection of all Persons from Enforced Disappearance.  In 2006, the draft convention will be submitted to the U.N. Commission on Human Rights and the U.N. General Assembly, before being opened for signature and ratification.

Records Requested

7.  Any record reflecting communications regarding the negotiation or drafting of the draft Convention on the Protection of all Persons from Enforced Disappearance.

8.  Any record reflecting communications with a foreign government, or an agency or official of a foreign government, regarding the drafting of the draft Convention on the Protection of all Persons from Enforced Disappearance.

WILMERHALE

FOIA Request
April 25, 2006
Page 8

### Fee Waiver

The requestors qualify as "representatives of the news media" and the records sought are not for commercial use. Moreover, this Request "is likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester[s]." 5 U.S.C. § 552(a)(4)(A)(iii).

Amnesty International is a non-government organization and a world-wide movement of members who campaign for internationally recognized human rights. AI publishes reports, press-briefings, newsletters and urgent action requests informing the public about human rights, including the prohibition on torture and the prohibition on disappearances. AI also disseminates information through its website www.amnesty.org.

The Center for Human Rights and Global Justice is a research center at NYU Law School. CHRGJ aims to advance human rights and respect for the rule of law through advocacy, scholarship, education and training. CHRGJ publishes reports and operates a website www.nyuhr.org discussing human rights issues.

The International Human Rights Clinic is a project of CHRGJ and an official program at NYU Law School, composed of students and directed by clinical professors, who engage in research and advocacy on human rights issues.

Washington Square Legal Services is a not-for-profit corporation that houses the clinical program of NYU Law School.

The requesters plan to disseminate the information disclosed as a result of this FOIA request through the channels described above.

### Expedited Processing

Expedited processing is warranted as there is a "compelling need" for the records sought in this request. 5 U.S.C. § 552(a)(6)(E)(i)(I). The requesters are primarily engaged in "disseminating information" and there is an "urgency to inform the public concerning the actual or alleged Federal Government Activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). *See also* 32 C.F.R. § 286.4(d)(3)(ii) (DOD); 6 C.F.R. § 5.5(d)(1)(ii) (DHS); 28 C.F.R. § 16.5(d)(1)(ii) (DOJ); 22 C.F.R. § 171.12(b)(2) (DOS).

AI is primarily engaged in disseminating information about human rights, through its reports, newsletters, press-briefings, urgent action requests, and on its website. CHRGJ is engaged in disseminating information about human rights, including in particular, the Federal

WILMERHALE

FOIA Request
April 25, 2006
Page 9

Government's role in upholding human rights. As indicated above, this information is disseminated through published reports and CHRGJ's website. The Clinic actively supports this work, and WSLS houses the clinic. As reflected in the media reports discussed above, there is an urgent need to provide the public with information relating to the U.S. government's practices concerning unregistered or ghost detainees.

There is also a "compelling need" because failure to obtain the records on an expedited basis "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I). *See also* 32 C.F.R. § 286.4(d)(3)(i) (DOD); 6 C.F.R. § 5.5(d)(1)(i) (DHS); 28 C.F.R. § 16.5(d)(1)(i) (DOJ); 22 C.F.R. § 171.12(b)(1) (DOS). This Request arises in the context of allegations of ongoing unlawful detention and abuse of individuals with the involvement of U.S. agents abroad. Failure to publicly expose and thereby halt the practices prompting this Request could reasonably be expected to pose an imminent threat to the physical safety and lives of such individuals.

AI and WSLS certify that the foregoing statements regarding the basis for expedited processing are true and correct to the best of their knowledge and belief. 5 U.S.C. § 552(a)(6)(E)(vi). *See also* 32 C.F.R. § 286.4(d)(3)(iii) (DOD); 6 C.F.R. § 5.5(d)(3) (DHS); 28 C.F.R. § 16.5(d)(3) (DOJ); 22 C.F.R. § 171.12(b) (DOS).

\*      \*      \*

If this Request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect release of all segregable portions of otherwise exempt material. We also reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

As indicated above, we are applying for expedited processing of this Request. Notwithstanding your determination of that application, we look forward to your reply to the Request **within twenty (20) days**, as required under 5 U.S.C. § 552(a)(6)(A)(i).

WILMERHALE

FOIA Request
April 21, 2006
Page 10

Thank you for your prompt attention. Please direct all questions and future responses to:

CATHERINE K. RONIS
Counsel to Amnesty International USA
WilmerHale
2445 M Street Washington, D.C. 20037
Tel: (202) 663-6380
Fax: (202) 663-6363
E-mail: catherine.ronis@wilmerhale.com

If you need someone to reach by telephone or email, you may also contact Kyle
DeYoung at WilmerHale at (202) 663-6785.

Sincerely,

CURT GOERING
Deputy Director
Amnesty International USA
5 Penn Plaza
New York, NY 10001
Tel: (212) 807-8400
Fax: (212) 627-1451
E-mail: cgoering@aiusa.org

MARGARET L. SATTERTHWAITE
Washington Square Legal Services, Inc.
Co-Director, International Human Rights Clinic
Faculty Director, Center for Human Rights &
Global Justice
NYU School of Law
245 Sullivan Street
New York NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
E-mail: margaret.satterthwaite@nyu.edu

# Exhibit F

Central Intelligence Agency



Washington, D.C. 20505

5 May 2006

Catherine Kane Ronis, Esq.
Counsel to Amnesty International USA
WilmerHale
2445 M Street, N.W.
Washington, D.C. 20037

Dear Ms. Ronis:

The office of the Information and Privacy Coordinator has received your 25 April 2006 Freedom of Information Act request. Our officers will review it, and will advise you should they encounter any problems or if they cannot begin the search without additional information.

I reviewed your request for expedited processing in accordance with Agency regulations. Your request does not meet the standards for expedited processing specified in Agency regulations and therefore is denied. The Agency will process your request in accordance with its standard procedures.

We have assigned your request Reference No. F-2006-01014. Please use this number when corresponding with us about this request so that we can identify it easily.

Sincerely,

Scott Koch
Information and Privacy Coordinator

# Exhibit G

Central Intelligence Agency



Washington, D.C. 20505

5 May 2006

Catherine Kane Ronis, Esq.
Counsel to Amnesty International USA
WilmerHale
2445 M Street, N.W.
Washington, D.C. 20037

Dear Ms. Ronis:

The office of the Information and Privacy Coordinator has received your 25 April 2006 Freedom of Information Act request. Our officers will review it, and will advise you should they encounter any problems or if they cannot begin the search without additional information.

I reviewed your request for expedited processing in accordance with Agency regulations. Your request does not meet the standards for expedited processing specified in Agency regulations and therefore is denied. The Agency will process your request in accordance with its standard procedures.

We have assigned your request Reference No. F-2006-00994. Please use this number when corresponding with us about this request so that we can identify it easily.

Sincerely,

Scott Koch
Information and Privacy Coordinator