# EXHIBIT BB

# Other Document #3

Document #3

(FOIA DOC 65)

PAGE 1

# Denied in Full

~~TOP SECRET~~ ██████████████████

The Director of Central Intelligence

Washington, D.C. 20505

4 June 2004

MEMORANDUM FOR: The National Security Advisor

SUBJECT: ~~TS~~ ██████████████████

██████████████████████████████████████

A41-2

~~TOP SECRET~~ ████████████████████

SUBJECT:  ~~(TS~~ ███████████████████████████

████████████████████████████████████████████

3.  ~~(TS~~ ███████████████ As you know, beginning in
September 2002 the Justice Department authorized CIA in its
discretion, to employ on selected HVDs ██████████████████
███████████████ waterboard, ███████████████████████████
██████████████ CIA has reserved use of these
████████████ techniques to elicit ongoing threat
information from the most hardcore, senior terrorist figures
that have been captured--men such as Khalid Sheik Muhammad, Abu
Zubaydeh, ██████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████ key members of Congress have been briefed from the
beginning--CIA informed the leadership of the Congressional
Intelligence Committees of the existence and nature of the
Program when it commenced in late 2002, in early 2003 when
members of the leadership changed, and again in September 2003.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

A47-3

Document #3

(FOIA DOC 65)

## PAGE 4

# Denied in Full

~~TOP SECRET~~ 

SUBJECT: ~~(TS~~

George J. Tenet

0000427

4

A 47-5

# Document #3

## (FOIA DOC 65)

## PAGES 6-8

# Denied in Full

# Other Document #7

Document #7

(FOIA DOC 73)

PAGES 1 TO 23

# Denied in Full

CERTIFIED INTERROGATORS                                    HAVE
EMPLOYED  THE FOLLOWING STANDARD AND ENHANCED INTERROGATION METHODS
WITH KHALID SHAYKH ((MUHAMMAD))

THE WATERBOARD

**Document #7**

**(FOIA DOC 73)**

**PAGES 25 TO 43**

# Denied in Full

# Other Document #25

Document #25

(FOIA DOC 64)

PAGES 1 TO 8

# Denied in Full

TOP SECRET ██████████████████



- The use of the following techniques ██████████████ in the interrogation of al-Qa'ida detainees by the CIA

the water board

0000422

3

TOP SECRET ████████████████

638-8

# Other Document #29

Document #29

(FOIA DOC 90)

PAGES 1 TO 17

# Denied in Full



These enhanced techniques include:



Water Board



Document #45

(FOIA DOC 92)

PAGES 1 TO 2

# Denied in Full



**Enhanced Techniques**

Techniques  These include:

**Waterboard**



3

CT3 15-3

0001134

**Document #45**

**(FOIA DOC 92)**

**PAGES 4 TO 7**

# Denied in Full



Water board



CT3 15-8

Document #45

(FOIA DOC 92)

PAGES 9 TO 11

# Denied in Full

# Other Document #65

Document #65

(FOIA DOC 86)

PAGES 1 TO 9

# Denied in Full



these techniques are:

Water-board



0000991

10

OT 215 - 10

Document #65

(FOIA DOC 86)

PAGES 11 TO 13

# Denied in Full



**Water Board**



OT 215-14

Document #65

(FOIA DOC 86)

PAGES 15 TO 38

# Denied in Full

Document #65

(FOIA DOC 86)

PAGES 19 TO 37

# Denied in Full

# Other Document #45

# Other Document #67

00067

These techniques are:

Water-board

0000250

Document #67

(FOIA DOC 40)

PAGES 2 TO 4

# Denied in Full

**Water Board**



0000254

# Other Document #85

Document #85

(FOIA DOC 4)

PAGE 1

# Denied in Full



**Permissible Interrogation Techniques**

Unless otherwise approved by Headquarters, CIA officers ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ may use only Permissible Interrogation Techniques, which comprise the (a) Standard Techniques and (b) Enhanced Techniques.

Enhanced Techniques

the water board;

CTCL 2341



In each instance the use of Enhanced Techniques must be approved by Headquarters in advance,



2

Document #85

(FOIA DOC 4)

PAGES 4 TO 8

# Denied in Full

# Other Document #87

Document #87

(FOIA DOC 8)

PAGES 1 TO 13

# Denied in Full



These techniques are

water-board

Document #87

(FOIA DOC 8)

PAGES 15 TO 17

# Denied in Full



Water board

0000090

.18

Document #87

(FOIA DOC 8)

PAGES 19 TO 22

# Denied in Full

# Other Document #101

00100

00101

Water board

27 22

0000139

Document #101

(FOIA DOC 22)

PAGES 2 TO 3

# Denied in Full

# Other Document #103

00102

00103

**Waterboard**

0000143

# Other Document #119

Document #119

(FOIA DOC 84)

PAGES 1 TO 13

# Denied in Full

These techniques are:

Water-board

0000915

10

# Document #119

## (FOIA DOC 84)

## PAGES 15 TO 42

# Denied in Full

# Other Document #129



—00128

00129

MEMORANDUM FOR:    Deputy Director for Operations
                   Director, DCI Counterterrorist Center
                   Senior Deputy General Counsel

FROM:              Deputy Director of Central Intelligence

SUBJECT:           ███████  Interrogation of Abu Zubaydah

methods include

enhanced interrogation

board

water

0001386

Document #129

(FOIA DOC 114)

PAGE 2

# Denied in Full



<u>Approval</u>.  Accordingly, in view of the grave danger to the United States and its citizens, I have approved the implementation of the enhanced interrogation techniques described above.

