# Attachment E



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

MAY 18, 2006

MS. CATHERINE KANE RONIS
WILMER CUTLER PICKERING HALE AND DORR LLP
2445 M STREET NW
WASHINGTON, DC  20037

Subject: GHOST DETAINEES
FOIPA No. 1049374

Dear Requester:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☒(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C) | ☐(k)(1) |
| _____ | ☒(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☒(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

_____3_____ preprocessed pages are enclosed. To expedite requests, preprocessed packages are released the same way they were originally processed. Documents or information originating with other Government agencies were not referred to those agencies as part of this release.

☒ You have the right to appeal any denials. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530-0001 within sixty days from receipt of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience is, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing and they will be reviewed at a later date, as time and resources permit,

☐ See additional information which follows.

Sincerely yours,

*[signature]*

David M. Hardy
Section Chief,
Record/Information
　Dissemination Section
Records Management Division

EXPLANATION OF EXEMPTIONS

SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could be reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could be reasonably expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

(Rev 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

Precedence: ROUTINE                             Date: 05/25/2004

To: Inspection

From: Inspection
      Contact:                                       b2 -1

      Approved By:                                   b6 -1

      Drafted By:                                    b7C -1

Case ID #: 297-HQ-A1327669 -E - 3

Title: COUNTERTERRORISM DIVISION,
       INQUIRY REGARDING
       ACTIVITIES OF FBI PERSONNEL
       AT ABU GHURAYB PRISON (AGP) DURING
       OCTOBER 2003 - DECEMBER 2003

Synopsis: Forward 15 original investigative inserts and FD-540 1As to file

Enclosures: Enclosed are the following documents.

(1)   Original investigative insert documenting 05/18/2004 interview of SA [redacted] CJTS, and FD-540 1A envelope containing interview notes of Supervisory Special Agent (SSA) [redacted] Inspection Division       b6 -1, b7C -1

(2)   Original investigative insert documenting 05/17/2004 telephonic interview of SA [redacted] Little Rock Division, and FD-540 1A envelope containing interview notes of SSA [redacted] Inspection Division       b6 -1, b7C -1

(3)   Original investigative insert documenting 05/17/2004 interview of SA [redacted] Houston Division, and FD-540 1A envelope containing interview notes of SSA [redacted] Inspection Division       b6 -1, b7C -1

(4)   Original investigative insert documenting 05/18/2004 interview of LS [redacted] Houston Division, and FD-540 1A envelope containing interview notes of SSA [redacted] Inspection Division       b6 -1, b7C -1

(5)   Original investigative insert documenting 05/17/2004 interview of LS [redacted] San Francisco Division, and FD-540 1A envelope containing interview notes of SSA [redacted] Inspection Division       b6 -1, b7C -1

15-ENCLOSURE

DETAINEES-3460

297-HQ-A1327669▮-E-3
KBC.kc

1

    The following investigation was conducted by AI▮▮▮ INSD, on 05/17/2004 in New York, NY:   b6 -1  b7C -1

    SA▮▮▮ NYO, Squad CD-22, ▮▮▮ DOB. ▮▮▮ SSAN. ▮▮▮ was interviewed. He was advised of the identity of AI▮▮▮ and the nature of the interview  He provided the following information:   b2 -1  b6 -1  b7C -1

    SA▮▮▮ deployed to Iraq on or about 11/13/2003 through 01/16/2004. His primary duties while in Iraq consisted of conducting FCI interviews at Camp Cropper in the vicinity of Baghdad International Airport. He worked primarily with SA▮▮▮ He went to Abu Ghurayb prison on approximately five occasions. On one occasion he was searching for a "ghost" detainee through both cell blocks and the tent compound, but did not locate him. He described a "ghost" detainee as someone detained at the prison by intelligence personnel without any record of the detainee's presence. He did not know how many such detainees existed. On one occasion he processed for fingerprinting and DNA approximately 25-50 detainees at the prison  He also introduced a detainee whose name he could not recall to the Iraqi Survey Group (ISG) because of the WMD knowledge that detainee possessed  The ISG was U S. military, to the best of his recollection. He also dealt with Department of Defense (DOD) personnel who were civilian clothes  He believed they represented Defense Intelligence Agency.   b6 -1  b7C -1

