# Attachment S



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*　　　　　　　　　*Washington, D.C. 20530*

**APR 18 2007**

Kyle M. DeYoung, Esq.
WilmerHale　　　　　　　　　　　Re:　Appeal Nos. 07-0421 and 07-0422
1875 Pennsylvania Avenue, NW　　　　　Request Nos. 06-32 and 06-33
Washington, DC 20006　　　　　　　　ALB:SRO

Dear Mr. DeYoung:

You appealed on behalf of your clients, Amnesty International USA and Washington Square Legal Services, from the action of the National Security Division (NSD) on your clients' requests for various records pertaining to what have been termed "ghost detainees."

After carefully considering your appeal, I am affirming NSD's action on your clients' requests. Please note that NSD maintains three types of files: (1) policy files, (2) correspondence files, and (3) Foreign Intelligence Surveillance Act (FISA) files. NSD informed you that it could not locate any records responsive to your clients' requests in its policy or correspondence files. I have determined that NSD's response was correct and that it conducted an adequate, reasonable search for records responsive to your clients' requests.

With regard to any FISA records responsive to your clients' requests, the existence or nonexistence of FISA records maintained by NSD is classified under Executive Order 12,958, as amended. Therefore, NSD properly refused to confirm or deny the existence of any responsive records pursuant to 5 U.S.C. § 552(b)(1), which protects classified information from disclosure under the Freedom of Information Act. The Department Review Committee, which has administrative appeal authority with regard to the classification of national security information, has previously affirmed NSD's refusal to confirm or deny the existence of FISA records pursuant to 5 U.S.C. § 552(b)(1).

If your clients are dissatisfied with my action on your appeal, they may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Janice Galli McLeod
Associate Director

File

# Attachment T



U.S. Department of Justice

Criminal Division

---

Office of Enforcement Operations                    Washington, D.C. 20530

CRM-200600501F

JUN 3 0 2006

Ms. Catherine Ronis
Wilmer Cutler Pickering Hale & Dorr LLP
2445 M Street, NW
Washington, DC  20037

Dear Ms. Ronis:

    This is to acknowledge receipt of your letters of April 25, 2006 requesting records pursuant to the Freedom of Information Act. Because your letters were not specifically addressed to this Office, your letters were initially sent to the Mail Routing and Referral Unit of the Justice Management Division for appropriate routing and were received in this Office on May 15, 2006. This Office has assigned your requests file number 200600501F. Please refer to this number in any future correspondence with this Unit. We have referred your requests to the Office of Public Affairs for a determination regarding expedited treatment.

    We will conduct a search to determine what records (if any) we have that are within the scope of your requests. Once we have completed our search, we will notify you as to our disposition of your requests. Please note that this search will encompass only Criminal Division records.

    If you have any questions regarding the status of this request, you may contact Denise Kennedy on (202) 616-0307.

                                              Sincerely,

                                              Thomas J. McIntyre, Chief
                                              Freedom of Information/Privacy Act Unit

# Attachment U

# centerforconstitutionalrights

666 broadway new york, ny 10012
212.614.6464 www.ccr-ny.org

December 21, 2004

<u>Via Facsimile & U.S. Mail</u>

David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Avenue, N.W.
Washington, DC 20535-0001
(202) 324-5520

**Re: Request Submitted Under the Freedom of Information Act**

Dear Freedom of Information Officer:

This letter constitutes a request ("Request") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (FOIA). The Request is submitted on behalf of the Center for Constitutional Rights ("Requester").

We are filing this Request simultaneously with the Department of Defense (including its components, the Departments of the Army, Navy, and Air Force, and the Defense Intelligence Agency), the Department of Justice (including its components, the Federal Bureau of Investigation and Office of Intelligence Policy and Review), the Department of State, and the Central Intelligence Agency. By this letter, we also request expedited processing pursuant to 5 U.S.C. § 552(a)(4)(E).

