# Attachment Z



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*   *Washington, D.C. 20530*

JUN 0 3 2005

Rachel Meeropol, Esq.
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

    Re: Request No. 5-08

Dear Ms. Meeropol:

    This is to advise you that your administrative appeal from the action of the Office of Intelligence, Policy, and Review on your request for information from the files of the Department of Justice was received by this Office on June 1, 2005.

    The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **05-1923**. Please mention this number in any future correspondence to this Office regarding this matter.

    We will notify you of the decision on your appeal as soon as we can. The necessity of this delay is regretted and your continuing courtesy is appreciated.

                              Sincerely,

                              Priscilla Jones
                              Chief, Administrative Staff

# Attachment AA



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*  *Washington, D.C. 20530*

JUL 0 5 2005

Rachel Meeropol, Esq.  
Center for Constitutional Rights   Re: Appeal No. 05-1923  
666 Broadway, 7th Floor        Request No. 5-08  
New York, NY  10012            RLH:NSQ:JTR

Dear Ms. Meeropol:

You appealed from the action of the Office of Intelligence Policy and Review on your request for access to records "relating to the identity of, transport and location(s) of, authority over, and treatment of all unregistered, CIA, and 'ghost' Detainees interdicted, interrogated, and detained by any agency or department of the United States."

After carefully considering your appeal, I have decided to affirm the OIPR's action on your request.

The OIPR properly refused to confirm or deny the existence of the records you requested pursuant to 5 U.S.C. § 552(b)(1), which protects classified information from disclosure under the FOIA. I am, however, referring the OIPR's response to the Department Review Committee so that it may determine if the OIPR's response was proper under Executive Order No. 12958, as amended. You will be informed if the DRC disagrees with the OIPR's action on your request.

If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Richard L. Huff  
Co-Director

# Attachment BB



U.S. Department of Justice

Federal Bureau of Investigation

Washington, D.C. 20535

December 30, 2004

MS BARBARA OLSHANSKY
CENTER FOR CONSTITUTIONAL RIGHTS
7TH FLOOR
666 BROADWAY
NEW YORK, NY 10012

Request No.: 1010923- 000
Subject: TREATMENT OF DETAINEES

Dear Ms. Olshansky:

☒ This acknowledges receipt of your Freedom of Information Act (FOIA) request to the FBI. The FOIA number listed above has been assigned to your request.

☐ For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐ To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐ If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☐ We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐ Processing delays have been caused by the large number of requests received by the FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

# Attachment CC

U.S. Department of Justice

Federal Bureau of Investigation

Washington, D.C. 20535

December 30, 2004

MS BARBARA OLSHANSKY
CENTER FOR CONSTITUTIONAL RIGHTS
7TH FLOOR
666 BROADWAY
NEW YORK, NY 10012

Request No.: 1010924-000
Subject: INTERROGATION CENTERS FOR DETAINEES

Dear Ms. Olshansky:

☒ This acknowledges receipt of your Freedom of Information Act (FOIA) request to the FBI. The FOIA number listed above has been assigned to your request.

☐ For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐ To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐ If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☐ We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐ Processing delays have been caused by the large number of requests received by the FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

# Attachment DD



U.S. Department of Justice

Federal Bureau of Investigation

Washington, D. C. 20535-0001

January 21, 2005

Ms. Barbara Olshansky
Deputy Legal Director
Center for Constitutional Rights
666 Broadway, Seventh Floor
New York, New York 10012

RE: FOIPA Request No. 1010924

Dear Ms. Olshansky:

