# Attachment FF



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information/Privacy Act Unit*
*600 E Street, N.W., Room 7300*
*Washington, D.C. 20530*
*202-616-6757   Fax 202-616-6478*

MAR 15 2005

Request Number: 05-749

Requester: Barbara Olshansky

Subject: Third parties (Unregistered Detainees and Program Violators)

Dear Requester:

　　The Executive Office for United States Attorneys has received your Freedom of Information Act/Privacy Act request. Your request was split into 2 files based on the subjects addressed. This response pertains only to that portion of your request with the above subject. It has been assigned the above number.

　　You have requested the names and other information about alleged unregistered detainees and persons investigated for violating policies concerning such detainees. Any release to you of such records, if they do exist, would be in violation of the Privacy Act. 5 U.S.C. 552a. The requested material would also be exempt from release pursuant to 5 U.S.C. 552(b)(6) and/or (b)(7)(C) which pertain to records whose disclosure would result in an unwarranted invasion of personal privacy. See *U.S. Department of Justice v. Reporters Committee for Freedom of the Press et al.*, 489 U.S. 749 (1989).

　　This is a final determination and your request for information will be closed. You may appeal my decision in this matter by writing within 60 days, to:

　　　　　　Office of Information and Privacy
　　　　　United States Department of Justice
　　　　　　Flag Building, Suite 570
　　　　　　Washington, D.C. 20530

　　Both the envelope and letter of appeal must be clearly marked "Freedom of Information Act/Privacy Act Appeal."

　　After the appeal has been decided, you may have judicial review by filing a complaint in the United States District Court for the judicial district in which you reside or have your principal place of business; the judicial district in which the requested records are located; or in the District of Columbia.

　　　　　　　　　　　Sincerely,

　　　　　　　　　　　Marie A. O'Rourke
　　　　　　　　　　　Assistant Director



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information/Privacy Act Unit*
*600 E Street, N.W., Room 7300*
*Washington, D.C. 20530*
*202-616-6757   Fax 202-616-6478*

MAR 15 2005

Request Number: 05-747

Subject: UNREGISTERED DETAINEES (POLICIES, PROGRAM)/DIRECTOR'S OFC.

Requester: BARBARA OLSHANSKY

Dear Requester:

The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act/Privacy Act (FOIA/PA) request. It has been assigned the above number. Please give us this number if you write about your request. If we need additional information, we will contact you within two weeks.

Your request will be placed in the order in which it was received for processing, unless it is a very large request (Project Request). Then, it will be placed in a separate group of Project Requests, which are also processed in the order received.

EOUSA makes every effort to process most requests within a month (20 working days). There are some exceptions, for example, Project Requests take approximately nine months to process. Requests for "all information about myself in criminal case files" are usually Project Requests. If you have made such a request, you may either write us and narrow your request for specific items, or you may expect that the processing of your request may take nine months from the date of this letter.

By making a FOIA/PA request, you have agreed to pay fees up to $25, as stated in 28 CFR §16.3(c), unless you have requested a fee waiver. Please note that pursuant to 28 C.F.R. 16.11, we are required to charge fees for time used to search for the documents you have requested and for duplication of all pages released to you. Normally, search time is charged at a rate of $28 per hour after the first two hours which are free, and duplication fees are $0.10 per page after the first 100 pages which are free. Please do not send any payment at this time! If we anticipate that fees will exceed $25 or the amount you have stated in your letter (if greater than $25), we will normally notify you of our estimate of fees. After we have received your agreement to pay for the expected fees (or you have narrowed your request to reduce fees) and we have processed your request, we will require payment for the accumulated charges before we release documents to you. Without such payment, your request file will be closed without further action.

Sincerely,

*Marie A. O'Rourke*

Marie A. O'Rourke
Assistant Director

Form No. 001 - 9/03

Your expedite request has been forwarded to the Office of Public Affairs pursuant to 28 CFR16.5(d)(1)(iv).



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information/Privacy Act Unit*
*600 E Street, N.W., Room 7300*
*Washington, D.C. 20530*
*202-616-6757  Fax 202-616-6478*

Request Number: 05-748                                                                          MAR 1 5 2005

Subject: UNREGISTERED DETAINEES (POLICIES, PROGRAM)/CTD

Requester: BARBARA OLSHANSKY

Dear Requester:

The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act/Privacy Act (FOIA/PA) request. It has been assigned the above number. Please give us this number if you write about your request. If we need additional information, we will contact you within two weeks.

