# Attachment R

WILMERHALE

December 22, 2006

**By Certified U.S. Mail and Facsimile**

Director
Office of Information and Privacy
United States Department of Justice
1425 New York Avenue, NW Suite 11050
Washington D.C. 20530-0001

Kyle M. DeYoung

+1 202 663 6785 (t)
+1 202 663 6363 (f)
kyle.deyoung@wilmerhale.com

Re: Freedom of Information Act Appeal - *Case Numbers FOIA/PA # 06-32 and 06-33*

Dear Director:

On April 25, 2006 Amnesty International USA[1] ("Amnesty") and Washington Square Legal Services ("WSLS") filed two requests with the U.S. Department of Justice, Office of Intelligence Policy and Review ("OIPR") for information under the Freedom of Information Act ("FOIA") regarding detainees secretly held by the United States Government, including (but not limited to) information, reports, and memoranda regarding "Ghost Detainees/Prisoners," "Unregistered Detainees/Prisoners" and "CIA Detainees/Prisoners" ("the Requests").

Your agency, the Department of Justice (DOJ), Office of Intelligence Policy and Review, first responded to our Requests on June 7, 2006. You assigned the Requests case numbers 06-32 and 06-33 and granted expedited processing for both Requests. Copies of the Requests and your response letters are attached as Exhibits A through D. In a letter dated October 30, 2006, the U.S. Department of Justice, National Security Division, Office of FISA Operations and Intelligence Oversight ("FISA OIO") denied our Requests.[2]

The justification that you provided for denying our Requests was twofold. First, you stated that you conducted a search of your policy files as well as the electronic communications (e-mail) and office files of senior management and did not locate any records responsive to our requests.

Second, you chose not to search your records pertaining to 1) advice to the Attorney General and United States intelligence agencies regarding questions of law and policy that related to U.S. intelligence activities; 2) review functions of certain intelligence activities; and 3) applications for electronic surveillance and physical search to the United States Foreign Intelligence Court pursuant to the Foreign Intelligence Surveillance Act (FISA), including copies

---

[1] Amnesty International USA is the U.S. Section of Amnesty International. *See* http://www.amnestyusa.org/about/.

[2] In your October 30, 2006 letter, you stated that your reply was in response to our April 25, 2006 Freedom of Information Act Requests to the Office of Intelligence Policy and Review, and that the Office of FISA OIO was formerly OIPR. We therefore submit this appeal under the assumption that all records formerly maintained or in the possession of OIPR are now in the possession of the FISA OIO. In addition, all other references to the FISA OIO necessarily reference and include OIPR.

Wilmer Cutler Pickering Hale and Dorr LLP, 1875 Pennsylvania Avenue NW, Washington, DC 20006

Baltimore    Beijing    Berlin    Boston    Brussels    London    Munich    New York    Northern Virginia    Oxford    Palo Alto    Waltham    Washington

WILMERHALE

Director, Office of Information and Privacy
December 22, 2006
Page 2

of all FISA applications, as well as requests for approval of various foreign intelligence and counterintelligence collection techniques such as physical searches. You indicated that you did not search these records in response to our Requests because the existence or non-existence of such records on specific persons or organizations was properly classified under Executive Order 12958, and to confirm or deny the existence of such materials in each case would tend to reveal which persons or organizations were the subjects of such requests. Accordingly, you neither confirmed nor denied the existence of records responsive to our Requests, under exemption 5 U.S.C. § 552 (b)(1).

### a. Appeal of No-Records Response

Pursuant to 5 U.S.C. § 552(a)(6), Amnesty and WSLS hereby appeal the adequacy of the FISA OIO's search for relevant documents. While FOIA recognizes an agency's need for nondisclosure through enumerated exemptions, FOIA has also placed a burden on the agency to provide adequate explanation for asserting a specific FOIA exemption.[3] An agency must conduct a "thorough search" for responsive documents and must give "reasonably detailed explanations why any withheld documents fall within an exemption."[4]

Despite the requirements enumerated above, the FISA OIO's response merely restates our Requests, and does not provide any information regarding its search methods, other than noting the broad category of files searched (the "policy files" and e-mail and office files of senior management). This response does not adequately demonstrate that the FISA OIO complied with its FOIA obligations and is insufficient to allow Amnesty and WSLS to verify whether its search was adequate or reasonable.[5]

Amnesty and WSLS have reason to believe that the Justice Department, and specifically the FISA OIO, is involved in, and has provided legal review of, the U.S. secret detention and rendition program, and that the agency possesses documents responsive to the Requests. We therefore respectfully request that you conduct a more thorough search of your files and provide a more detailed explanation of your search methods.[6]

---

[3] *See* U.S.C. § 552(a)(4)(B).

[4] *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973).

[5] "The fundamental principle animating FOIA is public access to government documents. Accordingly, [courts] require[] agencies to make more than perfunctory searches and, . . . to follow through on obvious leads to discover requested documents. An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (DC Cir. 1999).

[6] *See Oglesby v. U.S. Dep't of the Army*, 920 F 2d 57, 68 (D.C. Cir. 1990) (the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested).

WILMERHALE

Director, Office of Information and Privacy
December 22, 2006
Page 3

     Specifically, media articles and Government sources have pointed to Justice Department involvement with the secret apprehension, transfer or detention of individuals, including "Ghost Detainees/Prisoners," "Unregistered Detainees/Prisoners" and "CIA Detainees/Prisoners." The functions of the FISA OIO, as stated in your October 30, 2006 letter, include, among other things, 1) providing advice to the Attorney General and United States intelligence agencies regarding U.S. intelligence activities, 2) preparing and presenting applications for electronic surveillance and physical search to the United States Foreign Intelligence Surveillance Court pursuant to the FISA, and 3) maintaining copies of all FISA applications, as well as requests for approval of various foreign intelligence and counterintelligence collection techniques. These functions indicate a likelihood that the FISA OIO and/or its antecedent, the OIPR, was involved in developing and reviewing the policies underlying the secret detention and rendition program.

     In particular, on September 6, 2006, President Bush explicitly and specifically acknowledged the existence of the CIA's secret detention program that held and facilitated the interrogation of suspected terrorists in secret locations overseas.[7] The President described the CIA's secret detention program as a crucial intelligence gathering activity, and emphasized that questioning of the suspected terrorists has assisted the U.S. government in gathering information about potential terrorist attacks.[8] Further, the President unequivocally stated in this speech that the CIA's secret detention program "has been subject to multiple legal reviews by *the Department of Justice* and CIA lawyers" (emphasis added) and that these lawyers have advised the President that the program complied with U.S. laws.[9]

     President Bush further stated that the "alternative set of procedures" used for interrogation in the program were comprehensively reviewed by the DOJ and approved: "The

---

[7]  Press Release, Office of the Press Secretary, President Discusses Creation of Military Commissions to Try Suspected Terrorists, Sept. 6, 2006, [hereinafter President Bush Speech Sept. 6, 2006], *available at* http://www.whitehouse.gov/news/releases/2006/09/20060906-3.html ("In addition to the terrorists held at Guantanamo, a small number of suspected terrorist leaders and operatives captured during the war have been held and questioned outside the United States, in a separate program operated by the Central Intelligence Agency ..."). *See also* Sheryl Gay Stolberg, *Threats and Responses: The Overview; President Moves 14 Held in Secret to Guantanamo*, N.Y. TIMES, Sept. 7, 2006; R. Jeffrey Smith & Michael Fletcher, *Bush Says Detainees Will be Tried; Confirms Existence of CIA Prisons*, WASH. POST, Sept. 7, 2006; Mark Silva, *Bush Confirms Use of Secret CIA Prisons*, CHICAGO TRIB., Sept. 7, 2006; Deb Reichmann, *Bush Admits the CIA Runs Secret Prisons*, ASSOC. PRESS, Sept. 7, 2006.

[8]  President Bush Speech Sept. 6, 2006, *supra*.

[9]  *Id. See also* Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2005/11/01/AR2005110101644_pf.html ("The black-site program was approved by a small circle of White House and *Justice Department* lawyers and officials, according to several former and current U.S. government and intelligence officials" (emphasis added).)

WILMERHALE

Director, Office of Information and Privacy
December 22, 2006
Page 4

Department of Justice reviewed the authorized methods extensively and determined them to be lawful."[10]  On September 6, 2006, the same day that the President announced the existence of the secret detention program, the Office of the Director of National Intelligence released a statement that twice confirmed that the DOJ had provided legal advice on the procedures used in the program ("The CIA sought and obtained legal guidance from the Department of Justice that none of the new procedures violated the U.S. statutes prohibiting torture," and "The Department of Justice has reviewed procedures proposed by the CIA on more than one occasion and determined them to be lawful.").[11]  Another source indicates that the detention system had been "set up after 9/11, primarily by a small group of lawyers in the White House, the Justice Department and the Defense Department."[12]

It has also been reported that the CIA set up its secret prisons under its "covert action authority."[13]  Covert actions can only be authorized by a Presidential Finding, which is "reviewed and approved" by the DOJ and other legal advisers.[14]  One of the primary functions of the FISA OIO and its antecedent, the OIPR, is to provide advice to the Attorney General and the intelligence agencies on questions of law and policy that relate to U.S. intelligence activities, thus it is likely that the FISA OIO is in possession of records reflecting the review and approval of the CIA's secret detention program.[15]

Amnesty and WSLS have reason to believe that the FISA OIO is also in possession of records containing at least some of the names and identities of individuals who fall within the scope of our Requests.  The September 6, 2006 statement of the Office of the Director of National Intelligence indicates that it has shared "broadly within the U.S. intelligence and law enforcement communities and with key partners overseas" the names of the individuals who

[10] President Bush Speech Sept. 6, 2006, *supra* note 7.

