# Exhibit B



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*

*New York, New York 10007*

November 30, 2007

BY HAND
Hon. Loretta A. Preska
United States District Judge
United States District Courthouse
500 Pearl Street
New York, New York 10007

       Re: <u>Amnesty International USA v. Central Intelligence Agency</u>, 07 CV 5435 (LAP)

Dear Judge Preska:

      In accordance with the order of the Court issued at the status conference held on October 24, 2007, we write on behalf of the defendants ("defendants" or "Government") in the above-referenced Freedom of Information Act ("FOIA") litigation to provide the Court with a status report regarding (a) defendants' processing of the FOIA requests that are the subject matter of this litigation and (b) the parties' attempts to narrow the disputed issues that will be presented to the Court for resolution.

      As the Court is aware, this litigation involves three separate FOIA requests that were submitted to the United States Department of Defense ("DOD"), the United States Department of State (the "State Department"), the United States Department of Justice ("DOJ"), the Central Intelligence Agency ("CIA") and the United States Department of Homeland Security ("DHS"), as well as 17 separate components within those agencies, between December 2004 and April 2006.

      Two of the three FOIA requests — a request submitted in December 2004 to DOD, the State Department, DOJ and the CIA on behalf of plaintiff the Center for Constitutional Rights ("CCR") ("CCR FOIA Request") and a request submitted by plaintiffs Amnesty International USA ("Amnesty") and Washington Square Legal Services, Inc. ("WSLS") to each of the defendant agencies in April and May 2006 ("Amnesty and WSLS Ghost Detainee FOIA Request") (collectively, the "Ghost Detainee FOIA Requests") — seek information pertaining to alleged "ghost detainees/prisoners," "unregistered detainees/prisoners," "CIA detainees/prisoners," and "Other Governmental Agency Detainees/OGA Detainees." The Amnesty and WSLS Ghost Detainee FOIA Request further limits the scope of the request to "individuals who were, have been, or continue to be deprived of their liberty by or with the involvement of the United States and about whom the United States has not provided public information."

      The third FOIA request (the "Reporting FOIA Request") was submitted on behalf of plaintiffs Amnesty and WSLS to each of the defendant agencies and seeks, *inter alia*, internal communications related to the drafting of 1) certain purported Memoranda of Understanding

between U.S. Government agencies; 2) annual reports submitted by DOD to Congress pursuant to Section 1093(c) of the Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005; 3) the Second Periodic Report of the United States to the United Nations Committee Against Torture; 4) the Third Periodic Report of the United States to the United Nations Human Rights Committee; and 5) the draft text of the Convention on the Protection of All Persons from Enforced Disappearance.

Given the broad sweep of these FOIA requests, the highly sensitive nature of the requested information, and the hundreds, if not thousands, of separate offices that must be searched for responsive records, responding to these FOIA requests has been a monumental undertaking.

The Government has committed extraordinary resources toward responding to these requests. It has done so in recognition both of our important obligations under FOIA and of the serious national security interests at stake, given the disclosures plaintiffs' FOIA requests seek. In particular, plaintiffs' requests seek information that is classified at the highest possible level. *See, e.g.*, Ghost Detainee FOIA Requests (seeking records regarding individuals "about whom the United States has not provided public information"); Defendants' Answer at ¶ 3 ("Many specifics of this program, including where these detainees have been held and the details of their confinement, cannot be divulged [because d]oing so would provide our enemies with information they could use to take retribution against our allies and harm our country." (quoting President George W. Bush, speech dated September 6, 2006)). Such information deserves the Government's most vigilant protection under appropriate FOIA exemptions. As both this Court and the Supreme Court have noted, Congress recognized in crafting FOIA's exemptions that "public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 167 (1985); *see also Associated Press v. DOJ*, No. 06 Civ. 1758 (LAP), 2007 WL 737476, at *3 (S.D.N.Y. Mar. 7, 2007) (same). That proposition rings truest for disclosures, like those sought here, which would pose threats to our nation's security. *Cf. Sims*, 417 U.S. at 170 ("The reasons [for protecting the secrecy and integrity of the intelligence process] are too obvious to call for enlarged discussion.").

