# Attachment G

# WILMERHALE

July 17, 2006

**Catherine Kane Ronis**

+1 202 663 6380 (t)
+1 202 663 6363 (f)
catherine.ronis@wilmerhale.com

**By Certified U.S. Mail and Facsimile**

Daniel J. Metcalfe
Director, Office of Information and Privacy
U.S. Department of Justice
Flag Building, Suite 570
Washington D.C. 20530-0001

Re: *Freedom of Information Act Appeal: Case Nos. 1049374 and 1049375*

Dear Director Metcalfe:

On April 25, 2006 Amnesty International USA[1] ("Amnesty") and Washington Square Legal Services ("WSLS") filed two requests for information under the Freedom of Information Act regarding detainees secretly transferred or held by the United States Government, including "Ghost Detainees/Prisoners," "Unregistered Detainees/Prisoners" and "CIA Detainees/Prisoners" ("the Requests"). Your agency, the U.S. Department of Justice, Federal Bureau of Investigation ("FBI"), assigned the Requests case numbers 1049374 and 1049375 and responded to the Requests on May 18, 2006. In each of your responses, you enclosed the same three (3) pre-processed pages of responsive documents, redacted pursuant to exemptions 5 U.S.C. §552(b)(2), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(F). Copies of the Requests and your response letters are attached. *See* Exhibits A-D.

Pursuant to 5 U.S.C. §552(a)(6), Amnesty and WSLS hereby appeal the adequacy of the FBI's search for relevant documents. Your agency did not provide any information about its search methods or indicate that it conducted a search for documents responsive to both of the Requests. Your response therefore does not adequately demonstrate that the FBI complied with its FOIA obligations.[2]

As an initial matter, as noted in the Requests, there have been numerous reports of detainees secretly transferred or held by the United States Government, including "Ghost

---

[1] Amnesty International USA is the U.S. Section of Amnesty International. *See* http:///www.amnestyusa.org/about/.
[2] "The fundamental principle animating FOIA is public access to government documents. Accordingly, (courts) require agencies to make more than perfunctory searches, and . . . to follow through on obvious leads to discover requested documents. An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F. 3d 321, 326 (DC Cir. 1999).

WILMERHALE

July 17, 2006
Page 2

Detainees/Prisoners," "Unregistered Detainees/Prisoners" and "CIA Detainees/Prisoners."[3/] Since the Requests were filed, there have been numerous recent additional reports of this practice.[4/]

Amnesty and WSLS have reason to believe that the FBI is involved in these programs and that it is likely that the agency possesses additional documents responsive to the Requests. We therefore respectfully request that you conduct a more thorough search of your files and provide a more detailed explanation of your search methods.[5/]

---

[3/] *See* Josh White, *Army, CIA Agreed on 'Ghost' Prisoners*, WASH. POST, Mar. 11, 2005, at A16. *See also* Dana Priest, *Wrongful Imprisonment: Anatomy of a CIA Mistake: German Citizen Released After Months in Rendition*, WASH. POST., Dec. 4, 2005; Brian Ross and Richard Esposito, *Exclusive: Sources Tell ABC News Top Al Qaeda Figures Held in Secret CIA Prisons*, ABC NEWS, Dec. 5, 2005, *at* http://abcnews.go.com/WNT/Investigation/story?id=1375123; Jane Mayer, *A Deadly Interrogation: Can the C.I.A. Legally Kill a Prisoner?*, NEW YORKER, Nov. 14, 2005, at 44 (discussing the practice, particularly with respect to the death of Manadel al-Jamadi); Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1. *See also* the following Department of Defense documents released to the American Civil Liberties Union (ACLU) pursuant to a Freedom of Information Act request, all available at http://www.aclu.org/torturefoia/released/030905/: Transcript of deposition of Brig. Gen. Janis L. Karpinski, Appendix to Fay/Jones/Kern Report (July 18, 2004); Statement of MNF-I, C2, IMIR CW2, Annex to Fay/Jones/Kern Report (June 16, 2004); Sworn Statement of E-5, 519th MI Bn, Annex to Fay/Jones/Kern Report (June 4, 2004); Sworn Statement of 372nd MP Co SPC, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of 372nd MP Co SPC, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of [UNREADABLE], Annex to Fay/Jones/Kern Report; Sworn Statement of Deputy CJ2, CJTF-7, Annex to Fay/Jones/Kern Report; Sworn Statement of SGT, 372nd MP, Camp Victory, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of SPC/E4, B Co., 66th MI Group, 202nd MI BN, Annex to Fay/Jones/Kern Report (May 24, 2004); Sworn Statement of SGT, Member of GTMO team, "Shut Up Group," Annex to Fay/Jones/Kern Report (June 4, 2004); Sworn Statement of CW2, A/519th MI Bn, Annex to Fay/Jones/Kern Report (May 19, 2004); Sworn Statement of SGT, 372nd MP Co, Annex to Fay/Jones/Kern Report (May 7, 2004); Statement of B/Co, 470th MI Grp. SGT, Annex to Fay/Jones/Kern Report (May 18, 2004). *See further* HUMAN RIGHTS FIRST, BEHIND THE WIRE: AN UPDATE TO *ENDING SECRET DETENTIONS* 6 (2005), *available at* http://www.humanrightsfirst.org/us_law/PDF/behind-the-wire-033005.pdf (providing overview of the practice of ghosting in military facilities); HUMAN RIGHTS WATCH, THE UNITED STATES' DISAPPEARED: THE CIA'S LONG-TERM "GHOST DETAINEES" 5-15 (2004), *available at* http://www.hrw.org/backgrounder/usa/us1004/us1004.pdf (outlining practice of keeping CIA prisoners in military detention generally).

