# Attachment H



**U.S. Department of Justice**

Office of Information and Privacy

*Rec'd 7/26/06* gs.

*Telephone: (202) 514-3642*     *Washington, D.C. 20530*

JUL 2 0 2006

Ms. Catherine K. Ronis
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

    Re:  Request No. 1049375

Dear Ms. Ronis:

    This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation was received by this Office on July 19, 2006.

    The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours.  In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned number **06-2595**.  Please mention this number in any future correspondence to this Office regarding this matter.

    We will notify you of the decision on your appeal as soon as we can.  We regret the necessity of this delay and appreciate your continued patience.

        Sincerely,

        Priscilla Jones
        Chief, Administrative Staff

# Attachment I



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
(202) 616-6757  FAX: 616-6478   (www.usdoj.gov/usao)

Requester: Catherine Kane Ronis

Request Number: 06- 1500

Dear Ms. Ronis:

    The Executive Office for United States Attorneys has received your Freedom of Information Act request and assigned the above number to the request. Your request was forwarded to us by the Justice Management Division clearing house for FOIA requests. We note that your letter does not mention a U.S. Attorney's Office or the Executive Office for U.S. Attorney's as an agency of your interest.

    You have requested records concerning detainees. To the extent that any U.S. Attorney's Office had such records, the records you requested would pertain to particular individuals in the context of criminal prosecution. It is the policy of the Executive Office neither to confirm nor deny that records concerning living third parties exist. Since you have not provided evidence of prosecution of any named, particular individuals, the requested information would be exempt from release pursuant to 5 U.S.C. 552(b)(6) and/or (b)(7)(C) which pertain to records whose disclosure would result in an unwarranted invasion of personal privacy. Further, any release to you of such records would be in violation of the Privacy Act. 5 U.S.C. 552a. See *U.S. Department of Justice v. Reporters Committee for Freedom of the Press et al.*, 489 U.S. 749 (1989).

    If you were to get authorization from any named individuals for the release to you of their records and submit a new request to us with that authorization, please also tell us in your new request which U.S. Attorney's Office you want to have searched for the records.

    This is our final action on this above-numbered request. You may appeal my decision in this matter by writing within 60 days from the date of this letter, to the **Office of Information and Privacy, Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** Both the envelope and the letter of appeal should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court. 28 C.F.R. § 16.9.

Sincerely,

William G. Stewart II
Acting Assistant Director

Form No. 006d - 2/06

# Attachment J

WilmerHale

Catherine Kane Ronis

+1 202 663 6380 (t)
+1 202 663 6363 (f)
catherine.ronis@wilmerhale.com

July 21, 2006

**By Certified U.S. Mail and Facsimile**

Office of Information and Privacy
Department of Justice
1425 New York, Avenue
Suite 11050
Washington, DC 20530-0001

Re: *FOIA Appeal: Request 06-1500*

Dear Sir or Madam:

On April 25, 2006 Amnesty International USA[1] ("Amnesty") and Washington Square Legal Services ("WSLS") filed two requests for information under the Freedom of Information Act ("FOIA") regarding detainees secretly transferred or held by the United States Government, including "Ghost Detainees/Prisoners," "Unregistered Detainees/Prisoners" and "CIA Detainees/Prisoners" ("the Requests") with the Department of Justice ("DOJ") and other agencies. The Justice Management Division of the DOJ referred the Requests to the Executive Office for United States Attorneys ("Executive Office" or "EOUSA") on May 12, 2006. The Executive Office apparently assigned the Requests case number 06-1500 and responded to the Requests on May 24, 2006.[2] Copies of the Requests and the response letter are attached. *See* Exhibits A-C.

In its response, the Executive Office states that we have requested records concerning "detainees," that "[t]o the extent that any U.S. Attorney's Office had such records" these records would pertain to "particular individuals in the context of criminal hearings," and that it is agency policy to "neither to confirm nor deny" that these records exist.[3] *See* Ex. C. It asserts that the

---

[1] Amnesty International USA is the U.S. Section of Amnesty International. *See* http:///www.amnestyusa.org/about/.

[2] It is unclear whether 06-1500 is the file number assigned to one, both, or neither of the Requests, but we note it here as it is the only identifying code in the response. In addition, since the statutory 20-day time limit has passed within which the Executive Office must determine whether to comply pursuant to 5 U.S.C. §552(a)(6)(A)(i) for both of the Requests, we construe the single response letter -- as well as this appeal -- to cover both of the Requests.

[3] As an initial matter, it is not clear that all of the records requested would implicate these concerns. For example, the first Request seeks records concerning not only the apprehension of individuals, but also any policies or practices reflecting, discussing, or referring to their transfer, detention and interrogation, as well as the locations where individuals have been, or are currently, detained. *See* Ex. A at 5. Moreover, the second Request seeks all records reflecting any policy (formal or informal) about the reception, detention or movement of unregistered or ghost detainees (including the "Memorandum of Understanding" mentioned in documents produced by the Department of Defense pursuant to an ACLU FOIA request, and reported in the Washington Post), all records generated in connection with the reporting requirement under § 1093(c) of the Ronald W. Reagan National Defense Authorization Act, all records reflecting communication regarding the United States' Second Periodic Report to the United Nations Committee Against Torture, all records reflecting communications regarding the United States'

Wilmer Cutler Pickering Hale and Dorr LLP, 1875 Pennsylvania Avenue NW, Washington, DC 20006

Baltimore    Beijing    Berlin    Boston    Brussels    London    Munich    New York    Northern Virginia    Oxford    Palo Alto    Waltham    Washington

WILMERHALE

Executive Office for U.S. Attorneys
July 21, 2006
Page 2

requested records would be exempt from release under 5 U.S.C. 552(b)(6) and/or (b)(7)(C) and that any release of these records would violate provisions of the Privacy Act, 5 U.S.C. 552(a). *See id.*

Pursuant to 5 U.S.C. §552, Amnesty and WSLS hereby appeal the Executive Office's determination regarding the Requests. While FOIA recognizes an agency's need for nondisclosure through enumerated exemptions, FOIA has also placed a burden on the agency to provide adequate explanation for asserting a specific FOIA exemption. *See* 5 U.S.C. § 552(a)(4)(B). An agency must conduct a "thorough search" for responsive documents and must give "reasonably detailed explanations why any withheld documents fall within an exemption." *Carney v. U. S. Dep't of Justice*, 19 F.3d 807, 812 (2nd Cir. 1994); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973).

