UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMNESTY INTERNATIONAL USA, CENTER FOR CONSTITUTIONAL RIGHTS, INC., and WASHINGTON SQUARE LEGAL SERVICES, INC.,

Plaintiffs,

v.

CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF JUSTICE, DEPARTMENT OF STATE, and THEIR COMPONENTS,

Defendants.

**ECF CASE**

07 CV 5435 (LAP)

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES' MOTION FOR A PARTIAL STAY OF PROCEEDINGS**

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for United States
86 Chambers Street, Third Floor
New York, New York 10007
Telephone No. (212) 637-1579
Facsimile No. (212) 637-2717
E-mail: emily.daughtry@usdoj.gov

JEANNETTE A. VARGAS
PIERRE G. ARMAND
BRIAN M. FELDMAN
Assistant United States Attorneys
EMILY E. DAUGHTRY
Special Assistant United States Attorney
- Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT - THE COURT SHOULD STAY THE CIA'S SEARCHING AND PROCESSING OF CATEGORIES 11 AND 13 OF THE SUPPLEMENTARY CIA REQUEST.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. THE COURT MAY STAY THIS CIVIL PROCEEDING. . . . . . . . . . . . . . . . . . . . 5

B. A PARTIAL STAY OF THIS CIVIL FOIA CASE IS WARRANTED. . . . . . . . . 8

1. Absent a Partial Stay, the Pending Criminal Investigation Will Be Prejudiced. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

2. The Public Interest In The Integrity of the Criminal Investigation Should Take Priority Over Plaintiffs' Interest In Disseminating Information. . . . 11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

The United States of America ("United States," or the "Government") respectfully submits this memorandum of law in support of its motion for a four-month, partial stay of proceedings in this action brought under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

## PRELIMINARY STATEMENT

This case initially involved three separate FOIA requests submitted by plaintiffs to the Central Intelligence Agency (the "CIA"), the Department of Defense, the Department of Homeland Security, the Department of Justice, and the Department of State, and their components, between December 2004 and April 2006. On June 6, 2008, plaintiffs amended their complaint, adding a claim regarding a fourth FOIA request submitted to the CIA on or about December 28, 2007, for seventeen enumerated categories of specific records (the "Supplementary CIA Request"). The Government filed its answer to the amended complaint on June 20, 2008. Upon review of the Supplementary CIA Request, the federal criminal investigative team led by John H. Durham, Acting United States Attorney for the Eastern District of Virginia (the "Durham team"), requested that the Government seek a partial stay of the CIA's searching and processing in this case pending the conclusion of the Durham team's federal criminal investigation into the CIA's destruction of videotaped interrogations.

The Government now seeks a stay with respect to its responses to two of the seventeen categories of requested records in light of the Durham team's determination that these two categories involve records that substantially overlap with the subject matter of its ongoing investigation. In particular, according to Mr. Durham, some of the information in these records is closely related to questions that the criminal investigation seeks to answer, and the CIA's search for, review of, and processing of these records, as well as any public release, would

substantially interfere with the Durham team's ability to conduct a complete, thorough, and untainted investigation. The Durham team estimates, based on presently available information, that its investigation will continue for at least four more months. Accordingly, the Government respectfully requests a four-month stay, until December 31, 2008, of the CIA's searching and processing of two categories of records sought by plaintiffs in the Supplementary CIA Request. If indictments and criminal prosecutions result from the investigation, the Durham team will request that the Government seek an extension of the partial stay until the conclusion of the criminal proceedings.

