UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
AMNESTY INTERNATIONAL USA, et al.,           :
                                             :
                Plaintiffs,                  :   ELECTRONICALLY FILED
                                             :
        v.                                   :   07 Civ. 5435 (LAP)
                                             :
CENTRAL INTELLIGENCE AGENCY, et al.,         :
                                             :
                Defendants.                  :
------------------------------------------------------------- x

## DECLARATION OF JOHN H. DURHAM

I, John H. Durham, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am Counsel to the United States Attorney for the District of Connecticut. I have been employed as a federal prosecutor since December 20, 1982, when I became a Trial Attorney for the New Haven Field Office of the Boston Strike Force on Organized Crime. I served as the Strike Force Chief in the District of Connecticut until September 1989. In September 1989, I became Chief of the Criminal Division for the United States Attorney's Office for the District of Connecticut and served in that position until March 1994, when I became the Deputy United States Attorney for the Office.[1] I became Counsel to the United States Attorney in March 2008. At various times, I have also served as the Interim United States Attorney for the District of Connecticut, Special Attorney in the District of Massachusetts investigating and prosecuting corruption involving law enforcement agencies in Massachusetts, and Special Attorney in the Southern District of New York investigating allegations of corruption within a federal law enforcement agency. On January 2, 2008, Attorney General Michael B. Mukasey appointed me to serve as Acting United States Attorney for the Eastern District of Virginia in connection with a

---

[1] In the District of Connecticut, the Deputy United States Attorney is the position commonly known in other districts as the First Assistant United States Attorney.

federal criminal investigation into the destruction of certain videotaped interrogations of detainees by the Central Intelligence Agency (the "CIA" or the "Agency"). In my capacity as Acting United States Attorney for the Eastern District of Virginia, I am responsible for supervising the investigative efforts of a team of lawyers and Special Agents of the Federal Bureau of Investigation conducting the investigation into the CIA tapes matter.

2. This declaration is submitted in support of the United States' motion for a temporary, partial stay of the CIA's search for, review of, and processing of certain records requested by plaintiffs in the above-captioned action due to the pendency of a related criminal investigation. The statements made in this declaration are based on my personal knowledge of the facts and information obtained and reviewed in the course of my official duties.

3. In connection with the ongoing federal criminal investigation into the destruction of videotapes by the CIA, the following background information is of note:

a) On December 6, 2007, Michael V. Hayden, Director of the CIA, announced that during the initial stage of the Agency's terrorist detention and interrogation program, it videotaped interrogations, and in 2005 it destroyed the tapes. Further, Director Hayden stated that the program itself began with the capture of a detainee named Abu Zubaydah in March of 2002, and the decision to videotape interrogations was made by the Agency on its own. Director Hayden further stated that the videotaping of interrogations stopped in 2002. Director Hayden also advised that the decision to destroy the tapes was made only after "they were no longer of intelligence value and not relevant to any internal, legislative, or judicial inquiries – including the trial of Zacarias Moussaoui."

b) Shortly after the destruction of the videotaped interrogations was made

public, Attorney General Mukasey directed that a preliminary inquiry be conducted by the National Security Division of the Department of Justice regarding the destruction of the videotapes.

c) On January 2, 2008, the Attorney General announced that the preliminary inquiry had been concluded and that there was a basis for initiating a full criminal investigation into the destruction of the tapes. Further, on that same date, as noted above, I was appointed to serve as the Acting United States Attorney for the Eastern District of Virginia to supervise that criminal investigation. Also, as noted, the Federal Bureau of Investigation was designated as the federal law enforcement agency that would conduct the investigation.

d) Beginning on January 2, 2008, and continuing to the present, a fully-staffed team of prosecutors and agents has been assembled and has been actively gathering information and evidence relating to the destruction of the videotapes in issue.