00C1388

# Other Document #131



TOP SECRET

00130

00131

Successful raid and capture of Abu Zubaydah

116

0001390

TOP SECRET

Document #131

(FOIA DOC 116)

PAGES 2 TO 5

# Denied in Full

TOP SECRET



to          the water board.          Zubaydah subjected

used                    water board,

Zubaydah subjected to       waterboard,

0001395

TOP SECRET

Document #131

(FOIA DOC 116)

PAGE 7

# Denied in Full

TOP SECRET



briefs HPSCI Chairman and Ranking Minority Member on
Abu Zubaydah interrogations

0001397

TOP SECRET



interrogation of Nashiri. Waterboard

used

0001398

9

TOP SECRET ████████████████████████████



OGC attorney █████████████████████ reviews videotapes

0001399

10

CT 2-2

# Other Document #169

Document #169

(FOIA DOC 169)

PAGES 1 TO 13

# Denied in Full



These techniques are

water-board

14

07-203-14

These techniques are water-board

Document #169

(FOIA DOC 169)

PAGES 15 TO 17

# Denied in Full



Water board



Document #169

(FOIA DOC 169)

PAGES 19 TO 22

# Denied in Full

# Interview Report #103

(103)

5 September 2003

## INTERVIEW REPORT

**INTERVIEWEE:**    Scott W. Muller

(U) Review of Interrogations for
Counterterrorism Purposes



9000574

I118-1

TOP SECRET ██████████

**INTERVIEWEE:** Scott W. Muller



5. (TS                                          got a report from
the OGC Attorney who had reviewed the videotapes.

9000575

I 118-2

the Agency approved the use of the waterboard on Khalid Shaykh Muhammad (KSM),

Al-Nashiri had been waterboarded                    he pays attention to the use of the waterboard because it is controversial.

9000576

$\mathcal{I}$ 118-3



the waterboard.              detainees have undergone

9000577

I 118-4

Document #103

(FOIA DOC 103)

PAGES 5 TO 25

# Denied in Full

# Cable #333



333

UNDERGOING [REDACTED] APPROVED TECHNIQUES INCLUDING THE WATER BOARD, ((ABU ZUBAYDAH)) [REDACTED] AFTER

SESSIONS INVOLVED USE OF THE WATER BOARD, [REDACTED] INTERROGATION

7001039

OT649-1

Document #333

(FOIA DOC 333)

PAGE 2

# Denied in Full

~~TOP SECRET~~ 

# SPECIAL REVIEW



~~(TS~~ ▮▮▮ **COUNTERTERRORISM DETENTION AND
INTERROGATION ACTIVITIES
(SEPTEMBER 2001 – OCTOBER 2003)**
▮▮▮

7 May 2004



~~TOP SECRET~~ ▮▮▮

TOP SECRET ███████████████

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................... 1

SUMMARY ............................................................................ 2

BACKGROUND .................................................................... 9

DISCUSSION ...................................................................... 11

GENESIS OF POST 9/11 AGENCY DETENTION AND INTERROGATION ACTIVITIES ................................................................. 11

THE CAPTURE OF ABU ZUBAYDAH AND DEVELOPMENT OF EITs ............. 12

DOJ LEGAL ANALYSIS .......................................................... 16

NOTICE TO AND CONSULTATION WITH EXECUTIVE AND CONGRESSIONAL OFFICIALS ................................................................. 23

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

Videotapes of Interrogations .................................................. 36

███████████████████████████████████████
███████████████████████████████████████

i

TOP SECRET ███████████████

TOP SECRET



Waterboard Technique ................................................................44

TOP SECRET

TOP SECRET ████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

*EFFECTIVENESS* ........................................................................*85*

*POLICY CONSIDERATIONS AND CONCERNS REGARDING THE DETENTION*
*AND INTERROGATION PROGRAM* .......................................................*91*

**Policy Considerations** ..............................................*92*

████████████████████████████████████

*ENDGAME* ............................................................................*95*

# CONCLUSIONS ..........................................100

# RECOMMENDATIONS ..........................106

# APPENDICES

A. Procedures and Resources

B. Chronology of Significant Events

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

TOP SECRET ████████████████████████

# SPECIAL REVIEW

## TABLE OF CONTENTS
## PAGE IV

# Denied in Full

# SPECIAL REVIEW

## PAGES 1 TO 14

# Denied in Full



Enhanced Interrogation Techniques

the waterboard technique

15

TOP SECRET ██████████████████████

*DoJ LEGAL ANALYSIS*

36. (TS ████████████████████████████

██████████████████████ The ensuing legal opinions focus on
the Convention Against Torture and Other Cruel, Inhumane and
Degrading Treatment or Punishment (Torture Convention),[15]
especially as implemented in the U.S. criminal code, 18 U.S.C. 2340-
2340A.