    Other than his search for the "ghost" detainee in the cell blocks, he interviewed detainees in the stand alone buildings known as "wood" and "steel," respectively. He actually interviewed the "ghost" detainee prior to the search on one occasion and saw no signs of abuse. The detainee was subsequently released, and that is why SA▮▮▮ could not locate him during the search. These stand-alone buildings were located outside the cell blocks. Those detainees were from the tent compound, not the main cell blocks. He recalled interviewing ▮▮▮ with SA ▮▮▮ ▮▮▮ was a tent compound detainee  The detainee was delivered to the stand alone building by MPs who did not participate in the interview. The detainee was brought to the interview in hand cuffs. He also saw detainees wearing hoods while they were escorted on the prison grounds.   b6 -1,3,4  b7C -1,3,4  b7D -1  b7F -1

    SA▮▮▮ did not observe any misconduct or mistreatment of prisoners at any time during his presence at Abu Ghurayb prison  He conducted a thorough search of all the cells   b6 -1  b7C -1

DETAINEES-3471

297-HQ-A13276697-E

2

in the prison for the "ghost" detainee and saw no evidence of any mistreatment or misconduct.

b6 -1
b7C -1

SA [   ] had no reason to believe that any misconduct or mistreatment of detainees was occurring at the prison. While processing numerous (25-50) detainees for fingerprints and DNA samples, he noticed no marks or signs of abuse on the prisoners. He did not recall meeting the guards who were depicted in the media allegedly abusing prisoners in the prison.

b6 -1
b7C -1

SA [   ] advised his interviews conducted at Camp Cropper and Abu Ghurayb prison were reported via EC. He did not advise detainees of their Miranda Warning rights, and could not recall why. His interviews always took place in the stand alone buildings previously described and none of his interviewees were housed in units 1A or 1B. He had no substantive contact with Military Police personnel in charge of the prison. The only other member of his interview team at the prison was SA [   ] He did not recall a translator being present because the subject of the interview spoke English.

b6 -1
b7C -1

During his interviews, no interviewee brought to his attention any acts of misconduct or mistreatment by U.S personnel. He was in possession of no pictures, video tapes, or notes of actions depicting misconduct or inappropriate behavior by U.S. personnel against detainees. He was not aware of anyone in possession of such items. He had no knowledge of DOD or DOJ authorization for the use of certain interrogation techniques. He and other interviewers, including the MI handlers, would discuss interview strategies as to whether or not the interview would use a positive, rapport building tone, or an accusatorial, negative tone. No discussion or thought was given to using physical interrogation techniques during any interview. He had no knowledge of sleep deprivation or isolation used on detainees. He had no additional information relating to the abuse/mistreatment of detainees.

# Attachment F



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

MAY 18, 2006

MS. CATHERINE KANE RONIS
WILMER CUTLER PICKERING HALE AND DORR LLP
2445 M STREET NW
WASHINGTON, DC  20037

Subject: GHOST DETAINEES MEMORANDA
FOIPA No. 1049375

Dear Requester:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☒(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C) | ☐(k)(1) |
| _____ | ☒(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☒(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

_____3_____ preprocessed pages are enclosed. To expedite requests, preprocessed packages are released the same way they were originally processed. Documents or information originating with other Government agencies were not referred to those agencies as part of this release.

☒ You have the right to appeal any denials. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530-0001 within sixty days from receipt of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience is, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing and they will be reviewed at a later date, as time and resources permit.

☐ See additional information which follows.

Sincerely yours,

*[signature]*

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could be reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could be reasonably expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

(Rev 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

Precedence: ROUTINE                                   Date: 05/25/2004

To: Inspection

From: Inspection
      Contact:                                        b2 -1
Approved By:                                          b6 -1
Drafted By:                                           b7C -1
Case ID #: 297-HQ-A1327669-E-3

Title: COUNTERTERRORISM DIVISION,
       INQUIRY REGARDING
       ACTIVITIES OF FBI PERSONNEL
       AT ABU GHURAYB PRISON (AGP) DURING
       OCTOBER 2003 - DECEMBER 2003

Synopsis: Forward 15 original investigative inserts and FD-540 1As to file

Enclosures: Enclosed are the following documents.

(1)    Original investigative insert documenting 05/18/2004
       interview of SA [redacted] CJIS, and FD-540 1A
       envelope containing interview notes of Supervisory    b6 -1
       Special Agent (SSA) [redacted] Inspection              b7C -1
       Division

(2)    Original investigative insert documenting 05/17/2004
       telephonic interview of SA [redacted] Little Rock      b6 -1
       Division, and FD-540 1A envelope containing interview
       notes of SSA [redacted] Inspection Division            b7C -1

(3)    Original investigative insert documenting 05/17/2004
       interview of SA [redacted] Houston Division,           b6 -1
       and FD-540 1A envelope containing interview notes of SSA
       [redacted] Inspection Division                          b7C -1