## Background on Records Requested

Recent news reports indicate that the Central Intelligence Agency "CIA") has been secretly operating a holding and interrogation center ("CIA Guantánamo Center" or "Center") within the larger American military-run prison at Guantánamo Bay, Cuba ("Guantánamo"). The reports further indicate that individuals apprehended after September 11, 2001, and held by the United States at Guantánamo ("Detainees") in the CIA Guantánamo Center have been separately interrogated by CIA agents.[1]

---

[1] See David Johnston and Neil A. Lewis, "Officials Describe Secret C.I.A. Center at Guantánamo Bay," New York Time, December 17, 2004.



News reports also indicate that the CIA Guantánamo Center is "related to a network of holding centers operated by the CIA at undisclosed locations around the world"[2] since United States authorities began capturing individuals after the attacks of September 11, 2001. Other news reports state that the "buildings used by the CIA are shrouded by high fences covered with thick green mesh plastic and ringed with floodlights . . . [t]hey sit within the larger Camp Echo complex, which was erected to house the Defense Department's high value detainees and those awaiting military trials on terrorism charges."[3] According to one military official, the "CIA's [Guantánamo] facility has been 'off-limits to nearly everyone on the base.'"[4]

According to a report by the Washington Post, in contrast to the majority of detainees held at Guantánamo, the CIA detainees "are held under separate rules and far greater secrecy."[5] Under a presidential decree and policies approved by Administration attorneys, "the CIA is allowed to capture and hold certain classes of suspects without accounting for them in any public way and without revealing the rules for their treatment."[6] According to other news reports, these detainees have not and will not receive review of their status through the Combatant Status Review Tribunals.[7]

In addition to the secret CIA Guantánamo Center, there have been numerous media reports during the last two years confirming the existence of CIA detention facilities located around the world, including one in an off-limits corner of the Bagram Airbase in Afghanistan, at Camp Cropper, a detention center on the outskirts of Baghdad International Airport,[8] on ships at sea,[9] on Britain's Diego Garcia Island in the Indian Ocean,[10] in a secret facility in Jordan,[11] and in secret locations outside of Iraq.[12] According to a report by Human Rights Watch, detainees are being held in more than 24 secret detention facilities across the globe.[13] Furthermore, government officials have admitted that even within known facilities,

---

[2] *Id.*
[3] Dana Priest and Scott Higham, "At Guantánamo, A Prison Within A Prison; CIA Has Run a Secret Facility for Some Al Qaeda Detainees, Officials Say," Washington Post, December 17, 2004, at AO1.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] Suzanne Goldenberg, " 'Ghost Detainees' at Camp Delta: Pentagon Accused of Planning To Exclude Some Guantánamo Prisoners from Review," The Guardian, July 10, 2004 at 18.
[8] Eric Schmitt, "Abuse Inquiry Says Official Exercised Little Oversight," The New York Times, Dec. 4, 2004 at A10.
[9] Eric Schmitt & Douglas Jehl, "Army Says CIA hid More Iraqis than it Claimed," The New York Times, Sept. 9, 2003 at A1.
[10] *Id.*
[11] Inigo Gilmore & Robin Gedye, "Jordan Ghost Jail 'holds al-Qa'eda men' Israeli Intelligence Expert Claims to have Solved Mystery of Missing Terrorist Leaders Captured by American Forces in Past Three Years," The Daily Telegraph, Oct. 14, 2004 at 16.
[12] *See* Dave Goldliner, "Saddam's Pals on Hunger Strike," Daily News, December 13, 2004 at 20.
[13] Human Rights Watch, "The United States Disappeared: The CIA's Long Term 'Ghost Detainees'" October, 2004.

2

CIA officials have employed a policy under which "ghost prisoners" captured in Iraq and Afghanistan have been interrogated by CIA agents and have had their "identities and locations withheld from relatives, the International Red Cross and even Congress."[14] Finally, reports have stated that CIA agents have spirited detainees in Iraq to third countries for interrogation under conditions which might violated the requirements of international humanitarian law.[15]

The Washington Post reports that other detainees captured during the war in Iraq are being held under the custody of an Army task force, "Task Force 6-26, in a secret facility in Iraq. According to that report, the Pentagon does not officially acknowledge the existence of the unit.[16]

The Request seeks records relating to the identity of, transport and location(s) of, authority over, and treatment of all unregistered, CIA, and "ghost" Detainees interdicted, interrogated, and detained by any agency or department of the United States.