This letter is in response to your request for expedition of your FOIA request dated December 21, 2004 to FBI Headquarters ("FBIHQ"), in which you have generally sought access to "records relating to the identity of, transport and location(s) of, authority over, and treatment of all unregistered, CIA, and 'ghost' Detainees interdicted, interrogated, and detained by any agency or department of the United States." In your December 21, 2004 FOIA request, you sought "expedited processing pursuant to 5 U.S.C. § 552(a)(4)(E)." Upon receipt of your December 21, 2004 letter, FBIHQ forwarded your FOIA request and request for expedition to the U.S. Department of Justice ("DOJ"), Office of Public Affairs ("OPA"), for its further consideration. We have been advised that, in considering your request for expedition (which improperly cited 5 U.S.C. § 552(a)(4)(E), rather than 5 U.S.C. § 552(a)(6)(E) as the statutory basis for expedition), OPA interpreted your request under the standards for expedition set forth in the DOJ regulations. In particular, OPA considered your request for expedition in accordance with 5 C.F.R. § 16.5(c)(2)(iv) – "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." FBIHQ has now been advised that on January 13, 2005, the Director of OPA has determined that your request for expedited processing under this standard should be granted, thereby concluding that the subject matter of your request is in fact a 'matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.'

By letter dated December 30, 2004, the FBI acknowledged your December 21, 2004 FOIA request and advised you that your FOIA request has been assigned Request No. 1010924. Once the FBI completes its search for all records potentially responsive to your FOIA request, you will be advised as to the outcome of this search effort.

Sincerely yours,

Dana M. Hardy /dr

David M. Hardy
Section Chief
Record/Information
Dissemination Section
Records Management Division

Federal Register / Vol. 69, No. 212 / Wednesday, November 3, 2004 / Rules and Regulations   63935

provide requested information, circumstances that warrant exceptions to time limits on responding to requests, situations in which expedited processing of requests is warranted, and certain reporting requirements. In the case of the requests by the public for declassification of national security information, several executive orders have been promulgated since the Department regulations were last amended. Executive Order 12958, issued in 1995 and most recently and most substantially amended by Executive Order 13292 of March 28, 2003, effected changes in the provisions governing mandatory declassification review as well as access to agency records by historical researchers and certain former government personnel. The final regulations take account of these changes and other changes in the law, principally by way of court decisions, as well as changes in the Department's procedures designed to implement them.

List of Subjects in 22 CFR Part 171

Administrative practice and procedure, Confidential business information, Freedom of information, Privacy.

■ Chapter 1 of Title 22 of the Code of Federal Regulations is amended by revising part 171 to read as follows:

PART 171—AVAILABILITY OF INFORMATION AND RECORDS TO THE PUBLIC

Subpart A—General Policy and Procedures

Sec.
171.1  Availability of information.
171.2  Types of records maintained.
171.3  Public reading room.
171.4  Electronic reading room.
171.5  Requests for information—types and how made.
171.6  Archival records.

Subpart B—Freedom of Information Act Provisions

171.10  Purpose and scope.
171.11  Definitions.
171.12  Processing requests.
171.13  Business information.
171.14  Fees to be charged—general.
171.15  Fees to be charged—categories of requesters.
171.16  Miscellaneous fee provisions.
171.17  Waiver or reduction of fees.

Subpart C—Executive Order 12958 Provisions

171.20  Definitions.
171.21  Declassification review.
171.22  Appeals.
171.23  Declassification in the public interest.
171.24  Access by historical researchers and certain former government personnel.
171.25  Applicability of other laws.

Subpart D—Privacy Act Provisions

171.30  Purpose and scope.
171.31  Definitions.
171.32  Request for access to records.
171.33  Request to amend or correct records.
171.34  Request for an accounting of record disclosures.
171.35  Denials of requests; appeals.
171.36  Exemptions.

Subpart E—Ethics in Government Provisions

171.40  Purpose and scope.
171.41  Covered employees.
171.42  Requests and identifying information.
171.43  Time limits and fees.
171.44  Improper use of reports.

Subpart F—Appeals Procedures

171.50  Appeals of denials of expedited processing.
171.51  Appeals of denials of fee waivers or reductions.
171.52  Appeals of denials of access to, declassification of, amendment of, or accounting of disclosures of records.

Authority: 22 U.S.C. 552, 552a; Ethics in Government Act of 1978, Pub. L. 95–521, 92 Stat. 1824, as amended; E.O. 12958, as amended, 60 FR 19825, 3 CFR, 1995 Comp., p. 333; E.O. 12600, 52 FR 23781, 3 CFR, 1987 Comp., p. 235.