Your request will be placed in the order in which it was received for processing, unless it is a very large request (Project Request). Then, it will be placed in a separate group of Project Requests, which are also processed in the order received.

EOUSA makes every effort to process most requests within a month (20 working days). There are some exceptions, for example, Project Requests take approximately nine months to process. Requests for "all information about myself in criminal case files" are usually Project Requests. If you have made such a request, you may either write us and narrow your request for specific items, or you may expect that the processing of your request may take nine months from the date of this letter.

By making a FOIA/PA request, you have agreed to pay fees up to $25, as stated in 28 CFR §16.3(c), unless you have requested a fee waiver. Please note that pursuant to 28 C.F.R. 16.11, we are required to charge fees for time used to search for the documents you have requested and for duplication of all pages released to you. Normally, search time is charged at a rate of $28 per hour after the first two hours which are free, and duplication fees are $0.10 per page after the first 100 pages which are free. Please do not send any payment at this time! If we anticipate that fees will exceed $25 or the amount you have stated in your letter (if greater than $25), we will normally notify you of our estimate of fees. After we have received your agreement to pay for the expected fees (or you have narrowed your request to reduce fees) and we have processed your request, we will require payment for the accumulated charges before we release documents to you. Without such payment, your request file will be closed without further action.

Sincerely,

*Marie A. O'Rourke*

Marie A. O'Rourke
Assistant Director

Form No. 001 - 9/03

# Attachment GG



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information/Privacy Act Staff*
*600 E Street, N.W., Room 7300*
*Washington, D.C. 20530*
*202-616-6757  Fax 202-616-6478*

MAY – 6 2005

Request Number:  **05-747**            Date of Receipt: **March 5, 2005**

Requester:  **Barbara Olshansky**

Subject:  **Unregistered Detainees (Policies Program)**

Dear Requester:

In response to your Freedom of Information Act and/or Privacy Act request, the paragraph(s) checked below apply:

1.    [  ]    A search for records located in this office has revealed no records.

2.    [ X ]    A search for records located in the Executive Office for United States Attorney's Counsel for **Director** has revealed no records.

3.    [  ]    The records which you have requested cannot be located.

4.    [  ]    This office is continuing its work on the other subject/districts mentioned in your request.

5.    [ X ]    This is the final action my office will take on this particular request.

You may appeal my decision in this matter by writing within sixty (60) days, to:

Office of Information and Privacy
United States Department of Justice
Flag Building, Suite 570
Washington, D.C. 20530

Both the envelope and the letter of appeal must be clearly marked "Freedom of Information Act/Privacy Act Appeal."

After the appeal has been decided, you may have judicial review by filing a complaint in the United States District Court for the judicial district in which you reside or have your principal place of business; the judicial district in which the requested records, if any, are located; or in the District of Columbia.

Sincerely,

Marie A. O'Rourke
Assistant Director

Form No. 005 - 11/02

# Attachment HH



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information/Privacy Act Staff*
*600 E Street, N.W., Room 7300*
*Washington, D.C. 20530*
*202-616-6757  Fax 202-616-6478*

MAY - 6 2005

Request Number: __05-748__          Date of Receipt: __March 4, 2005__

Requester: __Barbara Olshansky__

Subject: __Unregistered detainees (Policies Program)__

Dear Requester:

      In response to your Freedom of Information Act and/or Privacy Act request, the paragraph(s) checked below apply:

1.    [   ]    A search for records located in this office has revealed no records.

2.    [ X ]    A search for records located in the Executive Office for United States Attorney's Counsel to Director has revealed no records.

3.    [   ]    The records which you have requested cannot be located.

4.    [   ]    This office is continuing its work on the other subject/districts mentioned in your request.

5.    [ X ]    This is the final action my office will take on this particular request.

      You may appeal my decision in this matter by writing within sixty (60) days, to:

Office of Information and Privacy
United States Department of Justice
Flag Building, Suite 570
Washington, D.C. 20530

      Both the envelope and the letter of appeal must be clearly marked "Freedom of Information Act/Privacy Act Appeal."

      After the appeal has been decided, you may have judicial review by filing a complaint in the United States District Court for the judicial district in which you reside or have your principal place of business; the judicial district in which the requested records, if any, are located; or in the District of Columbia.