[11] Announcement, Office of the Director of National Intelligence, Summary of the High Value Terrorist Detainee Program, Sept. 6, 2006, *available at* http://www.dni.gov/announcements/content/TheHighValueDetaineeProgram.pdf.

[12] *See* Tim Golden, *Detainee Memo Created Divide in White House*, NY TIMES, Oct. 1, 2006, at 1 ("At the time the England-Zelikow memorandum was written, in mid-June 2005, several officials said they saw little enthusiasm for reconsidering the detention system that had been set up after 9/11, primarily by a small group of lawyers in the White House, *the Justice Department* and the Defense Department." (emphasis added))

[13] *See* Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1, *supra* note 9.

[14] 50 U.S.C.A. § 413b (The President may authorize a covert action if she or he determines such an action is necessary to support identifiable foreign policy objectives of the United States and is important to the national security of the United States.  A Presidential finding must meet the conditions set out in § 413b and be reported to the congressional intelligence committees.).  *See also* Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1, *supra* note 9.

[15] *See* Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1, *supra* note 9.

WILMERHALE

Director, Office of Information and Privacy
December 22, 2006
Page 5

have been removed from the battlefield by the U.S. and its allies.[16]  Since the FISA OIO and/or
OIPR has played a significant role in shaping the policy within the intelligence and law
enforcement communities, it is highly likely that your agency is also in possession of this
information.

      Amnesty and WSLS also have reason to believe that the FISA OIO is in possession of
records relating to agreements with foreign governments or government agencies concerning the
apprehension, transfer and detention of detainees who fall within the scope of our Requests. It
has been reported that the U.S. government negotiated agreements with foreign governments to
set up the CIA's secret detention program.[17]  These agreements, which are reported to be "status
of forces agreements," but which may also include more informal agreements, reportedly include
immunity clauses for U.S. personnel from both the government and private companies.[18]  It is
likely that the FISA OIO and/or the OIPR was involved in the negotiation and preparation,
and/or review of these agreements and thus is in possession of records responsive to our
Requests.

      In light of the foregoing, Amnesty and WSLS believe that there are records in the FISA
OIO's possession responsive to the Requests. We therefore appeal your "no-records"
determination and respectfully request that your agency conduct a more thorough search,
produce any and all responsive documents (in redacted form if required), and, if any documents
are withheld, provide a detailed explanation including which specific exemptions cover which
specific documents, and why the exemptions asserted govern each of the documents in question.

     **b.  Appeal of Glomar Response**

---

[16]  Announcement, Office of the Director of National Intelligence, *Summary of the High Value Terrorist Detainee
Program,* Sept. 6, 2006, *supra* note 11.

[17]  John Barry, Michael Hirsh & Michael Isikoff, *The Roots of Torture*, Newsweek, May 24, 2005, *available at*
http://www.msnbc.msn.com/id/4989436/site/newsweek/.

[18]  *Id.  See also* Amnesty International's Report, *USA: Updated briefing to the Human Rights Committee on the
implementation of the International Covenant on Civil and Political Rights,* July 2006, *available at*
http://web.amnesty.org/library/index/engamr511112006 ("... the 2003 Status of Forces Agreement (SOFA)
between the United States and Afghanistan…contains the following provisions…'By the terms of the SOFA, all US
military personnel operating in Afghanistan have been conferred diplomatic privileges and immunity from legal
prosecution in Afghanistan as set out in the Vienna Convention on Diplomatic Relations.  In addition, the SOFA
absolves the US military for any legal liability which might arise as a result of its activities in Afghanistan…'").

Director, Office of Information and Privacy
December 22, 2006
Page 6

WILMERHALE

Amnesty and WSLS also appeal the FISA OIO's refusal to confirm or deny the existence of records responsive to our Requests, also known as a "Glomar" response.[19] A government agency may issue a Glomar response if a FOIA exemption would itself preclude the acknowledgment of such documents.[20] However, if merely confirming or denying the existence of a document does not implicate a FOIA exemption, then the agency cannot refuse to confirm or deny the existence of the records.[21] Courts have said that Glomar responses, if not closely regulated, can encourage over-classification of information, "frequently keeping secret that which the public already knows, or that which is more embarrassing than revelatory of intelligence sources or methods."[22] Such is the case here, where the press has reported frequently on the existence of such documents and President Bush himself has admitted that the key subject matter of the documents, namely, the CIA's secret detention program, exists.

The issue of secret and irregular apprehensions, transfers, and detentions has been extensively covered by the media for some time,[23] particularly since the filing of our FOIA

---

[19] See Phillipi v. CIA, 546 F.2d 1009, 1011 (D.C. 1976) (upholding CIA refusal to confirm or deny existence of records of CIA connection to activities of ship named the Hughes Glomar Explorer), aff'd, 655 F.2d 1325 (D.C. Cir 1981).

[20] Hunt v. CIA, 981 F.2d 1116, 1118 (9th Cir. 1992).

[21] ACLU v. Dep't. of Def., 396 F. Supp. 2d 459, 462 (S.D.N.Y. 2005) ("confirming or denying the existence of a legal memorandum interpreting the Convention Against Torture adds nothing to, and detracts nothing from, the public understanding").

[22] ACLU v. Dep't. of Def., 389 F. Supp. 2d 547, 561 (S.D.N.Y. 2005) ("... an excessive reliance on secrecy tends to compartmentalize knowledge, encourage a dangerous tendency to withhold information... compromise the basics of a free and open democratic society, and damage even the goal of security itself, the very goal that a system of classifying secrets is intended to advance").

[23] See e.g., Josh White, Army, CIA Agreed on 'Ghost' Prisoners, WASH. POST, Mar. 11, 2005, at A16. See also Dana Priest, Wrongful Imprisonment: Anatomy of a CIA Mistake: German Citizen Released After Months in Rendition, WASH. POST., Dec. 4, 2005 at A1; Brian Ross & Richard Esposito, Exclusive: Sources Tell ABC News Top Al Qaeda Figures Held in Secret CIA Prisons, ABC NEWS, Dec. 5, 2005, at http://abcnews.go.com/WNT/Investigation/story?id=1375123; Jane Mayer, A Deadly Interrogation: Can the C.I.A. Legally Kill a Prisoner?, NEW YORKER, Nov. 14, 2005, at 44 (discussing the practice, particularly with respect to the death of Manadel al-Jamadi); Dana Priest, CIA Holds Terror Suspects in Secret Prisons, WASH. POST, Nov. 2, 2005, at A1, supra note 9.

WILMERHALE

Director, Office of Information and Privacy
December 22, 2006
Page 7

Requests.[24]  Indeed, on September 6, 2006, President Bush explicitly recognized the existence of
the CIA's secret detention program and government authorities released documents concerning
the program, igniting a storm of currently unfolding media attention and public interest.[25]
Bodies responsible for investigations initiated in Europe regarding secret detention and rendition
reacted to President Bush's speech by requesting additional information from countries alleged
to have hosted secret prisons.[26]  President Bush also explained that the CIA's secret detention
program had been the subject of legal review by several agencies, including the Department of

---

[24] *See, e.g.,* Joseph Goldstein, *Court Weighs ACLU Request on CIA Terror Documents,* N.Y. Sun, June 13, 2006;
*Court Will Investigate Alleged CIA Flights,* L.A. TIMES, June 13, 2006, at A23; *The Detention Dilemma,* Editorial,
WASH. POST, June 19, 2006, at A20; Barrie Dunsmore, *Ugly portrait emerges by dot,* TIMES ARGUS, June 18,
2006; *Euro MP's to Extend Probe Into CIA Activities,* Expatica, June 13, 2006, *available at*
http://www.expatica.com/actual/article.asp?subchannel_id=52&story_id=30767; Anemona Hartocolllis, *Judges
Press CIA Lawyer Over Withheld Documents,* N.Y. TIMES, June 13, 2006, at A17; Larry Neumeister, *Court Urged
to Protect CIA Detention Info,* ASSOC. PRESS, June 13, 2006; *Region Still Lacks Support for Torture Inquiry, Say
Observers,* IRIN, June 25, 2006, *available at*
http://www.irinnews.go.cn/S_report.asp?ReportID=54150&SelectRegion=Middle_East; Scott Shane & Mark
Mazzetti, *C.I.A. Crackdown Seeks to Tighten Agency's Secrecy,* N.Y. TIMES, April 24, 2006, at A1; Jan Sliva, *EU
Concedes Rendition Flights Took Place,* The Herald (U.K.), June 28, 2006; Jan Sliva, *Probe of CIA Prisons
Implicates EU Nations,* ASSOC. PRESS, June 7, 2006, *available at*
http://abcnews.go.com/International/wireStory?id=2048514; Ike Seamans, *Above the Law,* Miami Herald, June 25,
2006, *available at* http://www.miami.com/mld/miamiherald/entertainment/books/14886794.htm; Jeremy Smith, *EU
Lawmakers Back Report on CIA Terror Kidnappings,* Reuters, June 12, 2006.