As described in more detail below, several of the defendant agencies are engaged in searches that more than comply with the requirements of the FOIA, both to avoid wasting this Court's time with unnecessary litigation regarding the adequacy of the agencies' searches and to place itself in the best position to protect the sensitive information sought in this litigation by demonstrating the Government's good faith to the Court. Indeed, although many of the Government offices and components that had received the subject FOIA requests had completed their searches at the time this suit was filed, some of the defendants voluntarily undertook to conduct new searches for responsive records. These new searches include queries of electronic databases, shared drives, and email archives, manual searches of hard copy records, searches of records maintained by individual employees and even, in some instances, the electronic retrieval of documents that had been maintained by former employees. Defendants are conducting these searches in every bureau, division, office and sub-component — including many outside the territory of the United States — that might conceivably have responsive records. These searches, which are designed to locate the entire universe of responsive materials, are exceedingly more comprehensive than the "reasonable" search required by statute. *See, e.g., Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (agency search "need not be perfect," but needs merely to be "reasonably calculated to discover the requested documents").

2

Moreover, the highly sensitive nature of the requests has already necessitated extraordinary measures in conducting agency searches due to the limited number of individuals with access to certain categories of documents. In some instances, high-level agency officials have been forced to personally search, review, and isolate potentially responsive documents.

The broad sweep of the requests and the time-consuming review processes that apply to the sensitive documents sought by the FOIA requests, of course, have a substantial impact on the speed with which the Government can respond to those requests. The Government has already identified nearly 10,000 responsive records, and anticipates that it will locate thousands of additional documents as its searches of DOD and the State Department proceed. In processing the documents retrieved thus far, the Government has determined that the vast majority of these documents will be withheld in their entirety pursuant to various FOIA exemptions, including Exemption 1, which protects information that is classified in the interest of the national defense or foreign policy. A document withheld pursuant to this exemption undergoes a rigorous review to determine that it was and remains properly classified under criteria established by a valid Executive Order. The complexities involved in reviewing such a large volume of classified and otherwise exempt documents, the full measure of which is not yet known, impose additional time constraints.

Notwithstanding these complicating factors, at the October 24 status conference, the Government proposed an aggressive schedule of summary judgment motions to move this litigation to a conclusion as expeditiously as reasonably possible. In so doing, the Government has committed to filing dual track summary judgment motions, and offered plaintiffs the opportunity to select the order in which the three agencies that were farthest along in the processing of the requests would file their motions for summary judgment. The plaintiffs chose to prioritize the CIA and DHS motions, with the DOJ summary judgment motion to follow.

Outlined in more detail below are the various agreements arrived at by the parties and the issues that remain disputed and require resolution by the Court.

**A.      The Parties' Agreement as to the DHS Summary Judgment Motion**

In order to more expeditiously put the issues related to DHS's processing of the Amnesty and WSLS FOIA requests before the Court, the Government, with plaintiffs' consent, has bifurcated DHS's motion for summary judgment. In that regard, DHS has completed its processing of Amnesty and WSLS's Ghost Detainee FOIA Request, and will first file a summary judgment motion with respect to that FOIA request. Within one month of the conclusion of briefing with respect to its initial motion, DHS will proceed with its motion for summary judgment as to the Reporting FOIA Request.

DHS conducted an exhaustive search of more than twenty offices at six DHS components, but unsurprisingly, given the nature of DHS's mission and programs, located no documents responsive to Amnesty and WSLS's Ghost Detainee FOIA Request. Nonetheless, although not technically responsive to the FOIA request, on June 1, 2006, United States Customs and Border Protection ("CBP") released in part two documents it had located during its search, which documents were redacted pursuant to 5 U.S.C. §§ 552(b)(2), (b)(6) and (b)(7)(C).

Through a series of successful meet-and-confers, the parties have reached a consensual

3

resolution of most of the issues pertaining to DHS's processing of Amnesty and WSLS's Ghost Detainee FOIA Request, including the propriety of the redactions made to the two documents released by CBP and the adequacy of the searches conducted by the United States Coast Guard and U.S. Citizenship and Immigration Services. Moreover, on November 27, 2007, the Government elected to make a discretionary release of certain redacted information that had been withheld pursuant to Exemption 2.