[4/] *See, e.g.,* Jan Sliva, *EU concedes rendition flights took place*, The Herald, (June 28, 2006); Ike Seamans, *Above the law*, The Miami Herald, (June 25, 2006); *MIDDLE EAST: Region still lacks support for torture victims, say observers*, Reuters Foundation, (June 25, 2006); *The Detention Dilemma*, The Washington Post, (June 19, 2006); Barrie Dunsmore, *Ugly portrait emerges dot by dot*, Times Argus, (June 18, 2006); Josh White, *Bad Advice Blamed For Banned Tactics*, The Washington Post, (June 17, 2006); Anemona Hartocollis, *Judges Press CIA Lawyer Over Withheld Documents*, The New York Times, (June 13, 2006); *Court Weighs ACLU Request on CIA Terror Documents*, New York Sun, (June 13, 2006); Larry Neumeister, *Court Urges to Protect CIA Detention Info*, Guardian Unlimited (June 13, 2006); *Euro MP's to Extend Probe Into CIA Activities*, Expatica, (June 13, 2006); *Court Will Investigate Alleged CIA Flights*, Los Angeles Times, (June 13, 2006); Jeremy Smith, *EU Lawmakers Back Report on CIA Terror Kidnappings*, Reuters, (June 12, 2006); Jan Sliva, *Probe of CIA Prisons Implicates EU Nations*, Forbes, (June 7, 2006); *see further* Committee on Legal Affairs and Human Rights, *Alleged secret detentions and unlawful inter-state transfers involving Council of Europe member states*, Draft report – Part II (Explanatory memorandum), 7 June 2006; Council of Europe, Parliamentary Assembly, Resolution 1507 *Alleged secret detentions and unlawful inter-state transfers of detainees involving Council of Europe member states* (2006).

[5/] *See Oglesby v. U.S. Dept of the Army*, 920 F 2d 57, 68 (DC Cir. 1990) (the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested).

WILMERHALE

July 17, 2006
Page 3

The documents you produced demonstrate that you have records concerning an investigation into the activities of FBI personnel searching for at least one "ghost detainee" at "Abu Ghurayb Prison" during November 2003-January 2004. According to these documents, the FBI sent an agent to Iraq to conduct "FCI" interviews and carry out an investigation at the Abu Ghurayb detention facility. The investigation apparently involved numerous visits to the detention facility and was focused (at least in part) on one "ghost detainee." Given the length and extent of this investigation alone, it seems unlikely that the three pages produced are the only documents the FBI possesses concerning "ghost detainees."[6]

In addition, the activities and responsibilities of the FBI indicate that these are likely not the only records that your agency possesses concerning "ghost detainees" or the FBI's role in detention facilities likely to house "ghost detainees," like Abu Ghurayb.

For example, the FBI's Counterterrorism Division "…collects, analyzes and shares critical information and intelligence with the proper authorities to combat terrorism on three fronts: 1) international terrorism operations both within the United States and in support of extraterritorial investigations; 2) domestic terrorism operations; and 3) counterterrorism relating to both international and domestic terrorism."[7] In addition, the FBI website indicates that "After the events of September 11, 2001, several hundred Special Agents were sent around the world to pursue leads, to interview detained terrorist suspects in Afghanistan, Guantánamo Bay, and other locations, and to support the work of national and international partners."[8]

In addition, the CIA, one of the agencies primarily involved in the apprehension, transfer, and detention of "ghost detainees,"[9] has collaborated with the FBI in international anti-terrorist activities: "…FBI and the CIA have carried out joint operations around the world to disrupt, exploit and recover evidence on Al-Qaeda operatives who have targeted the United States. These operations, in part designed to obtain admissible evidence, also had the critical objectives of destroying the operational capability of terrorist organizations, collecting valuable intelligence and being able to support our military, should such a response be unleashed."[10] With respect to

---

[6] The pages produced do not include any of the documents one would expect to be created as part of such an investigation. For example, the production does not include any documents pertaining to the opening or closing of the investigation, the purpose behind the investigation, the scope or any limits applying to the investigation, instructions or guidelines given to the agent deployed to Iraq, or even any notes or memos drafted by the agent who actually conducted the investigation.