Despite the requirements enumerated above, the Executive Office's response does not provide details about the agency's search methods or indicate that the Executive Office even conducted a search for documents responsive to the Requests. Similarly, the response does not contain any information regarding responsive documents that the agency may be withholding, let alone provide a reasonably detailed explanation as to why these documents fall under an exemption(s). Accordingly, the Executive Office has failed to demonstrate that it has complied with its FOIA obligations.[4]

Moreover, the specific exemptions the Executive Office cites in its response, 5 U.S.C. § 552(b)(6) and (7)(C), are not sufficient to warrant the agency's refusal to produce *redacted* documents. Courts have consistently held that redaction adequately protects personal privacy

---

Third Periodic Report to the Human Rights Committee, and all records reflecting communications regarding the negotiation or drafting of the draft Convention on the Protection of all Persons from Enforced Disappearance. *See* Ex. B at 4-7. These records do not pertain to particular individuals in the context of criminal proceedings and should be searched for and -- to the extent the Executive Office possesses any of these records -- produced. In addition, a number of the individuals who have been irregularly or secretly apprehended, transferred or detained have *never* been the subject of criminal hearings, due to the very nature of their status as secret or irregular prisoners.

[4] "The fundamental principle animating FOIA is public access to government documents. Accordingly, (courts) require agencies to make more than perfunctory searches, and . . . to follow through on obvious leads to discover requested documents. An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F. 3d 321, 326 (DC Cir. 1999); *see also Oglesby v. U.S. Dept of the Army*, 920 F 2d 57, 68 (DC Cir. 1990) (the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested).

WILMERHALE

Executive Office for U.S. Attorneys
July 21, 2006
Page 3

interests such that exemptions 6 and 7 are not triggered.[5] *Dep't of State v. Ray*, 502 U.S. 164, 174 (1991); *Dep't of the Air Force v. Rose*, 425 U.S. 352, 358 (1976); *see also ACLU v. Dep't of Defense*, 389 F. Supp. 2d 547, 571-73 (S.D.N.Y. 2005). Accordingly, the Executive Office must produce documents responsive to the Requests, including documents pertaining to particular individuals where it is possible to redact the documents to prevent disclosure of personal, private information.

Amnesty and WSLS have reason to believe that the Executive Office possesses documents responsive to the Requests. The Executive Office is a branch of the Department of Justice ("DOJ")[6] that provides the 93 United States Attorneys (94 United States Attorneys' offices) with "general executive assistance and direction, policy development, administrative management direction and oversight, operational support, coordination with other components of the Department and other federal agencies," and certain legal, budgetary, and personnel services.[7] The Executive Office is also involved in counter-terrorism efforts within the DOJ.[8]

The DOJ has had a role in the U.S. secret detention system. "The existence and locations of the facilities -- referred to as "black sites" in classified White House, CIA, *Justice Department* and congressional documents -- are known to only a handful of officials in the United States and, usually, only to the president and a few top intelligence officers in each host country"[9]

---

[5] Similarly, the Privacy Act provisions cited in the Executive Office's response do not bar the release of redacted records responsive to the Requests. The Privacy Act contains a specific provision exempting information that must be disclosed under FOIA. *See* 5 U.S.C. § 552a(b)(2). Indeed, the case that the agency cites in its response explicitly states that documents *"with identifying names redacted*, were generally disclosable" under the Privacy Act. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 768 (1989) (emphasis in original).

[6] "The Executive Office for United States Attorneys (EOUSA) was created on April 6, 1953, by AG Order No. 8-53 to provide for close liaison between the Department of Justice (DOJ) in Washington, D.C., and the 93 United States Attorneys located throughout the 50 states, the District of Columbia, Guam, the Marianas Islands, Puerto Rico, and the U. S. Virgin Islands." *See* http://www.usdoj.gov/usao/eousa/.

[7] *See* http://www.usdoj.gov/usao/eousa/mission.html.

[8] EOUSA provides administrative support to the Anti-Terrorism Advisory Councils (ATACs) and has one staff person in EOUSA who is responsible for providing support to ATACs. *See* http://www.usdoj.gov/oig/reports/plus/e0507/background.htm. On September 17, 2001, the Attorney General mandated that each U.S. Attorney establish an ATAC. In September 2001, these groups were called Anti-Terrorism Task Forces. They were renamed Anti-Terrorism Advisory Councils on September 25, 2003. *See* http://www.usdoj.gov/oig/reports/plus/e0507/background.htm. These Councils facilitate information exchange between members; conduct counter-terrorism training; and co-ordinate prosecutorial and investigative strategies among various groups, including the FBI's Joint Terrorism Task Force (JTTF).

[9] *See* Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1.

WILMERHALE

Executive Office for U.S. Attorneys
July 21, 2006
Page 4

(emphasis added).  There is evidence that DOJ officials and lawyers both knew about and helped approve the "black site" program.[10]/  Furthermore, it is reported that the CIA set up its secret prisons under its covert action authority.[11]/  Covert actions can only be authorized by a Presidential Finding, which is "reviewed and approved" by the DOJ and other legal advisers.[12]/

    Not only has the DOJ reportedly been involved in authorizing secret detention programs, but there is evidence that the DOJ has been involved in investigating CIA leaks concerning the secret detention system.[13]/

    The Executive Office would also likely have responsive documents relating to statements of persons believed to be currently held in secret detention.  For example, on March 28, 2006, in *USA v. Moussaoui* in the U.S. District Court, Eastern District of Virginia (Alexandria), substitutions for the testimony of Khalid Sheikh Mohammed, Mustafa Ahmed al-Hawsawi, Walid Muhammad Salih Bin Attash, and Riduan Isamuddin ("Hambali") were introduced into evidence.[14]/  All of these four individuals have been identified as persons held in secret detention.[15]/

---

[10]/ "The black-site program was *approved by a small circle of White House and Justice Department lawyers and officials,* according to several former and current U.S. government and intelligence officials" (emphasis added).  *See* Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1.

[11]/ *See* Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1.

[12]/ *See* Dana Priest, *CIA Holds Terror Suspects in Secret Prisons*, WASH. POST, Nov. 2, 2005, at A1.

[13]/ This is additional information that would not implicate the Executive Office's privacy concerns listed in its response.  Media reports indicate that the CIA has asked the DOJ to "prosecute any leakers within its ranks."  *See* http://abcnews.go.com/US/Investigation/story?id=1587307&page=1. The DOJ has also "separately opened preliminary investigations into the disclosure of information to The Post, for its articles about secret prisons...": *see* http://www.nytimes.com/2006/04/22/washington/22leak.html?ei=5088&en=b5cc2844c89ebaae&ex=1303358400& partner=&pagewanted=print (also recording that "The disclosures about the prisons provoked an outcry among European allies and set off protests among Democrats in Congress. The leak prompted the C.I.A. to send a criminal referral to lawyers at the Justice Department.").