## FACTUAL BACKGROUND

On December 6, 2007, CIA Director Michael V. Hayden announced that during the initial stage of the CIA's terrorist detention and interrogation program, the CIA videotaped certain interrogations, and then, in 2005, destroyed those tapes. August 12, 2008 Declaration of John H. Durham ("Durham Declaration"), ¶ 3(a). Shortly after this public announcement, Attorney General Michael B. Mukasey directed a preliminary inquiry, and thereafter, on January 2, 2008, he directed a full criminal investigation, into the destruction of the tapes. *Id.* ¶¶ 3(b)-3(c). On that same date, the Attorney General appointed John H. Durham to serve as Acting United States Attorney for the Eastern District of Virginia for the purposes of supervising that investigation. *Id.* ¶ 3(c). The criminal investigation is currently ongoing, *id.* ¶ 3(d), and the Durham team estimates that the investigation "will take at least four more months." *Id.* ¶ 15.

The CIA began its evaluation of plaintiffs' Supplementary CIA Request soon after its receipt on December 28, 2007, to determine whether it could conduct a search for any of the requested categories of documents. In July 2008, approximately six weeks after plaintiffs

amended their complaint to add the Supplementary CIA Request to this litigation, the Government informed plaintiffs that the CIA was asserting a *Glomar* response for eleven of the seventeen categories of requested records, pursuant to which it would neither confirm nor deny the existence of responsive records. *See*, *e.g.*, *Phillippi v. CIA*, 546 F.2d 1009, 1011-1012 (D.C. Cir. 1976). Specifically, the CIA is asserting a *Glomar* response with respect to categories numbered 3-10 and 15-17 of the Supplementary CIA Request. *See* July 28, 2008, letter of Jeannette A. Vargas to the Honorable Loretta A. Preska, p. 3, n.2, attached to Declaration of Emily E. Daughtry ("Daughtry Decl.") as Exhibit ("Ex.") A. Furthermore, one of the seventeen categories, category number 1, is currently being litigated in *American Civil Liberties Union v. Dep't of Defense*, No. 04 Civ. 4151 (AKH), and thus, pursuant to a Stipulation and Order Between Plaintiffs and the Central Intelligence Agency Regarding Procedures for Adjudicating Summary Judgment Motions, dated April 21, 2008 (the "Stipulation"), is outside the scope of this litigation. *See* Stipulation at ¶ 1, attached to the Daughtry Decl. as Ex. B. Finally, the CIA has already substantially completed its search of two categories, categories numbered 2 and 14, and determined that it has no records responsive to those categories. *See* Daughtry Decl. ¶ 5. Thus, at this time, the CIA intends to continue its search for responsive documents in the three remaining categories, categories numbered 11, 12, and 13.

The Durham team has determined, however, that the CIA's continued search for, review of, and processing of documents potentially responsive to two of the remaining three categories would "interfere with [the criminal investigators'] ability to conduct a complete, thorough, and untainted federal criminal investigation," which could, in turn, "jeopardize the successful prosecution of any criminal case brought against any individuals who were found to have

violated federal law in connection with the destruction of CIA videotapes." Durham Decl. ¶ 13. Specifically, the Durham team has determined that proceeding with respect to these two categories of records would interfere with the integrity of its criminal investigation due to the overlap between the information contained in the potentially responsive records and the central questions raised by the criminal investigation. *Id.* ¶ 7. The two categories of concern are set forth in the Supplementary CIA Request at number 11: "[t]he cables between Deputy Director of Operations at the CIA (or other agency official(s)) and the operative(s) in the field discussing and/or approving the use of waterboarding on Abu Zubaydah" ("Category 11"), and number 13: "[v]ideo tapes, audio tapes, and transcripts of materials related to interrogations of detainees that were acknowledged to exist during the case of *United States v. Zacharias Moussaoui* and described in a letter from United States Attorney Chuck Rosenberg to Chief Judge Karen Williams, United States Court of Appeals for the Fourth Circuit, and Judge Leonie Brinkema, United States District Court, Eastern District of Virginia, dated October 25, 2007, including, but not limited to two video tapes and one audio tape of interrogations of detainees, the transcripts of those tapes submitted for the court's review in the *Moussaoui* case, and the intelligence cables summarizing the substance of those tapes," ("Category 13 ").[1] Supplementary CIA Request, p. 4,