4. The questions under active review in this investigation include, *inter alia*, whether any federal criminal offenses were committed in connection with the destruction of the above-referenced videotapes. More specifically, the investigation team is actively reviewing whether any person or persons obstructed justice, made false statements, or acted in contempt of court or Congress in connection with the destruction of the videotapes and other related matters. With respect to potential obstruction of justice offenses, our investigation includes determining whether the destruction of the videotapes violated any order issued by any federal judicial officer and, if so, what the person's or persons' knowledge, motive, and/or intent was in destroying the tapes or causing their destruction. Our investigation also includes determining whether any materially false and misleading statements were made in connection with the *Moussaoui* trial

and, if so, what the person or persons' knowledge, motive, and/or intent was in making those false statements.

5. I understand that on December 28, 2007, plaintiffs in this matter requested certain records from the CIA, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for "Specific Records Concerning Information on Secret Detention and Rendition" (the "Supplementary CIA Request"), which requested seventeen specific categories of records. I further understand that on June 6, 2008, plaintiffs amended their complaint to add the Supplementary CIA Request to the instant lawsuit.

6. After reviewing the Supplementary CIA Request, I have determined that, as written, several of the seventeen categories of requested records substantially overlap with the subject matter of the ongoing criminal investigation. However, I understand that, with respect to the majority of these seventeen categories, the CIA does not intend to conduct a search for or process any records because: (1) the CIA is asserting a <u>Glomar</u> response, (2) the requested category is outside the scope of this litigation pursuant to a stipulation between plaintiffs and the CIA, or (3) the CIA has already substantially completed a search for the requested records and determined that it has no responsive records. I further understand that the CIA intends to search for and process records responsive to only three remaining categories, which are set forth at number 11, number 12, and number 13 of the Supplementary CIA Request. Of these three remaining categories, the following two categories overlap directly with the scope of our criminal investigation:

    a) "11. The cables between the Deputy Director of Operations at the CIA (or other agency official(s)) and the operative(s) in the field discussing and/or approving the use of

4

waterboarding on Abu Zubaydah" ("Category 11"); and

        b)    "13. Video tapes, audio tapes, and transcripts of materials related to interrogations of detainees that were acknowledged to exist during the case of *United States v. Zacharias Moussaoui* and described in a letter from United States Attorney Chuck Rosenberg to Chief Judge Karen Williams, United States Court of Appeals for the Fourth Circuit, and Judge Leonie Brinkema, United States District Court, Eastern District of Virginia, dated October 25, 2007, including, but not limited to two video tapes and one audio tape of interrogations of detainees, the transcripts of those tapes submitted for the court's review in the *Moussaoui* case, and the intelligence cables summarizing the substance of those tapes" ("Category 13").

       7.    Central questions for the criminal investigation include determining what, if any, knowledge, motive, or intent there was to destroy videotapes made by the CIA and/or to make materially false and misleading statements in connection with the *Moussaoui* trial. Because Category 11 and Category 13 of the Supplementary CIA Request overlap directly with the scope of our criminal investigation, most, if not all, of the records that the CIA would be required to search for, review, and process in order to respond to these requests would be relevant to the investigation. Some of these records have already been gathered and provided and/or made available to the criminal investigators for use in the ongoing investigation. However, many of the individuals who would be involved in the CIA's search for, review of, and processing of records that are potentially responsive to Categories 11 and 13, and who would have the institutional knowledge necessary for the CIA to determine responsiveness, and, if applicable, to assert any applicable exemptions, are witnesses or potential witnesses for the criminal investigation.

       8.    Furthermore, because the individuals who would be involved in the search for,

review of, and processing of records that are responsive to Categories 11 and 13 are witnesses or potential witnesses for the criminal investigation, review of the materials by such individuals would create the risk that these witnesses or potential witnesses would be affected by their access not only to their own documents and records, but those of others, and, as a result of reviewing those documents and records, their recollections could be changed with respect to events, or – unintentionally or intentionally – their answers to questions that would be posed by the criminal investigators could be affected.[2] This exposure to other records and statements would almost certainly occur in the normal course of conducting such search and review.

9. Indeed, due to these same concerns, I have previously asked the appropriate authorities within the CIA not to show records and documents, or otherwise make certain records and documents available, to persons who will be interviewed as witnesses in connection with the criminal investigation being conducted.