37. (U//FOUO)  The Torture Convention specifically prohibits
"torture," which it defines in Article 1 as:

> any act by which *severe* pain or suffering, whether physical or
> mental, is *intentionally* inflicted on a person for such purposes as
> obtaining from him or a third person information or a confession,
> punishing him for an act he or a third person has committed or is
> suspected of having committed, or intimidating or coercing him or
> a third person, or for any reason based on discrimination of any
> kind, when such pain or suffering is inflicted by or at the
> instigation of or with the consent or acquiescence of a public official
> or other person acting in an official capacity.  It does not include
> pain or suffering arising only from, inherent in or incidental to
> lawful sanction.  [Emphasis added.]

Article 4 of the Torture Convention provides that states party to the
Convention are to ensure that all acts of "torture" are offenses under
their criminal laws.  Article 16 additionally provides that each state
party "shall undertake to prevent in any territory under its
jurisdiction other acts of cruel, inhuman or degrading treatment or
punishment which do not amount to acts of torture as defined in
Article 1."

---

[15] (U//FOUO)  Adopted 10 December 1984, S. Treaty Doc. No. 100-20 (1988) 1465 U.N.T.S. 85
(entered into force 26 June 1987).  The Torture Convention entered into force for the United States
on 20 November 1994.

16

TOP SECRET ███████████████████

38. (U//FOUO) The Torture Convention applies to the United States only in accordance with the reservations and understandings made by the United States at the time of ratification.[16] As explained to the Senate by the Executive Branch prior to ratification:

> Article 16 is arguably broader than existing U.S. law. The phrase "cruel, inhuman or degrading treatment or punishment" is a standard formula in international instruments and is found in the Universal Declaration of Human Rights, the International Covenant on Civil and Political Rights, and the European Convention on Human Rights. To the extent the phrase has been interpreted in the context of those agreements, "cruel" and "inhuman" treatment or punishment appears to be roughly equivalent to the treatment or punishment barred in the United States by the Fifth, Eighth and Fourteenth Amendments. "Degrading" treatment or punishment, however, has been interpreted as potentially including treatment that would probably not be prohibited by the U.S. Constitution. [Citing a ruling that German refusal to recognize individual's gender change might be considered "degrading" treatment.] To make clear that the United States construes the phrase to be coextensive with its constitutional guarantees against cruel, unusual, and inhumane treatment, the following understanding is recommended:
>
>> "The United States understands the term 'cruel, inhuman or degrading treatment or punishment,' as used in Article 16 of the Convention, to mean the cruel, unusual, and inhumane treatment or punishment prohibited by the Fifth, Eighth and/or Fourteenth Amendments to the Constitution of the United States."[17] [Emphasis added.]

---

[16] (U) Vienna Convention on the Law of Treaties, 23 May 1969, 1155 U.N.T.S. 331 (entered into force 27 January 1980). The United States is not a party to the Vienna Convention on treaties, but it generally regards its provisions as customary international law.

[17] (U//FOUO) S. Treaty Doc. No. 100-20, at 15-16.

TOP SECRET ███████████████████

TOP SECRET ███████████████

39. (U//FOUO) In accordance with the Convention, the United States criminalized acts of torture in 18 U.S.C. 2340A(a), which provides as follows:

> Whoever outside the United States commits or attempts to commit torture shall be fined under this title or imprisoned not more than 20 years, or both, and if death results to any person from conduct prohibited by this subsection, shall be punished by death or imprisoned for any term of years or for life.

The statute adopts the Convention definition of "torture" as "an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control."[18]  "Severe physical pain and suffering" is not further defined, but Congress added a definition of "severe mental pain or suffering:"

> [T]he prolonged mental harm caused by or resulting from–
>
> (A) the intentional infliction or threatened infliction of severe physical pain or suffering;
>
> (B) the administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt profoundly the senses or the personality;
>
> (C) the threat of imminent death; or
>
> (D) the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind-altering substances or other procedures calculated to disrupt profoundly the senses or personality. . . .[19]

These statutory definitions are consistent with the understandings and reservations of the United States to the Torture Convention.

---

[18] (U//FOUO) 18 U.S.C. 2340(1).

[19] (U//FOUO) 18 U.S.C. 2340(2).

TOP SECRET ███████████████

TOP SECRET ████████████

40. (U//FOUO) DoJ has never prosecuted a violation of the torture statute, 18 U.S.C. §2340, and there is no case law construing its provisions. ████████████
issues under U.S. and international law to DoJ's OLC in the summer of 2002 and received a preliminary summary of the elements of the ████████████ An unclassified 1 August 2002 OLC legal memorandum set out OLC's conclusions regarding the proper interpretation of the torture statute and concluded that "Section 2340A proscribes acts inflicting, and that are specifically intended to inflict, severe pain or suffering whether mental or physical."[20] Also, OLC stated that the acts must be of an "extreme nature" and that "certain acts may be cruel, inhuman, or degrading, but still not produce pain and suffering of the requisite intensity to fall within Section 2340A's proscription against torture." Further describing the requisite level of intended pain, OLC stated:

> Physical pain amounting to torture must be equivalent in intensity to the pain accompanying serious physical injury, such as organ failure, impairment of bodily function, or even death. For purely mental pain or suffering to amount to torture under Section 2340, it must result in significant psychological harm of significant duration, e.g., lasting for months or even years.[21]

OLC determined that a violation of Section 2340 requires that the infliction of severe pain be the defendant's "precise objective." OLC also concluded that necessity or self-defense might justify interrogation methods that would otherwise violate Section 2340A.[22] The August 2002 OLC opinion did not address whether any other provisions of U.S. law are relevant to the detention, treatment, and interrogation of detainees outside the United States.[23]

---

[20] (U//FOUO) Legal Memorandum, Re: Standards of Conduct for Interrogation under 18 U.S.C. 2340-2340A (1 August 2002).