(4)    Original investigative insert documenting 05/18/2004
       interview of LS [redacted] Houston Division, and FD-540 b6 -1
       1A envelope containing interview notes of SSA [redacted]
       Inspection Division                                     b7C -1

(5)    Original investigative insert documenting 05/17/2004
       interview of LS [redacted] San Francisco Division,     b6 -1
       and FD-540 1A envelope containing interview notes of SSA
       [redacted] Inspection Division                          b7C -1

DETAINEES-3460

15-ENCLOSURE

297-HQ-A13276691-E-3
KBC.kc

1

    The following investigation was conducted by AI [____]  b6 -1
INSD, on 05/17/2004 in New York, NY:  b7C -1

SA [____] NYO, Squad CD-22, [____]  b2 -1
DOB. [____] SSAN. [____] was interviewed. He was
advised of the identity of AI [____] and the nature of the  b6 -1
interview. He provided the following information:  b7C -1

    SA [____] deployed to Iraq on or about 11/13/2003
through 01/16/2004. His primary duties while in Iraq consisted
of conducting FCI interviews at Camp Cropper in the vicinity of  b6 -1
Baghdad International Airport. He worked primarily with SA [____]  b7C -1
[____] He went to Abu Ghurayb prison on approximately five
occasions. On one occasion he was searching for a "ghost"
detainee through both cell blocks and the tent compound, but did
not locate him. He described a "ghost" detainee as someone
detained at the prison by intelligence personnel without any
record of the detainee's presence. He did not know how many such
detainees existed. On one occasion he processed for
fingerprinting and DNA approximately 25-50 detainees at the
prison. He also introduced a detainee whose name he could not
recall to the Iraqi Survey Group (ISG) because of the WMD
knowledge that detainee possessed. The ISG was U.S. military, to
the best of his recollection. He also dealt with Department of
Defense (DOD) personnel who were civilian clothes. He believed
they represented Defense Intelligence Agency.

    Other than his search for the "ghost" detainee in the
cell blocks, he interviewed detainees in the stand alone
buildings known as "wood" and "steel," respectively. He actually
interviewed the "ghost" detainee prior to the search on one
occasion and saw no signs of abuse. The detainee was
subsequently released, and that is why SA [____] could not locate  b6 -1,3,4
him during the search. These stand-alone buildings were located  b7C -1,3,4
outside the cell blocks. Those detainees were from the tent
compound, not the main cell blocks. He recalled interviewing  b7D -1
[____] with SA [____]  
was a tent compound detainee. The detainee was delivered to the  b7F -1
stand alone building by MPs who did not participate in the
interview. The detainee was brought to the interview in hand
cuffs. He also saw detainees wearing hoods while they were
escorted on the prison grounds.

    SA [____] did not observe any misconduct or  b6 -1
mistreatment of prisoners at any time during his presence at Abu  b7C -1
Ghurayb prison. He conducted a thorough search of all the cells

DETAINEES-3471

297-HQ-A13276697-E

2

in the prison for the "ghost" detainee and saw no evidence of any mistreatment or misconduct.

    SA [ ] had no reason to believe that any misconduct or mistreatment of detainees was occurring at the prison. While processing numerous (25-50) detainees for fingerprints and DNA samples, he noticed no marks or signs of abuse on the prisoners. He did not recall meeting the guards who were depicted in the media allegedly abusing prisoners in the prison.

b6 -1
b7C -1

    SA [ ] advised his interviews conducted at Camp Cropper and Abu Ghurayb prison were reported via EC. He did not advise detainees of their Miranda Warning rights, and could not recall why. His interviews always took place in the stand alone buildings previously described and none of his interviewees were housed in units 1A or 1B. He had no substantive contact with Military Police personnel in charge of the prison. The only other member of his interview team at the prison was SA [ ] He did not recall a translator being present because the subject of the interview spoke English.

b6 -1
b7C -1

b6 -1
b7C -1

    During his interviews, no interviewee brought to his attention any acts of misconduct or mistreatment by U.S personnel. He was in possession of no pictures, video tapes, or notes of actions depicting misconduct or inappropriate behavior by U.S. personnel against detainees. He was not aware of anyone in possession of such items. He had no knowledge of DOD or DOJ authorization for the use of certain interrogation techniques. He and other interviewers, including the MI handlers, would discuss interview strategies as to whether or not the interview would use a positive, rapport building tone, or an accusatorial, negative tone. No discussion or thought was given to using physical interrogation techniques during any interview. He had no knowledge of sleep deprivation or isolation used on detainees. He had no additional information relating to the abuse/mistreatment of detainees.

DETAINEES-3472