Both international and United States law unequivocally prohibit hiding individuals in such a manner even during wartime. The Geneva Conventions require the registration of all detainees with the Red Cross. They also prohibit "forcible transfers as well as deportations" of individuals, and ban all "physical or moral coercion . . . in particular to obtain information." The Convention Against Torture ("CAT"), which the United States has signed and ratified, prohibits the use of torture and the infliction of other cruel, inhuman or degrading treatment or punishment.[17] The prohibition against torture is also codified in United States law at 18 U.S.C. § 2340A.

---

[14] Editorial, The Washington Post, "The CIA's Disappeared," October 26, 2004.
[15] Eric Schmitt & Douglas Jehl, "Army Says CIA hid More Iraqis than it Claimed," The New York Times, Sept. 9, 2003 at A1.
[16] Barton Gellman & R. Jeffrey Smith, "Report to Defense Alleged Abuse by Prison Interrogation Teams; Intelligence Official Informed Defense Dept. in June," The Washington Post, Dec, 8, 2004 at A1.
[17] In this Request, the terms "torture" and "cruel, inhuman or degrading treatment or punishment" have the meaning accorded them in the CAT, as interpreted by the United Nations Committee Against Torture. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, art. 1, S. Treaty Doc. No. 100-20 (1998), 1465 U.N.T.S. 85. The CAT defines "torture" as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Id. The United Nations Committee Against Torture has held that the following techniques constitute "torture" as defined under the CAT: (1) restraining in very painful conditions, (2) hooding under special conditions, (3) sounding of loud music for prolonged periods, (4) sleep deprivation for prolonged periods, (5) threats, including death threats, (6) violent shaking, and (7) using cold air to chill. See Report of the Committee Against Torture, U.N. GAOR, 52d Sess., Supp. No. 44, at para 257, U.N. Doc. A/52/44 (1997). Our use of these terms also encompasses torture and/or "cruel inhuman or degrading treatment or punishment" under any other United States constitutional or statutory provision.

The CAT further provides that "[n]o State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."[18] This provision is implemented in United States law by the Foreign Affairs Reform and Restructuring Act of 1998, which states that "[i]t shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States."[19]

To determine whether the United States is honoring its obligations under domestic and international law, Requesters seek the release of agency records as described in the numbered paragraphs below:

## RECORD REQUESTS

Please disclose the following records:

1. All records that propose, authorize, report on, or describe, or that discuss the legality or appropriateness of holding Unregistered, CIA, and/or "Ghost" Detainees in special CIA or other agency facilities for purposes of interrogation.

2. All records that discuss the creation, use and/or closure of the various centers at which the CIA and/or any other agency of the federal government has held, and/or continues to hold Unregistered, CIA, and/or "Ghost" Detainees.

3. All records reflecting the use of any private companies, other U.S. officials or citizens, and/or officials or citizens of any foreign governments regarding the interdiction, arrest, transfer, detention, questioning, interrogation, and/or other treatment of any Unregistered, CIA, or "Ghost" Detainee

4. All records reflecting standards or policies governing who may be held as an Unregistered, CIA, and/or "Ghost" Detainee and what procedural protections or guidelines, if any, are used to review the arrest, detention, and treatment of these Detainees.

5. Every location from September 11, 2001 to the present at which the CIA or any other governmental agency has been or is now holding Unregistered, CIA, or "Ghost" Detainees, the dates of operation of each such facility, whether the facility remains

---

[18] CAT, art. 3.

[19] Pub. L. No. 105-277, § 2242(b), 112 Stat. 2681 (1999) (codified as Note to 8 U.S.C. § 1231).

open at this time, the purpose of the facility, a complete list of the Detainees held at the facility (both past and current with indications as to this status), a list of techniques used for interrogation at each facility, and a list of personnel who have worked and those who continue to work at each Center.