Subpart A—General Policy and Procedures

§ 171.1  Availability of information.

Records of the Department of State shall be made available to the public upon request made in compliance with the access procedures established in this part, except for any records exempt by law from disclosure. Any request for records must describe the information sought in such a way (see § 171.5(c)) that an employee of the Department of State who is familiar with the subject area of the request can locate the records with a reasonable amount of effort. The sections that follow govern the response of the Department to requests for information under the Freedom of Information Act, the Privacy Act, Executive Order 12958, and the Ethics in Government Act. Regulations at 22 CFR 172.1–9 govern the response of the Department to subpoenas, court orders, and certain other requests for testimony of Department officials or disclosure of Department records in litigation to which the Department is not a party.

§ 171.2  Types of records maintained.

Most of the records maintained by the Department pertain to the formulation and execution of U.S. foreign policy. Certain records that pertain to individuals are also maintained such as applications for U.S. passports, applications for visas to enter the U.S., records on consular assistance given abroad by U.S. Foreign Service posts to U.S citizens, and records on Department employees. Further information on the types of records maintained by the Department may be obtained by reviewing the records disposition schedules which are available through the Department's Web site: http://www.state.gov or directly at the FOIA home page: http://foia.state.gov.

§ 171.3  Public reading room.

A reading room providing public access to certain Department of State material is located in the Department of State, SA–2, 515 22nd Street, NW., Washington, DC. The reading room contains material pertaining to access to information under the Freedom of Information Act, Privacy Act, E.O. 12958 and includes those statutes, regulations, guidelines, and other items required to be made available to the public under 5 U.S.C. 552(a)(2). Also available in the reading room are microfiches of records released by the Department pursuant to requests under the Freedom of Information Act and compilations of documents reviewed and released in certain special projects. The reading room is open during normal Department weekday working hours, 8:15 a.m. to 5 p.m. There are no fees for access by the public to this room or the material contained therein, but fees shall be assessed for the duplication of materials maintained in the reading room at the rate of 15 cents per page and $2.00 per microfiche card. Fees for copies made by other methods of reproduction or duplication, such as tapes, printouts, or CD-ROM, shall be the actual cost of producing the copies, including operator time. Persons wishing to use their own copying equipment must request approval in advance from the Department's Information and Privacy Coordinator, U.S. Department of State, SA–2, 515 22nd Street, NW., Washington, DC 20522–6001. The use of such equipment must be consistent with security regulations of the Department and is subject to the availability of personnel to monitor such copying.

§ 171.4  Electronic reading room.

The Department has established a site on the Internet with most of the same records and reference materials that are available in the public reading room. This site also contains information on accessing records under the FOIA and the Privacy Act. The site is a valuable source that is easily accessed by the public by clicking on "FOIA" at the Department's Web site at http://www.state.gov or directly at the FOIA home page at http://foia.state.gov.

**63936** Federal Register / Vol. 69, No. 212 / Wednesday, November 3, 2004 / Rules and Regulations

Included on the FOIA home page are links to other sites where Department information may be available. The Department's Privacy Act systems of records and the various records disposition schedules may be found on the Department's FOIA home page under "Reference Materials."

### § 171.5  Requests for information—types and how made.

(a) Requests for records in accordance with this chapter may be made by mail addressed to the Information and Privacy Coordinator, U.S. Department of State, SA-2, 515 22nd Street, NW., Washington, DC 20522-6001. Facsimile requests under the FOIA only may be sent to: (202) 261-8579. E-mail requests cannot be accepted at this time. Requesters are urged to indicate clearly on their requests the provision of law under which they are requesting information. This will facilitate the processing of the request by the Department. In any case, the Department will process the request under the provision of law that provides the greatest access to the requested records.

(b) Requests may also be made by the public in person from 8:15 a.m. to 5 p.m. at the Department of State, SA-2, 515 22nd Street, NW., Washington, DC.