Sincerely,

Marie A. O'Rourke
Assistant Director

Form No. 005 - 11/02

Attachment II

 **U.S. Department of Justice**

_Washington, D.C. 20530_

APR 2 2 2005

Barbara Olshansky
Deputy Legal Director
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY  10012

Dear Ms. Olshansky:

Your Freedom of Information Act and/or Privacy Act (FOIA/PA) request was received by this office which serves as the receipt and referral unit for FOIA/PA requests addressed to the Department of Justice (DOJ).  Federal agencies are required to respond to a FOIA request within twenty business days.  This period does not begin until the request is actually received by the component within the DOJ that maintains the records sought.

Your request was originally sent to the Office of Information and Privacy (OIP) and Criminal Division (CRM).  The OIP and CRM have returned your request to us because they do not have the records you requested.  For further consideration, we are forwarding your request to the Federal Bureau of Investigation.  All future inquiries concerning the status of your request should be addressed to the office listed below:

FOIA/PA
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Avenue, NW
Washington, DC  20535
(202) 324-5520

Sincerely,

Ronald L. Deacon, Director
Facilities and Administrative
   Services Staff
Justice Management Division

Enclosure
Freedom of Information Act/Privacy Act
   Referral/Action Slip

**U.S. Department of Justice**
Justice Management Division

**Freedom of Information Act/Privacy Act
Referral/Action Slip**

Clerk: E. White

Date:

APR 2 2 2005

Organization: JMD/FASS

Building & Room:   LOC, 113

| To | From | | To | From |
|---|---|---|---|---|
| ☐ | ☐ Office of Information & Privacy | | ☐ | ☐ Immigration Review, Executive Office for |
| | _____ | | ☐ | ☐ Inspector General, Office of |
| | _____ | | ☐ | ☐ Intelligence Policy and Review, Office of |
| | _____ | | ☐ | ☐ INTERPOL, U.S. National Central Bureau |
| | _____ | | ☐ | ☐ Justice Management Division |
| ☐ | ☐ Antitrust Division | | | Staff: _____ |
| ☐ | ☐ Bureau of Alcohol, Tobacco, Firearms and Explosives | | ☐ | ☐ Justice Programs, Office of |
| ☐ | ☐ Civil Division | | ☐ | ☐ Legal Counsel, Office of |
| ☐ | ☐ Civil Rights Division | | ☐ | ☐ National Drug Intelligence Center |
| ☐ | ☐ Community Relations Service | | ☐ | ☐ Pardon Attorney, Office of |
| ☐ | ☐ Community Oriented Policing Services | | ☐ | ☐ Professional Responsibility Advisory Office |
| ☐ | ☐ Criminal Division | | ☐ | ☐ Professional Responsibility, Office of |
| ☐ | ☐ Dispute Resolution, Office of | | ☐ | ☐ Solicitor General, Office of |
| ☐ | ☐ Drug Enforcement Administration | | ☐ | ☐ Tax Division |
| ☐ | ☐ Environment & Natural Resources Division | | ☐ | ☐ U.S. Attorneys, Executive Office for |
| ☐ | ☐ Federal Bureau of Prisons | | ☐ | ☐ U.S. Marshals Service |
| ☑ | ☐ Federal Bureau of Investigation | | ☐ | ☐ U.S. Parole Commission |
| ☐ | ☐ Federal Detention Trustee, Office of | | ☐ | ☐ U.S. Trustees, Executive Office for |
| ☐ | ☐ Foreign Claims Settlement Commission | | ☐ | ☐ _____ |

Requester: Barbara Olshansky

Ref: _____

Date of Request: December 21, 2004

Received By: FOIA/PA Mail Referral Unit          Type of Request:  FOIA

Remarks:  Requester advised of this referral.

FORM JMD-481
Rev. Mar. 2004

# Attachment JJ

# INTERNATIONAL HUMAN RIGHTS CLINIC
## WASHINGTON SQUARE LEGAL SERVICES, INC.

245 SULLIVAN STREET, 5th FLOOR, NEW YORK, NY 10012, USA
TEL: +1-212 998-6431 - FAX: +1-212- 995-4031

MARGARET L. SATTERTHWAITE
*Clinic Director*

SMITA NARULA
*Clinic Director*

December 28, 2007

Via Facsimile and U.S. Mail:

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505
(Ph.) 703-613-1287
(Fax) 703-613-3007

*Re:  Request Under the Freedom of Information Act for Specific Records Concerning
Information on Secret Detention And Rendition*

Dear Freedom of Information Act Officer:

This letter constitutes a request ("Request") pursuant to the Freedom of Information Act,
5 U.S.C. § 552 ("FOIA").  The request is submitted by the International Human Rights Clinic of
Washington Square Legal Services[1] ("WSLS"), on behalf of WSLS, Amnesty International
("AI"), and the Center for Constitutional Rights ("CCR").  We are currently engaged in litigation
with your agency concerning two requests filed on April 25, 2006 by WSLS and AI, and one
request filed on December 21, 2004 by CCR, all of which seek records pertaining to rendition
and secret detention in connection with the U.S. Government's anti-terrorism efforts.[2]  The
attorneys representing the U.S. Government in this litigation are being sent copies of this request.