[25] *See, e.g.,* Jess Bravin, *Bush Confirms Existence of Secret CIA Prisons,* WALL ST. J., Sept. 7, 2006, at A3; *Bush
Justifies CIA Detainee Abuse,* US Fed News, Sept. 6, 2006; Tim Golden, *Detainee Memo Created Divide in White
House,* N.Y. TIMES, Oct. 1, 2006; Ron Hutcheson & Margaret Talev, *President Confirms CIA Prisons,* News Trib.,
Sept. 7, 2006, at A01; Brian Knowlton, *European Reaction Split,* INT'L HERALD TRIB., Sept. 7, 2006, *available at*
http://www.iht.com/articles/2006/09/07/news/react.php; Dafna Linzer & Glenn Kessler, *Decision to Move Detainees
Resolved Two-Year Debate Among Bush Advisers,* WASH. POST, Sept. 8, 2006, at A01; David Morgan, *U.S. Gives
Details on CIA Detention Program,* REUTERS, Sept. 6, 2006; Jeannie Shawl, *Bush Confirms Existence of Secret CIA
Prisons for High-Value Terror Detainees,* JURIST, Sept. 6, 2006, *available at*
http://jurist.law.pitt.edu/paperchase/2006/09/bush-confirms-existence-of-secret-cia.php; Chase Squires, *Intelligence
Director Says CIA Interrogation Program to Continue,* ASSOC. PRESS, Sept. 8, 2006; Kevin Sullivan, *Detainee
Decision Greeted Skeptically,* WASH. POST, Sept. 7, 2006, at A17; Stephen Grey & Sarah Baxter, *CIA still hiding
'ghost' captives,* SUNDAY TIMES, Sept. 10, 2006, *available at* http://www.timesonline.co.uk/article/0,,2089-
2350485,00.html; Farah Stockman, *Fate of some Detainees Still Unknown,* BOSTON GLOBE, Sept. 22, 2006,
*available at* http://www.boston.com/news/nation/articles/2006/09/22/fate_of_some_cia_detainees_still_unknown.

[26] *See, e.g.,* Constant Brand, *EU Calls on U.S. to Abide by International Law in Treatment of Terror Suspects,*
ASSOC. PRESS, Sept. 15, 2006; *Europe Remains Opposed to Secret CIA Prisons: Council of Europe,* AGENCE FR.
PRESSE, Sept. 7, 2006; *European Campaigners Want More Details On CIA Prisons,* DOW JONES INTERNATIONAL,
Sept. 6. 2006; Ingrid Melander, *EU Condemns Secret CIA Prisons,* REUTERS, Sept. 15, 2006; *President Bush's
Comments Are "Tangible" Proof of CIA Exactions, Terry Davis Says, Calling for Secret Services to Be Controlled
in Europe,* AGENCE EUROPE, Sept. 9, 2006; *Romania, Poland asked to clarify CIA Detention Centres Issues,* BBC,
Sept. 8, 2006; Jan Sliva, *EU Parliamentarians to Go to 4 Countries Over Alleged CIA Secret Prisons, Transfers,*
ASSOC. PRESS, Sept. 11, 2006; Nicholas Watt & Suzanne Goldenberg, *European human rights watchdog seeks
scrutiny of CIA's secret prisons,* THE GUARDIAN, Sept. 8, 2006.

WILMERHALE

Director, Office of Information and Privacy
December 22, 2006
Page 8

Justice,[27] and stressed that the program would continue.[28]  DOJ lawyers advised President Bush that the program complied with U.S. laws.[29]

President Bush also revealed that fourteen of the individuals detained in secret locations were being transferred from CIA custody to Guantánamo Bay for continued detention by the Department of Defense.[30]  The Director of National Intelligence's September 6, 2006 "Summary of the High Value Detainee Program" and the "Biographies of High Value Detainees Transferred to the US Naval Base at Guantánamo Bay" provided additional details about the nature of the CIA's secret detention program and the identities of all of the fourteen transferred detainees.[31]

Media coverage of the issue of secret detentions continued as Congress debated legislation to authorize military commissions and the appropriate interrogation procedures for suspected terrorists, including those held by the CIA.[32]  Public and media attention is not

[27] President Bush Speech Sept. 6, 2006, *supra* note 7 ("This program has been subject to multiple legal reviews by the Department of Justice and CIA lawyers; they've determined it complied with our laws. This program has received strict oversight by the CIA's Inspector General.")

[28] *Id.* ("[A]s more high-ranking terrorists are captured, the need to obtain intelligence from them will remain critical -- and having a CIA program for questioning terrorists will continue to be crucial to getting life-saving information ... [W]e will also consult with congressional leaders on how to ensure that the CIA program goes forward.")

[29] *Id.*; *See also* Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1, *supra* note 9 ("The black-site program was approved by a small circle of White House and *Justice Department lawyers and officials*, according to several former and current U.S. government and intelligence officials." (emphasis added)).

[30] President Bush Speech Sept. 6, 2006, *supra* note 7 ("So I'm announcing today that Khalid Sheikh Mohammed, Abu Zubaydah, Ramzi bin al-Shibh, and 11 other terrorists in CIA custody have been transferred to the United States Naval Base at Guantanamo Bay.").

[31] Announcement, Office of the Director of National Intelligence, Summary of the High Value Terrorist Detainee Program, Sept. 6, 2006, *supra* note 11; Announcement, Office of the Director of National Intelligence, Biographies of High Value Terrorist Detainees Transferred to the US Naval Base at Guantanamo Bay, Sept. 6, 2006, *available at* http://www.dni.gov/announcements/content/DetaineeBiographies.pdf; Press Release, The White House, Fact Sheet: Bringing Terrorists to Justice, Sept. 6, 2006, *available at* http://www.whitehouse.gov/news/releases/2006/09/20060906-2.html

[32] *See e.g.* Stephen Grey & Sarah Baxter, *CIA Still Hiding 'Ghost' Captives*, SUNDAY TIMES, Sept. 10, 2006, *available at* http://www.timesonline.co.uk/article/0,,2089-2350485,00.html; Chase Squires, *Intelligence Director Says CIA Interrogation Program to Continue*, ASSOC. PRESS, Sept. 8, 2006; Peter Baker, *GOP Infighting on Detainees Intensifies; Bush Threatens to Halt CIA Program if Congress Passes Rival Proposal*, WASH. POST, Sept.16, 2006, at A01; Anne Plummer Flaherty, *Republican Senate Panel Defies Bush, Approves Bill on Treatment of Terror Detainees*, ASSOC. PRESS, Sept. 14, 2006; Rick Klein, *Bush Raps McCain's Detainee Proposals; Says Measures Would Cripple War on Terror*, BOSTON GLOBE, Sept. 16, 2006, at A1; Ingrid Melander, *EU Condemns Secret Prisons*, REUTERS, Sept. 15, 2006; Patrick Quinn, *U.S. Wartime Prison Network Grows Into Legal Vacuum for 14,000*, ASSOC. PRESS, Sept.17, 2006; Andrew Selsky, *Senators Visit Guantanamo Bay Prison*, ASSOC. PRESS, Sept. 11, 2006; Demetri Sevastopulo, *Tensions Rise as McCain Challenges CIA Chief*, FIN. TIMES, Sept. 15, 2006, at 4; Katherine Shrader, *CIA Interrogations of Suspected Terrorists Face New Legal Scrutiny, Possible Overhaul*, ASSOC. PRESS, Sept. 16, 2006.

WILMERHALE

Director, Office of Information and Privacy
December 22, 2006
Page 9

expected to abate now that Congress has approved legislation that purports to authorize military commissions and which some[33] assert will allow the CIA to continue its secret detention program.[34] President Bush did not reveal what had happened to the detainees previously held in the CIA's secret detention program other than the fourteen transferred to Guantánamo Bay, but said that "... as more high-ranking terrorists are captured, the need to obtain intelligence from them will remain critical -- and having a CIA program for questioning terrorists will continue to be crucial to getting life-saving information."[35] At a press conference on September 15, 2006, the President reiterated his commitment to continue the secret detention program.[36] This commitment has been made even more clear after the President signed the Military Commissions Act of 2006 [37] based on his understanding that the Act authorized the secret detention program to continue. [38] The future form of this program is an issue of public debate[39] and will continue to be followed intensely by the media and the public at-large.