Accordingly, today DHS filed a motion for partial summary judgment that addresses the only outstanding disputed issue related to this FOIA request — the adequacy of the remaining DHS components' searches for responsive documents. The parties have agreed that the plaintiffs' opposition, and any cross-motion for partial summary judgment, are due on January 4, 2008; the Government's reply brief and opposition to the cross-motion are due on February 4, 2008; and the plaintiffs' reply brief is due on February 15, 2008.

DHS has also completed its search for documents responsive to the Reporting FOIA Request, and will shortly finish processing the approximately 1500 responsive documents it identified pursuant to that search. DHS has determined that the vast majority of those documents are exempt from disclosure, in whole or in part, pursuant to Exemption 5, as well as other FOIA exemptions.

Given the volume of documents for which the agency has claimed exemptions, the parties have tentatively agreed that DHS will prepare a *Vaughn* index of a representative sample of 400 documents, which sample will form the basis of the summary judgment briefing. The Court's rulings with respect to the propriety of the claimed exemptions for the sample set will then be extrapolated to the total pool of documents.

Although the parties have not yet discussed the method that will be used in selecting the documents that will comprise the sample set, DHS has volunteered to sort the exempt documents into three groups, corresponding to the three specific subcategories of the Reporting FOIA Request to which responsive documents were found. The parties will then attempt to reach an agreement on the specific percentage of documents from each of the three groups that will be included on the *Vaughn*, as well as the sampling methodology.

The parties have agreed upon the following schedule for DHS's motion for summary judgment with respect to the Reporting FOIA Request: defendant's motion for summary judgment is due on March 14, 2008; plaintiffs' opposition and cross-motion for summary judgment by April 14, 2008; defendant's opposition/reply by May 14, 2008; plaintiffs' reply by May 28, 2008.

Finally, in the interest of facilitating agreement as to those exemptions to which plaintiffs will not be raising a challenge, DHS has agreed to provide the plaintiffs with a draft of its *Vaughn* index by no later than February 29, 2008. It is our hope that, by so doing, the parties will consensually narrow the issues that will be presented to the Court for resolution in the DHS summary judgment motion.

**B.     The Status of CIA's Processing of the Three FOIA Requests**

The CIA has also completed its search for responsive records. Pursuant to the Central

Intelligence Information Act, the CIA's "operational files" are generally exempt from search and review in response to FOIA requests. 50 U.S.C. § 431(a). Where, however, there is an investigation by the Office of the Inspector General of the CIA ("OIG") into "any impropriety, or violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity," 50 U.S.C. § 431(c)(3), operational files concerning "the specific subject matter of the investigation," id. at § 431(c), are no longer exempt from search. Accordingly, the CIA limited its search for responsive records to (a) non-operational files of components within the CIA, and (b) operational files found in the OIG's files with respect to investigations related to the subject matter of the FOIA requests.

The CIA is working as expeditiously as possible to complete its processing of the thousands of CIA records it has identified as responsive to the FOIA requests. However, its preliminary review of these documents indicates that almost all will be withheld in full pursuant to Exemption 1, as the requested information is classified at the highest levels.

The parties have engaged in a protracted series of negotiations in an attempt to arrive at a mutually acceptable procedure and schedule for litigating the appropriateness of the CIA's claimed exemptions. Indeed, yesterday it seemed as if the parties had reached agreement, and it was the CIA's intention to detail that agreement in this status report. However, communications between the parties this afternoon revealed that there were still critical issues that remained unresolved. Although the CIA remains willing to continue discussions with the plaintiffs, it unfortunately appears that the parties will not be able to reach an accord on the procedures for resolving the CIA issues.

Rather than delay this status report any further, with the Court's indulgence, the CIA instead intends to submit a separate letter to the Court early next week, in which the CIA will seek the Court's approval of its proposed schedule and procedure for adjudicating the claimed exemptions.