[7] See http://www.fbi.gov/libref/factsfigure/counterterrorism.htm

[8] See http://www.fbi.gov/libref/factsfigure/counterterrorism.htm

[9] See, e.g., Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1.
[10] http://www.fbi.gov/short/10-08-02jicifreeh.pdf at 10. In a recent book entitled *The One Percent Doctrine: Deep Inside America's Pursuit of Its Enemies Since 9/11*, author Ron Suskind describes a protracted debate between the CIA and FBI over what should be done with "high-value" al Qaeda suspects once they were apprehended by the U.S. government. This debate focused on the type of treatment to be accorded such detainees, their location of

WILMERHALE

July 17, 2006
Page 4

the specific issue of secret or irregular apprehension, transfer and detention, the FBI and the CIA have reportedly disagreed over custody of alleged terrorist leaders and intensely debated the treatment of secret detainees.[11] Media accounts also describe extensive collaboration between

---

detention, and whether they would be placed into the criminal justice system or held outside that system. *See* THE ONE PERCENT DOCTRINE: DEEP INSIDE AMERICA'S PURSUIT OF ITS ENEMIES SINCE 9/11 (2006) at 111-118.

[11] A "turf battle" between the FBI and CIA is described by James Risen in his book *State of War: The Secret History of the CIA and the Bush Administration.* JAMES RISEN, STATE OF WAR: THE SECRET HISTORY OF THE CIA AND THE BUSH ADMINISTRATION (2006) 28-29 (describing the "turf battle" between the FBI and CIA for custody of suspected al Qaeda leaders, which focused on interrogation techniques). Reports indicate that this debate intensified during discussions about two specific secret detainees: Abu Zubaydah and Ibn al-Shaikh al-Libi. Libyan national Ibn al-Shaikh al-Libi was apprehended by Pakistani officials and then handed over to U.S. officials in November 2001. *See* Center for Human Rights & Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"* (New York: NYU School of Law, 2005), *available at* http://www.nyuhr.org/docs/Whereabouts%20Unknown%20Final.pdf, at 11 (describing the apprehension, transfer, and detention of al-Libi and providing detailed citations to media sources). Following his transfer to U.S. custody, he was held at Kandahar airbase in Afghanistan and was then brought aboard the U.S.S. Bataan, where he was reportedly interrogated at the direction of the FBI. Michael Hirsh, John Barry, & Daniel Klaidman, *A Tortured Debate*, NEWSWEEK, June 21, 2004 (noting that "FBI officials brought their plea to retain control over al-Libi's interrogation up to FBI Director Robert Mueller"). A disagreement erupted between the CIA and the FBI concerning harsh interrogation methods. *See* Dana Priest, *Al Qaeda-Iraq Link Recanted; Captured Libyan Reverses Previous Statement to CIA, Officials Say*, WASH. POST, Aug. 1, 2004, at A20, *available at* http://www.washingtonpost.com/wp-dyn/articles/A30909-2004Jul31.html; Michael Hirsh, John Barry, & Daniel Klaidman, *A Tortured Debate*, NEWSWEEK, June 21, 2004 (noting that "FBI officials brought their plea to retain control over al-Libi's interrogation up to FBI Director Robert Mueller"). *See also* Suskind, *supra* note 9, at 75-76 (describing the debate between FBI and CIA, and stating that the "[t]he debate went up to [then-FBI Chief] Mueller and [then CIA head] Tenet"), *and* Risen, *supra* note 10, at 28- 29 (describing the argument between the FBI and CIA for custody of al-Libi). The CIA obtained custody over al-Libi and transferred him to Egypt where he was held for about a year before being sent first to Guantánamo and then to a secret detention center. *See* Michael Hirsh, John Barry, & Daniel Klaidman, *A Tortured Debate*, NEWSWEEK, June 21, 2004. Abu Zubaydah was reportedly apprehended by a joint FBI-CIA-Pakistani intelligence services team in Faisalabad, Pakistan on March 27, 2002. *Id.* at 87-89. *See also* Center for Human Rights & Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"* (New York: NYU School of Law, 2005), *available at* http://www.nyuhr.org/docs/Whereabouts%20Unknown%20Final.pdf, at 9-10 (documenting apprehension, transfer, and secret detention of Abu Zubaydah and providing citations to numerous news sources). One report, quoting the police chief of Faisalabad, said that "members of Pakistani military intelligence, accompanied by American CIA and FBI personnel wearing bulletproof vests" came to the police station before the arrest, which was effected "by a joint team of American and Pakistani special forces".[11] Tim McGirk, *Anatomy of a Raid: Inside the Capture of al-Qaeda Chief Abu Zubaydah and His Terror Network; Can he lead us to Osama bin Laden?*, TIME ASIA, Apr. 8, 2002, *available at* http://www.time.com/time/asia/magazine/article/0,13673,501020415-227584,00.html; Jason Burke, *Secret world of U.S. jails*, OBSERVER, Jun. 13, 2004, *available at* http://observer.guardian.co.uk/international/story/0,6903,1237589,00.html. According to Suskind, the apprehension of Abu Zubaydah intensified debates over detainee treatment between the CIA and FBI. Suskind, *supra* note 9, at 111-118.