[14]/ *See* http://www.rcfp.org/moussaoui for copies of these substitutions.  The introduction to Khalid Sheikh Mohammed's statement reads "Sheikh Mohammed was captured in March 2003, and has been interrogated over the course of years on multiple occasions since his capture.  None of the attorneys for either the prosecution or defense have been allowed access to Sheikh Mohammed, who is not available to testify either in person or by video for national security reasons.  However, the lawyers have been given numerous written summaries of Sheik Mohammed's oral statements made in response to extensive questioning." *See*

WILMERHALE

Executive Office for U.S. Attorneys
July 21, 2006
Page 5

      Finally, there is evidence of the existence of U.S. indictments against those currently believed to be held in secret detention, which again implies that the Executive Office may possess responsive documents. For example, Ahmed Khalfan Ghailani has been identified as an individual currently held in secret detention.[16]/ On December 16, 1998, Ghailani was indicted on nine counts in the Southern District of New York for his involvement in the U.S. Embassy bombings in Tanzania and Kenya.[17]/ A bench warrant was also issued for his arrest at this time.[18]/

---

http://www.rcfp.org/moussaoui/pdf/DX-0941.pdf.  On the introduction of these documents into evidence, *see generally* http://news.bbc.co.uk/1/hi/world/americas/4471245.stm.

[15]/ *See* Center for Human Rights and Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"* (New York: NYU School of Law, 2005), *available at* http://www.nyuhr.org/docs/Whereabouts Unknown Final..pdf, on Khalid Sheikh Mohammed (p.8), Mustafa Ahmed al-Hawsawi (p.5), Walid Muhammad Salih Bin Attash (p.6), and Riduan Isamuddin ("Hambali") (p.7).  *See also* WITNESS, *Outlawed: Extraordinary Rendition, Torture and Disappearances in the 'War on Terror'*, http://www.witness.org/index.php?option=com_rightsalert&Itemid=178&task=view&alert_id=49, released June 26, 2006; Human Rights Watch, List of "Ghost Prisoners" possibly in CIA custody, *available at* http://hrw.org/english/docs/2005/11/30/usdom12109.htm.

[16]/ *See* Center for Human Rights and Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"* (New York: NYU School of Law, 2005), *available at* http://www.nyuhr.org/docs/Whereabouts Unknown Final..pdf at 6 – 7.  *See also* WITNESS, *Outlawed: Extraordinary Rendition, Torture and Disappearances in the 'War on Terror'*, http://www.witness.org/index.php?option=com_rightsalert&Itemid=178&task=view&alert_id=49, released June 26, 2006; Human Rights Watch, List of "Ghost Prisoners" possibly in CIA custody, *available at* http://hrw.org/english/docs/2005/11/30/usdom12109.htm.

[17]/ *See USA v. Hage, et al*, No. 1:98-cr-01023-KTD, SDNY (filed 09/21/1998) full docket text for document 31, 12/16/1998 ("(S3) SUPERSEDING INDICTMENT as to Wadih El Hage (1) count(s) 1sss, 228sss-235sss, 236sss-238sss, Fazul Abdullah Mohammed (2) count(s) 1ss, 2ss-3ss, 4ss-216ss, 217ss-227ss, Mohamed Sadeek Odeh (3) count(s) 1ss, 2ss-3ss, 4ss-216ss, 217ss-227ss, Mohamed Rashed Daoud Al-'Owhali (4) count(s) 1ss, 2ss-3ss, 4ss-216ss, 217ss-227ss, Usama Bin Laden (5) count(s) 1s, 2s-3s, 4s-216s, 217s-227s, Muhammad Atef (6) count(s) 1s, 2s-3s, 4s-216s, 217s-227s , Mustafa Mohamed Fadhil (7) count(s) 1, 3, 217-227, Khalfan Khamis Mohamed (8) count(s) 1, 3, 217-227, Ahmed Khalfan Ghailani (9) count(s) 1, 3, 217-227, Fahid Mohammed Msalam (10) count(s) 1, 3, 217-227, Sheikh Ahmed Salim Swedan (11) count(s) 1, 3, 217-227 (rag)"); *Al Qaeda Suspect Handed Over to the US*, DAWN ONLINE EDITION, Jan. 26, 2005, *available at* http://www.dawn.com/2005/01/26/top5.htm; *Pakistan Interrogates al-Qaida Suspect*, ASSOCIATED PRESS, July 30, 2004, *available at* http://www.msnbc.msn.com/id/5550599/.

[18]/ *See USA v. Hage, et al*, No. 1:98-cr-01023-KTD, SDNY (filed 09/21/1998) full docket text of Oral order, 12/16/1998 ("ORAL ORDER as to Mustafa Mohamed Fadhil, Khalfan Khamis Mohamed, Ahmed Khalfan Ghailani, Fahid Mohammed Msalam, Sheikh Ahmed Salim Swedan , A bench warrant (sic) has been issued for the above stated defendants. (Entered by Judge Leonard B. Sand ) (mr)").

WILMERHALE

Executive Office for U.S. Attorneys
July 21, 2006
Page 6

In short, the response provided by the Executive Office does not adequately demonstrate that the agency has complied with its FOIA obligations, and there is evidence to suggest that it is likely that the Executive Office possesses documents responsive to the Requests. We therefore respectfully request that the Executive Office conduct a more thorough search, produce any and all responsive documents (in redacted form if necessary), and, if any documents are withheld, provide a detailed explanation for why the exemptions asserted cover each of the documents in question.

We look forward to your reply to this appeal within **twenty (20) working days**, as required under 5 U.S.C. §552(a)(6)(A)(ii).

Sincerely,

Curt Goering
Deputy Director
Amnesty International USA
5 Penn Plaza
New York, NY 10001
Tel: (212) 807-8400
Fax: (212) 627-1451
E-mail: cgoering@aiusa.org

Margaret L. Satterthwaite
Washington Square Legal Services, Inc.
Co-Director, International Human Rights Clinic
Faculty Director, Center for Human Rights &
Global Justice
NYU School of Law
245 Sullivan Street
New York, NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
E-Mail: margaret.satterthwaite@nyu.edu

WILMERHALE

Executive Office for U.S. Attorneys
July 21, 2006
Page 7

Catherine K. Ronis
WilmerHale
1875 Pennsylvania Avenue
Washington, DC 20006
Tel: (202) 663-6380
Fax: (202) 663-6363
E-Mail: catherine.ronis@wilmerhale.com

# TAB A

# WILMERHALE

April 25, 2006

Catherine Kane Ronis

+1 202 663 6380 (t)
+1 202 663 6363 (f)
catherine.ronis@wilmerhale.com

<u>Via Facsimile, Email and US Mail</u>

Patricia D. Harris
Management Analyst
FOIA/PA Mail Referral Unit
Department of Justice
Room 1070, National Place Building
Washington D.C. 20530-0001
(Ph.) 202-305-3187
(Fax) 202-307-1874

<u>Re:     Request Submitted Under the Freedom of Information Act for Records Concerning
Detainees, including "Ghost Detainees/Prisoners," "Unregistered Detainees/Prisoners," and
"CIA Detainees/Prisoners"</u>

Dear Freedom of Information Officer:

This letter constitutes a request ("Request") pursuant to the Freedom of Information Act,
5 U.S.C. § 552 ("FOIA"). The Request is submitted on behalf of Amnesty International ("AI")
and Washington Square Legal Services, Inc. ("WSLS"). AI is a non-government organization
and a world-wide movement of members who campaign for internationally-recognized human
rights. WSLS is the corporation that houses the International Human Rights Clinic ("the Clinic")
of the New York University School of Law ("NYU Law School"). The Clinic is a project of
NYU Law School's Center for Human Rights and Global Justice ("CHRGJ").