---

[1] The Durham team determined that several additional categories of records requested in the Supplementary CIA Request would, as written, substantially overlap with the subject matter of its investigation. The Durham team has requested that the CIA seek a stay only with respect to these two categories, however, because these are the only two categories for which both 1) there is substantive overlap with the investigation, *and* 2) the CIA would otherwise be actively conducting a search for, reviewing, and processing responsive records. Thus, at the present time, the Durham team has determined that a partial stay with respect to these two categories only is all that is necessary to protect the integrity of the criminal investigation. *See* Durham Decl. at ¶¶ 6, 13. Should the underlying reasons for seeking a stay become applicable with respect to any of the other fifteen categories, the Government reserves the right to seek a further stay with respect to other categories of concern.

attached to the Daughtry Decl. as Ex. C.

These categories overlap with central questions for the criminal investigation, which include "determining what, if any, knowledge, motive, or intent there was to destroy videotapes made by the CIA and/or to make materially false and misleading statements in connection with the *Moussaoui* trial." Durham Decl. ¶ 7. In particular, the Durham team is concerned that the CIA's search for, review and processing of records responsive to these two categories could influence the recollections and testimony of witnesses and potential witnesses for the criminal investigation, and thus could harm the integrity of the investigation.[2] *See* Durham Decl. ¶¶ 7-8.

**ARGUMENT**

**THE COURT SHOULD STAY THE CIA'S SEARCHING AND PROCESSING OF CATEGORIES 11 AND 13 OF THE SUPPLEMENTARY CIA REQUEST**

**A. THE COURT MAY STAY THIS CIVIL PROCEEDING**

This Court has the authority to issue a stay of proceedings in this case. As the Supreme Court has held, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The law is well established, moreover, that this discretionary authority is properly exercised when a civil action threatens to interfere with a related criminal proceeding. *See United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970) (citing cases); *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986);

---

[2] Due to similar concerns, Mr. Durham has submitted a declaration in support of the Government's requests in *ACLU v. Dep't of Defense*, 04 Civ. 4151 (AKH) (S.D.N.Y.) both to stay the civil contempt proceedings and to stay an order releasing certain information in a particular document. He has also submitted a declaration in support of a motion to stay the FOIA proceedings altogether in *The James Madison Project, et al. v. CIA*, 07 Civ. 2306 (RBW) (D.D.C.). Durham Decl. ¶ 10.

*SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980). This authority allows a court to "stay civil proceedings . . . when the interests of justice seem . . . to require such action." *Kashi*, 790 F.2d at 1057 (quoting *Dresser*, 628 F.2d at 1372). Thus, courts routinely grant applications by government entities to stay parallel civil proceedings, or portions of those proceedings, to protect a pending criminal prosecution or investigation. *See SEC v. Doody IV*, 186 F. Supp. 2d 379, 382 (S.D.N.Y. 2002) (staying discovery in civil action pending resolution of criminal action); *SEC v. Downe*, No. 92 Civ. 4092 (PKL), 1993 WL 22126, at *14 (S.D.N.Y. Jan. 26, 1993) (granting stay of SEC enforcement action pending criminal investigation); *Bd. of Governors of Fed. Reserve Sys. v. Pharaon*, 140 F.R.D. 634, 641 (S.D.N.Y. 1991) (same); *SEC v. Control Metals Corp.*, 57 F.R.D. 56, 58 (S.D.N.Y. 1972) (same); *see also, e.g.*, *United States v. Any and All Assets of that Certain Business Known as Shane Co.*, 147 F.R.D. 99, 101 (M.D.N.C. 1993); *St. Paul Fire & Marine Ins. Co.*, 24 Cl. Ct. 513, 516-17 (Cl. Ct. 1991); *United States v. Hugo Key & Son*, 672 F. Supp. 656, 657-59 (D.R.I. 1987) (staying civil proceeding for six months pending conclusion of an ongoing criminal investigation).