10. Due to these concerns, I have also submitted a declaration in support of the Government's requests in *ACLU, et al. v. Department of Defense, et al.*, 04cv4151 (AKH) (S.D.N.Y.) both to stay the civil contempt proceedings and to stay an order releasing certain information in a particular document. In addition, I have submitted a declaration in support of a motion to stay the FOIA proceedings altogether in *The James Madison Project, et al. v. Central Intelligence Agency*, 1:07cv02306 (RBW) (D.D.C.).

11. The review and processing of records responsive to Categories 11 and 13 of the

---

[2] To be clear, the criminal investigators have, to date, interviewed some of the witnesses referenced in this declaration. Nevertheless, the risks discussed in this paragraph still apply to those witnesses who have not yet been interviewed, as well as to those witnesses whom the criminal investigators may need to re-interview at a later juncture and/or subpoena to the grand jury.

Supplementary CIA Request would also increase the likelihood of additional disclosures of information both to additional individuals within the Agency and possibly to the public – through leaks, inadvertent discussions, or otherwise – that could negatively impact the ongoing criminal investigation. In addition, the public disclosure of any non-exempt responsive records or information contained within those records through a FOIA release or otherwise, concerning the destruction of evidence, could expose witnesses or potential witnesses to what may have been said or disclosed to investigators by other witnesses or potential witnesses and thereby cause such witnesses or potential witnesses, intentionally or otherwise, to change what they have to say or to conform their testimony to any such publicly disclosed information.

      12.    The criminal investigation that I am supervising in my role as Acting United States Attorney for the Eastern District of Virginia is unique in my experience as an Assistant United States Attorney. The destruction of the videotaped interrogations has brought about legitimate concern on the part of various federal judges, as well as significant congressional interest. For example, as has been publicly reported, United States District Judge Henry H. Kennedy has been asked to investigate the matter by the petitioners in *Mahmoad Abdah, et al. v. Bush, et al.*, Civil No. 04-1254 (HHK) (D.D.C). Similarly, the petitioners in *ACLU, et al. v. Department of Defense*, No. 04cv4151 (AKH) (S.D.N.Y.), have asked United States District Judge Judge Alvin K. Hellerstein to investigate the matter, and the Court has expressed concerns regarding the destruction of the tapes.[3]

      13.    Beyond these specific expressions of concern, there is a compelling national

---

[3] Along these same lines, the House Permanent Select Committee on Intelligence, the Senate Select Committee on Intelligence, and the Judiciary Committees in both houses of Congress have initiated their own investigations into the destruction of the videotapes.

interest in ensuring that this criminal investigation is conducted in a manner that will engender public trust in its outcome. It is my belief that requiring the CIA to proceed at this time with the search for, review of, and processing of the records requested in Category 11 and Category 13 of the Supplementary CIA Request will interfere with our ability to conduct a complete, thorough, and untainted federal criminal investigation. Such interference could in turn jeopardize the successful prosecution of any criminal case brought against any individuals who were found to have violated federal law in connection with the destruction of CIA videotapes and other related matters. Clearly, the public interest in an unfettered criminal investigation must be balanced against plaintiffs' interest in the speedy resolution of their request. I respectfully submit that a temporary stay of the CIA's search for, review of, and processing of Category 11 and Category 13 of the Supplementary CIA Request will strike the proper balance by avoiding any unnecessary interference with the criminal investigation without unduly delaying the resolution of plaintiffs' request.

14. My concerns about the integrity of the instant criminal investigation, together with the highly classified nature of much of the information in this investigation, make me reluctant to provide further details concerning how this criminal investigation is being conducted and the impact on any potential prosecutions that the gathering and processing of the documents responsive to Category 11 and Category 13 of the Supplementary CIA Request would have if it went forward at this time. Nonetheless, should the Court require further information concerning whether to grant a stay in these matters, I could disclose further information *ex parte* and *in camera*.

15. Because of the foregoing concerns, I have requested that the United States seek a

temporary, partial stay of this civil proceeding until such time as the criminal investigative process is complete, a process that I estimate – based upon presently available information – will take at least four more months. If indictments and criminal prosecutions were to result from the investigation, I would request that the United States seek an extension of the partial stay until the conclusion of the criminal proceedings.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on Aug. 12, 2008.

JOHN H. DURHAM