[21] (U//FOUO) Ibid., p. 1.

[22] (U//FOUO) Ibid., p. 39.

[23] (U//FOUO) OLC's analysis of the torture statute was guided in part by judicial decisions under the Torture Victims Protection Act (TVPA) 28 U.S.C. 1350, which provides a tort remedy for victims of torture. OLC noted that the courts in this context have looked at the entire course

19

TOP SECRET ███████████████████

41. (U//FOUO)  A second unclassified 1 August 2002 OLC opinion addressed the international law aspects of such interrogations.[24]  This opinion concluded that interrogation methods that do not violate 18 U.S.C. 2340 would not violate the Torture Convention and would not come within the jurisdiction of the International Criminal Court.



---

of conduct, although a single incident could constitute torture.  OLC also noted that courts may be willing to find a wide range of physical pain can rise to the level of "severe pain and suffering."  Ultimately, however, OLC concluded that the cases show that only acts "of an extreme nature have been redressed under the TVPA's civil remedy for torture."  White House Counsel Memorandum at 22 - 27.

[24] (U//FOUO)  OLC Opinion by John C. Yoo, Deputy Assistant Attorney General, OLC (1 August 2002).

████████████████████████████████████████████████

TOP SECRET ███████████████████

# SPECIAL REVIEW

## PAGES 21 TO 22

# Denied in Full

TOP SECRET 

45. (TS

The DCI briefed appropriate senior national security and legal officials on the proposed EITs. In the fall of 2002, the Agency briefed the leadership of the Congressional Intelligence Oversight Committees on the use of both standard techniques and EITs.



23

TOP SECRET

# SPECIAL REVIEW

# PAGES 24 TO 35

# Denied in Full

TOP SECRET ███████████████████████

███████████████████████████████████████

interrogators administered ███████ the waterboard to
Al-Nashiri

███████████████████████████████████████

### Videotapes of Interrogations

77. (TS ███████████████████████████████

███████████████████████████ decided to
videotape the interrogation sessions.

███████████████████████████████████████

An OGC attorney reviewed the videotapes

███████████████████████████████████████

78. (TS ███████████ OIG reviewed the videotapes
in May 2003

███████████████████████████████████████

# SPECIAL REVIEW

## PAGES 37 TO 43

# Denied in Full

TOP SECRET



**Waterboard Technique**

99. (TS
interrogators used the waterboard on Khalid Shaykh Muhammad

TOP SECRET

TOP SECRET 

100. (TS ▮▮▮▮▮▮▮ Cables indicate that Agency interrogators ▮▮▮▮▮▮▮ applied the waterboard technique to Khalid Shaykh Muhammad

TOP SECRET

TOP SECRET ████████████████



209. (TS

waterboard session of Abu Zubaydah.

TOP SECRET ████████████████



waterboard on Abu Zubaydah

85

# SPECIAL REVIEW

# PAGES 86 TO 89

# Denied in Full

TOP SECRET █████████████████

███████████████████████████
███████████████████████████
███████████████████████████

222. (TS █████████ The waterboard has been used on three detainees: Abu Zubaydah, Al-Nashiri, and Khalid Shaykh Muhammad.

███████████████████████████
███████████████████████████
███████████████████████████

223. (TS ███████████████████████ Interrogators applied the waterboard to Abu Zubaydah

███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████

TOP SECRET █████████████████

TOP SECRET

225. (TS

Khalid Shaykh Muhammad received applications of the waterboard

91

TOP SECRET ███████████████████

## Policy Considerations

227. (U//FOUO)  Throughout its history, the United States has been an international proponent of human rights and has voiced opposition to torture and mistreatment of prisoners by foreign countries.  This position is based upon fundamental principles that are deeply embedded in the American legal structure and jurisprudence. The Fifth and Fourteenth Amendments to the U.S. Constitution, for example, require due process of law, while the Eighth Amendment bars "cruel and unusual punishments."

228. (U//FOUO)  The President advised the Senate when submitting the Torture Convention for ratification that the United States would construe the requirement of Article 16 of the Convention to "undertake to prevent in any territory under its jurisdiction other acts of cruel, inhuman, or degrading treatment or punishment which do not amount to torture" as  "roughly equivalent to" and "coextensive with the Constitutional guarantees against cruel, unusual, and inhumane treatment."[81]  To this end, the United States submitted a reservation to the Torture Convention stating that the United States considers itself bound by Article 16 "only insofar as the term 'cruel, inhuman or degrading treatment or punishment' means the cruel, unusual, and inhumane treatment or punishment prohibited by the 5th, 8th and/or 14th Amendments to the Constitution of the United States."  Although the Torture Convention expressly provides that no exceptional circumstances whatsoever, including war or any other public emergency, and no order from a superior officer, justifies torture, no similar provision was included regarding acts of "cruel, inhuman or degrading treatment or punishment."

---

[81] (U//FOUO) See Message from the President of the United States Transmitting the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Sen. Treaty Doc. 100-20, 100th Cong., 2d Sess., at 15, May 23, 1988; Senate Committee on Foreign Relations, Executive Report 101-30, August 30, 1990, at 25, 29, quoting summary and analysis submitted by President Ronald Reagan, as revised by President George H.W. Bush.