6. All records concerning the treatment of the Unregistered Detainees held in any CIA or other governmental facility in the world. Please include all records discussing the following interrogation methods at such facilities, including but not limited to records discussing their legality or appropriateness: using "stress and duress" techniques on Detainees; using force against them; subjecting them to physical injury; requiring them to stand or kneel for prolonged periods; depriving them of sleep, food or water; holding them in awkward and painful positions for prolonged periods; denying them painkillers or medical treatment; administering or threatening to administer mind altering substances, "truth serums" or procedures calculated to disrupt the senses or personality; subjecting them to prolonged interrogation under bright lights; requiring them to be hooded, stripped, or blindfolded; binding their hands and feet for prolonged periods of time; isolating them for prolonged periods of time; subjecting them to violent shaking; subjecting them to intense noise; subjecting them to heat or cold; or threatening harm to them or other individuals.

7. All records setting forth or discussing policies, procedures or guidelines[20] relating to the detention, questioning, interrogation, transfer, and treatment (including, but not limited to the interrogation with the use of torture or other cruel, inhuman or degrading treatment or punishment) of the Unregistered, CIA, and "Ghost" Detainees, including but not limited to policies, procedures or guidelines relating to the methods listed above.

8. All records relating to measures taken, or policies, procedures or guidelines put in place, to ensure that CIA Detainees were not, are not or will not be tortured or subjected to cruel, inhuman or degrading treatment or punishment. Please include all records indicating how any such policies, procedures or guidelines were, are, or will be, communicated to personnel involved in the interrogation or detention of CIA Detainees.

9. All records indicating or discussing actual or possible violations of, or deviations from, the policies, procedures or guidelines referred to in Paragraph 4, above.

10. All records indicating or discussing serious injuries, illnesses, and/or deaths of any Unregistered, CIA, and/or "Ghost" Detainees.

---

[20] In this Request, the phrase "policies, procedures or guidelines" means policies, procedures or guidelines that were in force on September 11, 2001 or that have been put in place since that date.

11. All records, including autopsy reports and death certificates, relating to the deaths of any Unregistered, CIA, and/or "Ghost" Detainees.

12. All records relating to investigations, inquiries, or disciplinary proceedings initiated in relation to actual or possible violations of, or deviations from, the policies, procedures or guidelines referred to in Paragraph 4, above, including but not limited to records indicating the existence of such investigations, inquiries or disciplinary proceedings.

13. All records relating to the actual or alleged torture or other cruel, inhuman or degrading treatment or punishment of any Unregistered, CIA, and/or "Ghost" Detainee.

14. All records relating to policies, procedures or guidelines governing the role of health personnel in the interrogation of the Unregistered, CIA, and/or "Ghost" Detainees, including but not limited to the role of health personnel in the medical, psychiatric, or psychological assessment of Detainees immediately before, during or immediately after interrogation. Please include all records indicating how any such policies, procedures or guidelines were, are or will be communicated to personnel involved in the interrogation or detention of Detainees.

15. All records relating to medical, psychiatric or psychological assessment of any Unregistered, CIA, and/or "Ghost" Detainee or guidance given to interrogators by health personnel immediately before, during or immediately after the interrogation of any Unregistered, CIA, and/or "Ghost" Detainees..

16. All records indicating whether and to what extent the International Committee for the Red Cross ("ICRC") had, has or will have access to Unregistered, CIA, and/or "Ghost" Detainees, including but not limited to records related to particular decisions to grant or deny the ICRC access to any Detainee or group of Detainees.

17. All records indicating whether and to what extent any other non-governmental organization or foreign government had, has or will have access to the Unregistered, CIA, and/or "Ghost" Detainees, including but not limited to records related to particular decisions to grant or deny them access to any Detainee or group of Detainees.

### Fee Waiver

The Requester qualifies as "representatives of the news media" and the records are not sought for commercial use. Accordingly, fees associated with the processing of the Request should be "limited to reasonable standard charges for document duplication." 5 U.S.C. § 552(a)(4)(A)(ii)(II). These organizations are "entit[ies] that gather . . . information

6

of potential interest to a segment of the public, use . . . [their] editorial skills to turn the raw materials into a distinct work, and distribute . . . that work to an audience." *National Security Archive v. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

The CCR is a legal and public education not-for-profit organization that engages in litigation, legal research, and the production of publications in the fields of civil and international human rights. CCR also publishes newsletters, know-your-rights handbooks, and other similar materials for public dissemination. These materials are available through CCR's Development and Education & Outreach Departments. CCR also operates a website, www.ccr-ny.org, that addresses the issues on which the Center works. The website includes material on topical civil and human rights issues and material concerning CCR's work. All of this material is freely available to the public.