(c) Although no particular request format is required, it is essential that a request reasonably describe the Department records that are sought. The burden of adequately identifying the record requested lies with the requester. Requests should be specific and include all pertinent details about the request. For FOIA requests, the request should include the subject, timeframe, any individuals involved, and reasons why the Department is believed to have records on the subject of the request. For Privacy Act requests, the request should state the type of records sought, the complete name and date and place of birth of the subject of the request, and the timeframe for the records. An original signature is required. *See* § 171.12(b) for guidance regarding third party requests. Individuals may seek assistance regarding any aspect of their requests from the Chief, Requester Liaison Division, (202) 261-8484.

(d) While every effort is made to guarantee the greatest possible access to all requesters regardless of the specific statute under which the information is requested, the following guidance is provided for individuals in requesting records:

(1) *Freedom of Information Act.* Requests for documents concerning the general activities of government and of the Department of State in particular (*see* subpart B of this part).

(2) *E.O. 12958.* Requests for mandatory review and declassification of specific Department records and requests for access to such records by historical researchers and certain former government officials (*see* subpart C of this part).

(3) *Privacy Act.* Requests from U.S. citizens or legal permanent resident aliens for records that pertain to them and that are maintained by the Department under the individual's name or personal identifier (*see* subpart D of this part).

(4) *Ethics in Government Act.* Requests for the financial Disclosure Statements of Department Employees covered by this Act (*see* subpart E of this part).

(e) *First-in/first-out processing.* As a general matter, information access requests are processed in the order in which they are received. However, if the request is specific and the search can be narrowed, it may be processed more quickly.

(f) *Cut-off date.* In determining which records are responsive to a request, the Department ordinarily will include only records in its possession as of the date the search for responsive documents is initiated, unless the requester has specified an earlier time frame.

(g) *Records previously withheld or in litigation.* Requests shall not be processed for records that have been reviewed and withheld within the past two years or whose withholding is the subject of litigation.

### § 171.6  Archival records.

The Department ordinarily transfers records to the National Archives when they are 25 years old. Accordingly, requests for records 25 years old or older should be addressed to: Archives II, 8601 Adelphi Road, National Archives at College Park, MD 20470-6001.

## Subpart B—Freedom of Information Act Provisions

### § 171.10  Purpose and scope.

This subpart contains the rules that the Department follows under the Freedom of Information Act (FOIA), 5 U.S.C. 552. The rules should be read together with the FOIA which provides additional information about access to records and contains the specific exemptions that are applicable to withholding information. Privacy Act records determined to be exempt from disclosure under the Privacy Act are processed as well under the FOIA and are subject to this subpart.

### § 171.11  Definitions.

As used in this subpart, the following definitions shall apply:

(a) *Freedom of Information Act or FOIA* means the statute codified at 5 U.S.C. 552, as amended.

(b) *Department* means the United States Department of State, including its field offices and Foreign Service posts abroad;

(c) *Agency* means any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the government (including the Executive Office of the President), or any independent regulatory agency;

(d) *Information and Privacy Coordinator* means the Director of the Department's Office of Information Programs and Services (IPS) who is responsible for processing requests for access to information under the FOIA, the Privacy Act, E.O. 12958, and the Ethics in Government Act;

(e) *Record* means all information under the control of the Department, including information created, stored, and retrievable by electronic means, regardless of physical form or characteristics, made in or received by the Department and preserved as evidence of the organization, functions, policies, decisions, procedures, operations or other activities of the Department or because of the informational value of the data contained therein. It includes records of other Government agencies that have been expressly placed under the control of the Department upon termination of those agencies. It does not include personal records created primarily for the personal convenience of an individual and not used to conduct Department business and not integrated into the Department's record keeping system or files. It does not include records that are not already in existence and that would have to be created specifically to meet a request. However, information available in electronic form shall be searched and compiled in response to a request unless such search and compilation would significantly interfere with the operation of the Department's automated information systems.