We seek the opportunity to inspect and copy, if necessary, the specific records listed
below, or, in the event that any of the specified records have been destroyed, any records which
are integrally related to, summarize, or are interchangeable with said records.  We seek records
in the possession of the Central Intelligence Agency, including any officers, divisions, or bureaus
thereof.  We further request that you expedite processing pursuant to 5 U.S.C. § 552(a)(6)(e)(i).

## Records Requested

For the purpose of this request, the term "records" includes any and all reports,
statements, examinations, memoranda, correspondence, designs, maps, photographs, microfilms,
computer tapes or disks, audio or videotapes or transcripts thereof, rules, regulations, codes,
handbooks, manuals, or guidelines.

Please disclose the following records, or, in the event that they have been destroyed, any
records that are integrally related to, summarize, or are interchangeable with said records.

---

[1] WSLS is the corporation that supports the International Human Rights Clinic ("the Clinic") of the New York
University School of Law.  The Clinic is a project of NYU School of Law's Center for Human Rights and Global
Justice.

[2] Amnesty International USA et al. v. CIA, No. 07-cv-5435 (S.D.N.Y.).

1. The spring 2004 report by the Office of the Inspector General (OIG) on the CIA's compliance with the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. The existence of this document was publicly revealed in October 2007 by the *New York Times.*
   o  "A report by Mr. Helgerson's office completed in the spring of 2004 warned that some C.I.A.-approved interrogation procedures appeared to constitute cruel, inhuman and degrading treatment, as defined by the international Convention Against Torture." Mark Mazzetti and Scott Shane, *C.I.A. Watchdog Becomes Subject Of C.I.A. Inquiry,* N.Y. Times, October 12, 2007, at A1.

2. The list of "erroneous renditions" compiled by the CIA's OIG. This list was described by several intelligence officials in a December 2005 article in the *Washington Post.*
   o  "The CIA inspector general is investigating a growing number of what it calls 'erroneous renditions,' according to several former and current intelligence officials. One official said about three dozen names fall in that category; others believe it is fewer. The list includes several people whose identities were offered by al Qaeda figures during CIA interrogations, officials said." Dana Priest, *Wrongful Imprisonment: Anatomy of a CIA Mistake*, Wash. Post, December 4, 2005, at A1.

3. The fax sent by the CIA to the Royal Canadian Mounted Police Criminal Intelligence Directorate (RCMP CID) in the afternoon or evening of Oct. 3, 2002, asking a number of questions about Maher Arar. The existence of this document was publicly acknowledged in the official report of the Canadian Government's inquiry into the rendition of Mr. Arar.
   o  "Late in the afternoon of October 3, the CIA sent a fax to RCMP CID, asking a number of questions about Mr. Arar." Commission of Inquiry into the Actions of Canadian Officials in Relation to Maher Arar, <u>Report of the Events Relating to Maher Arar, Addendum: Disclosure of Information Authorized by the Federal Court of Canada in accordance with Sections 38.04 and 38.06 of the *Canada Evidence Act*</u> 157 (2006) (based on 2005 testimony of Gar Pardy, Director General of the Consular Affairs Bureau of Foreign Affairs and International Trade Canada (DFAIT )) (Transcripts of Testimony available at http://www.ararcommission.ca/eng/14b.htm).

4. The document sent by the CIA to the RCMP CID, the Canadian Security Intelligence Service (CSIS), and Project A-O Canada on Nov. 5, 2002 in response to requests for information on the whereabouts of Mr. Arar. The existence of this document was publicly acknowledged in the official report of the Canadian Government's inquiry into the rendition of Maher Arar.
   o  "On November 5, the CIA sent CSIS and Project A-O Canada a written response to CSIS' [*sic*] October 10 request for information about the circumstances of Mr. Arar's removal." Commission of Inquiry into the Actions of Canadian Officials in Relation to Maher Arar, <u>Report of the Events Relating to Maher Arar, Addendum: Disclosure of Information Authorized by the Federal Court of Canada in accordance with Sections 38.04 and 38.06 of the *Canada Evidence Act*</u> 307 (2006). "An identical reply was also sent to RCMP Headquarters." *Id*. at 180

(based on testimony of Dan Livermore of the Security and Intelligence Branch of DFAIT).