---

[33] Even John Bellinger, Legal Adviser to the Department of State, has recognized that the CIA's program must still pass legal review, above and beyond the text of the Military Commissions Act.  See State Department Foreign Press Center Briefing, FED. NEWS SERVICE, Oct. 19, 2006, at 1, 5 (quoting John Bellinger as stating that "The act itself does not specifically address the CIA program").

[34] Pub. L. No. 109-366, 120 Stat. 2600. Military Commissions Act of 2006, signed on 10/17/06. See also Sheryl Gay Stolberg, President Signs New Rules to Prosecute Terror Suspects, N.Y. TIMES, OCT. 18, 2006, at 20 (arguing that law will allow the CIA to resume once-secret program handling most dangerous enemy operatives, but the agency is unlikely to do so until Bush issues executive order clarifying rules for questioning high-level detainees; the new law strips federal courts of jurisdiction over habeas corpus petitions from noncitizens).

[35] President Bush Speech Sept. 6, 2006, supra note 7.

[36] See Press Conference, Office of the Press Secretary, Press Conference of the President (Sept. 15, 2006), available at http://www.whitehouse.gov/news/releases/2006/09/20060915-2.html ("[w]ere it not for this [CIA] program, our intelligence community believes that al Qaeda and its allies would have succeeded in launching another attack against the American homeland. Making us -- giving us information about terrorist plans we couldn't get anywhere else, this program has saved innocent lives. In other words, it's vital").

[37] See Pub. L. No. 109-366, 120 Stat. 2600.

[38] Press Release, Office of the Press Secretary, President Bush Signs Military Commissions Act of 2006, (Oct. 17, 2006) available at http://www.whitehouse.gov/news/releases/2006/10/20061017-1.html ("When I proposed this legislation, I explained that I would have one test for the bill Congress produced: Will it allow the CIA program to continue? This bill meets that test. It allows for the clarity our intelligence professionals need to continue questioning terrorists and saving lives. This bill provides legal protections that ensure our military and intelligence personnel will not have to fear lawsuits filed by terrorists simply for doing their jobs.").

[39] See, e.g., Editorial, A License to Abuse; Mr. Bush Says He Has "One Question" for Congress. The Right Answer to it is "No.", WASH. POST, Sept. 17, 2006, at B06; Peter Baker, GOP Infighting on Detainees Intensifies; Bush Threatens to Halt CIA Program if Congress Passes Rival Proposal, WASH. POST, Sept. 16, 2006, at A01; Michael Hedges & Patty Reinert, Bush Warns Detainee Program Might End, HOUSTON CHRONICLE, Sept. 16, 2006; Terence Hunt, Bush Pushes Back Against Republican Revolt, Says U.S. Has High Ground in Terror War, ASSOC. PRESS, Sept. 15, 2006; Jim Rutenberg & Sheryl Gay Stolberg, Bush Says G.O.P. Rebels Are Putting Nation at Risk, N.Y. TIMES, Sept. 16, 2006, at 12; Scott Shane, The Question of Liability Stirs Concern at the C.I.A., N.Y. TIMES, Sept. 16, 2006, at 12.

WILMERHALE

Director, Office of Information and Privacy
December 22, 2006
Page 10

    The government disclosures surrounding President Bush's speech on September 6, 2006 and the extensive media coverage of this issue, both of which include and involve the Department of Justice, and specifically the FISA OIO and/or the OIPR (as advisor to the Attorney General and U.S. intelligence agencies and reviewer of foreign intelligence policies), preclude your agency from asserting that you can neither confirm nor deny the existence of records responsive to our Requests. The existence of these types of records has already been disclosed, and therefore it cannot be classified under Executive Order 12958, as amended.[40]

    Finally, you claim that to confirm or deny the existence of such materials would tend to reveal which specific persons or organizations are the subject of such requests. However, this is not sufficient to warrant your agency's refusal to search for and produce *redacted* documents, or to withhold such documents pursuant to an exemption and provide a detailed index itemizing the documents withheld,[41] especially where, as here, there is a vital public interest in understanding our government's involvement in the secret detention of individuals.

    Moreover, where the privacy of organizations is concerned, at least one court has determined that the mere fact that an agency or organization has requested legal or policy memoranda from the Department of Justice is not a sufficient justification to warrant a Glomar response.[42] In *ACLU v. Department of Defense*, the Court required the disclosure of the existence or non-existence of a memorandum interpreting the Convention Against Torture, stating that "[t]he fact that such a memorandum [interpreting the Convention Against Torture] might be addressed to the CIA tells us nothing of the 'intelligence sources and methods' utilized by the CIA ... confirming or denying the existence of a legal memorandum interpreting the Convention Against Torture adds nothing to, and detracts nothing from, the public understanding."[43]

    In light of the foregoing, Amnesty International, USA and Washington Square Legal Services, Inc., appeal your refusal to confirm or deny the existence of records responsive to our

---

[40] *See Nuclear ControlInst. v. U.S. Nuclear Regulatory Comm'n*, 563 F. Supp. 768 (D.D.C., 1983) (Glomar rejected where agency had previously admitted the existence of documents); *ACLU v. Dep't. of Defense*, 396 F. Supp. 2d 459, 462 (S.D.N.Y. 2005) (Because the press has reported frequently about CIA involvement in the interrogation of Detainees, confirming or denying the existence of a legal memorandum interpreting the Convention Against Torture is not subject to a Glomar response).

[41] *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979) (The agency resisting disclosure of requested information has the burden of proving the applicability of an exemption); *see also Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (court required an itemized list of withheld documents to allow the FOIA requester an opportunity to contest, and the trier of fact a foundation to review the basis for withholding).

[42] *ACLU v. Dep't. of Defense*, 396 F. Supp. 2d 459 (S.D.N.Y. 2005).

[43] *Id.* at 462.

WILMERHALE

Director, Office of Information and Privacy
December 22, 2006
Page 11

Requests. We respectfully request that you produce all responsive documents, subject to the exemption procedures noted above.

We look forward to your reply to this appeal **within twenty (20) working days**, as required under 5 U.S.C. § 552(a)(6)(A)(ii). Thank you for your prompt attention. Please direct all questions and future responses to:

> KYLE M. DEYOUNG
> Counsel to Amnesty International USA
> WilmerHale
> 1875 Pennsylvania Avenue NW
> Washington, DC 20006 USA
> Tel: (202) 663-6785
> Fax: (202) 663-6363
> kyle.deyoung@wilmerhale.com

You may also contact Bruce Berman of WilmerHale at (202) 663-6173 or at bruce.berman@wilmerhale.com.

> Sincerely,
>
> Curt Goering
> Deputy Director
> Amnesty International USA
> 5 Penn Plaza
> New York, NY 10001
> Tel: (212) 807-8400
> Fax: (212) 627-1451
> E-mail: cgoering@aiusa.org

WILMERHALE

Director, Office of Information and Privacy
December 22, 2006
Page 12


Margaret L. Satterthwaite
Washington Square Legal Services, Inc.
Co-Director, International Human Rights Clinic
Faculty Director, Center for Human Rights &
Global Justice
NYU School of Law
245 Sullivan Street
New York, NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
E-Mail: margaret.satterthwaite@nyu.edu


Kyle M. DeYoung
WilmerHale
1875 Pennsylvania Avenue
Washington, DC 20006
Tel: (202) 663-6785
Fax: (202) 663-6363
E-Mail: kyle.deyoung@wilmerhale.com

WILMERHALE

April 25, 2006

Catherine Kane Ronis

+1 202 663 6380 (t)
+1 202 663 6363 (f)
catherine.ronis@wilmerhale.com

<u>Via Facsimile, Email and US Mail</u>

GayLa D. Sessoms
FOIA Coordinator
Office of Intelligence Policy and Review
Department of Justice
Room 6150, 950 Pennsylvania Ave. N.W.
Washington D.C. 20530-0001
(Ph.) 202-514-5600
(Fax) 202-305-4211

<u>Re:    Request Under the Freedom of Information Act for Records Concerning Ghost Detainee
Memoranda, Department of Defense Detainee Reporting, Reports to Certain U.N. Committees,
and the Draft Convention on Enforced Disappearance</u>

Dear Freedom of Information Officer:

      This letter constitutes a request ("Request") pursuant to the Freedom of Information Act,
5 U.S.C. § 552 ("FOIA").  The Request is submitted on behalf of Amnesty International ("AI")
and Washington Square Legal Services, Inc. ("WSLS").  AI is a non-government organization
and a world-wide movement of members who campaign for internationally-recognized human
rights.  WSLS is the corporation that houses the International Human Rights Clinic ("the Clinic")
of the New York University School of Law ("NYU Law School").  The Clinic is a project of
NYU Law School's Center for Human Rights and Global Justice ("CHRGJ").