C.   **The Status of DOJ's Processing of the Three FOIA Requests**

The three subject FOIA requests were submitted to six separate DOJ components: the Federal Bureau of Investigation ("FBI"), the Criminal Division, the Office of the Inspector General,[1] the Office of Intelligence Policy and Review ("OIPR"), the Executive Office of the United States Attorneys ("EOUSA"), and the Office of Information and Privacy. These six components have either completed, or will soon complete, their searches for responsive records. Although DOJ cannot provide the Court with an accurate count of the number of responsive documents until all searches are complete, we anticipate that this figure will be in the hundreds. DOJ has already begun its processing of these documents. As with the CIA, a preliminary review of the documents found so far reveals that the overwhelming majority are classified, and therefore will be withheld pursuant to Exemption 1. At the request of the plaintiffs, the Government has confirmed that three particular documents, legal opinions prepared by the Office of Legal Counsel in May 2005 relating to the interrogation of detainees in CIA custody, are currently being processed by DOJ. Any withholding of those documents will be litigated in the context of the DOJ summary judgment motion.

---

[1] The Office of Inspector General did not receive a copy of the CCR FOIA Request.

5

The parties had tentatively agreed that DOJ's *Vaughn* index and motion for summary judgment will be due sometime shortly after the CIA's summary judgment motion. However, as the scheduling for the CIA summary judgment motion is now uncertain, the parties likely will need to revisit this point.

**D.     DOD and the State Department's On-Going Search Efforts**

The parties were unable to arrive at a consensual resolution with respect to DOD and the State Department. Despite the particular complexities involved in searching DOD and the State Department, plaintiffs continue to demand that DOD and the State Department complete their processing of the three subject FOIA requests by a near term date certain. It would be impossible, however, for the agencies to both complete the contemplated searches and process an unknown, but undoubtedly voluminous, set of responsive documents within the next few months without an extraordinary and unprecedented outlay of personnel. Nothing in the FOIA imposes such a burdensome obligation on the Government. *See Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) ("'FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters.'" (citation omitted)).

Both DOD and the State Department are in the midst of worldwide searches for documents responsive to plaintiffs' three FOIA requests. The agencies have committed to performing manual searches of hard copy records as well as searches of electronic databases, hard drives, shared drives, public drives and email archives in hundreds, if not thousands, of separate offices located on at least three continents. Such a search is, to say the least, time-consuming. Plaintiffs' simultaneous demands that the agencies both undertake comprehensive searches for responsive records and complete processing their FOIA requests within the next few months are irreconcilable and patently unreasonable.

**1.     Status of the DOD Searches**

As we informed the Court at the October 24 status conference, a number of individual offices and components within DOD had, at the time this lawsuit was commenced, either completed or were in the process of conducting searches for responsive records that were fully compliant with their obligations under the FOIA. Indeed, both the Department of the Navy and the United States Marines Corps had informed plaintiffs Amnesty and WSLS in June 2006 that their search for records had yielded no results. Plaintiffs, however, challenged the adequacy of DOD's searches both in administrative appeals and in this lawsuit.

Rather than engage in protracted litigation regarding the adequacy of the completed searches, and in order to demonstrate its good faith in seeking to resolve this matter as expeditiously as possible, DOD agreed to start afresh in its search for responsive records. Accordingly, although it constituted a deviation from its standard search protocols, and was in no way required by statute, DOD voluntarily centralized its search and processing efforts. Between August and October 2007, many of the offices previously tasked with the FOIA requests were instructed to redo their searches in accordance with instructions provided by DOD. DOD also instructed a number of additional offices to conduct searches.

At this time, DOD has tasked the Department of the Army, the Department of the Navy, the Department of the Air Force, the United States Marines Corps, Central Command, European

Command, Pacific Command, Joint Special Operations Command, Transportation Command, Special Operations Command, the Defense Intelligence Agency, the Office of the Undersecretary of Defense for Policy, Intelligence and Security Command, Joint Task Force Guantanamo, the Office of the General Counsel and the Office of the Joint Chiefs of Staff with searching both electronic and hard-copy records, including classified records systems. Such searches will encompass hundreds of units, divisions, and subcomponents located in North America, Europe and Asia, as well as combat units deployed in the field. Thus far, DOD has identified approximately 450 potentially responsive records, which are currently being processed.