WILMERHALE

July 17, 2006
Page 5

the CIA and FBI in the apprehension and questioning of specific secret detainees.[12] This kind of collaboration would be expected in relation to terrorism suspects, given the overlapping mandates of the two agencies concerning the investigation of counter-terrorism outside the United States.

Furthermore, there is evidence that the FBI is directly involved in the apprehension and questioning of "ghost detainees."[13] In July 2004, the International Red Cross reported to the Associated Press that some terrorism suspects that the FBI had reported as arrested on their website had not turned up in detention centers.[14]

---

[12] FBI personnel reportedly played a role in the apprehension of alleged 9/11 co-conspirator Ramzi Binalshibh in Pakistan on September 11, 2002. Suskind, supra at 6 (documenting apprehension, transfer, and secret detention of Binalshibh and providing citations to numerous news sources). Binalshibh was later reportedly transferred by the CIA to a secret detention center, perhaps in Thailand. *Id.* In July 2004, the 9/11 Commission Report acknowledged that Binalshibh was in U.S. custody, referring to dozens of interrogation sessions with the detainee between July 2002 and July 2004. *Id.* FBI and CIA personnel were reported to have carried out a "joint Pakistani-U.S. intelligence operation" to arrest Ahmed Khalfan Ghailani in Gujrat, Pakistan, on July 24, 2004 before he was apparently taken into secret CIA custody. *See* Center for Human Rights & Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"* (New York: NYU School of Law, 2005), available at http://www.nyuhr.org/docs/Whereabouts%20Unknown%20Final.pdf, at 6-7 (citing a wide variety of news sources reporting FBI involvement in the apprehension of Ghailani). The FBI's role in this case would be partially premised on the authority given to the FBI to pursue terrorist suspects who have been indicted; on December 16, 1998, Ghailani was indicted on nine counts in the Southern District of New York for his alleged involvement in the U.S. Embassy bombings in Tanzania and Kenya. The arrest of Algerian national Adil al-Jazeeri in Pakistan on June 17, 2003, was reportedly carried out by Pakistani security forces accompanied by FBI personnel. *See 'Key' al-Qaeda Suspect Questioned*, BBC NEWS, June 19, 2003, *available at* http://news.bbc.co.uk/1/hi/world/south_asia/3003348.stm; and *id.* at 10. Al-Jazeeri as been identified as a secret detainee by Human Rights Watch and the Center for Human Rights and Global Justice. Human Rights Watch, List of "Ghost Detainees" Possibly in CIA Custody, http://hrw.org/english/docs/2005/11/30/usdom12109.htm (last updated Dec. 1, 2005), and Center for Human Rights & Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"* (New York: NYU School of Law, 2005), available at http://www.nyuhr.org/docs/Whereabouts%20Unknown%20Final.pdf, at 10. In addition to the other individuals discussed in this document, FBI involvement has been reported in the apprehension and/or questioning of the following individuals believed to be currently secretly detained by the United States: Yassir al-Jazeeri, Ali Abdul Aziz Ali, Abdul Aziz, Abu Faisal, Suleiman Abdalla (Suleiman Abdalla Salim Hemed), and Aaafia Siddiqui. *See* Center for Human Rights & Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"* (New York: NYU School of Law, 2005), available at http://www.nyuhr.org/docs/Whereabouts%20Unknown%20Final.pdf.

[13] With respect to secret detention, human rights organizations have identified by name 29 individuals who they believe are held in secret detention and have stated that there is likely many more. *See* WITNESS, *Outlawed: Extraordinary Rendition, Torture and Disappearances in the 'War on Terror'*, http://www.witness.org/index.php?option=com_rightsalert&Itemid=178&task=view&alert_id=49, released June 26, 2006. *See also* Center for Human Rights and Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"* (New York: NYU School of Law, 2005) *available at* http://www.nyuhr .org/docs/Whereabouts%20Unknown%20Final.pdf; Human Rights Watch, List of "Ghost Prisoners" Possibly in CIA Custody, http://hrw.org/english/docs/2005/11/30/usdom12109.htm (last updated Dec. 1, 2005).

[14] Naomi Koppel, *Red Cross fears U.S. hiding terror detainees*, ASSOCIATED PRESS, July 13, 2004.