We are filing this request simultaneously with the Department of Defense (including its
components, the Department of the Army, Navy and Air Force, the Marine Corps, and the
Defense Intelligence Agency), the Department of Justice (including its components, the Federal
Bureau of Investigation and Office of Intelligence Policy and Review), the Department of State,
the Central Intelligence Agency, and the Department of Homeland Security (including its
components the Office of Intelligence and Analysis, the Directorate for Policy, U.S. Immigration
and Customs Enforcement, U.S. Citizenship and Immigration Services, U.S. Coast Guard, and
U.S. Customs and Border Protection). By this letter, we also request expedited processing
pursuant to 5 U.S.C. § 552(a)(6)(E).

We are seeking the opportunity to inspect and copy, if necessary, all records in the
possession of the Department, including any officers, divisions or bureaus thereof, on the topics
listed below.

WILMERHALE

FOIA Request
April 25, 2006
Page 2

## Definitions

For purposes of this request, the following terms shall be understood as described below:

The term "records" includes any and all reports, statements, examinations, memoranda, correspondence (including electronic mail), designs, maps, photographs, microfilms, computer tapes or disks, rules, regulations, codes, handbooks, manuals, or guidelines.

The term "government official" includes any U.S. government employee, and any person providing services to any agency of the United States government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the U.S. government.

The term "foreign official" includes any foreign government employee, and any person providing services to any agency of a foreign government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the foreign government.

The term "communication" means the giving, receiving, transmitting, or exchanging of information, including, but not limited to, any and all written, printed, telephonic, electronic, and in-person conversations by and with any person, and/or talk, gestures, or documents which memorialize or refer to any communications.

The term "detainee" means any person deprived of their liberty by one or more individuals or agencies who is prevented by any means from leaving the place in which he or she is being held. The term "detention" means depriving any person of their liberty such that they are prevented by any means from leaving the place in which they are held.

The term "place of detention" means any place or facility in which a "detainee" is kept, inside or outside the United States, regardless of whether it is officially recognized as a place of detention.

## Scope of Request

Unless otherwise stated, this request refers to *individuals who were, have been, or continue to be deprived of their liberty by or with the involvement of the United States and about whom the United States has not provided public information. These individuals have been referred to, among other things, as "ghost detainees/prisoners," "unregistered detainees/prisoners," "CIA detainees/prisoners" and "Other Governmental Agency*

WILMERHALE

FOIA Request
April 25, 2006
Page 3

*Detainees" ("OGA Detainees").*  These individuals have reportedly been held in various
locations, including regular and irregular detention facilities, ships, aircraft, and military bases.

Although not limited to any specific geographic area, this request pertains particularly to
the following places:

| | | | |
|---|---|---|---|
| Afghanistan | Azerbaijan | Bulgaria | Djibouti |
| Egypt | Germany | Indonesia | Iraq |
| Jordan | Kosovo | Macedonia | Morocco |
| Pakistan | Poland | Romania | Syria |
| Thailand | Turkey | Ukraine | |

United Kingdom (including Diego Garcia)
United States (including all territories under the S.M.T.J)
Uzbekistan       Yemen

This Request does not seek records related to the formal extradition of individuals.

Requested records pertain to persons apprehended since September 11, 2001.

## Background

Numerous media reports indicate that the United States is involved in the secret or
irregular apprehension, transfer, and detention of individuals on foreign territory.[1]  These reports

---

[1] *See, e.g.,* Dana Priest, *CIA Holds Terror Suspects in Secret Prisons,* WASH. POST, Nov. 2, 2005, at A1; Jan
Cienski, Christopher Condon, Caroline Daniel, Guy Dinmore, Andrei Postelnicu, & Demetri Sevastopulo, *Evidence
CIA Has Secret Jails in Europe,* FINANCIAL TIMES (LONDON), Nov. 3, 2005, at 1; Siobhan Gorman & Tom
Bowman, *Reports of Secret CIA Prisons Prompt Concern,* L.A. TIMES, Nov. 3, 2005, at A4; Douglas Jehl & David
Johnston, *CIA Now Acting Independently to Move Prisoners,* INT'L HERALD TRIB., Mar. 7, 2005, at 4; Dana Priest,
*Wrongful Imprisonment: Anatomy of a CIA Mistake: German Citizen Released After Months in Rendition,* WASH.
POST., Dec. 4, 2005; Brian Ross and Richard Esposito, *Exclusive: Sources Tell ABC News Top Al Qaeda Figures
Held in Secret CIA Prisons,* ABC NEWS, Dec. 5, 2005, *at*
http://abcnews.go.com/WNT/Investigation/story?id=1375123.; Eric Schmitt and Thom Shanker, *Rumsfeld Issued an
Order to Hide Detainee in Iraq,* N.Y. Times, June 17, 2004, at A1; *US bars access to terror suspects,* BBC NEWS,
Dec. 9, 2005; Josh White, *Army, CIA Agreed on 'Ghost' Prisoners,* WASH. POST, Mar. 11, 2005, at A16; *White
House Mum on Secret CIA Prisons,* AGENCE FRANCE PRESSE ENGLISH WIRE, Nov. 2, 2005; *Yemen says U.S. sent
prisoners to Europe,* UNITED PRESS INT'L (UPI), Dec. 11, 2005, *at*
http://www.upi.com/InternationalIntelligence/view.php?StoryID=20051211-051738-9694r.

WILMERHALE

FOIA Request
April 25, 2006
Page 4

suggest that the government secretly detains and transports individuals on U.S. ships, military bases, and U.S.-chartered planes, as well as in foreign states.[2]

<u>Records Requested</u>

Please disclose any records reflecting, discussing or referring to the policy and/or practice concerning:

    1. The apprehension, transfer, detention, and interrogation of persons within the Scope of Request, including but not limited to:

        (a) The transfer of intelligence by one or more U.S. agencies or government officials to one or more foreign agencies or officials, in connection with the apprehension or detention of a person.

        (b) A request or direction by one or more U.S. agencies or government officials to one or more foreign agencies or officials regarding the apprehension of any person, and any related agreement concerning such apprehension.

        (c) The apprehension of a person in a foreign country by, with the involvement of, or in the presence of one or more U.S. officials.

        (d) The transfer of a person from any country to any other country for the purpose of detention and/or interrogation, at the direction or request or with the knowledge of one or more U.S. agencies or officials.

        (e) The transfer of a person from one place of detention to another within the same country at the direction or request or with the knowledge of one or more U.S. agencies or officials.

        (f) The detention of a person in a foreign country at the direction or request of one or more U.S. agencies or officials, including any agreement concerning the detention.

        (g) One or more U.S. agencies or officials seeking and/or being granted access to a foreign national detained in a foreign country.