When a stay is requested by a government entity to protect a pending criminal action, the principle supporting a stay of civil proceedings applies regardless of whether an indictment has issued. Thus, numerous courts have stayed civil proceedings related to ongoing criminal investigations prior to the issuance of any indictment.[3] *See, e.g.*, *Downe*, 1993 WL 22126, at *13

[3] Although courts in this district have stated that the strongest case for granting a stay is where a criminal indictment has already issued, these statements have come in the context of cases where the stay is sought not at the behest of the government investigators or prosecutors, but rather where the moving party is the party under investigation in the related criminal proceeding, and thus where self-incrimination dangers, rather than threats to effective law enforcement, are the operative concern. *See, e.g. Sterling National Bank v. A-1 Hotels International, Inc.*, 175 F. Supp. 2d 573, 576-577 (S.D.N.Y. 2001) (observing that "district courts in this Circuit generally

("Courts have granted stays of discovery in order to protect the integrity of the pending criminal investigation, even where an indictment has not yet been returned."); *Pharaon*, 140 F.R.D. at 641 (stay granted pending grand jury investigation in New York involving defendant); *Control Metals Corp.*, 57 F.R.D. at 57 (staying civil action pending grand jury investigation). The United States' request to stay a civil action to protect a investigation is "presumptively reasonable." *Shane*, 147 F.R.D. at 101.

The need to stay related civil proceedings in the face of an ongoing criminal investigation arises from the fundamental differences between civil and criminal proceedings, and the compelling public interest in facilitating the enforcement of the criminal laws. As the Fifth Circuit has explained:

> The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

*Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962); *see also In re Ivan F. Boesky Securities Litig.*, 128 F.R.D. 47, 49 (S.D.N.Y. 1989) ("the *public interest* in the criminal case is entitled to precedence over the civil litigant" (emphasis in original)).

---

grant the extraordinary remedy of a stay only after the *defendant seeking a stay* has been indicted," but nonetheless noting, "there is no question that a court has discretion to stay a civil litigation even in favor of a pending investigation that has not ripened into an indictment" (emphasis added)(citations omitted)). *Compare also Hicks v. New York*, 268 F. Supp. 2d 238, 242 (E.D.N.Y. 2003) ("[A] court will generally deny a stay where no indictment has been issued *against the proponent of the stay*.") (emphasis added) *with Baranski v. Fifteen Unknown Agents of ATF*, 195 F. Supp. 2d 862, 870-71 (W.D. Ky. 2002) (granting government's pre-indictment motion for stay and distinguishing cases where party under investigation is stay movant).

In determining whether to stay a civil action pending resolution of a criminal action, courts balance the competing interests implicated on a case-by-case basis. Among the factors deemed relevant are the prejudice to the Government's interest in connection with ongoing criminal investigations and prosecutions, the prejudice to the interests of the civil parties in prompt resolution of their disputes, and the public interest. *See, e.g.*, *Trustees of Plumbers and Pipefitters National Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (balancing various factors, including public interest, where there are overlapping issues in criminal and civil cases); *Volmar Dist., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (balancing various factors but noting that "the basic goal [is] to avoid prejudice"); *Downe*, 1993 WL 22126, at *12 ("In deciding whether a stay of discovery is appropriate, the Court must balance the competing interests as stake."). *See also* Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 212 (S.D.N.Y. 1989) ("Neither criminal nor civil procedure, in the Federal Rules, has a provision that explicitly addresses the problems of parallel proceedings . . . . In all cases, the court must carefully balance the interests of the private litigants against those of the public.")

**B. A PARTIAL STAY OF THIS CIVIL FOIA CASE IS WARRANTED**

In this case, the balance of interests weighs heavily in favor of a partial stay of the CIA's search for, review of, and processing of Category 11 and Category 13 of the Supplementary CIA Request pending the conclusion of the federal criminal investigation into the CIA's destruction of videotaped interrogations.