TOP SECRET ███████████████████

TOP SECRET ████████████████

229. (U//FOUO)  Annual U.S. State Department Country
Reports on Human Rights Practices have repeatedly condemned
harsh interrogation techniques utilized by foreign governments. For
example, the 2002 Report, issued in March 2003, stated:

> [The United States] have been given greater opportunity to make
> good on our commitment to uphold standards of human dignity
> and liberty .... [N]o country is exempt from scrutiny, and all
> countries benefit from constant striving to identify their
> weaknesses and improve their performance .... [T]he Reports
> serve as a gauge for our international human rights efforts,
> pointing to areas of progress and drawing our attention to new and
> continuing challenges.
>
> In a world marching toward democracy and respect for human
> rights, the United States is a leader, a partner and a contributor.
> We have taken this responsibility with a deep and abiding belief
> that human rights are universal. They are not grounded
> exclusively in American or western values. But their protection
> worldwide serves a core U.S. national interest.

The State Department Report identified objectionable practices in a
variety of countries including, for example, patterns of abuse of
prisoners in Saudi Arabia by such means as "suspension from bars by
handcuffs, and threats against family members, ... [being] forced
constantly to lie on hard floors [and] deprived of sleep ...." Other
reports have criticized hooding and stripping prisoners naked.

230. (U//FOUO)  In June 2003, President Bush issued a
statement in observance of "United Nations International Day in
Support of Victims of Torture." The statement said in part:

> The United States declares its strong solidarity with torture victims
> across the world. Torture anywhere is an affront to human dignity
> everywhere. We are committed to building a world where human
> rights are respected and protected by the rule of law.

TOP SECRET ████████████████

~~TOP SECRET~~ █████████████████████████████

Freedom from torture is an inalienable human right .... Yet
torture continues to be practiced around the world by rogue
regimes whose cruel methods match their determination to crush
the human spirit ....

Notorious human rights abusers ... have sought to shield their
abuses from the eyes of the world by staging elaborate deceptions
and denying access to international human rights monitors ....

The United States is committed to the worldwide elimination of
torture and we are leading this fight by example. I call on all
governments to join with the United States and the community of
law-abiding nations in prohibiting, investigating, and prosecuting
all acts of torture and in undertaking to prevent other cruel and
unusual punishment ....



94

# SPECIAL REVIEW

## PAGES 95 TO 109

# Denied in Full

Appendix A

TOP SECRET ███████████████

# PROCEDURES AND RESOURCES

1. ~~(TS~~ ████████ A team, led by the Deputy Inspector General, and comprising the Assistant Inspector General for Investigations, the Counsel to the Inspector General, a senior Investigations Staff Manager, three Investigators, two Inspectors, an Auditor, a Research Assistant, and a Secretary participated in this Review.

2. ~~(TS~~ ████████ OIG tasked relevant components for all information regarding the treatment and interrogation of all individuals detained by or on behalf of CIA after 9/11. Agency components provided OIG with over 38,000 pages of documents. OIG conducted over 100 interviews with individuals who possessed potentially relevant information. We interviewed senior Agency management officials, including the DCI, the Deputy Director of Central Intelligence, the Executive Director, the General Counsel, and the Deputy Director for Operations. As new information developed, OIG re-interviewed several individuals.

███████████████████████████

Appendix B
Page intentionally left blank

Appendix C

# SPECIAL REVIEW

## APPENDIX C
## PAGES 1 TO 18

# Denied in Full

Appendix D

# SPECIAL REVIEW

## APPENDIX D
## PAGES 1 TO 3

# Denied in Full

Appendix E

TOP SECRET 

## 1. Permissible Interrogation Techniques

Unless otherwise approved by Headquarters, CIA officers ████████████████████████████████████ may use only Permissible Interrogation Techniques. Permissible Interrogation Techniques consist of both (a) Standard Techniques and (b) Enhanced Techniques.



TOP SECRET

~~TOP SECRET~~ ███████████████

████████████████████████████████████

Enhanced Techniques ████████████████

██████████████ the water board, ███

2

# SPECIAL REVIEW

## APPENDIX E
## PAGES 3 TO 4

# Denied in Full

Appendix F

# SPECIAL REVIEW

## APPENDIX F
## PAGES 1 TO 11

# Denied in Full

TOP SECRET



# SPECIAL REVIEW



(TS) **COUNTERTERRORISM DETENTION AND
INTERROGATION ACTIVITIES
(SEPTEMBER 2001 – OCTOBER 2003)**

**7 May 2004**



TOP SECRET

TOP SECRET █████████████████

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................ 1

SUMMARY .............................................................................. 2

BACKGROUND ........................................................................ 9

DISCUSSION ......................................................................... 11

GENESIS OF POST 9/11 AGENCY DETENTION AND INTERROGATION
ACTIVITIES ........................................................................ 11

THE CAPTURE OF ABU ZUBAYDAH AND DEVELOPMENT OF EITS ........... 12

DOJ LEGAL ANALYSIS ............................................................ 16

NOTICE TO AND CONSULTATION WITH EXECUTIVE AND CONGRESSIONAL
OFFICIALS ........................................................................ 23