The records requested are not sought for commercial use, and the requesters plan to disseminate the information disclosed as a result of this FOIA request through the channels described above.

We also request a waiver of fees on the grounds that disclosure of the requested records is in the public interest and because disclosure "is likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester[s]." 5 U.S.C. § 552(a)(4)(A)(iii). This Request aims at furthering public understanding of government conduct, and specifically to help the public determine whether or not the government's commitment to domestic and international proscriptions against torture is honored in practice.

As indicated above, numerous news articles reflect the significant public interest in the records we seek. *See* articles cited *supra*; *see also Answers about Torture*, Washington Post, Mar. 16, 2003, at B06 ("The Bush administration has categorically denied that it is torturing people. But it has offered no details regarding its policies toward interrogations. . . . The secrecy surrounding U.S. policy makes any objective assessment of these allegations impossible. . . . The public is entitled to a fuller understanding."). Disclosure of the requested records will contribute significantly to the public's understanding of government conduct.

\*   \*   \*

If our request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect you to release all segregable portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

Thank you for your prompt attention to this matter.

Please respond to Barbara Olshansky, Deputy Legal Director, Center for Constitutional Rights, 666 Broadway, 7th Floor, New York, New York 10012.

Signed by:

BARBARA OLSHANSKY
RACHEL MEEROPOL
MICHAEL RATNER
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

# Attachment V



**U.S. Department of Justice**

Washington, D.C. 20530

MAR 0 4 2005

Barbara Olshansky
Deputy Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

Dear Ms. Olshansky:

Your Freedom of Information Act and/or Privacy Act (FOIA/PA) request was received by this office which serves as the receipt and referral unit for FOIA/PA requests addressed to the Department of Justice (DOJ). Federal agencies are required to respond to a FOIA request within twenty business days. This period does not begin until the request is actually received by the component within the DOJ that maintains the records sought.

We have referred your request to the DOJ component(s) you have designated or, based on descriptive information you have provided, to the component(s) most likely to have the records. The component(s) to which your request has been forwarded are indicated on the enclosed FOIA/PA Referral/Action Slip. All future inquiries concerning the status of your request should be addressed to the component(s) which now has your letter for response. For your convenience, we have enclosed the List of Department of Justice Components, Functions and Records Maintained.

Sincerely,

Ronald L. Deacon, Director
Facilities and Administrative
   Services Staff
Justice Management Division

Enclosures
Freedom of Information Act/Privacy Act
   Referral/Action Slip
List of Department of Justice Components,
   Functions and Records Maintained