(f) *Control* means the Department's legal authority over a record, taking into account the ability of the Department to use and dispose of the record as it sees fit, to legally determine the disposition of a record, the intent of the record's creator to retain or relinquish control over the record, the extent to which Department personnel have read or relied upon the record, and the degree

# Attachment EE



U.S. Department of Justice

Federal Bureau of Investigation

Washington, D. C. 20535-0001

May 27, 2005

Ms. Barbara Olshansky
Center for Constitutional Rights
7th Floor
666 Broadway
New York, N.Y. 10012

RE: FOIPA No. 1010924
Ghost, CIA, and Unregistered Detainees, Ghost Prisoners

Dear Ms. Olshansky:

This is in reference to your Freedom of Information Act (FOIA) request dated December 21, 2004, through which you have sought access to documents related to the "identity of, transport and location(s) of, authority over, and treatment of all unregistered, CIA, and 'ghost' Detainees interdicted, interrogated, and detained by any agency or department of the United States. We have previously advised you that the FBI has assigned FOIPA number 1010924 to your request.

In response to your request, we have conducted a search of our Central Records System (CRS) at FBI Headquarters, and have also requested all FBIHQ Divisions to conduct a search for potentially responsive documents. As a result of these search efforts, we have located one document consisting of three pages that has been processed and released to you and other co-plaintiffs in the pending litigation of ACLU, et al. v. DOD, et al., Civ. A. No. 04-4151 (AKH) (S.D.N.Y.). Portions of this three-page document have been withheld pursuant to Title 5, U.S.C. § 552 (Freedom of Information Act) Exemptions (b)(2), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(D). Also enclosed is a copy of the Explanation of Exemptions form for your convenience.

You may appeal any denial contained herein by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Suite 570, Flag Building, Washington, D.C. 20530-0001, within sixty (60) days from the date of this letter. Both the envelope and the letter should be clearly marked "Freedom of Information Appeal." Please cite the FOIPA request number 1010924 assigned to your request so that it may be identified easily.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

Enclosures (2)

(Rev 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

Precedence: ROUTINE                                    Date: 05/25/2004

To: Inspection

From: Inspection
      Contact: [redacted]                              b2 -1

Approved By: [redacted]                                b6 -1

Drafted By: [redacted]                                 b7C -1

Case ID #: 297-HQ-A1327669⎵-E-3

Title: COUNTERTERRORISM DIVISION,
       INQUIRY REGARDING
       ACTIVITIES OF FBI PERSONNEL
       AT ABU GHURAYB PRISON (AGP) DURING
       OCTOBER 2003 - DECEMBER 2003

Synopsis: Forward 15 original investigative inserts and FD-540 1As to file

Enclosures: Enclosed are the following documents.

(1) Original investigative insert documenting 05/18/2004 interview of SA [redacted] CJIS, and FD-540 1A envelope containing interview notes of Supervisory Special Agent (SSA) [redacted] Inspection Division       b6 -1, b7C -1

(2) Original investigative insert documenting 05/17/2004 telephonic interview of SA [redacted] Little Rock Division, and FD-540 1A envelope containing interview notes of SSA [redacted] Inspection Division       b6 -1, b7C -1

(3) Original investigative insert documenting 05/17/2004 interview of SA [redacted] Houston Division, and FD-540 1A envelope containing interview notes of SSA [redacted] Inspection Division       b6 -1, b7C -1

(4) Original investigative insert documenting 05/18/2004 interview of LS [redacted] Houston Division, and FD-540 1A envelope containing interview notes of SSA [redacted] Inspection Division       b6 -1, b7C -1

(5) Original investigative insert documenting 05/17/2004 interview of LS [redacted] San Francisco Division, and FD-540 1A envelope containing interview notes of SSA [redacted] Inspection Division       b6 -1, b7C -1

DETAINEES-3460

15-ENCLOSURE

297-HQ-A1327669?-E-3
KBC.kc

1

    The following investigation was conducted by AI ▢  b6 -1
▢ INSD, on 05/17/2004 in New York, NY:  b7C -1

    SA ▢ NYO, Squad CD-22, ▢  b2 -1
DOB. ▢ SSAN. ▢ was interviewed. He was
advised of the identity of AI ▢ and the nature of the  b6 -1
interview  He provided the following information:  b7C -1