5.  The cables between the Deputy Director of Operations (or other agency official(s)) at the CIA and the operative(s) in the field discussing and/or approving the use of a slap on detainee Abu Zubaydah (Zein al Abideen Mohamed Hussein).  The existence of such cables was acknowledged by former CIA employee John Kiriakou during an ABC News program on Dec. 10, 2007.

    o  "There was discussion: 'Should we slap him? What's to be gained if we slap him?' . . . The Deputy Director for Operations says, 'Yes, you can slap him.'  The cable goes out.  They slap him." *"CIA – Abu Zubaydah": Interview with John Kiriakou* (ABC News broadcast Dec. 10, 2007), *available at* http://abcnews.go.com/images/Blotter/brianross_kiriakou_transcript1_blotter0712 10.pdf and http://abcnews.go.com/images/Blotter/brianross_kiriakou_transcript2_blotter0712 10.pdf

6.  The cables between the Deputy Director of Operations at the CIA (or other agency official(s)) and the operative(s) in the field discussing and/or approving the use of a slap on detainee Khalid Sheikh Mohammed.  The existence of such cables was acknowledged by former CIA employee John Kiriakou during an ABC News program on Dec. 10, 2007. *Id.*

7.  The cables between the Deputy Director of Operations (or other agency official(s)) at the CIA and the operative(s) in the field discussing and/or approving the use of an 'attention shake' on Abu Zubaydah.  The existence of such cables was acknowledged by former CIA employee John Kiriakou during an ABC News program on Dec. 10, 2007.

    o  "[W]e had these trained interrogators who were sent to his location-- to use the enhanced techniques as necessary to get him to open up... [T]hese enhanced techniques included everything from-- what was called an attention shake where you grab the person by their lapels and sha[ke] them." *Id.*

8.  The cables between the Deputy Director of Operations at the CIA (or other agency official(s)) and the operative(s) in the field discussing and/or approving the use of an 'attention shake' on Khalid Sheikh Mohammed.  The existence of such cables was acknowledged by former CIA employee John Kiriakou during an ABC News program on Dec. 10, 2007.  *Id.*

9.  The cables between the Deputy Director of Operations at the CIA (or other agency official(s)) to the operative(s) in the field discussing and/or approving the use of sleep deprivation on Abu Zubaydah.  The existence of such cables was acknowledged by former CIA employee John Kiriakou during an ABC News program on Dec. 10, 2007. *Id.*

10.  The cables between the Deputy Director of Operations at the CIA (or other agency official(s)) and the operative(s) in the field discussing and/or approving the use of sleep deprivation on Khalid Sheikh Mohammed.  The existence of such cables was

acknowledged by former CIA employee John Kiriakou during an ABC News program on Dec. 10, 2007. *Id.*

11. The cables between the Deputy Director of Operations at the CIA (or other agency official(s)) and the operative(s) in the field discussing and/or approving the use of waterboarding on Abu Zubaydah. The existence of such cables was acknowledged by former CIA employee John Kiriakou during an ABC News program on Dec. 10, 2007. *Id.*
    o "Two people were water boarded, Abu Zubaydah being one." *Id.*

12. The cables between the Deputy Director of Operations at the CIA (or other agency official(s)) and the operative(s) in the field discussing and/or approving the use of waterboarding on Khalid Sheikh Mohammed. The existence of such cables was acknowledged by former CIA employee John Kiriakou during an ABC News program on Dec. 10, 2007. *Id.*
    o "It's my understanding that he [Khalid Sheikh Mohammed] was—that he was also water boarded." *Id.*

13. Video tapes, audio tapes, and transcripts of materials related to interrogations of detainees that were acknowledged to exist during the case of *United States v. Zacharias Moussaoui* and described in a letter from United States Attorney Chuck Rosenberg to Chief Judge Karen Williams, United States Court of Appeals for the Fourth Circuit, and Judge Leonie Brinkema, United States District Court, Eastern District of Virginia, dated October 25, 2007, including, but not limited to two video tapes and one audio tape of interrogations of detainees, the transcripts of those tapes submitted for the court's review in the *Moussaoui* case, and the intelligence cables summarizing the substance of those tapes.
    o Letter from Chuck Rosenberg, U.S. Attorney, to the Honorable Karen J. Williams and the Honorable Leonie Brinkema, (Oct. 25, 2007), *available at* http://graphics8.nytimes.com/packages/pdf/world/20071207_intel_letter.pdf.