      We are filing this request simultaneously with the Department of Defense (including its
components, the Department of the Army, Navy and Air Force, the Marine Corps, and the
Defense Intelligence Agency), the Department of Justice (including its components, the Federal
Bureau of Investigation and Office of Intelligence Policy and Review), the Department of State,
the Central Intelligence Agency, and the Department of Homeland Security (including its
components the Office of Intelligence and Analysis, the Directorate for Policy, U.S. Immigration
and Customs Enforcement, U.S. Citizenship and Immigration Services, U.S. Coast Guard, and
U.S. Customs and Border Protection).  By this letter, we also request expedited processing
pursuant to 5 U.S.C. § 552(a)(6)(E).

      We are seeking the opportunity to inspect and copy, if necessary, all records in the
possession of the Department, including any officers, divisions or bureaus thereof, on the topics
listed below.

Wilmer Cutler Pickering Hale and Dorr LLP, 2445 M Street, NW, Washington, DC 20037

Baltimore  Beijing  Berlin  Boston  Brussels  London  Munich  New York  Northern Virginia  Oxford  Palo Alto  Waltham  Washington

WILMERHALE

FOIA Request
April 25, 2006
Page 2

## Definitions

For purposes of this request, the following terms shall be understood as described below:

The term "records" includes any and all reports, statements, examinations, memoranda, correspondence (including electronic mail), designs, maps, photographs, microfilms, computer tapes or disks, rules, regulations, codes, handbooks, manuals, or guidelines.

The term "government official" includes any U.S. government employee, and any person providing services to any agency of the United States government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the U.S. government.

The term "foreign official" includes any foreign government employee, and any person providing services to any agency of a foreign government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the foreign government.

The term "communication" means the giving, receiving, transmitting, or exchanging of information, including, but not limited to, any and all written, printed, telephonic, electronic, and in-person conversations by and with any person, and/or talk, gestures, or documents which memorialize or refer to any communications.

The term "detainee" means any person deprived of their liberty by one or more individuals or agencies who is prevented by any means from leaving the place in which he or she is being held. The term "detention" means depriving any person of their liberty such that they are prevented by any means from leaving the place in which they are held.

The term "place of detention" means any place or facility in which a "detainee" is kept, inside or outside the United States, regardless of whether it is officially recognized as a place of detention.

Unless otherwise specified, this request relates to all records generated between September 11, 2001 and the present.

US1DOCS 5622511v1

WILMERHALE

FOIA Request
April 25, 2006
Page 3

### Memoranda of Understanding

The practice of persons being kept as "off-the-record" detainees in military prisons has been well documented.[1] In this context, "ghost" or "unregistered" detainees are understood to refer to those detainees who were at some point during their detention, or remain: not "officially" registered at military facilities; "kept off the books"; and/or denied access to the International Committee of the Red Cross (ICRC).[2] Documents produced by the Department of Defense on March 3, 2005 pursuant to an ACLU FOIA request[3] and a media report in the

---

[1] *See* Josh White, *Army, CIA Agreed on 'Ghost' Prisoners*, WASH. POST, Mar. 11, 2005, at A16. *See also* Jane Mayer, *A Deadly Interrogation: Can the C.I.A. Legally Kill a Prisoner?*, NEW YORKER, Nov. 14, 2005, at 44 (discussing the practice, particularly with respect to the death of Manadel al-Jamadi). *See also* the following Department of Defense documents released to the American Civil Liberties Union (ACLU) pursuant to a *Freedom of Information Act* request, all available at http://www.aclu.org/torturefoia/released/030905/: Transcript of deposition of Brig. Gen. Janis L. Karpinski, Appendix to Fay/Jones/Kern Report (July 18, 2004); Statement of MNF-I, C2, IMIR CW2, Annex to Fay/Jones/Kern Report (June 16, 2004); Sworn Statement of E-5, 519th MI Bn, Annex to Fay/Jones/Kern Report (June 4, 2004); Sworn Statement of 372nd MP Co SPC, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of 372nd MP Co SPC, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of [UNREADABLE], Annex to Fay/Jones/Kern Report; Sworn Statement of Deputy CJ2, CJTF-7, Annex to Fay/Jones/Kern Report; Sworn Statement of SGT, 372nd MP, Camp Victory, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of SPC/E4, B Co., 66th MI Group, 202nd MI BN, Annex to Fay/Jones/Kern Report (May 24, 2004); Sworn Statement of SGT, Member of GTMO team, "Shut Up Group," Annex to Fay/Jones/Kern Report (June 4, 2004); Sworn Statement of CW2, A/519th MI Bn, Annex to Fay/Jones/Kern Report (May 19, 2004); Sworn Statement of SGT, 372nd MP Co, Annex to Fay/Jones/Kern Report (May 7, 2004); Statement of B/Co, 470th MI Grp. SGT, Annex to Fay/Jones/Kern Report (May 18, 2004). *See further* HUMAN RIGHTS FIRST, BEHIND THE WIRE: AN UPDATE TO *ENDING SECRET DETENTIONS* 6 (2005), *available at* http://www.humanrightsfirst.org/us_law/PDF/behind-the-wire-033005.pdf (providing overview of the practice of ghosting in military facilities); HUMAN RIGHTS WATCH, THE UNITED STATES' DISAPPEARED: THE CIA'S LONG-TERM "GHOST DETAINEES" 5-15 (2004), *available at* http://www.hrw.org/backgrounder/usa/us1004/us1004.pdf (outlining practice of keeping CIA prisoners in military detention generally).

[2] *Id.*

[3] *See* Sworn Statement of [UNREADABLE], Annex to Fay/Jones/Kern Report, *in* Department of Defense FOIA Release, at 000719-000725, *available at* http://www.aclu.org/torturefoia/released/030905/ ("OGA and TF-121 routinely brought in detainees for a short period of time. The A/519th soldiers initiated the term 'ghost.' They stated they used this term as the detainees were not in-processed in the normal way via the MP database and were not yet categorized. It was difficult to track these particular detainees and I and other officers recommended that a Memorandum of Understanding be written up between OGA, the 205th MI BDE and the 800th MP BDE to establish procedures for a ghost detainee"); Sworn Statement of Deputy CJ2, CJTF-7, Annex to Fay/Jones/Kern Report, *in* Department of Defense FOIA Release, at 000726-000729, *available at* http://www.aclu.org/torturefoia/released/030905/ ("...in reference to Ghost detainees, OGA would bring in detainees for a short period of time. [REDACTED] brought them in. These particular ghost detainees were not yet

WilmerHale

FOIA Request
April 25, 2006
Page 4

*Washington Post* dated March 11, 2005[4] indicate that this arrangement for "ghosting" was not "ad hoc" but was embodied in a Memorandum of Understanding (MOU) between military officials and the CIA.[5]  The exact contours of this arrangement are not publicly known as a copy of this MOU was not included in the documents released by the Department of Defense.[6]

<u>Records Requested</u>

We seek the following records relating to the arrangement described above:

1.   Any memorandum of understanding, or other record reflecting an agreement or proposed agreement between agencies, or between any agency and any subdivision or official, concerning the handling of ghost or unregistered detainees.  This includes but is not limited to:

    (a)   Any record reflecting communications about whether or not to draft any memorandum of understanding or agreement regarding unregistered or ghost detainees.

    (b)   Any record reflecting communications about the content of any memorandum of understanding or agreement regarding unregistered or ghost detainees.

2.   Any record reflecting a policy, whether formal or informal, about the reception, detention, or movement of unregistered or ghost detainees.

3.   Any memorandum of understanding, or other record reflecting an agreement between any agencies, or between any subdivision or official or any other agency, regarding the transfer of detainees from the custody of one agency to that of another.

---

categorized and OGA was working on that. It was very difficult keeping track of these OGA because they were not processed until OGA decided to turn them over to us. COL PAPPAS was not happy with that procedure. [REDACTED] recommended that a Memorandum of Understanding be written up between OGA and MI on the procedures to drop off a ghost detainee. COL PAPPAS met with OGA and TF-121 and the memorandum on procedures for dropping ghost detainees was signed").

[4] Josh White, *Army, CIA Agreed on 'Ghost' Prisoners*, WASH. POST, Mar. 11, 2005, at A16.

[5] *Id.*

[6] Press Release, American Civil Liberties Union, Newly Released Army Documents Point to Agreement Between Defense Department and CIA on "Ghost" Detainees, ACLU Says: Declassified Annexes to Fay Report, Which Denied Link, Contain Further Evidence of Brutal Army Abuses (Mar. 10, 2005), *available at* http://www.aclu.org/safefree/general/17597prs20050310.html.

WILMERHALE

FOIA Request
April 25, 2006
Page 5

## Department of Defense Detainee Reporting

The Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005, Pub. L. No. 108-375, 118 Stat. 1811 (2004) ("the Act"), requires the Department of Defense to submit an annual report regarding certain detainees.