### 2. Status of the State Department Searches

The State Department's search in response to the CCR Request is ongoing. Its search in response to the two Amnesty and WSLS Requests was only recently re-activated following the receipt of a fee commitment from Plaintiffs Amnesty and WSLS on October 29, 2007. The State Department has tasked the FOIA requests to over 20 separate bureaus and offices, comprised of hundreds of subcomponents and offices, which in turn will task the FOIA requests to multiple embassies and consulates around the world.

Upon receipt of the CCR FOIA Request, the State Department initially tasked eight bureaus and offices to search for responsive documents: the Central Foreign Policy Records; the Bureau of International Organization Affairs; the Office of the Legal Adviser; the Bureau of Population, Refugees, and Migration; the Bureau of South and Central Asian Affairs; the Bureau of Democracy, Human Rights and Labor; the Office of the Ambassador-at-Large for War Crimes Issues; and the Office of the Coordinator for Counterterrorism. With the exception of the Central Foreign Policy Records, which is a searchable electronic database, each of these eight bureaus and offices is comprised of multiple sub-components. To date, almost all of these bureaus and offices have completed their searches. Thus far, the State Department has identified 12 documents responsive to the CCR request, one of which was released to CCR on March 2, 2006 with redactions made pursuant to 5 U.S.C. § 552 (b)(6), seven of which were withheld in full pursuant to 5 U.S.C. §§ 552 (b)(1), (b)(5), and (b)(6) and four of which were referred to other agencies for processing. Additional documents from in these eight bureaus or offices are currently being processed.

Upon receipt of the two Amnesty and WSLS FOIA requests, the State Department initially tasked multiple bureaus and offices to search for responsive documents. The Bureau of South and Central Asian Affairs completed its search in response to one of these requests, and identified two responsive documents, both of which were released to the plaintiffs in full on February 1, 2007. However, before significant additional progress could be made, the State Department suspended these searches pending a fee commitment from plaintiffs Amnesty and WSLS. By two letters dated August 25 and August 29, 2006, the State Department had informed plaintiffs Amnesty and WSLS that their requests for fee waivers had been denied, and that appeals of such a denial must be made within 30 days of the date of receipt of the letter. The State Department further advised in both letters that "without an agreement to pay fees...your request will be processed without cost up to the required first 2 hours of search time and duplication of the first 100 pages." By letter dated October 6, 2006, plaintiffs Amnesty and WSLS appealed the State Department's denial of their requests for expedited processing, but chose not to appeal the fee waiver.

7

At a meeting with plaintiffs on October 19, 2007, the Government explained that the State Department would re-activate the suspended searches as soon as it received a fee commitment. The Government also conveyed the State Department's desire to streamline its remaining additional searches for documents responsive to the CCR FOIA Request, and its search for documents responsive to the Ghost Detainee FOIA Request, in order to complete them as quickly and efficiently as possible. To that end, given that the CCR FOIA Request and the Ghost Detainee FOIA Request are substantially similar in scope, the Government suggested that plaintiffs choose either the CCR Request or the Ghost Detainee FOIA Request, and the State Department would use that one request to guide the remainder of its search. This suggestion was intended to save time both by avoiding duplicative searches and by minimizing potential confusion on the part of the searchers. Plaintiffs indicated that they would like to help facilitate an efficient search, but proposed that instead of choosing one of the two requests, they consolidate the two requests into one document. The Government agreed.

On October 29, 2007, the Government received a document from plaintiffs that (1) provided the necessary fee commitment to re-activate the suspended searches, and (2) purported to consolidate the CCR and Amnesty Ghost Detainee FOIA Requests. After reviewing this document, the Government determined that rather than simply consolidating the two requests, in instead had the effect of considerably expanding the scope of the requested information. Furthermore, plaintiffs provided an enumerated list of specific records that they believe "are almost certain to be in the possession of the Department of State" in order to "illustrate the sort of records that fall within the scope" of the FOIA requests. At least some of these enumerated specific records clearly fell outside the descriptions of the scope of the requests in either the original CCR FOIA Request or the original Ghost Detainee FOIA Request. Rather than agree to further expand the scope of an already massive undertaking, the Government decided to proceed with the State Department search using both the original CCR FOIA Request and the original Amnesty Ghost Detainee FOIA Request.