WILMERHALE

July 17, 2006
Page 6

In addition, individuals whose whereabouts are currently known but who at some point have been secretly or irregularly apprehended, transferred or detained have also reported FBI involvement in their treatment. For example, Muhammad al-Assad claim's that after being informally transferred from Tanzania in late December 2003, he was "questioned…by U.S. officials, one man and one woman, who told him they were from the USA's Federal Bureau of Investigation…"[15] Further,, Binyam Mohammed alleges being in secret detention before being sent to Guantánamo Bay, Cuba in September 2004. During his time in detention in Pakistan, Mohammed recalls "…repeated questioning by men he believes were FBI agents, he was told he was to go to an Arab country because 'the Pakistanis can't do exactly what we want them to'."[16]

Moreover, the FBI has *confirmed*, in at least one instance, that an individual who was secretly detained was in U.S. custody. In March 2003, following reports that Mustafa al-Hawsawi, a Saudi national, was apprehended in Pakistan with the assistance of the CIA, the FBI stated in its weekly bulletin that the detainee was in U.S. custody.[17] This was confirmed in the 9-11 Commission Report released in June 2004. On August 29, 2003, the federal judge presiding over the trial of Zacarias Moussaoui ordered a videotaped deposition of al-Hawawi for use at trial. The U.S. refused to give access to him in the case because of national security concerns, but did make available a document drawing on interrogations with al-Hawsawi, entitled "Substitution for the Testimony of Mustafa Ahmed al-Hawsawi," which was introduced into evidence in the trial.[18]

Finally, there is also evidence that the FBI had knowledge regarding the practice of "extraordinary rendition." In a memo forwarded to a Legal Counsel, FBIHQ on 27 November 2002, an SSA (supervisory special agent) from the FBI (BAU) (the Behavioral Analysis Unit) provided a "Legal Analysis of Interrogation Techniques."[19] These techniques "had been approved by Pentagon officials for use against a high-value Qaeda detainee."[20] Category IV of these Interrogation Techniques is described as follows: "1. Detainee will be sent of GTMO, either temporarily or permanently, to Jordan, Egypt, or another third country to allow those

---

[15] *See* Amnesty International, BELOW THE RADAR: SECRET FLIGHTS TO TORTURE AND "DISAPPEARANCE," Apr. 5, 2006, *available at* http://web.amnesty.org/library/Index/ENGAMR510512006?open&of=ENG-USA.

[16] Stephen Grey and Ian Cobain, *Suspect's Tale of Travel and Torture*, The Guardian, Aug. 2, 2005.

[17] *See* Center for Human Rights & Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"* (New York: NYU School of Law, 2005), *available at* http://www.nyuhr.org/docs/Whereabouts%20Unknown%20Final.pdf, at 5.

[18] Document available at http://www.rcfp.org/moussaoui/pdf/DX-0943.pdf.

[19] *See* http://www.humanrightsfirst.org/us_law/etn/pdf/fbi-brief-inter-analysis-112702.pdf for copy of memo.

[20] Michael Isikoff, *Exclusive: Secret Memo—Send to Be Tortured*, Newsweek, Aug. 8, 2005, *available at* http://msnbc.msn.com/id/8769416/site/newsweek/?rf=technorati.

**WILMERHALE**

July 17, 2006
Page 7

countries to employ interrogation techniques that will enable them to obtain the requisite information."[21]

    Based upon the evidence of the FBI's broad anti-terrorism responsibilities, general media reports and specific press accounts of the agency's involvement with the secret or irregular apprehension, transfer, detention and interrogation of detainees, as well as the documentation provided by the agency itself, we believe that the FBI possesses more records documenting its involvement with ghost/unregistered detainees than it has disclosed. We therefore request that you conduct another search for responsive documents and provide an explanation of your search methods.

    We look forward to your reply to this appeal within **twenty (20) working days**, as required under 5 U.S.C. §552(a)(6)(A)(ii).

                              Sincerely,

                              Curt Goering
                              Deputy Director
                              Amnesty International USA
                              5 Penn Plaza
                              New York, NY 10001
                              Tel: (212) 807-8400
                              Fax: (212) 627-1451
                              E-mail: cgoering@aiusa.org

---

[21] *See* http://www.humanrightsfirst.org/us_law/etn/pdf/fbi-brief-inter-analysis-112702.pdf.