---

[2] *See, id. and further e.g.,* Craig Whitlock, *Europeans Probe Secret CIA Flights; Questions Surround Possible Illegal Transfer of Terrorism Suspects,* WASH. POST, Nov. 17, 2005, at A22; Eric Schmitt & Carolyn Marshall, *In Secret Unit's 'Black Room,' a Grim Portrait of U.S. Abuse,* N.Y. TIMES, Mar. 19, 2006.

WILMERHALE

FOIA Request
April 25, 2006
Page 5

(h)  One or more U.S. agencies or officials being present in a place of detention in a foreign country.  This does not include visits to U.S. citizens by U.S. officials pursuant to the Vienna Convention on Consular Relations.

(i)  One or more U.S. agencies having control, direction, or administration of a subdivision, portion, or "cell" of a place of detention in a foreign country.

2.  Current and former places of detention where individuals within the Scope of Request have been or are currently held, including but not limited to:

(a)  Any place of detention in a foreign country being under the control, direction, or administration of one or more U.S. agencies.

(b)  Any place of detention that is not under the control, direction or administration of one or more U.S. agencies, where a detainee is held at the request or instruction of one or more U.S. agencies or officials.

(c)  Any subdivision, portion, or "cell" of a place of detention in a foreign country under the control, direction, or administration of one or more U.S. agencies.

(d)  Any agreement between the U.S. government or one or more U.S. agencies or officials, and a foreign government or one or more foreign agencies or officials, in relation to a place of detention in a foreign country, regardless of whether that place of detention is foreign or U.S.—controlled.

3.  The names and identities of detainees who fall within the scope of this request.[3]

## Fee Waiver

The requestors qualify as "representatives of the news media" and the records sought are not for commercial use.  Moreover, this Request "is likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester[s]."  5 U.S.C. § 552(a)(4)(A)(iii).

---

[3] Because of the nature of their detention, the requesters do not know the names or identities of those within the scope of this request. For examples of individuals that the United States has acknowledged detaining, but about whom the United States has not provided public information, *see* Center for Human Rights and Global Justice, *Fate and Whereabouts Unknown: Detainees in the "War on Terror"*(2005), *available at* http://www.nyuhr.org/docs/Whereabouts%20Unknown%20Final.pdf; and Human Rights Watch, "List of 'Ghost Prisoners' Possibly in CIA Custody (2005), *available at* http://hrw.org/english/docs/2005/11/30/usdom12109.htm. The scope of this request extends far beyond these examples.

WILMERHALE

FOIA Request
April 25, 2006
Page 6

Amnesty International is a non-governmental organization and a world-wide movement of members who campaign for internationally recognized human rights. AI publishes reports, press-briefings, newsletters and urgent action requests informing the public about human rights, including torture and disappearances. AI also disseminates information through its website www.amnesty.org.

The Center for Human Rights and Global Justice is a research center at NYU Law School. CHRGJ aims to advance human rights and respect for the rule of law through advocacy, scholarship, education and training. CHRGJ publishes reports and operates a website www.nyuhr.org discussing human rights issues.

The International Human Rights Clinic is a project of CHRGJ and an official program at NYU Law School, composed of students and directed by clinical professors, who engage in research and advocacy on human rights issues.

Washington Square Legal Services is a not-for-profit corporation that houses the clinical program of NYU Law School.

The requesters plan to disseminate the information disclosed as a result of this Request through the channels described above.

### Expedited Processing

Expedited processing is warranted as there is a "compelling need" for the records sought in this Request. 5 U.S.C. § 552(a)(6)(E)(i)(I). This need arises because the requesters are "primarily engaged in disseminating information" and there is an "urgency to inform the public concerning actual or alleged Federal Government Activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). *See also* 32 C.F.R. § 286.4(d)(3)(ii) (DOD); 6 C.F.R. § 5.5(d)(1)(ii) (DHS); 28 C.F.R. § 16.5(d)(1)(ii) (DOJ); 22 C.F.R. § 171.12(b)(2) (DOS).

AI is primarily engaged in disseminating information about human rights, through its reports, newsletters, press-briefings, urgent action requests, and on its website. CHRGJ is engaged in disseminating information about human rights, including in particular, the Federal Government's role in upholding human rights. As indicated above, this information is disseminated through published reports and CHRGJ's website. The Clinic actively supports this work, and WSLS houses the clinic. As reflected in the media articles cited above, there is an urgent need to provide the public with information relating to the U.S. government's practices concerning unregistered or ghost detainees.

WILMERHALE

FOIA Request
April 25, 2006
Page 7

There is also a "compelling need" because failure to obtain the records on an expedited basis "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I). *See also* 32 C.F.R. § 286.4(d)(3)(i) (DOD); 6 C.F.R. § 5.5(d)(1)(i) (DHS); 28 C.F.R. § 16.5(d)(1)(i) (DOJ); 22 C.F.R. § 171.12(b)(1) (DOS). This Request arises in the context of allegations of ongoing unlawful detention and abuse of individuals with the involvement of U.S. agents abroad. Failure to publicly expose and thereby halt any such practices could reasonably be expected to pose an imminent threat to the physical safety and lives of individuals whose identities we are unable to ascertain without the records sought herein.

Expedited processing is also warranted because this request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).

AI and WSLS certify that the foregoing statements regarding the basis for expedited processing are true and correct to the best of their knowledge and belief. 5 U.S.C. § 552(a)(6)(E)(vi). *See also* 32 C.F.R. § 286.4(d)(3)(iii) (DOD); 6 C.F.R. § 5.5(d)(3) (DHS); 28 C.F.R. § 16.5(d)(3) (DOJ); 22 C.F.R. § 171.12(b) (DOS).

\*    \*    \*

If this Request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect release of all segregable portions of otherwise exempt material. We also reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

As indicated above, we are applying for expedited processing of this Request. Notwithstanding your determination of that application, we look forward to your reply to the Request **within twenty (20) days**, as required under 5 U.S.C. § 552(a)(6)(A)(i).

WILMERHALE

FOIA Request
April 21, 2006
Page 8

Thank you for your prompt attention.  Please direct all questions and future responses to:

CATHERINE K. RONIS
Counsel to Amnesty International USA
WilmerHale
2445 M Street Washington, D.C. 20037
Tel: (202) 663-6380
Fax: (202) 663-6363
E-mail: catherine.ronis@wilmerhale.com

If you need someone to reach by telephone, you may also contact Kyle DeYoung at WilmerHale at (202) 663-6785.