**1. Absent a Partial Stay, the Pending Criminal Investigation Will Be Prejudiced**

The CIA's search for, review of, and processing of documents responsive to Categories 11 and 13 will prejudice the criminal investigation into the CIA's destruction of videotaped interrogations by interfering with the Durham team's ability to conduct a complete, thorough, and untainted investigation, by, among other things, increasing the risk that the recollections and testimony of witnesses will be unduly influenced.

As set forth in the Durham Declaration, the criminal investigation is broad, essentially looking into all aspects of the destruction of the videotaped interrogations, including whether anyone "obstructed justice, made false statements, or acted in contempt of court or Congress in connection with the destruction of the videotapes." Durham Decl. ¶ 4. The investigation also includes determining whether any materially false or misleading statements were made in connection with the *Moussaoui* trial, and, if so, what the person's or persons' knowledge, motive and/or intent was in making those false statements. *Id.* These inquiries involve questions regarding what, if any, knowledge, motive, or intent there was to destroy videotapes made by the CIA and/or to make materially false and misleading statements in connection with the *Moussaoui* trial. *Id.* ¶ 7.

After reviewing the Supplemental CIA Request, the Durham team determined that, as written, several categories of the requested records were closely intertwined with the inquiries of the federal criminal investigation. Of the categories of concern to the Durham team, the CIA currently intends to search for, review, and process records responsive to only two categories: Category 11 and Category 13. Because many of the individuals who would be involved in the

search for, review of, and processing of records potentially responsive to these two categories are witnesses or potential witnesses in the investigation, such searching, review, and processing could influence the recollections of these individuals and cause them, unintentionally or intentionally, to change their testimony to conform their version of events to those in the records. *Id.* ¶¶ 7-8.

Likewise, in the event that there was any public release of non-exempt responsive records or information contained within those records, such a release could also affect the recollections and testimony of witnesses and potential witnesses for the investigation. *Id.* ¶ 11.

Indeed, due to concerns about influencing the recollections and testimony of potential witnesses, the Durham team has already asked appropriate authorities within the CIA not to show records and documents, or otherwise make certain records and documents available, to individuals who will be interviewed as witnesses in connection with the criminal investigation. *Id.* ¶ 9. In the absence of a stay, these witnesses and potential witnesses would be required to review documents that the Durham team has already taken affirmative steps to prevent them from reviewing, and these individuals would have access to any publically released information. *Id.* ¶¶ 8, 13. As specifically noted in the Durham declaration, "[s]uch interference could in turn jeopardize the successful prosecution of any criminal case brought against any individuals found to have violated federal law in connection with the destruction of CIA videotapes and other related matters." *Id.* ¶ 13. Thus, the substantive overlap between the Supplementary CIA Request and the ongoing federal criminal investigation, and the corresponding risk of interference with the criminal investigation, strongly supports a partial stay of this FOIA case. *See also id.* ¶¶ 13-14.

**2. The Public Interest In The Integrity of the Criminal Investigation Should Take Priority Over Plaintiffs' Interest In Disseminating Information**

For the purposes of ruling on the Government's motion, the Court must also consider the private plaintiffs' interest, as well as the public interest in staying the civil litigation. Here, plaintiffs are not-for-profit organizations that have described their primary activities as including dissemination of information to the public. Amended Complaint ¶¶ 9-11. Plaintiffs have stated that they seek the records described in the Supplementary CIA Request in order to "further public understanding of government conduct; and particularly to contribute to the current debate around the rendition and secret detention policies and programs put in place by the CIA." Supplementary CIA Request, p. 6, Daughtry Decl., Ex. C. Unlike the typical civil lawsuit, in which the private interests of the parties may differ from the interests of the public, this FOIA lawsuit seeks records from the CIA for the purpose of disseminating such information to the public. Thus, in effect, the interests of plaintiffs in this lawsuit are the same as the public they seek to inform.