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████

Videotapes of Interrogations ........................................... 36

██████████████████████████████████████
██████████████████████████████████████

i

TOP SECRET 



Waterboard Technique ................................................................. 44



ii

TOP SECRET █████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

*EFFECTIVENESS* ....................................................................85

*POLICY CONSIDERATIONS AND CONCERNS REGARDING THE DETENTION AND INTERROGATION PROGRAM* ................................91

Policy Considerations ...........................................92

████████████████████████████████████

*ENDGAME* ............................................................95

**CONCLUSIONS** ...............................................100

**RECOMMENDATIONS** .........................................106

**APPENDICES**

A. Procedures and Resources

B. Chronology of Significant Events

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

TOP SECRET ████████████████████

# SPECIAL REVIEW

## TABLE OF CONTENTS
## PAGE IV

# Denied in Full

after

# SPECIAL REVIEW

## PAGES 1 TO 14

# Denied in Full



Enhanced Interrogation Techniques

the waterboard technique

15

TOP SECRET ██████████████████

*DOJ LEGAL ANALYSIS*

36. (TS ██████████████████

██████████████ The ensuing legal opinions focus on the Convention Against Torture and Other Cruel, Inhumane and Degrading Treatment or Punishment (Torture Convention),[15] especially as implemented in the U.S. criminal code, 18 U.S.C. 2340-2340A.

37. (U//FOUO) The Torture Convention specifically prohibits "torture," which it defines in Article 1 as:

> any act by which *severe* pain or suffering, whether physical or mental, is *intentionally* inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. It does not include pain or suffering arising only from, inherent in or incidental to lawful sanction. [Emphasis added.]

Article 4 of the Torture Convention provides that states party to the Convention are to ensure that all acts of "torture" are offenses under their criminal laws. Article 16 additionally provides that each state party "shall undertake to prevent in any territory under its jurisdiction other acts of cruel, inhuman or degrading treatment or punishment which do not amount to acts of torture as defined in Article 1."

---

[15] (U//FOUO) Adopted 10 December 1984, S. Treaty Doc. No. 100-20 (1988) 1465 U.N.T.S. 85 (entered into force 26 June 1987). The Torture Convention entered into force for the United States on 20 November 1994.

16

~~TOP SECRET~~ ████████████████

38. (U//FOUO) The Torture Convention applies to the United States only in accordance with the reservations and understandings made by the United States at the time of ratification.[16] As explained to the Senate by the Executive Branch prior to ratification:

> Article 16 is arguably broader than existing U.S. law. The phrase "cruel, inhuman or degrading treatment or punishment" is a standard formula in international instruments and is found in the Universal Declaration of Human Rights, the International Covenant on Civil and Political Rights, and the European Convention on Human Rights. To the extent the phrase has been interpreted in the context of those agreements, "cruel" and "inhuman" treatment or punishment appears to be roughly equivalent to the treatment or punishment barred in the United States by the Fifth, Eighth and Fourteenth Amendments. "Degrading" treatment or punishment, however, has been interpreted as potentially including treatment that would probably not be prohibited by the U.S. Constitution. [Citing a ruling that German refusal to recognize individual's gender change might be considered "degrading" treatment.] To make clear that the <u>United States construes the phrase to be coextensive with its constitutional guarantees against cruel, unusual, and inhumane treatment</u>, the following understanding is recommended:
>
> > "The United States understands the term 'cruel, inhuman or degrading treatment or punishment,' as used in Article 16 of the Convention, <u>to mean the cruel, unusual, and inhumane treatment or punishment prohibited by the Fifth, Eighth and/or Fourteenth Amendments</u> to the Constitution of the United States."[17] [Emphasis added.]

---

[16] (U) Vienna Convention on the Law of Treaties, 23 May 1969, 1155 U.N.T.S. 331 (entered into force 27 January 1980). The United States is not a party to the Vienna Convention on treaties, but it generally regards its provisions as customary international law.

[17] (U//FOUO) S. Treaty Doc. No. 100-20, at 15-16.

17

~~TOP SECRET~~ ████████████████

TOP SECRET ███████████████████████

39. (U//FOUO) In accordance with the Convention, the United States criminalized acts of torture in 18 U.S.C. 2340A(a), which provides as follows:

> Whoever outside the United States commits or attempts to commit torture shall be fined under this title or imprisoned not more than 20 years, or both, and if death results to any person from conduct prohibited by this subsection, shall be punished by death or imprisoned for any term of years or for life.

The statute adopts the Convention definition of "torture" as "an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control."[18] "Severe physical pain and suffering" is not further defined, but Congress added a definition of "severe mental pain or suffering:"

> [T]he prolonged mental harm caused by or resulting from—
>
> (A) the intentional infliction or threatened infliction of severe physical pain or suffering;
>
> (B) the administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt profoundly the senses or the personality;
>
> (C) the threat of imminent death; or
>
> (D) the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind-altering substances or other procedures calculated to disrupt profoundly the senses or personality. . . .[19]

These statutory definitions are consistent with the understandings and reservations of the United States to the Torture Convention.

---

[18] (U//FOUO) 18 U.S.C. 2340(1).
[19] (U//FOUO) 18 U.S.C. 2340(2).