**U.S. Department of Justice**
Justice Management Division

**Freedom of Information Act/Privacy Act Referral/Action Slip**

Clerk: E. White

Organization: JMD/FASS

Building & Room: LOC, Room 113

Date: MAR 0 4 2005

| To | From | | To | From | |
|---|---|---|---|---|---|
| ☒ | ☐ | Office of Information & Privacy *The Attorney General* | ☐ | ☐ | Immigration Review, Executive Office for |
| | | | ☐ | ☐ | Inspector General, Office of |
| | | | ☒ | ☐ | Intelligence Policy and Review, Office of |
| | | | ☐ | ☐ | INTERPOL, U.S. National Central Bureau |
| ☐ | ☐ | Antitrust Division | ☐ | ☐ | Justice Management Division Staff: _____ |
| ☐ | ☐ | Bureau of Alcohol, Tobacco, Firearms and Explosives | ☐ | ☐ | Justice Programs, Office of |
| ☐ | ☐ | Civil Division | ☐ | ☐ | Legal Counsel, Office of |
| ☐ | ☐ | Civil Rights Division | ☐ | ☐ | National Drug Intelligence Center |
| ☐ | ☐ | Community Relations Service | ☐ | ☐ | Pardon Attorney, Office of |
| ☐ | ☐ | Community Oriented Policing Services | ☐ | ☐ | Professional Responsibility Advisory Office |
| ☒ | ☐ | Criminal Division | ☐ | ☐ | Professional Responsibility, Office of |
| ☐ | ☐ | Dispute Resolution, Office of | ☐ | ☐ | Solicitor General, Office of |
| ☐ | ☐ | Drug Enforcement Administration | ☐ | ☐ | Tax Division |
| ☐ | ☐ | Environment & Natural Resources Division | ☒ | ☐ | U.S. Attorneys, Executive Office for |
| ☐ | ☐ | Federal Bureau of Prisons | ☐ | ☐ | U.S. Marshals Service |
| ☐ | ☐ | Federal Bureau of Investigation | ☐ | ☐ | U.S. Parole Commission |
| ☐ | ☐ | Federal Detention Trustee, Office of | ☐ | ☐ | U.S. Trustees, Executive Office for |
| ☐ | ☐ | Foreign Claims Settlement Commission | ☐ | ☐ | _____ |

Requester: Barbara Olshansky

Ref: _____

Date of Request: December 21, 2004

Received By: FOIA/PA Referral Unit    Type of Request: FOIA

Remarks: Requester advised of this referral.

FORM JMD-481
Rev. Mar. 2004

# Attachment W



**U.S. Department of Justice**

Criminal Division

---

*Office of Enforcement Operations*   *Washington, D.C. 20530*

CRM-200500270F   MAR 1 8 2005

Ms. Barbara Olshansky
Deputy Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY  10012

Dear Ms. Olshansky:

   This is to acknowledge receipt of your letter of December 21, 2004, requesting records pursuant to the Freedom of Information Act. Because your letter was not specifically addressed to this Office, your letter was initially sent to the Mail Routing and Referral Unit of the Justice Management Division for appropriate routing and was received in this Office on March 7, 2005. This Office has assigned your request file number 200500270F. Please refer to this number in any future correspondence with this Unit.

   We will conduct a search to determine what records (if any) we have that are within the scope of your request. Once we have completed our search, we will notify you as to our disposition of your request. Please note that this search will encompass only Criminal Division records.

   If you have any questions regarding the status of this request, you may contact Denise Kennedy on (202) 616-0307.

                               Sincerely,

                               Thomas J. McIntyre by KP

                               Thomas J. McIntyre, Chief
                               Freedom of Information/Privacy Act Unit

# Attachment X



**U.S. Department of Justice**

Office of Intelligence, Policy and Review

_Washington, D.C. 20530_

MAR 29 2005

Barbara Olshansky
Center for Constitutional Rights
666 Broadway
New York, NY 10012

Re: FOIA/PA #5-08

Dear Ms. Olshansky:

This responds to your December 21, 2004 Freedom of Information Act (FOIA) request for access to records pertaining to the "identity of, transport and location(s) of, authority over, and treatment of all unregistered, CIA, and ghost detainees interdicted, interrogated, and detained by any agency or department of the United States." You also requested expedited treatment of your FOIA request and the Office of Public Affairs granted your request for expedited treatment. Accordingly, your request was reviewed ahead of others routinely processed on a first-in, first-out basis.

The Office of Intelligence Policy and Review (OIPR) provides legal advice to the Attorney General and the United States intelligence agencies regarding questions of law and procedure that relate to U.S. intelligence activities; performs review functions of certain intelligence activities; and prepares and presents applications for electronic surveillance and physical search to the United States Foreign Intelligence Surveillance Court. It has been determined that the fact of the existence or non-existence of records concerning the matters relating to those set forth in your request is properly classified under Executive Order 12958, as amended. Accordingly, we can neither confirm nor deny the existence of records responsive to your request pursuant to 5 U.S.C.§ 552(b)(1).

If you are not satisfied with this response you may administratively appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530-0001, within sixty days from the date of this letter. Both the letter and envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

James A. Baker
Counsel for Intelligence Policy