    SA ▢ deployed to Iraq on or about 11/13/2003
through 01/16/2004.  His primary duties while in Iraq consisted  b6 -1
of conducting FCI interviews at Camp Cropper in the vicinity of
Baghdad International Airport.  He worked primarily with SA ▢  b7C -1
He went to Abu Ghurayb prison on approximately five
occasions.  On one occasion he was searching for a "ghost"
detainee through both cell blocks and the tent compound, but did
not locate him.  He described a "ghost" detainee as someone
detained at the prison by intelligence personnel without any
record of the detainee's presence.  He did not know how many such
detainees existed.  On one occasion he processed for
fingerprinting and DNA approximately 25-50 detainees at the
prison  He also introduced a detainee whose name he could not
recall to the Iraqi Survey Group (ISG) because of the WMD
knowledge that detainee possessed  The ISG was U.S. military, to
the best of his recollection.  He also dealt with Department of
Defense (DOD) personnel who were civilian clothes  He believed
they represented Defense Intelligence Agency.

    Other than his search for the "ghost" detainee in the
cell blocks, he interviewed detainees in the stand alone
buildings known as "wood" and "steel," respectively.  He actually
interviewed the "ghost" detainee prior to the search on one
occasion and saw no signs of abuse.  The detainee was
subsequently released, and that is why SA ▢ could not locate  b6 -1,3,4
him during the search.  These stand-alone buildings were located  b7C -1,3,4
outside the cell blocks.  Those detainees were from the tent
compound, not the main cell blocks.  He recalled interviewing  b7D -1
▢ with SA ▢  b7F -1
was a tent compound detainee  The detainee was delivered to the
stand alone building by MPs who did not participate in the
interview.  The detainee was brought to the interview in hand
cuffs.  He also saw detainees wearing hoods while they were
escorted on the prison grounds.

    SA ▢ did not observe any misconduct or  b6 -1
mistreatment of prisoners at any time during his presence at Abu  b7C -1
Ghurayb prison  He conducted a thorough search of all the cells

DETAINEES-3471

297-HQ-A13276697-E

2

in the prison for the "ghost" detainee and saw no evidence of any mistreatment or misconduct.

b6 -1

SA [REDACTED] had no reason to believe that any misconduct or mistreatment of detainees was occurring at the prison. While processing numerous (25-50) detainees for fingerprints and DNA samples, he noticed no marks or signs of abuse on the prisoners. He did not recall meeting the guards who were depicted in the media allegedly abusing prisoners in the prison.

b7C -1

b6 -1

SA [REDACTED] advised his interviews conducted at Camp Cropper and Abu Ghurayb prison were reported via EC. He did not advise detainees of their Miranda Warning rights, and could not recall why. His interviews always took place in the stand alone buildings previously described and none of his interviewees were housed in units 1A or 1B. He had no substantive contact with Military Police personnel in charge of the prison. The only other member of his interview team at the prison was SA [REDACTED]. He did not recall a translator being present because the subject of the interview spoke English.

b7C -1

b6 -1

b7C -1

During his interviews, no interviewee brought to his attention any acts of misconduct or mistreatment by U.S personnel. He was in possession of no pictures, video tapes, or notes of actions depicting misconduct or inappropriate behavior by U.S. personnel against detainees. He was not aware of anyone in possession of such items. He had no knowledge of DOD or DOJ authorization for the use of certain interrogation techniques. He and other interviewers, including the MI handlers, would discuss interview strategies as to whether or not the interview would use a positive, rapport building tone, or an accusatorial, negative tone. No discussion or thought was given to using physical interrogation techniques during any interview. He had no knowledge of sleep deprivation or isolation used on detainees. He had no additional information relating to the abuse/mistreatment of detainees.

DETAINEES-3472

OPCA-16a (Rev. 12-3-96)

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b) (1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(b) (2)  related solely to the internal personnel rules and practices of an agency;

(b) (3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b) (4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b) (5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b) (6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b) (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

(b) (8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b) (9)  geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d) (5)  information compiled in reasonable anticipation of a civil action proceeding;

(j) (2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k) (1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k) (2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k) (3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k) (4)  required by statute to be maintained and used solely as statistical records;

(k) (5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k) (6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k) (7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