14. The Sept. 13, 2007 notification (described in a letter from Chuck Rosenberg to Judges Williams and Brinkema, dated October 25, 2007) from the attorney for the CIA informing the United States Attorney for the Eastern District of Virginia that the CIA had obtained a video tape of an interrogation of one or more detainees. *Id.*

15. The communications between the CIA and the U.S. Embassy in Sana'a, Yemen, relating to the apprehension, transfer and/or detention of Mohamed Farag Ahmad Bashmilah (Muhammad Bashmilah). These communications likely occurred on or around March 5, 2005, and were preparatory to a communication between the U.S. Embassy in Sana'a and the Government of Yemen that has been acknowledged by the Government of Yemen.
    o "On March 5, 2005, the United States, through the Liaison Officer in Sanaa [sic], informed the Central Organization for Political Security in Yemen that Mr. Mohamed Bashmilah was being held in their custody." Letter from the Embassy of the Republic of Yemen in France to Mr. Dick Marty, Council of Europe (Mar. 27, 2006) (filed as Exhibit G to Declaration of Mohamed Farag Ahmad Bashmilah in *Mohamed et al. v. Jeppesen Dataplan, Inc.*, No. 5:07-cv-02798 (N.D.Cal. Dec. 14, 2007)).

16. The communications between the U.S. Government and the Government of Yemen, and/or any documents pertaining to the transfer of Mohamed Farag Ahmad Bashmilah from U.S. custody to the custody of the Government of Yemen on or near May 5, 2005. The Government of Yemen has acknowledged the existence of communications between the U.S. Government and the Government of Yemen concerning Mr. Bashmilah's transfer. *Id.*

17. A copy of the files relating to Salah Nasser Salim Ali and Mohamed Farag Ahmad Bashmilah provided to the Government of Yemen on Nov. 10, 2005 by the United States Government. The Government of Yemen has acknowledged the existence of these files.
    o Letter from Ghalib Mathar al-Qamish, Chief of the Central Department of Political Security, Yemen, to the Special Rapporteur on the question of Torture and the Special Rapporteur on the question of Human Rights and Counter-Terrorism (Dec. 20, 2005) (filed as Exhibit V to Declaration of Mohamed Farag Ahmad Bashmilah in *Mohamed et al. v. Jeppesen Dataplan, Inc.*, No. 5:07-cv-02798 (N.D.Cal. Dec. 14, 2007)).

## Fee Waiver

The requesters qualify as "representatives of the news media" and the records sought are not for commercial use. Moreover, this Request "is likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester[s]." 5 U.S.C. § 552(a)(4)(A)(iii).

The International Human Rights Clinic of WSLS is a project of the Center for Human Rights and Global Justice ("CHRGJ") and an official program of NYU School of Law, composed of students and directed by clinical professors who engage in research and advocacy on human rights issues. CHRGJ is a research center at NYU School of Law. CHRGJ aims to advance human rights and respect for the rule of law through advocacy, scholarship, education, and training. CHRGJ publishes reports and also disseminates information through its website, www.chrgj.org.

Amnesty International is a non-governmental organization and a world-wide movement of members who campaign for internationally recognized human rights. AI publishes reports, press-briefings, newsletters, and urgent action requests informing the public about human rights, including torture and disappearances. AI also disseminates information through its website, www.amnesty.org.

The Center for Constitutional Rights is a legal and public education not-for-profit organization that engages in litigation, legal research, and the production of publications in the fields of civil and international human rights. CCR also publishes newsletters, know-your-rights handbooks, and other similar materials for public dissemination. These materials are available through CCR's Development and Education & Outreach Departments. CCR also operates a website, www.ccr-ny.org, that addresses the issues on which CCR works. The website includes material on topical civil and human rights issues and material concerning CCR's work. All of this material is freely available to the public.

The requesters plan to disseminate the information disclosed as a result of this FOIA request through the channels described above. This Request aims generally to further public understanding of government conduct; and particularly to contribute to the current debate around the rendition and secret detention policies and programs put in place by the CIA.

## Expedited Processing

Expedited processing is warranted under 5 U.S.C. § 552(a)(6)(E)(i)(I), as there is a "compelling need" for the records sought in this request: the requesters are primarily engaged in "disseminating information" and there is an "urgency to inform the public concerning the actual or alleged Federal Government Activity" under 5 U.S.C. § 552(a)(6)(E)(v)(II). There is also a "compelling need" because failure to obtain the records on an expedited basis "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I).