### Records Requested

4.  Any record generated in connection with the reporting requirement under Section 1093(c) of the Act, regardless of whether or not such record was actually submitted in the final report, and any record submitted to the Committee on Armed Services of the Senate and the Committee on Armed Services of the House of Representatives pursuant to Section 1093(c) of the Act.[7] This includes but is not limited to records reflecting:

   (a)  Any notice of investigation into any violation of international obligations or laws of the United States regarding the treatment of individuals detained by the U.S. Armed Forces or by a person providing services to the Department of Defense on a contractual basis.

   (b)  Any discussions regarding whether any investigation described in Request 4(a) should be reported.

   (c)  The number of detainees held in Department of Defense custody, or released from Department of Defense custody during the time period covered by the report, broken down into the greatest number of time intervals for which such information is available.

   (d)  The number of detainees detained by the Department of Defense as "enemy prisoners of war," "civilian internees," and "unlawful combatants," broken down into the greatest number of time intervals for which such information is available.

   (e)  The number of detainees detained by the Department of Defense under any status other than "enemy prisoners of war," "civilian internees," and "unlawful

---

[7] Section 1093(e) of the Act mandates that the reports "be submitted, to the extent practicable, in unclassified form, but may include a classified annex as necessary to protect the national security of the United States." To the extent any records or portions of records responsive to this request are classified, please provide basic information as to the date, sender, recipient, and subject matter of the classified records.

WILMERHALE

FOIA Request
April 25, 2006
Page 6

combatants," broken down into the greatest number of time intervals for which such information is available.

(f)  The transfer or proposed transfer of detainees by the Department of Defense to the jurisdiction of other countries, and the countries to which those detainees were transferred.

(g)  Any communications regarding decisions to include or not include information in the Department of Defense's report under Section 1093(c) of the Act and decisions as to whether to submit any information in unclassified or classified form pursuant to Section 1093(d) of the Act.

### United States Report to the Committee Against Torture

On May 6, 2005, the U.S. submitted its Second Periodic Report to the United Nations ("U.N.") Committee Against Torture, as required by the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.

#### Records Requested

All records reflecting:

5.  Communications regarding the United States' Second Periodic Report to the Committee Against Torture, including but not limited to:

(a)  Communications regarding whether any individual, place of detention, or practice should be mentioned or discussed in the report to the Committee Against Torture.

(b)  Communications with a foreign government, or agency of a foreign government, regarding any provision of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment relating to apprehension, transfer and detention, (including Articles 1, 3, 5, 16), or whether any individual, place of detention, or practice should be mentioned or discussed in the report.

(c)  Proposed language or earlier drafts of the report to the Committee Against Torture.

### United States Report to the Human Rights Committee

On November 28, 2005, the U.S. submitted its Third Periodic Report to the U.N. Human Rights Committee, as required by the International Covenant on Civil and Political Rights.

WILMERHALE

FOIA Request
April 25, 2006
Page 7

### Records Requested

All records reflecting:

6.  Communications regarding the United States' Third Periodic Report to the Human Rights Committee, including but not limited to:

> (a)  Communications regarding whether any individual, place of detention, or practice should be mentioned or discussed in the report to the Human Rights Committee.

> (b)  Communications with a foreign government, or agency of a foreign government, regarding any provision of the International Covenant on Civil and Political Rights relating to apprehension, transfer and detention, (including Articles 6, 7, 9), or whether any individual, place of detention, or practice should be mentioned or discussed in the report.

> (c)  Proposed language or earlier drafts of the report to the Human Rights Committee.

### The Convention on the Protection of all Persons from Enforced Disappearance

On September 23, 2005, a U.N. working group concluded the draft text of the Convention on the Protection of all Persons from Enforced Disappearance. In 2006, the draft convention will be submitted to the U.N. Commission on Human Rights and the U.N. General Assembly, before being opened for signature and ratification.

### Records Requested

7.  Any record reflecting communications regarding the negotiation or drafting of the draft Convention on the Protection of all Persons from Enforced Disappearance.

8.  Any record reflecting communications with a foreign government, or an agency or official of a foreign government, regarding the drafting of the draft Convention on the Protection of all Persons from Enforced Disappearance.

### Fee Waiver

The requestors qualify as "representatives of the news media" and the records sought are not for commercial use. Moreover, this Request "is likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester[s]." 5 U.S.C. § 552(a)(4)(A)(iii).

US1DOCS 5622511v1

WILMERHALE

FOIA Request
April 25, 2006
Page 8

Amnesty International is a non-government organization and a world-wide movement of members who campaign for internationally recognized human rights. AI publishes reports, press-briefings, newsletters and urgent action requests informing the public about human rights, including the prohibition on torture and the prohibition on disappearances. AI also disseminates information through its website www.amnesty.org.

The Center for Human Rights and Global Justice is a research center at NYU Law School. CHRGJ aims to advance human rights and respect for the rule of law through advocacy, scholarship, education and training. CHRGJ publishes reports and operates a website www.nyuhr.org discussing human rights issues.

The International Human Rights Clinic is a project of CHRGJ and an official program at NYU Law School, composed of students and directed by clinical professors, who engage in research and advocacy on human rights issues.

Washington Square Legal Services is a not-for-profit corporation that houses the clinical program of NYU Law School.

The requesters plan to disseminate the information disclosed as a result of this FOIA request through the channels described above.

### Expedited Processing

Expedited processing is warranted as there is a "compelling need" for the records sought in this request. 5 U.S.C. § 552(a)(6)(E)(i)(I). The requesters are primarily engaged in "disseminating information" and there is an "urgency to inform the public concerning the actual or alleged Federal Government Activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). *See also* 32 C.F.R. § 286.4(d)(3)(ii) (DOD); 6 C.F.R. § 5.5(d)(1)(ii) (DHS); 28 C.F.R. § 16.5(d)(1)(ii) (DOJ); 22 C.F.R. § 171.12(b)(2) (DOS).

AI is primarily engaged in disseminating information about human rights, through its reports, newsletters, press-briefings, urgent action requests, and on its website. CHRGJ is engaged in disseminating information about human rights, including in particular, the Federal Government's role in upholding human rights. As indicated above, this information is disseminated through published reports and CHRGJ's website. The Clinic actively supports this work, and WSLS houses the clinic. As reflected in the media reports discussed above, there is an urgent need to provide the public with information relating to the U.S. government's practices concerning unregistered or ghost detainees.

WILMERHALE

FOIA Request
April 25, 2006
Page 9

There is also a "compelling need" because failure to obtain the records on an expedited basis "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I). *See also* 32 C.F.R. § 286.4(d)(3)(i) (DOD); 6 C.F.R. § 5.5(d)(1)(i) (DHS); 28 C.F.R. § 16.5(d)(1)(i) (DOJ); 22 C.F.R. § 171.12(b)(1) (DOS). This Request arises in the context of allegations of ongoing unlawful detention and abuse of individuals with the involvement of U.S. agents abroad. Failure to publicly expose and thereby halt the practices prompting this Request could reasonably be expected to pose an imminent threat to the physical safety and lives of such individuals.

Expedited processing is also warranted because this request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).

AI and WSLS certify that the foregoing statements regarding the basis for expedited processing are true and correct to the best of their knowledge and belief. 5 U.S.C. § 552(a)(6)(E)(vi). *See also* 32 C.F.R. § 286.4(d)(3)(iii) (DOD); 6 C.F.R. § 5.5(d)(3) (DHS); 28 C.F.R. § 16.5(d)(3) (DOJ); 22 C.F.R. § 171.12(b) (DOS).

\*     \*     \*

If this Request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect release of all segregable portions of otherwise exempt material. We also reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

As indicated above, we are applying for expedited processing of this Request. Notwithstanding your determination of that application, we look forward to your reply to the Request **within twenty (20) days**, as required under 5 U.S.C. § 552(a)(6)(A)(i).

WILMERHALE

FOIA Request
April 21, 2006
Page 10

Thank you for your prompt attention. Please direct all questions and future responses to:

CATHERINE K. RONIS
Counsel to Amnesty International USA
WilmerHale
2445 M Street Washington, D.C. 20037
Tel: (202) 663-6380
Fax: (202) 663-6363
E-mail: catherine.ronis@wilmerhale.com

If you need someone to reach by telephone or email, you may also contact Kyle DeYoung at WilmerHale at (202) 663-6785.