Thus, with the fee commitment in hand, the State Department proceeded to identify all those bureaus and offices, in addition to the seven or eight bureaus or offices that had previously been tasked with one or more of the FOIA requests, that might conceivably have documents responsive to any of the three FOIA requests. The State Department has since tasked the following additional bureaus and offices to search for responsive documents: the Bureau of Diplomatic Security; the Bureau of Intelligence and Research; the Bureau of Political-Military Affairs; the Office of the Legal Adviser; the Bureau of Legislative Affairs; the Bureau of Public Affairs; the five additional regional bureaus, namely, the Bureau of African Affairs, the Bureau of European and Eurasian Affairs, the Bureau of East Asian and Pacific Affairs, the Bureau of Near Eastern Affairs, and the Bureau of Western Hemisphere Affairs; and the offices of the relevant Department principals, namely, the Office of the Secretary, the Office of the Deputy Secretary, the Office of the Undersecretary for Political Affairs, the Office of the Undersecretary for Democracy and Global Affairs, the Office of the Undersecretary for Arms Control and International Security, and the Counselor of the Department. Most of these bureaus and offices are themselves comprised of sub-components ranging in number from approximately ten to several dozen. In addition to the hundreds of subcomponents that either have completed or are currently searching for responsive documents at the State Department headquarters in Washington, D.C., searches are being tasked by offices in the Washington, D.C. headquarters for each of those embassies and consulates overseas that might reasonably be expected to have responsive documents. As potentially responsive documents are identified, they will be reviewed

and processed to determine which documents may be released and which documents may be withheld under valid FOIA exemptions.

Given the sheer number of offices worldwide that have been tasked to search for responsive documents, and particularly given that the Government cannot begin to accurately estimate how many responsive documents will be located during its search, we are unable in good faith to provide a concrete date by which either DOD or the State Department could commit to completing its search for and processing of responsive documents. However, both the DOD and the State Department will make every effort to complete their searches for and processing of documents within the next nine to ten months, that is by July to August 2008. Moroever, to the extent possible, both DOD and the State Department will continue to process documents on a rolling basis as individual units, bureaus and offices complete their searches.

E.  **Conclusion**

As described above, the defendants have voluntarily committed to an extremely ambitious schedule for moving this litigation forward, a schedule which contemplates the filing of three motions for summary judgment — as well as oppositions to three cross-motions for summary judgment — in a five-month span of time. Given the inordinate amount of work that still remains to be done to resolve the outstanding issues with respect to DHS, the CIA and DOJ, the massive scale of DOD and the State Department's current and planned searches, and the unknowable quantity of documents that will be retrieved pursuant to those searches, the Government respectfully submits that it makes little sense at this juncture to set arbitrary deadlines for the completion of DOD's and the State Department's processing of the subject FOIA requests. Nevertheless, in order to demonstrate to plaintiffs and the Court that its searching and processing is proceeding apace, DOD and the State Department are prepared, every sixty days, to provide reports to plaintiffs and the Court updating the status of their search for and processing of responsive documents.

Accordingly, the Government respectfully requests that the Court approve the schedules proposed by the parties for the filing of summary judgment motions, and refrain from imposing deadlines for the completion of DOD and the State Department searches and processing, the preparation of their *Vaughn* indices, or the filing of summary judgment motions for these two agencies. We thank the Court for its consideration of this submission.

Respectfully,

MICHAEL J. GARCIA
United States Attorney

By: _____
JEANNETTE A. VARGAS
BRIAN M. FELDMAN
Assistant United States Attorneys
EMILY E. DAUGHTRY
Special Assistant United States Attorney
Tel. No.: (212) 637-2678/2777/1579
Fax. No.: (212) 637-2702

cc: Kyle M. DeYoung (by electronic mail and U.S. mail)