WILMERHALE

July 17, 2006
Page 8

*Margaret L. Satterthwaite* /wk
Margaret L. Satterthwaite
Washington Square Legal Services, Inc.
Co-Director, International Human Rights Clinic
Faculty Director, Center for Human Rights &
Global Justice
NYU School of Law
245 Sullivan Street
New York, NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
E-Mail: margaret.satterthwaite@nyu.edu

*Catherine K. Ronis* /wk
Catherine K. Ronis
WilmerHale
1875 Pennsylvania Avenue
Washington, DC 20006
Tel: (202) 663-6380
Fax: (202) 663-6363
E-Mail: catherine.ronis@wilmerhale.com

# TAB A

# WILMERHALE

April 25, 2006

**Catherine Kane Ronis**

+1 202 663 6380 (t)
+1 202 663 6363 (f)
catherine.ronis@wilmerhale.com

<u>Via Facsimile, Email and US Mail</u>

FBI Records Management Division
Services Request Unit Room 6359
935 Pennsylvania Avenue, N.W.
Washington D.C. 20535-0001
(Ph.) 202-324-5520
(Fax) 202-324-3752

<u>Re:   *Request Submitted Under the Freedom of Information Act for Records Concerning Detainees, including "Ghost Detainees/Prisoners," "Unregistered Detainees/Prisoners," and "CIA Detainees/Prisoners"*</u>

Dear Freedom of Information Officer:

This letter constitutes a request ("Request") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The Request is submitted on behalf of Amnesty International ("AI") and Washington Square Legal Services, Inc. ("WSLS"). AI is a non-government organization and a world-wide movement of members who campaign for internationally-recognized human rights. WSLS is the corporation that houses the International Human Rights Clinic ("the Clinic") of the New York University School of Law ("NYU Law School"). The Clinic is a project of NYU Law School's Center for Human Rights and Global Justice ("CHRGJ").

We are filing this request simultaneously with the Department of Defense (including its components, the Department of the Army, Navy and Air Force, the Marine Corps, and the Defense Intelligence Agency), the Department of Justice (including its components, the Federal Bureau of Investigation and Office of Intelligence Policy and Review), the Department of State, the Central Intelligence Agency, and the Department of Homeland Security (including its components the Office of Intelligence and Analysis, the Directorate for Policy, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, U.S. Coast Guard, and U.S. Customs and Border Protection). By this letter, we also request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).

We are seeking the opportunity to inspect and copy, if necessary, all records in the possession of the Department, including any officers, divisions or bureaus thereof, on the topics listed below.

WILMERHALE

FOIA Request
April 25, 2006
Page 2

### Definitions

For purposes of this request, the following terms shall be understood as described below:

The term "records" includes any and all reports, statements, examinations, memoranda, correspondence (including electronic mail), designs, maps, photographs, microfilms, computer tapes or disks, rules, regulations, codes, handbooks, manuals, or guidelines.

The term "government official" includes any U.S. government employee, and any person providing services to any agency of the United States government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the U.S. government.

The term "foreign official" includes any foreign government employee, and any person providing services to any agency of a foreign government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the foreign government.

The term "communication" means the giving, receiving, transmitting, or exchanging of information, including, but not limited to, any and all written, printed, telephonic, electronic, and in-person conversations by and with any person, and/or talk, gestures, or documents which memorialize or refer to any communications.

The term "detainee" means any person deprived of their liberty by one or more individuals or agencies who is prevented by any means from leaving the place in which he or she is being held. The term "detention" means depriving any person of their liberty such that they are prevented by any means from leaving the place in which they are held.

The term "place of detention" means any place or facility in which a "detainee" is kept, inside or outside the United States, regardless of whether it is officially recognized as a place of detention.

### Scope of Request

Unless otherwise stated, this request refers to *individuals who were, have been, or continue to be deprived of their liberty by or with the involvement of the United States and about whom the United States has not provided public information. These individuals have been referred to, among other things, as "ghost detainees/prisoners," "unregistered detainees/prisoners," "CIA detainees/prisoners" and "Other Governmental Agency Detainees" ("OGA Detainees").* These individuals have reportedly been held in various locations, including regular and irregular detention facilities, ships, aircraft, and military bases.

USIDOCS 5622526v1

WILMERHALE

FOIA Request
April 25, 2006
Page 3

Although not limited to any specific geographic area, this request pertains particularly to the following places:

| | | | |
|---|---|---|---|
| Afghanistan | Azerbaijan | Bulgaria | Djibouti |
| Egypt | Germany | Indonesia | Iraq |
| Jordan | Kosovo | Macedonia | Morocco |
| Pakistan | Poland | Romania | Syria |
| Thailand | Turkey | Ukraine | |

United Kingdom (including Diego Garcia)
United States (including all territories under the S.M.T.J)
Uzbekistan        Yemen

This Request does not seek records related to the formal extradition of individuals.

Requested records pertain to persons apprehended since September 11, 2001.