Sincerely,

CURT GOERING
Deputy Director
Amnesty International USA
5 Penn Plaza
New York, NY 10001
Tel: (212) 807-8400
Fax: (212) 627-1451
E-mail: cgoering@aiusa.org

MARGARET L. SATTERTHWAITE
Washington Square Legal Services, Inc.
Co-Director, International Human Rights Clinic
Faculty Director, Center for Human Rights &
Global Justice
NYU School of Law
245 Sullivan Street
New York NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
E-mail: margaret.satterthwaite@nyu.edu

# TAB B

WILMERHALE

April 25, 2006

Catherine Kane Ronis

+1 202 663 6380 (t)
+1 202 663 6363 (f)
catherine.ronis@wilmerhale.com

<u>Via Facsimile, Email and US Mail</u>

Patricia D. Harris
Management Analyst
FOIA/PA Mail Referral Unit
Department of Justice
Room 1070, National Place Building
Washington D.C. 20530-0001
(Ph.) 202-305-3187
(Fax) 202-307-1874

<u>Re:      Request Under the Freedom of Information Act for Records Concerning Ghost Detainee
Memoranda, Department of Defense Detainee Reporting, Reports to Certain U.N. Committees,
and the Draft Convention on Enforced Disappearance</u>

Dear Freedom of Information Officer:

        This letter constitutes a request ("Request") pursuant to the Freedom of Information Act,
5 U.S.C. § 552 ("FOIA"). The Request is submitted on behalf of Amnesty International ("AI")
and Washington Square Legal Services, Inc. ("WSLS"). AI is a non-government organization
and a world-wide movement of members who campaign for internationally-recognized human
rights. WSLS is the corporation that houses the International Human Rights Clinic ("the Clinic")
of the New York University School of Law ("NYU Law School"). The Clinic is a project of
NYU Law School's Center for Human Rights and Global Justice ("CHRGJ").

        We are filing this request simultaneously with the Department of Defense (including its
components, the Department of the Army, Navy and Air Force, the Marine Corps, and the
Defense Intelligence Agency), the Department of Justice (including its components, the Federal
Bureau of Investigation and Office of Intelligence Policy and Review), the Department of State,
the Central Intelligence Agency, and the Department of Homeland Security (including its
components the Office of Intelligence and Analysis, the Directorate for Policy, U.S. Immigration
and Customs Enforcement, U.S. Citizenship and Immigration Services, U.S. Coast Guard, and
U.S. Customs and Border Protection). By this letter, we also request expedited processing
pursuant to 5 U.S.C. § 552(a)(6)(E).

        We are seeking the opportunity to inspect and copy, if necessary, all records in the
possession of the Department, including any officers, divisions or bureaus thereof, on the topics
listed below.

Wilmer Cutler Pickering Hale and Dorr LLP, 2445 M Street, NW, Washington, DC 20037

Baltimore    Beijing    Berlin    Boston    Brussels    London    Munich    New York    Northern Virginia    Oxford    Palo Alto    Waltham    Washington

WILMERHALE

FOIA Request
April 25, 2006
Page 2

## Definitions

For purposes of this request, the following terms shall be understood as described below:

The term "records" includes any and all reports, statements, examinations, memoranda, correspondence (including electronic mail), designs, maps, photographs, microfilms, computer tapes or disks, rules, regulations, codes, handbooks, manuals, or guidelines.

The term "government official" includes any U.S. government employee, and any person providing services to any agency of the United States government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the U.S. government.

The term "foreign official" includes any foreign government employee, and any person providing services to any agency of a foreign government on a contractual basis, regardless of his or her rank or ability to speak or make decisions on behalf of the foreign government.

The term "communication" means the giving, receiving, transmitting, or exchanging of information, including, but not limited to, any and all written, printed, telephonic, electronic, and in-person conversations by and with any person, and/or talk, gestures, or documents which memorialize or refer to any communications.

The term "detainee" means any person deprived of their liberty by one or more individuals or agencies who is prevented by any means from leaving the place in which he or she is being held. The term "detention" means depriving any person of their liberty such that they are prevented by any means from leaving the place in which they are held.

The term "place of detention" means any place or facility in which a "detainee" is kept, inside or outside the United States, regardless of whether it is officially recognized as a place of detention.

Unless otherwise specified, this request relates to all records generated between September 11, 2001 and the present.

WILMERHALE

FOIA Request
April 25, 2006
Page 3

## Memoranda of Understanding

The practice of persons being kept as "off-the-record" detainees in military prisons has been well documented.[1] In this context, "ghost" or "unregistered" detainees are understood to refer to those detainees who were at some point during their detention, or remain: not "officially" registered at military facilities; "kept off the books"; and/or denied access to the International Committee of the Red Cross (ICRC).[2]  Documents produced by the Department of Defense on March 3, 2005 pursuant to an ACLU FOIA request[3] and a media report in the

---

[1] *See* Josh White, *Army, CIA Agreed on 'Ghost' Prisoners*, WASH. POST, Mar. 11, 2005, at A16. *See also* Jane Mayer, *A Deadly Interrogation: Can the C.I.A. Legally Kill a Prisoner?*, NEW YORKER, Nov. 14, 2005, at 44 (discussing the practice, particularly with respect to the death of Manadel al-Jamadi). *See also* the following Department of Defense documents released to the American Civil Liberties Union (ACLU) pursuant to a *Freedom of Information Act* request, all available at http://www.aclu.org/torturefoia/released/030905/: Transcript of deposition of Brig. Gen. Janis L. Karpinski, Appendix to Fay/Jones/Kern Report (July 18, 2004); Statement of MNF-I, C2, IMIR CW2, Annex to Fay/Jones/Kern Report (June 16, 2004); Sworn Statement of E-5, 519th MI Bn, Annex to Fay/Jones/Kern Report (June 4, 2004); Sworn Statement of 372nd MP Co SPC, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of 372nd MP Co SPC, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of [UNREADABLE], Annex to Fay/Jones/Kern Report; Sworn Statement of Deputy CJ2, CJTF-7, Annex to Fay/Jones/Kern Report; Sworn Statement of SGT, 372nd MP, Camp Victory, Annex to Fay/Jones/Kern Report (May 7, 2004); Sworn Statement of SPC/E4, B Co., 66th MI Group, 202nd MI BN, Annex to Fay/Jones/Kern Report (May 24, 2004); Sworn Statement of SGT, Member of GTMO team, "Shut Up Group," Annex to Fay/Jones/Kern Report (June 4, 2004); Sworn Statement of CW2, A/519th MI Bn, Annex to Fay/Jones/Kern Report (May 19, 2004); Sworn Statement of SGT, 372nd MP Co, Annex to Fay/Jones/Kern Report (May 7, 2004); Statement of B/Co, 470th MI Grp. SGT, Annex to Fay/Jones/Kern Report (May 18, 2004). *See further* HUMAN RIGHTS FIRST, BEHIND THE WIRE: AN UPDATE TO *ENDING SECRET DETENTIONS* 6 (2005), *available at* http://www.humanrightsfirst.org/us_law/PDF/behind-the-wire-033005.pdf (providing overview of the practice of ghosting in military facilities); HUMAN RIGHTS WATCH, THE UNITED STATES' DISAPPEARED: THE CIA'S LONG-TERM "GHOST DETAINEES" 5-15 (2004), *available at* http://www.hrw.org/backgrounder/usa/us1004/us1004.pdf (outlining practice of keeping CIA prisoners in military detention generally).