But the legitimate public interest in the dissemination of information on these issues must be balanced against the public's even stronger interest in the proper enforcement of the criminal laws, and neither the public nor plaintiffs will be disadvantaged by the temporary and partial stay sought by the Government. The public's interest in the integrity of the criminal investigation outweighs plaintiffs' interest in disseminating information (even to the public). Simply put, in determining where the public interest lies, courts "give[] priority to the public interest in law enforcement." *Benevolence Int'l Found., Inc. v. Ashcroft*, 200 F. Supp. 2d 935, 941 (N.D. Ill. 2002) (quoting *Campbell*, 307 F.2d at 487); *see also Jones v. City of Indianapolis*, 216 F.R.D.

440, 452 (S.D. Ind. 2003) ("The public also has an important interest in a potential, untainted criminal prosecution."); *Baranski*, 195 F. Supp. 2d at 870 (finding that the public interest served by protecting the integrity of a criminal investigation outweighed the plaintiff's interest in pursuing the civil action); *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 529 (D.N.J. 1998) (holding that unimpeded criminal investigations "benefit the public"); *Bureerong v. Uvawas*, 167 F.R.D. 83, 87 (C.D. Cal. 1996) ("[T]he interests of the Government in protecting its criminal investigation are clearly the paramount concern here."); *In re Ivan Boesky Securities Litig.*, 128 F.R.D. at 49 ("the *public interest* in the criminal case is entitled to precedence over the civil litigant" (emphasis in original)); *Hugo Key & Son, Inc.*, 672 F. Supp. at 658-59 ("[T]his court is compelled to acknowledge the greater weight of [the government's] interest in determining the priority of the criminal action.").

Furthermore, the public has a heightened interest in the conduct of this particular investigation. Describing the circumstances of this investigation as "unique," the Durham Declaration notes that "the destruction of the videotaped interrogations has brought about legitimate concern on the part of various federal judges, as well as significant Congressional interest." Durham Decl. ¶ 12. Thus, "[t]here is a compelling national interest in ensuring that this criminal investigation is conducted in a manner that will engender public trust." *Id.* ¶13.

While a stay will delay the resolution of a small portion of this FOIA case, it will otherwise cause no injury or prejudice to the plaintiffs. *See SEC v. Chestman*, 861 F.2d 49, 50 (2d. Cir. 1988) (affirming stay of civil discovery and finding no prejudice to civil party where discovery can be allowed when stay is lifted). The Government is seeking only a partial stay of a limited duration. It has narrowly tailored its stay request to only two categories of the Supplementary CIA Request, Categories 11 and 13, based on the Durham team's serious

concerns that proceeding with the searching and processing of records responsive to these categories would interfere with its criminal investigation. Moreover, the Government is not seeking an indefinite stay, but a limited, initial stay of only four months. This time period is reasonable, and is based upon presently available information that the remainder of the investigatory process will take at least four additional months. While the Government would seek a further stay if indictments and criminal prosecutions were to result after the conclusion of the criminal investigation, the Speedy Trial Act would appropriately expedite a criminal trial. *See St. Paul and Marine Ins. Co.*, 24 Cl. Ct. at 517.

**CONCLUSION**

For the foregoing reasons, the United States requests that this Court grant an initial four-month stay of the CIA's search for, review of, and processing of Categories 11 and 13 of the Supplementary CIA Request.

Dated: New York, New York
August 12, 2008

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for the United States of America

By: /s/
JEANNETTE A. VARGAS
PIERRE G. ARMAND
BRIAN M. FELDMAN
Assistant United States Attorneys
EMILY E. DAUGHTRY
Special Assistant United States Attorney
Telephone: (212) 637-1579
Facsimile: (212) 637-2717
E-mail: emily.daughtry@usdoj.gov