TOP SECRET ███████████████████████

~~TOP SECRET~~ ███████████████████

40. (U//FOUO) DoJ has never prosecuted a violation of the torture statute, 18 U.S.C. §2340, and there is no case law construing its provisions. ██████████████████████ issues under U.S. and international law to DoJ's OLC in the summer of 2002 and received a preliminary summary of the elements of the ████████████████████████████ An unclassified 1 August 2002 OLC legal memorandum set out OLC's conclusions regarding the proper interpretation of the torture statute and concluded that "Section 2340A proscribes acts inflicting, and that are specifically intended to inflict, severe pain or suffering whether mental or physical."[20] Also, OLC stated that the acts must be of an "extreme nature" and that "certain acts may be cruel, inhuman, or degrading, but still not produce pain and suffering of the requisite intensity to fall within Section 2340A's proscription against torture." Further describing the requisite level of intended pain, OLC stated:

> Physical pain amounting to torture must be equivalent in intensity to the pain accompanying serious physical injury, such as organ failure, impairment of bodily function, or even death. For purely mental pain or suffering to amount to torture under Section 2340, it must result in significant psychological harm of significant duration, e.g., lasting for months or even years.[21]

OLC determined that a violation of Section 2340 requires that the infliction of severe pain be the defendant's "precise objective." OLC also concluded that necessity or self-defense might justify interrogation methods that would otherwise violate Section 2340A.[22] The August 2002 OLC opinion did not address whether any other provisions of U.S. law are relevant to the detention, treatment, and interrogation of detainees outside the United States.[23]

---

[20] (U//FOUO) Legal Memorandum, Re: Standards of Conduct for Interrogation under 18 U.S.C. 2340-2340A (1 August 2002).

[21] (U//FOUO) Ibid., p. 1.

[22] (U//FOUO) Ibid., p. 39.

[23] (U//FOUO) OLC's analysis of the torture statute was guided in part by judicial decisions under the Torture Victims Protection Act (TVPA) 28 U.S.C. 1350, which provides a tort remedy for victims of torture. OLC noted that the courts in this context have looked at the entire course

19

~~TOP SECRET~~ ████████████████████

TOP SECRET ███████████████████

41. (U//FOUO)  A second unclassified 1 August 2002 OLC opinion addressed the international law aspects of such interrogations.[24]  This opinion concluded that interrogation methods that do not violate 18 U.S.C. 2340 would not violate the Torture Convention and would not come within the jurisdiction of the International Criminal Court.



of conduct, although a single incident could constitute torture.  OLC also noted that courts may be willing to find a wide range of physical pain can rise to the level of "severe pain and suffering."  Ultimately, however, OLC concluded that the cases show that only acts "of an extreme nature have been redressed under the TVPA's civil remedy for torture."  White House Counsel Memorandum at 22 - 27.

[24] (U//FOUO) OLC Opinion by John C. Yoo, Deputy Assistant Attorney General, OLC (1 August 2002).

███████████████████████████

TOP SECRET ███████████████

# SPECIAL REVIEW

## PAGES 21 TO 22

# Denied in Full

TOP SECRET



45. (TS



The DCI briefed appropriate senior national security and legal officials on the proposed EITs. In the fall of 2002, the Agency briefed the leadership of the Congressional Intelligence Oversight Committees on the use of both standard techniques and EITs.

23

## SPECIAL REVIEW

## PAGES 24 TO 35

# Denied in Full

TOP SECRET ███████████████

██████████████████████████████
██████████████████████████████
██████████████████████████████
interrogators administered ████████ the waterboard to
Al-Nashiri ████████████████████
██████████████████████████████
██████████████████████████████

**Videotapes of Interrogations**

77. (TS ████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████ decided to
videotape the interrogation sessions. ██████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████ An OGC attorney reviewed the videotapes ████
████████████████████████████████
████████████████████████████████

78. (TS ████████ OIG reviewed the videotapes ████
████ in May 2003 ██████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

36

# SPECIAL REVIEW

## PAGES 37 TO 43

# Denied in Full



**Waterboard Technique**

99. (TS

interrogators used the waterboard on Khalid Shaykh Muhammad

TOP SECRET 



100. (TS ████████ Cables indicate that Agency interrogators ████████ applied the waterboard technique to Khalid Shaykh Muhammad





45

TOP SECRET ███████████████



209.  (TS

waterboard session of Abu Zubaydah.

84

TOP SECRET ███████████████

TOP SECRET



waterboard on Abu Zubaydah

TOP SECRET

# SPECIAL REVIEW

## PAGES 86 TO 89

# Denied in Full

TOP SECRET ███████████████████

███████████████████████████████████████

222. (TS ███████ The waterboard has been used on three detainees: Abu Zubaydah, Al-Nashiri, and Khalid Shaykh Muhammad.

███████████████████████████████████████

223. (TS ███████████████████████ Interrogators applied the waterboard to Abu Zubaydah

TOP SECRET ███████████████████



225. (TS

Khalid Shaykh Muhammad received applications of the waterboard

91

TOP SECRET ███████████████████

## Policy Considerations

227. (U//FOUO) Throughout its history, the United States has been an international proponent of human rights and has voiced opposition to torture and mistreatment of prisoners by foreign countries. This position is based upon fundamental principles that are deeply embedded in the American legal structure and jurisprudence. The Fifth and Fourteenth Amendments to the U.S. Constitution, for example, require due process of law, while the Eighth Amendment bars "cruel and unusual punishments."