CHRGJ is engaged in disseminating information about human rights, including in particular, the Federal Government's role in upholding human rights. As indicated above, this information is disseminated through published reports and CHRGJ's website. The Clinic actively supports this work, and WSLS houses the clinic. AI is primarily engaged in disseminating information about human rights, through its reports, newsletters, press-briefings, urgent action requests, and on its website. CCR disseminates information through newsletters, publications, handbooks, and through its website. All three organizations seek the documents listed in this request to educate the public about the CIA's secret detention and rendition program, which is currently the subject of high-profile debate.[3]

Moreover, failure to obtain the records can reasonably be expected to pose an imminent threat to the physical safety of individuals undergoing or at risk of undergoing ongoing unlawful detention and abuse with the involvement of or at the behest of U.S. agents abroad. 5 U.S.C. § 552(a)(6)(E)(v)(I). Allegations of torture and ill-treatment have surrounded the secret detention and rendition program. Failure to publicly expose and thereby halt the practices prompting this Request could reasonably be expected to pose an imminent threat to the physical safety and lives of at least one individual. CIA director Michael Hayden recently admitted that the secret detention and rendition program remains in operation.[4]

---

[3] *See, e.g.,* Joby Warrick & Dan Eggen, *Waterboarding Recounted: Ex-CIA Officer Says It 'Probably Saved Lives' but Is Torture*, Wash. Post., Dec. 11, 2007, at A1; Pamela Hess, *Congress Wants Answers on CIA Tapes*, Wash. Post., Dec. 11, 2007, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2007/12/10/AR2007121000087.html; Mark Mazetti, CIA Destroyed Two Tapes Showing Interrogations, N.Y. Times, Dec. 7, 2007, at A1; CENTER FOR HUMAN RIGHTS AND GLOBAL JUSTICE, SURVIVING THE DARKNESS: TESTIMONY FROM THE U.S. "BLACK SITES" (2007), *available at* http://www.chrgj.org/projects/docs/survivingthedarkness.pdf.

[4] CIA Director Hayden recently discussed the secret detention and rendition program on the *Charlie Rose Show*, explaining that as of 2007, the U.S. program of "rendition" and CIA detention continued. *The Charlie Rose Show: Interview with Director Michael Hayden* (PBS television broadcast Oct. 22 & 23, 2007) (*transcript available at* https://www.cia.gov/news-information/press-releases-statements/interview-with-charlie-rose.html).

\*        \*        \*

If this request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect release of all segregable portions of otherwise exempt material. We also reserve the right to appeal a decision to withhold any information.

We look forward to your reply to the Request **within twenty (20) days**, as required under 5 U.S.C. § 552(a)(6)(A)(i).

Thank you for your prompt attention. Should you have any questions in this matter, please contact Margaret L. Satterthwaite, International Human Rights Clinic, Washington Square Legal Services, Inc., New York University School of Law, 245 Sullivan Street, New York, NY 10012; tel.: (212) 998-6657.

Sincerely,

Margaret L. Satterthwaite
Director, International Human Rights Clinic
Washington Square Legal Services, Inc.
New York University School of Law
245 Sullivan Street
New York, NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
E-mail: margaret.satterthwaite@nyu.edu

Copies to:          Jeannette Vargas, Esq., Assistant United States Attorney
                    Brian Feldman, Esq., Assistant United States Attorney
                    Emily E. Daughtry, Esq., Special Assistant United States Attorney
                    Kyle DeYoung, Esq., WilmerHale
                    Emi Maclean, Esq., Center for Constitutional Rights

# Attachment KK

Central Intelligence Agency



Washington, D.C. 20505

Ms. Margaret L. Satterthwaite                                         JAN 3 0 2008
Director, International Human Rights Clinic
Washington Square Legal Services, Inc.
New York University School of Law
245 Sullivan Street
New York, NY 10012

Reference: F-2008-00611

Dear Ms. Satterthwaite:

On 28 December 2007, the Information and Privacy Coordinator received your
Freedom of Information Act (FOIA) request of the same date. Specifically, you request
copies of the following records:

1. The spring 2004 report by the Office of the Inspector General (OIG) on the
   CIA's compliance with the Convention Against Torture and Other Cruel,
   Inhuman or Degrading Treatment or Punishment.
2. The list of "erroneous renditions" compiled by the CIA's OIG.
3. The fax sent by the CIA to the Royal Canadian Mounted Police Criminal
   Intelligence Directorate (RCMP CID) in the afternoon or evening of Oct. 3,
   2002, asking a number of questions about Maher Arar.
4. The document sent by the CIA to RCMP CID, the Canadian Security
   Intelligence Service (CSIS), and Project A-O Canada on Nov. 5, 2002 in
   response to requests for information on the whereabouts of Mr. Arar.
5. The cables between the Deputy Director of Operations (or other agency
   official(s)) at the CIA and the operative(s) in the field discussing and/or
   approving the use of a slap on detainee Abu Zubaydah (Zein al Abideen
   Mohamed Hussein).
6. The cables between the Deputy Director of Operations at the CIA (or other
   agency official(s)) and the operative(s) in the field discussing and/or approving
   the use of a slap on detainee Khalid Sheikh Mohammed.
7. The cables between the Deputy Director of Operations (or other agency
   official(s)) at the CIA and the operative(s) in the field discussing and/or
   approving the use of an 'attention shake' on Abu Zubaydah.
8. The cables between the Deputy Director of Operations at the CIA (or other
   agency official(s)) and the operative(s) in the field discussing and/or approving
   the use of an 'attention shake' on Khalid Sheikh Mohammed.

9. The cables between the Deputy Director of Operations at the CIA (or other agency official(s)) and the operative(s) in the field discussing and/or approving the use of sleep deprivation on Abu Zubaydah.

10. The cables between the Deputy Director of Operations at the CIA (or other agency official(s)) and the operative(s) in the field discussing and/or approving the use of sleep deprivation on Khalid Sheikh Mohammed.

11. The cables between the Deputy Director of Operations at the CIA (or other agency official(s)) and the operative(s) in the field discussing and/or approving the use of waterboarding on Abu Zubaydah.

12. The cables between the Deputy Director of Operations at the CIA (or other agency official(s)) and the operative(s) in the field discussing and/or approving the use of waterboarding on Khalid Sheikh Mohammed.

13. Video tapes, audio tapes, and transcripts of materials related to interrogations of detainees that were acknowledged to exist during the case of *United States v. Zacharias Moussaoui* and described in a letter from United States Attorney Chuck Rosenberg to Chief Judge Karen Williams, United States Court of Appeals for the Fourth Circuit, and Judge Leonie Brinkema, United States District Court, Eastern District of Virginia, dated October 25, 2007, including but not limited to two video tapes and one audio tape of interrogations of detainees, the transcripts of those tapes submitted for the court's review in the *Moussaoui* case, and the intelligence cables summarizing the substance of those tapes.

14. The Sept. 13, 2007 notification (described in a letter from Chuck Rosenberg to Judges Williams and Brinkema, dated October 25, 2007) from the attorney for the CIA informing the United States Attorney for the Eastern District of Virginia that the CIA had obtained a video tape of an interrogation of one or more detainees.

15. The communications between the CIA and the U.S. Embassy in Sana'a, Yemen, relating to the apprehension, transfer and/or detention of Mohamed Farag Ahmad Bashmilah (Muhammad Bashmilah).

16. The communications between the U.S. Government and the Government of Yemen, and/or any documents pertaining to the transfer of Mohamed Farag Ahmad Bashmilah from U.S. custody to the custody of the Government of Yemen on or near May 5, 2005.

17. A copy of the files relating to Salah Nasser Salim Ali and Mohammed Farag Ahmad Bashmilah provided to the Government of Yemen on Nov. 10, 2005 by the United States Government.

The CIA Information Act, 50 U.S.C. § 431, as amended, exempts CIA operational files from the search, review, publication, and disclosure requirements of the FOIA. To the extent your request seeks information that is subject to the FOIA, we accept your request and will process it in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, and, unless you object, search only for CIA-originated records existing through the date of this acceptance letter. As a matter of administrative discretion, we have waived any fees associated with the processing of your FOIA request.

You have requested expedited processing. We handle all requests in the order we receive them: that is, "first-in, first-out." We make exceptions to this rule only when a requester establishes a compelling need under the standards in our regulations. A "compelling need" exists: 1) when the matter involves an imminent threat to the life or physical safety of an individual, or 2) when a person primarily engaged in disseminating information makes the request and the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity. We have reviewed your request and determined that it does not demonstrate a "compelling need" under these criteria and, therefore, we deny your request for expedited processing.

Sincerely,

Scott Koch
Information and Privacy Coordinator