Sincerely,

CURT GOERING
Deputy Director
Amnesty International USA
5 Penn Plaza
New York, NY 10001
Tel: (212) 807-8400
Fax: (212) 627-1451
E-mail: cgoering@aiusa.org

MARGARET L. SATTERTHWAITE
Washington Square Legal Services, Inc.
Co-Director, International Human Rights Clinic
Faculty Director, Center for Human Rights &
Global Justice
NYU School of Law
245 Sullivan Street
New York NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
E-mail: margaret.satterthwaite@nyu.edu

WILMERHALE

April 25, 2006

Catherine Kane Ronis

+1 202 663 6380 (t)
+1 202 663 6363 (f)
catherine.ronis@wilmerhale.com

<u>Via Facsimile, Email and US Mail</u>

GayLa D. Sessoms
FOIA Coordinator
Office of Intelligence Policy and Review
Department of Justice
Room 6150, 950 Pennsylvania Ave. N.W.
Washington D.C. 20530-0001
(Ph.) 202-514-5600
(Fax) 202-305-4211

<u>Re:</u>    *Request Submitted Under the Freedom of Information Act for Records Concerning Detainees, including "Ghost Detainees/Prisoners," "Unregistered Detainees/Prisoners," and "CIA Detainees/Prisoners"*

Dear Freedom of Information Officer:

This letter constitutes a request ("Request") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The Request is submitted on behalf of Amnesty International ("AI") and Washington Square Legal Services, Inc. ("WSLS"). AI is a non-government organization and a world-wide movement of members who campaign for internationally-recognized human rights. WSLS is the corporation that houses the International Human Rights Clinic ("the Clinic") of the New York University School of Law ("NYU Law School"). The Clinic is a project of NYU Law School's Center for Human Rights and Global Justice ("CHRGJ").

We are filing this request simultaneously with the Department of Defense (including its components, the Department of the Army, Navy and Air Force, the Marine Corps, and the Defense Intelligence Agency), the Department of Justice (including its components, the Federal Bureau of Investigation and Office of Intelligence Policy and Review), the Department of State, the Central Intelligence Agency, and the Department of Homeland Security (including its components the Office of Intelligence and Analysis, the Directorate for Policy, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, U.S. Coast Guard, and U.S. Customs and Border Protection). By this letter, we also request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).

We are seeking the opportunity to inspect and copy, if necessary, all records in the possession of the Department, including any officers, divisions or bureaus thereof, on the topics listed below.

WilmerHale

FOIA Request
April 25, 2006
Page 2

## Definitions

For purposes of this request, the following terms shall be understood as described below:

The term "records" includes any and all reports, statements, examinations, memoranda, correspondence (including electronic mail), designs, maps, photographs, microfilms, computer tapes or disks, rules, regulations, codes, handbooks, manuals, or guidelines.

The term "government official" includes any U.S. government employee, and any person providing services to any agency of the United States government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the U.S. government.

The term "foreign official" includes any foreign government employee, and any person providing services to any agency of a foreign government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the foreign government.

The term "communication" means the giving, receiving, transmitting, or exchanging of information, including, but not limited to, any and all written, printed, telephonic, electronic, and in-person conversations by and with any person, and/or talk, gestures, or documents which memorialize or refer to any communications.

The term "detainee" means any person deprived of their liberty by one or more individuals or agencies who is prevented by any means from leaving the place in which he or she is being held. The term "detention" means depriving any person of their liberty such that they are prevented by any means from leaving the place in which they are held.

The term "place of detention" means any place or facility in which a "detainee" is kept, inside or outside the United States, regardless of whether it is officially recognized as a place of detention.

## Scope of Request

Unless otherwise stated, this request refers to *individuals who were, have been, or continue to be deprived of their liberty by or with the involvement of the United States and about whom the United States has not provided public information. These individuals have been referred to, among other things, as "ghost detainees/prisoners," "unregistered detainees/prisoners," "CIA detainees/prisoners" and "Other Governmental Agency*

WILMERHALE

FOIA Request
April 25, 2006
Page 3

*Detainees" ("OGA Detainees").* These individuals have reportedly been held in various locations, including regular and irregular detention facilities, ships, aircraft, and military bases.

Although not limited to any specific geographic area, this request pertains particularly to the following places:

| | | | |
|---|---|---|---|
| Afghanistan | Azerbaijan | Bulgaria | Djibouti |
| Egypt | Germany | Indonesia | Iraq |
| Jordan | Kosovo | Macedonia | Morocco |
| Pakistan | Poland | Romania | Syria |
| Thailand | Turkey | Ukraine | |
| United Kingdom (including Diego Garcia) | | | |
| United States (including all territories under the S.M.T.J) | | | |
| Uzbekistan | Yemen | | |

This Request does not seek records related to the formal extradition of individuals.

Requested records pertain to persons apprehended since September 11, 2001.

## Background

Numerous media reports indicate that the United States is involved in the secret or irregular apprehension, transfer, and detention of individuals on foreign territory.[1] These reports

---

[1] *See, e.g.,* Dana Priest, *CIA Holds Terror Suspects in Secret Prisons,* WASH. POST, Nov. 2, 2005, at A1; Jan Cienski, Christopher Condon, Caroline Daniel, Guy Dinmore, Andrei Postelnicu, & Demetri Sevastopulo, *Evidence CIA Has Secret Jails in Europe,* FINANCIAL TIMES (LONDON), Nov. 3, 2005, at 1; Siobhan Gorman & Tom Bowman, *Reports of Secret CIA Prisons Prompt Concern,* L.A. TIMES, Nov. 3, 2005, at A4; Douglas Jehl & David Johnston, *CIA Now Acting Independently to Move Prisoners,* INT'L HERALD TRIB., Mar. 7, 2005, at 4; Dana Priest, *Wrongful Imprisonment: Anatomy of a CIA Mistake: German Citizen Released After Months in Rendition,* WASH. POST., Dec. 4, 2005; Brian Ross and Richard Esposito, *Exclusive: Sources Tell ABC News Top Al Qaeda Figures Held in Secret CIA Prisons,* ABC NEWS, Dec. 5, 2005, *at* http://abcnews.go.com/WNT/Investigation/story?id=1375123.; Eric Schmitt and Thom Shanker, *Rumsfeld Issued an Order to Hide Detainee in Iraq,* N.Y. Times, June 17, 2004, at A1; *US bars access to terror suspects,* BBC NEWS, Dec. 9, 2005; Josh White, *Army, CIA Agreed on 'Ghost' Prisoners,* WASH. POST, Mar. 11, 2005, at A16; *White House Mum on Secret CIA Prisons,* AGENCE FRANCE PRESSE ENGLISH WIRE, Nov. 2, 2005; *Yemen says U.S. sent prisoners to Europe,* UNITED PRESS INT'L (UPI), Dec. 11, 2005, *at* http://www.upi.com/InternationalIntelligence/view.php?StoryID=20051211-051738-9694r.

WILMERHALE

FOIA Request
April 25, 2006
Page 4

suggest that the government secretly detains and transports individuals on U.S. ships, military
bases, and U.S.-chartered planes, as well as in foreign states.[2]

<u>Records Requested</u>

Please disclose any records reflecting, discussing or referring to the policy and/or practice
concerning:

1. The apprehension, transfer, detention, and interrogation of persons within the Scope of
Request, including but not limited to:

(a) The transfer of intelligence by one or more U.S. agencies or government officials to
one or more foreign agencies or officials, in connection with the apprehension or detention of a
person.

(b) A request or direction by one or more U.S. agencies or government officials to one or
more foreign agencies or officials regarding the apprehension of any person, and any related
agreement concerning such apprehension.

(c) The apprehension of a person in a foreign country by, with the involvement of, or in
the presence of one or more U.S. officials.

(d) The transfer of a person from any country to any other country for the purpose of
detention and/or interrogation, at the direction or request or with the knowledge of one or more
U.S. agencies or officials.

(e) The transfer of a person from one place of detention to another within the same
country at the direction or request or with the knowledge of one or more U.S. agencies or
officials.

(f) The detention of a person in a foreign country at the direction or request of one or
more U.S. agencies or officials, including any agreement concerning the detention.

(g) One or more U.S. agencies or officials seeking and/or being granted access to a
foreign national detained in a foreign country.

---

[2] *See, id. and further e.g.,* Craig Whitlock, *Europeans Probe Secret CIA Flights; Questions Surround Possible
Illegal Transfer of Terrorism Suspects,* WASH. POST, Nov. 17, 2005, at A22; Eric Schmitt & Carolyn Marshall, *In
Secret Unit's 'Black Room,' a Grim Portrait of U.S. Abuse,* N.Y. TIMES, Mar. 19, 2006.

WILMERHALE

FOIA Request
April 25, 2006
Page 5

   (h) One or more U.S. agencies or officials being present in a place of detention in a foreign country. This does not include visits to U.S. citizens by U.S. officials pursuant to the Vienna Convention on Consular Relations.

   (i) One or more U.S. agencies having control, direction, or administration of a subdivision, portion, or "cell" of a place of detention in a foreign country.

   2. Current and former places of detention where individuals within the Scope of Request have been or are currently held, including but not limited to:

   (a) Any place of detention in a foreign country being under the control, direction, or administration of one or more U.S. agencies.

   (b) Any place of detention that is not under the control, direction or administration of one or more U.S. agencies, where a detainee is held at the request or instruction of one or more U.S. agencies or officials.

   (c) Any subdivision, portion, or "cell" of a place of detention in a foreign country under the control, direction, or administration of one or more U.S. agencies.