## Background

Numerous media reports indicate that the United States is involved in the secret or irregular apprehension, transfer, and detention of individuals on foreign territory.[1] These reports suggest that the government secretly detains and transports individuals on U.S. ships, military bases, and U.S.-chartered planes, as well as in foreign states.[2]

---

[1] See, e.g., Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1; Jan Cienski, Christopher Condon, Caroline Daniel, Guy Dinmore, Andrei Postelnicu, & Demetri Sevastopulo, *Evidence CIA Has Secret Jails in Europe*, FINANCIAL TIMES (LONDON), Nov. 3, 2005, at 1; Siobhan Gorman & Tom Bowman, *Reports of Secret CIA Prisons Prompt Concern*, L.A. TIMES, Nov. 3, 2005, at A4; Douglas Jehl & David Johnston, *CIA Now Acting Independently to Move Prisoners*, INT'L HERALD TRIB., Mar. 7, 2005, at 4; Dana Priest, *Wrongful Imprisonment: Anatomy of a CIA Mistake: German Citizen Released After Months in Rendition*, WASH. POST., Dec. 4, 2005; Brian Ross and Richard Esposito, *Exclusive: Sources Tell ABC News Top Al Qaeda Figures Held in Secret CIA Prisons*, ABC NEWS, Dec. 5, 2005, at http://abcnews.go.com/WNT/Investigation/story?id=1375123.; Eric Schmitt and Thom Shanker, *Rumsfeld Issued an Order to Hide Detainee in Iraq*, N.Y. Times, June 17, 2004, at A1; *US bars access to terror suspects*, BBC NEWS, Dec. 9, 2005; Josh White, *Army, CIA Agreed on 'Ghost' Prisoners*, WASH. POST, Mar. 11, 2005, at A16; *White House Mum on Secret CIA Prisons*, AGENCE FRANCE PRESSE ENGLISH WIRE, Nov. 2, 2005; *Yemen says U.S. sent prisoners to Europe*, UNITED PRESS INT'L (UPI), Dec. 11, 2005, at http://www.upi.com/InternationalIntelligence/view.php?StoryID=20051211-051738-9694r.

[2] See, id. and further e.g., Craig Whitlock, *Europeans Probe Secret CIA Flights; Questions Surround Possible Illegal Transfer of Terrorism Suspects*, WASH. POST, Nov. 17, 2005, at A22; Eric Schmitt & Carolyn Marshall, *In Secret Unit's 'Black Room,' a Grim Portrait of U.S. Abuse*, N.Y. TIMES, Mar. 19, 2006.

WILMERHALE

FOIA Request
April 25, 2006
Page 4

### Records Requested

Please disclose any records reflecting, discussing or referring to the policy and/or practice concerning:

1. The apprehension, transfer, detention, and interrogation of persons within the Scope of Request, including but not limited to:

    (a) The transfer of intelligence by one or more U.S. agencies or government officials to one or more foreign agencies or officials, in connection with the apprehension or detention of a person.

    (b) A request or direction by one or more U.S. agencies or government officials to one or more foreign agencies or officials regarding the apprehension of any person, and any related agreement concerning such apprehension.

    (c) The apprehension of a person in a foreign country by, with the involvement of, or in the presence of one or more U.S. officials.

    (d) The transfer of a person from any country to any other country for the purpose of detention and/or interrogation, at the direction or request or with the knowledge of one or more U.S. agencies or officials.

    (e) The transfer of a person from one place of detention to another within the same country at the direction or request or with the knowledge of one or more U.S. agencies or officials.

    (f) The detention of a person in a foreign country at the direction or request of one or more U.S. agencies or officials, including any agreement concerning the detention.

    (g) One or more U.S. agencies or officials seeking and/or being granted access to a foreign national detained in a foreign country.

    (h) One or more U.S. agencies or officials being present in a place of detention in a foreign country. This does not include visits to U.S. citizens by U.S. officials pursuant to the Vienna Convention on Consular Relations.

    (i) One or more U.S. agencies having control, direction, or administration of a subdivision, portion, or "cell" of a place of detention in a foreign country.

**WILMERHALE**

FOIA Request
April 25, 2006
Page 5

    2. Current and former places of detention where individuals within the Scope of Request have been or are currently held, including but not limited to:

    (a) Any place of detention in a foreign country being under the control, direction, or administration of one or more U.S. agencies.

    (b) Any place of detention that is not under the control, direction or administration of one or more U.S. agencies, where a detainee is held at the request or instruction of one or more U.S. agencies or officials.

    (c) Any subdivision, portion, or "cell" of a place of detention in a foreign country under the control, direction, or administration of one or more U.S. agencies.

    (d) Any agreement between the U.S. government or one or more U.S. agencies or officials, and a foreign government or one or more foreign agencies or officials, in relation to a place of detention in a foreign country, regardless of whether that place of detention is foreign or U.S.—controlled.

    3. The names and identities of detainees who fall within the scope of this request.[3]

### Fee Waiver

    The requestors qualify as "representatives of the news media" and the records sought are not for commercial use. Moreover, this Request "is likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester[s]." 5 U.S.C. § 552(a)(4)(A)(iii).

    Amnesty International is a non-governmental organization and a world-wide movement of members who campaign for internationally recognized human rights. AI publishes reports, press-briefings, newsletters and urgent action requests informing the public about human rights, including torture and disappearances. AI also disseminates information through its website www.amnesty.org.