[2] *Id.*

[3] *See* Sworn Statement of [UNREADABLE], Annex to Fay/Jones/Kern Report, *in* Department of Defense FOIA Release, at 000719-000725, *available at* http://www.aclu.org/torturefoia/released/030905/ ("OGA and TF-121 routinely brought in detainees for a short period of time. The A/519th soldiers initiated the term 'ghost.' They stated they used this term as the detainees were not in-processed in the normal way via the MP database and were not yet categorized. It was difficult to track these particular detainees and I and other officers recommended that a Memorandum of Understanding be written up between OGA, the 205th MI BDE and the 800th MP BDE to establish procedures for a ghost detainee"); Sworn Statement of Deputy CJ2, CJTF-7, Annex to Fay/Jones/Kern Report, *in* Department of Defense FOIA Release, at 000726-000729, *available at* http://www.aclu.org/torturefoia/released/030905/ ("...in reference to Ghost detainees, OGA would bring in detainees for a short period of time. [REDACTED] brought them in. These particular ghost detainees were not yet categorized and OGA was working on that. It was very difficult keeping track of these OGA because they were not processed until OGA decided to turn them over to us. COL PAPPAS was not happy with that procedure.

WILMERHALE

FOIA Request
April 25, 2006
Page 4

*Washington Post* dated March 11, 2005[4] indicate that this arrangement for "ghosting" was not "ad hoc" but was embodied in a Memorandum of Understanding (MOU) between military officials and the CIA.[5]  The exact contours of this arrangement are not publicly known as a copy of this MOU was not included in the documents released by the Department of Defense.[6]

<u>Records Requested</u>

We seek the following records relating to the arrangement described above:

1.  Any memorandum of understanding, or other record reflecting an agreement or proposed agreement between agencies, or between any agency and any subdivision or official, concerning the handling of ghost or unregistered detainees.  This includes but is not limited to:

    (a)   Any record reflecting communications about whether or not to draft any memorandum of understanding or agreement regarding unregistered or ghost detainees.

    (b)   Any record reflecting communications about the content of any memorandum of understanding or agreement regarding unregistered or ghost detainees.

2.  Any record reflecting a policy, whether formal or informal, about the reception, detention, or movement of unregistered or ghost detainees.

3.  Any memorandum of understanding, or other record reflecting an agreement between any agencies, or between any subdivision or official or any other agency, regarding the transfer of detainees from the custody of one agency to that of another.

---

[REDACTED] recommended that a Memorandum of Understanding be written up between OGA and MI on the procedures to drop off a ghost detainee. COL PAPPAS met with OGA and TF-121 and the memorandum on procedures for dropping detainees was signed").

[4] Josh White, *Army, CIA Agreed on 'Ghost' Prisoners*, WASH. POST, Mar. 11, 2005, at A16.

[5] *Id.*

[6] Press Release, American Civil Liberties Union, Newly Released Army Documents Point to Agreement Between Defense Department and CIA on "Ghost" Detainees, ACLU Says: Declassified Annexes to Fay Report, Which Denied Link, Contain Further Evidence of Brutal Army Abuses (Mar. 10, 2005), *available at* http://www.aclu.org/safefree/general/17597prs20050310.html.

WILMERHALE

FOIA Request
April 25, 2006
Page 5

## Department of Defense Detainee Reporting

The Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005, Pub.
L. No. 108-375, 118 Stat. 1811 (2004) ("the Act"), requires the Department of Defense to submit
an annual report regarding certain detainees.

## Records Requested

4.  Any record generated in connection with the reporting requirement under Section 1093(c)
of the Act, regardless of whether or not such record was actually submitted in the final report,
and any record submitted to the Committee on Armed Services of the Senate and the Committee
on Armed Services of the House of Representatives pursuant to Section 1093(c) of the Act.[7]
This includes but is not limited to records reflecting:

  (a)    Any notice of investigation into any violation of international obligations or laws of
         the United States regarding the treatment of individuals detained by the U.S. Armed
         Forces or by a person providing services to the Department of Defense on a
         contractual basis.

  (b)    Any discussions regarding whether any investigation described in Request 4(a)
         should be reported.

  (c)    The number of detainees held in Department of Defense custody, or released from
         Department of Defense custody during the time period covered by the report,
         broken down into the greatest number of time intervals for which such information
         is available.

  (d)    The number of detainees detained by the Department of Defense as "enemy
         prisoners of war," "civilian internees," and "unlawful combatants," broken down
         into the greatest number of time intervals for which such information is available.

  (e)    The number of detainees detained by the Department of Defense under any status
         other than "enemy prisoners of war," "civilian internees," and "unlawful
         combatants," broken down into the greatest number of time intervals for which such
         information is available.

---

[7]  Section 1093(e) of the Act mandates that the reports "be submitted, to the extent practicable, in unclassified form,
but may include a classified annex as necessary to protect the national security of the United States." To the extent
any records or portions of records responsive to this request are classified, please provide basic information as to the
date, sender, recipient, and subject matter of the classified records.

WILMERHALE

FOIA Request
April 25, 2006
Page 6

(f)    The transfer or proposed transfer of detainees by the Department of Defense to the jurisdiction of other countries, and the countries to which those detainees were transferred.

(g)    Any communications regarding decisions to include or not include information in the Department of Defense's report under Section 1093(c) of the Act and decisions as to whether to submit any information in unclassified or classified form pursuant to Section 1093(d) of the Act.

## United States Report to the Committee Against Torture

On May 6, 2005, the U.S. submitted its Second Periodic Report to the United Nations ("U.N.") Committee Against Torture, as required by the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.

### Records Requested

All records reflecting:

5. Communications regarding the United States' Second Periodic Report to the Committee Against Torture, including but not limited to:

(a)    Communications regarding whether any individual, place of detention, or practice should be mentioned or discussed in the report to the Committee Against Torture.

(b)    Communications with a foreign government, or agency of a foreign government, regarding any provision of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment relating to apprehension, transfer and detention, (including Articles 1, 3, 5, 16), or whether any individual, place of detention, or practice should be mentioned or discussed in the report.

(c)    Proposed language or earlier drafts of the report to the Committee Against Torture.

## United States Report to the Human Rights Committee

On November 28, 2005, the U.S. submitted its Third Periodic Report to the U.N. Human Rights Committee, as required by the International Covenant on Civil and Political Rights.

WILMERHALE

FOIA Request
April 25, 2006
Page 7

## Records Requested

All records reflecting:

6. Communications regarding the United States' Third Periodic Report to the Human Rights Committee, including but not limited to:

    (a)    Communications regarding whether any individual, place of detention, or practice should be mentioned or discussed in the report to the Human Rights Committee.

    (b)    Communications with a foreign government, or agency of a foreign government, regarding any provision of the International Covenant on Civil and Political Rights relating to apprehension, transfer and detention, (including Articles 6, 7, 9), or whether any individual, place of detention, or practice should be mentioned or discussed in the report.

    (c)    Proposed language or earlier drafts of the report to the Human Rights Committee.