228. (U//FOUO) The President advised the Senate when submitting the Torture Convention for ratification that the United States would construe the requirement of Article 16 of the Convention to "undertake to prevent in any territory under its jurisdiction other acts of cruel, inhuman, or degrading treatment or punishment which do not amount to torture" as "roughly equivalent to" and "coextensive with the Constitutional guarantees against cruel, unusual, and inhumane treatment."[81] To this end, the United States submitted a reservation to the Torture Convention stating that the United States considers itself bound by Article 16 "only insofar as the term 'cruel, inhuman or degrading treatment or punishment' means the cruel, unusual, and inhumane treatment or punishment prohibited by the 5th, 8th and/or 14th Amendments to the Constitution of the United States." Although the Torture Convention expressly provides that no exceptional circumstances whatsoever, including war or any other public emergency, and no order from a superior officer, justifies torture, no similar provision was included regarding acts of "cruel, inhuman or degrading treatment or punishment."

---

81 (U//FOUO) See Message from the President of the United States Transmitting the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Sen. Treaty Doc. 100-20, 100th Cong., 2d Sess., at 15, May 23, 1988; Senate Committee on Foreign Relations, Executive Report 101-30, August 30, 1990, at 25, 29, quoting summary and analysis submitted by President Ronald Reagan, as revised by President George H.W. Bush.

92

TOP SECRET ███████████████████

TOP SECRET ████████████████

229. (U//FOUO)  Annual U.S. State Department Country Reports on Human Rights Practices have repeatedly condemned harsh interrogation techniques utilized by foreign governments. For example, the 2002 Report, issued in March 2003, stated:

> [The United States] have been given greater opportunity to make good on our commitment to uphold standards of human dignity and liberty . . . . [N]o country is exempt from scrutiny, and all countries benefit from constant striving to identify their weaknesses and improve their performance . . . . [T]he Reports serve as a gauge for our international human rights efforts, pointing to areas of progress and drawing our attention to new and continuing challenges.
>
> In a world marching toward democracy and respect for human rights, the United States is a leader, a partner and a contributor. We have taken this responsibility with a deep and abiding belief that human rights are universal. They are not grounded exclusively in American or western values. But their protection worldwide serves a core U.S. national interest.

The State Department Report identified objectionable practices in a variety of countries including, for example, patterns of abuse of prisoners in Saudi Arabia by such means as "suspension from bars by handcuffs, and threats against family members, . . . [being] forced constantly to lie on hard floors [and] deprived of sleep . . . . " Other reports have criticized hooding and stripping prisoners naked.

230. (U//FOUO) In June 2003, President Bush issued a statement in observance of "United Nations International Day in Support of Victims of Torture." The statement said in part:

> The United States declares its strong solidarity with torture victims across the world. Torture anywhere is an affront to human dignity everywhere. We are committed to building a world where human rights are respected and protected by the rule of law.

93

TOP SECRET ████████████████

~~TOP SECRET~~ █████████████

Freedom from torture is an inalienable human right . . . . Yet torture continues to be practiced around the world by rogue regimes whose cruel methods match their determination to crush the human spirit . . . .

Notorious human rights abusers . . . have sought to shield their abuses from the eyes of the world by staging elaborate deceptions and denying access to international human rights monitors . . . .

The United States is committed to the worldwide elimination of torture and we are leading this fight by example. I call on all governments to join with the United States and the community of law-abiding nations in prohibiting, investigating, and prosecuting all acts of torture and in undertaking to prevent other cruel and unusual punishment . . . .



94

# SPECIAL REVIEW

# PAGES 95 TO 109

# Denied in Full

Appendix A

TOP SECRET █████████

# PROCEDURES AND RESOURCES

1. (TS █████████ A team, led by the Deputy Inspector General, and comprising the Assistant Inspector General for Investigations, the Counsel to the Inspector General, a senior Investigations Staff Manager, three Investigators, two Inspectors, an Auditor, a Research Assistant, and a Secretary participated in this Review.

2. (TS █████████ OIG tasked relevant components for all information regarding the treatment and interrogation of all individuals detained by or on behalf of CIA after 9/11. Agency components provided OIG with over 38,000 pages of documents. OIG conducted over 100 interviews with individuals who possessed potentially relevant information. We interviewed senior Agency management officials, including the DCI, the Deputy Director of Central Intelligence, the Executive Director, the General Counsel, and the Deputy Director for Operations. As new information developed, OIG re-interviewed several individuals.

TOP SECRET █████████

Appendix B
Page intentionally left blank

Appendix C

# SPECIAL REVIEW

## APPENDIX C
## PAGES 1 TO 18

# Denied in Full

Appendix D

# SPECIAL REVIEW

## APPENDIX D
## PAGES 1 TO 3

# Denied in Full

Appendix E

TOP SECRET 

**1.   Permissible Interrogation Techniques.**

     Unless otherwise approved by Headquarters, CIA officers ████████████████████████████████may use only Permissible Interrogation Techniques. Permissible Interrogation Techniques consist of both (a) Standard Techniques and (b) Enhanced Techniques.



TOP SECRET

TOP SECRET ███████████

█████████████████████████████████████████████

Enhanced Techniques ██████████████████████████████

████████████████████████ the water board, ████

TOP SECRET ███████████

2

SPECIAL REVIEW

APPENDIX E
PAGES 3 TO 4

# Denied in Full

Appendix F

# SPECIAL REVIEW

## APPENDIX F
## PAGES 1 TO 11

# Denied in Full