   (d) Any agreement between the U.S. government or one or more U.S. agencies or officials, and a foreign government or one or more foreign agencies or officials, in relation to a place of detention in a foreign country, regardless of whether that place of detention is foreign or U.S.—controlled.

   3. The names and identities of detainees who fall within the scope of this request.[3]


### Fee Waiver

   The requestors qualify as "representatives of the news media" and the records sought are not for commercial use. Moreover, this Request "is likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester[s]." 5 U.S.C. § 552(a)(4)(A)(iii).

---

[3] Because of the nature of their detention, the requesters do not know the names or identities of those within the scope of this request. For examples of individuals that the United States has acknowledged detaining, but about whom the United States has not provided public information, see Center for Human Rights and Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"*(2005), *available at* http://www.nyuhr.org/docs/Whereabouts%20Unknown%20Final.pdf; and Human Rights Watch, "List of 'Ghost Prisoners' Possibly in CIA Custody (2005), *available at* http://hrw.org/english/docs/2005/11/30/usdom12109.htm. The scope of this request extends far beyond these examples.

WILMERHALE

FOIA Request
April 25, 2006
Page 6

Amnesty International is a non-governmental organization and a world-wide movement of members who campaign for internationally recognized human rights. AI publishes reports, press-briefings, newsletters and urgent action requests informing the public about human rights, including torture and disappearances. AI also disseminates information through its website www.amnesty.org.

The Center for Human Rights and Global Justice is a research center at NYU Law School. CHRGJ aims to advance human rights and respect for the rule of law through advocacy, scholarship, education and training. CHRGJ publishes reports and operates a website www.nyuhr.org discussing human rights issues.

The International Human Rights Clinic is a project of CHRGJ and an official program at NYU Law School, composed of students and directed by clinical professors, who engage in research and advocacy on human rights issues.

Washington Square Legal Services is a not-for-profit corporation that houses the clinical program of NYU Law School.

The requesters plan to disseminate the information disclosed as a result of this Request through the channels described above.

### Expedited Processing

Expedited processing is warranted as there is a "compelling need" for the records sought in this Request. 5 U.S.C. § 552(a)(6)(E)(i)(I). This need arises because the requesters are "primarily engaged in disseminating information" and there is an "urgency to inform the public concerning actual or alleged Federal Government Activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). *See also* 32 C.F.R. § 286.4(d)(3)(ii) (DOD); 6 C.F.R. § 5.5(d)(1)(ii) (DHS); 28 C.F.R. § 16.5(d)(1)(ii) (DOJ); 22 C.F.R. § 171.12(b)(2) (DOS).

AI is primarily engaged in disseminating information about human rights, through its reports, newsletters, press-briefings, urgent action requests, and on its website. CHRGJ is engaged in disseminating information about human rights, including in particular, the Federal Government's role in upholding human rights. As indicated above, this information is disseminated through published reports and CHRGJ's website. The Clinic actively supports this work, and WSLS houses the clinic. As reflected in the media articles cited above, there is an urgent need to provide the public with information relating to the U.S. government's practices concerning unregistered or ghost detainees.

WILMERHALE

FOIA Request
April 25, 2006
Page 7

There is also a "compelling need" because failure to obtain the records on an expedited basis "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I). *See also* 32 C.F.R. § 286.4(d)(3)(i) (DOD); 6 C.F.R. § 5.5(d)(1)(i) (DHS); 28 C.F.R. § 16.5(d)(1)(i) (DOJ); 22 C.F.R. § 171.12(b)(1) (DOS). This Request arises in the context of allegations of ongoing unlawful detention and abuse of individuals with the involvement of U.S. agents abroad. Failure to publicly expose and thereby halt any such practices could reasonably be expected to pose an imminent threat to the physical safety and lives of individuals whose identities we are unable to ascertain without the records sought herein.

Expedited processing is also warranted because this request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).

AI and WSLS certify that the foregoing statements regarding the basis for expedited processing are true and correct to the best of their knowledge and belief. 5 U.S.C. § 552(a)(6)(E)(vi). *See also* 32 C.F.R. § 286.4(d)(3)(iii) (DOD); 6 C.F.R. § 5.5(d)(3) (DHS); 28 C.F.R. § 16.5(d)(3) (DOJ); 22 C.F.R. § 171.12(b) (DOS).

\*    \*    \*

If this Request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect release of all segregable portions of otherwise exempt material. We also reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

As indicated above, we are applying for expedited processing of this Request. Notwithstanding your determination of that application, we look forward to your reply to the Request **within twenty (20) days**, as required under 5 U.S.C. § 552(a)(6)(A)(i).

WILMERHALE

FOIA Request
April 21, 2006
Page 8

Thank you for your prompt attention.  Please direct all questions and future responses to:

CATHERINE K. RONIS
Counsel to Amnesty International USA
WilmerHale
2445 M Street Washington, D.C. 20037
Tel: (202) 663-6380
Fax: (202) 663-6363
E-mail: catherine.ronis@wilmerhale.com

If you need someone to reach by telephone, you may also contact Kyle DeYoung at
WilmerHale at (202) 663-6785.

Sincerely,

CURT GOERING
Deputy Director
Amnesty International USA
5 Penn Plaza
New York, NY 10001
Tel: (212) 807-8400
Fax: (212) 627-1451
E-mail: cgoering@aiusa.org

MARGARET L. SATTERTHWAITE
Washington Square Legal Services, Inc.
Co-Director, International Human Rights Clinic
Faculty Director, Center for Human Rights &
Global Justice
NYU School of Law
245 Sullivan Street
New York NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
E-mail: margaret.satterthwaite@nyu.edu



**U.S. Department of Justice**

Office of Intelligence Policy and Review

_____

*Washington, D.C. 20530*

JUN - 7 2006

Catherine K. Ronis
Counsel to Amnesty International USA
WilmerHale
2445 M Street, NW
Washington DC 20037

Re: FOIA/PA # 06-32 & 06-33

Dear Ms. Ronis:

    This is to acknowledge receipt of your letters dated April 25, 2006 seeking access to (1) records concerning the "apprehension, transfer, detention, and interrogation of ghost detainees/prisoners, unregistered detainees/prisoners, CIA detainees/prisoners and Other Governmental Agency Detainees, and (2) any memorandum of understanding, or other record reflecting an agreement or proposed agreement between agencies, or between any agency and any subdivision or official, concerning the handling of ghost or unregistered detainees." You also requested expedited processing of your Freedom of Information Act requests, and the Office of Public Affairs granted your request for expedited treatment. Accordingly, your request will be reviewed ahead of others routinely processed on a first-in, first-out basis.

    If you have any questions concerning your request, feel free to contact me on (202) 616-5460.

                                    Sincerely,

                                    GayLa D. Sessoms
                                    FOIA Coordinator



*Received 11/1/06*
*as*

**U.S. Department of Justice**

National Security Division

---

*Washington, D.C. 20530*

OCT 3 0 2006

Catherine K. Ronis
Wilmer Hale
2445 M Street, NW
Washington, DC 20037

Re: FOIA/PA # 06-32 and 06-33

Dear Ms. Ronis:

This responds to your April 25, 2006 Freedom of Information Act (FOIA) requests to the Office of Intelligence Policy and Review (OIPR) seeking access to (1) records concerning the "apprehension, transfer, detention, and interrogation of ghost detainees/prisoners, unregistered detainees/prisoners, CIA detainees/prisoners and Other Governmental Agency Detainees, and (2) any memorandum of understanding, or other records reflecting an agreement or proposed agreement between agencies, or between any subdivision or official, concerning the handling of ghost or unregistered detainees." You also requested expedited processing of your FOIA request and a waiver of processing fees. Both requests were granted and your request has been reviewed ahead of others routinely processed on a first-in, first-out basis without any cost to you.

The Office of FISA Operations and Intelligence Oversight (formerly OIPR) provides advice to the Attorney General and United States intelligence agencies regarding questions of law and policy that relate to U.S. intelligence activities; performs review functions of certain intelligence activities; and prepares and presents applications for electronic surveillance and physical search to the United States Foreign Intelligence Surveillance Court pursuant to the Foreign Intelligence Surveillance Act (FISA). We maintain copies of all FISA applications, as well as requests for approval of various foreign intelligence and counterintelligence collection techniques such as physical searches. However, we did not search these records in response to your request because the existence or nonexistence of such records on specific persons or organizations is properly classified under Executive Order 12958, as amended. To confirm or deny the existence of such materials in each case would tend to reveal which persons or organizations are the subjects of such requests. Accordingly, we can neither confirm nor deny the existence of records responsive to your request pursuant to 5 U.S.C. § 552(b)(1).

We have conducted a search of our policy files as well as the electronic communications (e-mail) and office files of senior management and did not locate any records responsive to your request. If you are not satisfied with this response you may administratively appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. Both the letter and envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

James A. Baker
Counsel for Intelligence Policy