---

[3] Because of the nature of their detention, the requesters do not know the names or identities of those within the scope of this request. For examples of individuals that the United States has acknowledged detaining, but about whom the United States has not provided public information, see Center for Human Rights and Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"* (2005), available at http://www.nyuhr.org/docs/Whereabouts%20Unknown%20Final.pdf; and Human Rights Watch, "List of 'Ghost Prisoners' Possibly in CIA Custody (2005), *available at* http://hrw.org/english/docs/2005/11/30/usdom12109.htm. The scope of this request extends far beyond these examples.

WILMERHALE

FOIA Request
April 25, 2006
Page 6

The Center for Human Rights and Global Justice is a research center at NYU Law School. CHRGJ aims to advance human rights and respect for the rule of law through advocacy, scholarship, education and training. CHRGJ publishes reports and operates a website www.nyuhr.org discussing human rights issues.

The International Human Rights Clinic is a project of CHRGJ and an official program at NYU Law School, composed of students and directed by clinical professors, who engage in research and advocacy on human rights issues.

Washington Square Legal Services is a not-for-profit corporation that houses the clinical program of NYU Law School.

The requesters plan to disseminate the information disclosed as a result of this Request through the channels described above.

### Expedited Processing

Expedited processing is warranted as there is a "compelling need" for the records sought in this Request. 5 U.S.C. § 552(a)(6)(E)(i)(I). This need arises because the requesters are "primarily engaged in disseminating information" and there is an "urgency to inform the public concerning actual or alleged Federal Government Activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). *See also* 32 C.F.R. § 286.4(d)(3)(ii) (DOD); 6 C.F.R. § 5.5(d)(1)(ii) (DHS); 28 C.F.R. § 16.5(d)(1)(ii) (DOJ); 22 C.F.R. § 171.12(b)(2) (DOS).

AI is primarily engaged in disseminating information about human rights, through its reports, newsletters, press-briefings, urgent action requests, and on its website. CHRGJ is engaged in disseminating information about human rights, including in particular, the Federal Government's role in upholding human rights. As indicated above, this information is disseminated through published reports and CHRGJ's website. The Clinic actively supports this work, and WSLS houses the clinic. As reflected in the media articles cited above, there is an urgent need to provide the public with information relating to the U.S. government's practices concerning unregistered or ghost detainees.

There is also a "compelling need" because failure to obtain the records on an expedited basis "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I). *See also* 32 C.F.R. § 286.4(d)(3)(i) (DOD); 6 C.F.R. § 5.5(d)(1)(i) (DHS); 28 C.F.R. § 16.5(d)(1)(i) (DOJ); 22 C.F.R. § 171.12(b)(1) (DOS). This Request arises in the context of allegations of ongoing unlawful detention and abuse of individuals with the involvement of U.S. agents abroad. Failure to publicly expose and thereby halt any such practices could reasonably be expected to pose an imminent threat to the physical

WilmerHale

FOIA Request
April 25, 2006
Page 7

safety and lives of individuals whose identities we are unable to ascertain without the records sought herein.

Expedited processing is also warranted because this request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).

AI and WSLS certify that the foregoing statements regarding the basis for expedited processing are true and correct to the best of their knowledge and belief. 5 U.S.C. § 552(a)(6)(E)(vi). *See also* 32 C.F.R. § 286.4(d)(3)(iii) (DOD); 6 C.F.R. § 5.5(d)(3) (DHS); 28 C.F.R. § 16.5(d)(3) (DOJ); 22 C.F.R. § 171.12(b) (DOS).

\*   \*   \*

If this Request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect release of all segregable portions of otherwise exempt material. We also reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

As indicated above, we are applying for expedited processing of this Request. Notwithstanding your determination of that application, we look forward to your reply to the Request **within twenty (20) days**, as required under 5 U.S.C. § 552(a)(6)(A)(i).

WILMERHALE

FOIA Request
April 21, 2006
Page 8

Thank you for your prompt attention. Please direct all questions and future responses to:

CATHERINE K. RONIS
Counsel to Amnesty International USA
WilmerHale
2445 M Street Washington, D.C. 20037
Tel: (202) 663-6380
Fax: (202) 663-6363
E-mail: catherine.ronis@wilmerhale.com

If you need someone to reach by telephone, you may also contact Kyle DeYoung at WilmerHale at (202) 663-6785.

Sincerely,

_____
CURT GOERING
Deputy Director
Amnesty International USA
5 Penn Plaza
New York, NY 10001
Tel: (212) 807-8400
Fax: (212) 627-1451
E-mail: cgoering@aiusa.org

_____
MARGARET L. SATTERTHWAITE
Washington Square Legal Services, Inc.
Co-Director, International Human Rights Clinic
Faculty Director, Center for Human Rights &
Global Justice
NYU School of Law
245 Sullivan Street
New York NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
E-mail: margaret.satterthwaite@nyu.edu