## The Convention on the Protection of all Persons from Enforced Disappearance

On September 23, 2005, a U.N. working group concluded the draft text of the Convention on the Protection of all Persons from Enforced Disappearance. In 2006, the draft convention will be submitted to the U.N. Commission on Human Rights and the U.N. General Assembly, before being opened for signature and ratification.

## Records Requested

7. Any record reflecting communications regarding the negotiation or drafting of the draft Convention on the Protection of all Persons from Enforced Disappearance.

8. Any record reflecting communications with a foreign government, or an agency or official of a foreign government, regarding the drafting of the draft Convention on the Protection of all Persons from Enforced Disappearance.

## Fee Waiver

The requestors qualify as "representatives of the news media" and the records sought are not for commercial use. Moreover, this Request "is likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester[s]." 5 U.S.C. § 552(a)(4)(A)(iii).

US1DOCS 5622511v1

WILMERHALE

FOIA Request
April 25, 2006
Page 8

Amnesty International is a non-government organization and a world-wide movement of members who campaign for internationally recognized human rights. AI publishes reports, press-briefings, newsletters and urgent action requests informing the public about human rights, including the prohibition on torture and the prohibition on disappearances. AI also disseminates information through its website www.amnesty.org.

The Center for Human Rights and Global Justice is a research center at NYU Law School. CHRGJ aims to advance human rights and respect for the rule of law through advocacy, scholarship, education and training. CHRGJ publishes reports and operates a website www.nyuhr.org discussing human rights issues.

The International Human Rights Clinic is a project of CHRGJ and an official program at NYU Law School, composed of students and directed by clinical professors, who engage in research and advocacy on human rights issues.

Washington Square Legal Services is a not-for-profit corporation that houses the clinical program of NYU Law School.

The requesters plan to disseminate the information disclosed as a result of this FOIA request through the channels described above.

### Expedited Processing

Expedited processing is warranted as there is a "compelling need" for the records sought in this request. 5 U.S.C. § 552(a)(6)(E)(i)(I). The requesters are primarily engaged in "disseminating information" and there is an "urgency to inform the public concerning the actual or alleged Federal Government Activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). *See also* 32 C.F.R. § 286.4(d)(3)(ii) (DOD); 6 C.F.R. § 5.5(d)(1)(ii) (DHS); 28 C.F.R. § 16.5(d)(1)(ii) (DOJ); 22 C.F.R. § 171.12(b)(2) (DOS).

AI is primarily engaged in disseminating information about human rights, through its reports, newsletters, press-briefings, urgent action requests, and on its website. CHRGJ is engaged in disseminating information about human rights, including in particular, the Federal Government's role in upholding human rights. As indicated above, this information is disseminated through published reports and CHRGJ's website. The Clinic actively supports this work, and WSLS houses the clinic. As reflected in the media reports discussed above, there is an urgent need to provide the public with information relating to the U.S. government's practices concerning unregistered or ghost detainees.

WILMERHALE

FOIA Request
April 25, 2006
Page 9

There is also a "compelling need" because failure to obtain the records on an expedited basis "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I). *See also* 32 C.F.R. § 286.4(d)(3)(i) (DOD); 6 C.F.R. § 5.5(d)(1)(i) (DHS); 28 C.F.R. § 16.5(d)(1)(i) (DOJ); 22 C.F.R. § 171.12(b)(1) (DOS). This Request arises in the context of allegations of ongoing unlawful detention and abuse of individuals with the involvement of U.S. agents abroad. Failure to publicly expose and thereby halt the practices prompting this Request could reasonably be expected to pose an imminent threat to the physical safety and lives of such individuals.

Expedited processing is also warranted because this request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).

AI and WSLS certify that the foregoing statements regarding the basis for expedited processing are true and correct to the best of their knowledge and belief. 5 U.S.C. § 552(a)(6)(E)(vi). *See also* 32 C.F.R. § 286.4(d)(3)(iii) (DOD); 6 C.F.R. § 5.5(d)(3) (DHS); 28 C.F.R. § 16.5(d)(3) (DOJ); 22 C.F.R. § 171.12(b) (DOS).

\*        \*        \*

If this Request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect release of all segregable portions of otherwise exempt material. We also reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

As indicated above, we are applying for expedited processing of this Request. Notwithstanding your determination of that application, we look forward to your reply to the Request **within twenty (20) days**, as required under 5 U.S.C. § 552(a)(6)(A)(i).

WILMERHALE

FOIA Request
April 21, 2006
Page 10

Thank you for your prompt attention. Please direct all questions and future responses to:

CATHERINE K. RONIS
Counsel to Amnesty International USA
WilmerHale
2445 M Street Washington, D.C. 20037
Tel: (202) 663-6380
Fax: (202) 663-6363
E-mail: catherine.ronis@wilmerhale.com

If you need someone to reach by telephone or email, you may also contact Kyle DeYoung at WilmerHale at (202) 663-6785.

Sincerely,

CURT GOERING
Deputy Director
Amnesty International USA
5 Penn Plaza
New York, NY 10001
Tel: (212) 807-8400
Fax: (212) 627-1451
E-mail: cgoering@aiusa.org

MARGARET L. SATTERTHWAITE
Washington Square Legal Services, Inc.
Co-Director, International Human Rights Clinic
Faculty Director, Center for Human Rights &
Global Justice
NYU School of Law
245 Sullivan Street
New York NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
E-mail: margaret.satterthwaite@nyu.edu

# TAB C



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757  FAX: 616-6478  (www.usdoj.gov/usao)*

Requester: Catherine Kane Ronis

Request Number: 06- 1500

Dear Ms. Ronis:

The Executive Office for United States Attorneys has received your Freedom of Information Act request and assigned the above number to the request. Your request was forwarded to us by the Justice Management Division clearing house for FOIA requests. We note that your letter does not mention a U.S. Attorney's Office or the Executive Office for U.S. Attorney's as an agency of your interest.

You have requested records concerning detainees. To the extent that any U.S. Attorney's Office had such records, the records you requested would pertain to particular individuals in the context of criminal prosecution. It is the policy of the Executive Office neither to confirm nor deny that records concerning living third parties exist. Since you have not provided evidence of prosecution of any named, particular individuals, the requested information would be exempt from release pursuant to 5 U.S.C. 552(b)(6) and/or (b)(7)(C) which pertain to records whose disclosure would result in an unwarranted invasion of personal privacy. Further, any release to you of such records would be in violation of the Privacy Act. 5 U.S.C. 552a. See *U.S. Department of Justice v. Reporters Committee for Freedom of the Press et al.*, 489 U.S. 749 (1989).

If you were to get authorization from any named individuals for the release to you of their records and submit a new request to us with that authorization, please also tell us in your new request which U.S. Attorney's Office you want to have searched for the records.

This is our final action on this above-numbered request. You may appeal my decision in this matter by writing within 60 days from the date of this letter, to the **Office of Information and Privacy, Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**. Both the envelope and the letter of appeal should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court. 28 C.F.R. § 16.9.

Sincerely,

William G. Stewart II
Acting Assistant Director

Form No. 006d - 2/06