UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

AMNESTY INTERNATIONAL USA, CENTER
FOR CONSTITUTIONAL RIGHTS, INC. and
WASHINGTON SQUARE LEGAL SERVICES,
INC.,

        Plaintiffs,

    v.

CENTRAL INTELLIGENCE AGENCY,
DEPARTMENT OF DEFENSE, DEPARTMENT
OF HOMELAND SECURITY, DEPARTMENT
OF JUSTICE, DEPARTMENT OF STATE, AND
THEIR COMPONENTS

        Defendants.

**ECF CASE**

07 CV 5435 (LAP)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE UNITED STATES' MOTION FOR A PARTIAL STAY OF PROCEEDINGS

# TABLE OF CONTENTS

I.   THE CIA'S PROPOSED STAY WOULD IMPROPERLY CIRCUMVENT FOIA'S STATUTORY SCHEME...........................................................................................2

II.  THE GOVERNMENT HAS FAILED TO JUSTIFY THE EXTRAORDINARY RELIEF OF A STAY...........................................................................................................5

   A.   The CIA Fails to Establish That This Case Falls Within Existing Precedent Warranting a Stay of Civil Proceedings. ..........................................................................6

   B.   The CIA's Concerns Set Forth in the Durham Declaration Do Not Establish Sufficiently Weighty Interests to Create New Circumstances Meriting a Stay...........................11

   C.   The Public Holds a Weighty Interest in Timely Judicial Enforcement of FOIA.............14

   D.   Further Delay by CIA in Responding to Plaintiffs' Request Will Prejudice Plaintiffs' Right to Timely Enforcement of FOIA. ..............................................................17

III. EVEN IF ITEMS 11 AND 13 OVERLAP WITH THE DURHAM INVESTIGATION, THE CIA'S STAY REQUEST IS NOT NARROWLY TAILORED ........................................19

Amnesty International USA ("AIUSA"), the Center for Constitutional Rights, Inc. ("CCR") and Washington Square Legal Services, Inc. ("WSLS") (collectively "Plaintiffs") respectfully submit this memorandum of law in opposition to the motion by the Central Intelligence Agency ("CIA") seeking a partial stay of its obligations to search and process pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522.

After failing completely to process Plaintiffs' Specific Documents Request for eight months, the CIA now seeks to delay further its compliance with FOIA by seeking a stay from this Court until the Department of Justice ("DOJ") completes its investigation into whether CIA employees committed criminal offenses by destroying interrogation records. The CIA warns that it may seek additional stays if the investigation results in indictment.  This Court should deny the CIA's inappropriate attempt to evade the FOIA statutory framework—which provides the Government ample mechanisms by which it can protect its interests in nondisclosure—and order the CIA to process Plaintiffs' requests and disclose releasable records or properly justify any withholdings.

## BACKGROUND

Plaintiffs' FOIA requests seek records related to the Administration's rendition, secret detention and enhanced interrogation program.  Specifically, this motion addresses Items 11 and 13 of Plaintiffs' December 28, 2007 CIA Specific Documents Request.[1]  On June 7, 2008, after exhausting their administrative remedies, 5 U.S.C. § 552(a)(6)(C), Plaintiffs amended their complaint to seek immediate and expedited processing as well as release of the requested Specific Documents.  Despite the government's assurances in 2007 that it would facilitate a timely response

---

[1] The Specific Documents Request arose out of negotiations in 2007 when Plaintiffs provided the CIA a list of specific documents known to exist but undisclosed, and likely in the CIA's possession, to assist the agency in its document search.  As the CIA refused to include these specific documents on its *Vaughn* index, Plaintiffs filed a separate FOIA request on December 28, 2007 (the "Specific Documents Request").

from the CIA, and Plaintiffs' repeated requests for a response, until July 2008, the CIA provided Plaintiffs no information about its processing of this request.

Then, for the first time, the CIA informed Plaintiffs of its tentative intention to seek a stay of processing for Item 11 (seeking cables—the existence of which were officially acknowledged—between the Deputy Director of Operations at the CIA and operatives in the field discussing the use of waterboarding on Abu Zubaydah) and Item 13 (seeking interrogation records of individuals in CIA secret detention that were officially acknowledged to exist during the case of *United States v. Zacharias Moussaoui*). On August 12, 2008, the CIA filed this motion for a stay on the heels of Plaintiffs' motion for preliminary injunction, claiming that processing the Specific Documents Request may interfere with the then more-than-seven-month-old federal investigation into the CIA's destruction of evidence, conducted by John H. Durham, Acting United States Attorney for the Eastern District of Virginia ("Durham investigation"). Defs' Mot. for Partial Stay of Proceedings ("Mot."), at 9-10.

The CIA also makes clear that while it is initially seeking a four-month stay, it will seek further delay if an indictment issues from the investigation, Mot. at 2, and expressly reserves the right to seek an additional stay for other responsive documents if the underlying reasons for the stay become applicable to any other items in the Specific Documents Request. Mot. at 4 n.1.

Plaintiffs respectfully oppose the CIA's motion for a stay with respect to Items 11 and 13.

## ARGUMENT

### I.    THE CIA'S PROPOSED STAY WOULD IMPROPERLY CIRCUMVENT FOIA'S STATUTORY SCHEME.

The most troubling aspect of the CIA's request for a stay is that it results in a circumvention of the agency's obligations under FOIA's careful statutory scheme, which is designed to balance the need to safeguard government information with the public's right to information about the

government's activities. Plaintiffs are not the usual private civil litigants; this case is not the usual civil matter involving private interests. Rather, this case is brought pursuant to FOIA—a "structural necessity in a real democracy," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)—and therefore imbued with public interest.

Pursuant to Congress's assessment of the government and public's competing interests, the FOIA statute requires agencies to search and process records related to pending investigations, such as the Durham investigation. If the agency is concerned that disclosure of a record will interfere with a pending investigation, FOIA requires that it invoke the existing statutory exemption for law enforcement investigations. *See* 522 U.S.C. § 552(b)(7)(A). Pursuant to this provision, an agency may exempt records from disclosure when it establishes that the records or information were "complied for law enforcement purposes," but it may withhold this information only to the extent that the Court finds that disclosure "could reasonably be expected to interfere with enforcement proceedings" or cause one of the other enumerated harms. 5 U.S.C. § 552(b)(7). Here, the CIA seeks, in effect, impermissibly to expand the available FOIA exemption under (b)(7) from its congressionally-mandated application to records "compiled for law enforcement purposes,"—the disclosure of which will cause one of the enumerated statutory harms—into an expanded exemption that would allow an agency to withhold more information on the basis of an agency's overly-broad, unilateral assessment that disclosure will interfere with an investigation.

Moreover, Congress addressed, and courts have considered, the impact of agency staffing resources upon the government's ability to satisfy its legal obligations. Absent specific circumstances set forth in FOIA, agencies cannot rely upon a lack of resources to justify their delay in processing requests. Court-sanctioned delays of processing are appropriate only when "the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request" 5 U.S.C. § 552(a)(6)(C)(i). "'[E]xceptional circumstances'

3

does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii); *see also Freeman v. Dep't of Justice*, 822 F.Supp. 1064, 1065 (S.D.N.Y. 1993) (noting stringent standards in this district for granting processing extensions).

Here, the CIA has not made any effort to meet its obligations under FOIA apart from seeking a wide-sweeping stay in this and other cases,[2] arguing instead that no CIA employees are outside the scope of the Durham investigation and available to search for and process responsive records. Although the CIA has been aware of the Durham investigation since January 2, 2008, and the Specific Documents Request since December 28, 2007, the agency does not seem to have made any effort to satisfy its FOIA obligations. The agency has failed to satisfy its burden to show that it cannot assign an individual within the CIA but outside the scope of the investigation who can search for and process the limited and well-defined documents specifically listed in Items 11 and 13. The CIA could relieve the witnesses or potential witnesses in the investigation of their responsibilities to process the responsive records at issue and reassigned alternative staff to complete this task. The CIA claims, without factual support, that "many" of the individuals holding the necessary qualifications are witnesses or potential witnesses, but makes no claim that all of the staff is unavailable. Durham Decl. ¶ 7. The logical inference is that some information review officers and classification authority personnel are, in fact, available to process the limited category of records responsive to Items 11 and 13. Further, over the past eight months, as the Durham investigation has identified the individuals who are witnesses or potential witnesses, the CIA should be able to identify an individual who is not a potential witness and holds the appropriate credentials to conduct the search and processing of Items 11 and 13. *See* Durham Decl. ¶ 9 (stating that the

---

[2] *See* Mot. at 5 n. 2 (describing stay sought in other FOIA litigation based upon the Durham investigation).

4

investigators have asked the CIA not to show records to persons who will be interviewed as witnesses).

Instead, the CIA has submitted a boilerplate declaration—substantially similar to the one filed in *The James Madison Project, et al., v. Central Intelligence Agency*, Case No. 07-cv-2306 (D.D.C.) (RBW)—that invokes administrative staffing concerns as the justification for extraordinary relief. The agency seeks, in effect, to circumvent FOIA's statutory scheme by claiming that no one within the agency can search for or process the responsive records. To allow an agency to invoke this administrative resource claim as a way to shirk its FOIA obligations would undermine FOIA's mandate and its carefully enumerated exemptions, thereby permitting an agency to under-staff any controversial program. Congress has made clear its intent that agencies not abuse their classification authority to avoid the enforcement of FOIA; here, the CIA offers a creative means to undermine that intent.

This Court should not permit the CIA to evade FOIA's statutory requirements, which set forth clear guidelines for seeking permissible processing delays and establish narrow exemptions for disclosing records compiled for law enforcement purposes. Accordingly, the CIA's motion for a partial stay should be denied.

## II.    THE GOVERNMENT HAS FAILED TO JUSTIFY THE EXTRAORDINARY RELIEF OF A STAY.

It is well-settled that a court has the discretionary authority to stay a case, but must exercise this authority only if the interests of justice so require. *See United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (citing *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)); *Volmar Dist. v. The New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). A stay of the civil case is an extraordinary remedy. *In re Par Pharmaceuticals Securities Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990). Consequently, when

considering a party's motion for a stay, a court "must make a highly-fact bound inquiry into the 'particular circumstances and competing interests involved in the case.'" *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F.Supp.2d 573, 576 (S.D.N.Y. 2001) (quoting *Federal Savings & Loan Insurance Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)). In particular, a court must weigh the interests of the moving party against the interests of both the public and nonmovant, and consider any prejudice that will ensue from the stay. The movant faces the heavy burden of showing "a clear case of hardship or inequity" upon being required to proceed absent a stay "if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936)

The CIA fails to satisfy its burden that the government interests at stake justify the stay and overcome the prejudice to the interests of the public and Plaintiffs which further delay would cause. Indeed, the concerns the agency invokes to show prejudice to the government's interests, Mot. at 9-10, are nothing more than administrative issues squarely addressed by FOIA's statutory scheme. Moreover, the public and Plaintiffs have weighty interests in the timely judicial enforcement of FOIA, particularly when the requested documents relate to wrongdoing by government officials, circumstances when the FOIA statute's mandate is the strongest. Accordingly, this Court should deny the CIA's motion for a stay and order the agency to process of Items 11 and 13 and disclose all releasable information or justify any withholdings.

## A. The CIA Fails to Establish That This Case Falls Within Existing Precedent Warranting a Stay of Civil Proceedings.

The CIA argues that the circumstances surrounding the Durham investigation fall within settled case law holding that a stay of a civil case pending the outcome of criminal proceedings is justified. Mot. at 5-8. Yet, the CIA erroneously rests its argument on cases with facts and rationales inapplicable here. *See* Mot. at 5-8, 11-12.

6

The CIA claims that it is "well established" that a court may invoke its discretionary authority "when a civil action threatens to interfere with a related criminal proceeding." Mot. at 5. A close examination of the cases the CIA cites, however, reveals a more limited authority. Courts have identified specific and narrowly defined special circumstances that may justify the stay of civil litigation during the pendency of criminal proceedings: when ongoing civil litigation might violate a criminal defendant's Fifth Amendment protection against self-incrimination; or when parties to criminal proceedings attempt to abuse liberal civil discovery rules in order to circumvent more limited criminal discovery. *See Volmar Dist.*, 152 F.R.D. at 39. The Second Circuit has found that in cases involving litigants unrelated to the criminal action pursuing an "independent action" prior to any indictment, the lines of cases addressing these two concerns are "inapposite." *United States v. Simon*, 373 F.2d 649, 653-54 (2d Cir. 1967).

For example, the CIA claims that courts "routinely grant" the government's motions for a stay of civil cases, citing to *SEC v. Doody IV*, 186 F.Supp.2d 379, 382 (S.D.N.Y. 2002), *SEC v. Downe*, No. 92 Civ. 4092 (PKL), 1993 WL 22126, at *14 (S.D.N.Y. Jan. 26, 1993), *Board of Governors of Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 641 (S.D.N.Y. 1991), and *SEC v. Controls Metal Corp.*, 57 F.R.D. 56, 58 (S.D.N.Y. 1972). Yet, the CIA ignores that in each of these cases, the district court specifically justified the stay on the narrow grounds that the criminal defendant sought to manipulate the liberal civil discovery rules to seek access to documents otherwise inaccessible in the criminal proceeding. *Doody IV*, 186 F.Supp.2d at 382 (granting stay sought by United States against SEC's production of discovery in civil enforcement action to prevent criminal defendant from obtaining "access to information to which he would not be entitled in his defense of the criminal case"); *Downe*, 1993 WL 22126, at *12 (granting stay under similar circumstances and recognizing that "a stay of discovery is often necessary where liberal discovery rules will allow a litigant to undermine, or gain an unfair advantage in, a potential criminal

prosecution which parallels the subject matter of the civil action"); *Pharaon*, 140 F.R.D. at 640 (granting motion by intervening state District Attorney to stay depositions in civil action brought by Federal Reserve because criminal defendants will gain access to discovery otherwise unavailable); *Controls Metal Corp.*, 57 F.R.D. at 58 (granting the SEC's stay motion on the grounds that "the Court should not permit civil discovery proceedings to be used in aid to a party in a related criminal matter" and noting that the defendant candidly conceded that his "principle motivation" in seeking civil discovery was precisely to receive "such hoped-for aid in his criminal matter").[3] Moreover, the CIA continues to rely upon *Downe*, *Pharaon*, and *Control Metals, Corp.*, to argue that a stay is justified in the absence of an indictment. *See* Mot. 6-7. Even in these cases, however, addressing situations prior to the issuance of an indictment, these courts are first and fundamentally concerned with preventing criminal defendants from using discovery in civil cases to circumvent the more limited scope of discovery in the criminal matter.[4]

---

[3] The nonbinding cases the CIA cites from other courts are equally distinguishable from the present facts and underlying principles. *See United States v. Any and All Assets of that Certain Business Known as Shane Co.*, 147 F.R.D. 99 (M.D.N.C. 1993) (noting that under proper circumstances, the public interest in law enforcement may take priority over civil proceedings and expressly identifying as relevant factors the "great disparity in the discovery process" and Fifth Amendment concerns); *St. Paul Fire & Marine Ins. Co., v. United States*, 24 Cl. Ct. 513, 516 (Cl. Ct. 1991) (noting that "the public's interest in law enforcement surfaces and mandates that criminal proceedings be given priority over the concurrent civil proceedings" specifically when "the parallel criminal investigation may be said to churn over the same evidentiary material" that would otherwise be unavailable) (internal quotations omitted); *United States v. Hugo Key & Son*, 672 F. Supp. 656, 657-59 (D.R.I. 1987) (stating that "for the foregoing reasons" the court gives "the greater weight of [the government's] interest in determining the priority of the criminal action" and identifying those reasons as the risk that the liberal federal discovery rules "would undermine the traditionally narrow scope of discovery in a criminal action" and harm the interests of the United States).

[4] As noted above, courts have placed equal emphasis upon the need to safeguard a criminal defendant's Fifth Amendment protections against self-incrimination compelled by civil discovery. *See, e.g., Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140-41 (S.D.N.Y. 1995) ("The inconvenience and delay to plaintiffs that will unfortunately be caused by a stay are outweighed by the defendants' significant Fifth Amendment concerns . . . .").

The CIA also misconstrues judicial recognition of the public interest in the enforcement of criminal laws. *See* Mot. 7-8, 11-12. While courts have frequently noted the public's important interest in untainted criminal prosecutions, this recognition arises, again, out of the courts' specific emphasis on the need either to protect a criminal defendant's Fifth Amendment rights or to prevent the abuse by criminal defendants of civil discovery rules. The CIA's reliance upon the cases from this district cited in its motion is misplaced. *See Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140-41 (S.D.N.Y. 1995) ("The inconvenience and delay to plaintiffs that will unfortunately be caused by a stay are outweighed by the defendants' significant Fifth Amendment concerns . . . ."); *Volmar Dist.*, 152 F.R.D. at 39 ("A balancing of the relevant interest reveals that the interest of justice call for a stay of discovery as to [criminal defendants] to preserve their Fifth Amendment rights."); *In re Ivan F. Boesky Securities Litig.*, 128 F.R.D. 47 (S.D.N.Y. 1989) (acknowledging public interest in criminal law enforcement in context of stay granted to prevent criminal defendants from obtaining civil discovery of documents not available to them under criminal discovery rules). The nonbinding caselaw referenced by the CIA offers no further support for its position.[5]

---

[5] The Fifth Circuit's concerns, for example, in *Campbell v. Eastland*, 307 F.2d 478, 478 (5th Cir. 1962), *see* Mot. at 7, were similarly focused on the public interest in specific aspects of the fairness of criminal proceedings. *See id.* (reversing district court's denial of government's stay motion because a "litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit"); *see also Jones v. City of Indianapolis*, 216 F.R.D. 440, 451 (S.D. Ind. 2003) ("If a limited stay is not granted, the Court finds that Defendants would be faced with an unnecessary dilemma: surrender their Fifth Amendment rights against self-incrimination, or not testify and risk the possibility of adverse inference being taken from the assertion of these Fifth Amendment rights, or possibly even civil sanctions and/or the entry of a default judgment."); *Benevolence Int'l Found., Inc., v. Ashcroft*, 200 F.Supp.2d 935, 940 (N.D. Ill. 2002) (granting government's request for a stay in civil case brought by criminal defendants because the two cases "involve many of the same parties, issues, relevant facts, and transactions" so that civil discovery would allow the criminal defendants to "circumscribe the restrictive rules of criminal discovery"); *Baranski v. Fifteen Unknown Agents of ATF*, 195 F.Supp.2d 862, 870 (W.D. Ky. 2002) (granting limited stay sought by government because of "the government's interest in preventing a potential criminal defendant from exploiting the advantages

Furthermore, in some of the cases relied upon by the CIA, the courts actually denied a stay or affirmed the denial of a stay on the grounds that the Court had no concerns about defendants' Fifth Amendment rights or the abuse of civil discovery rules. *See, e.g.*, *Kashi*, 790 F.2d at 1050 (affirming denial of a stay sought by potential criminal defendant to protect his Fifth Amendment rights with respect to investigated offenses for which the statute of limitations had not expired because the government had already determined it would not prosecute him); *Hicks v. New York*, 268 F. Supp. 2d 238 (E.D.N.Y. 2003) (denying stay sought by city in civil action because the city was not a criminal defendant facing a potential violation of its Fifth Amendment rights and could not identify any "undue prejudice" it would suffer). The court's reasoning in *Sterling Nat'l Bank*, 175 F.Supp.2d at 579, is particularly relevant. Upon careful consideration of the facts in *Sterling National Bank*, the court found that the civil defendants presented only "speculative and uncertain risks" that they would be indicted and thus have their Fifth Amendments rights implicated in the civil case. Absent these concerns and in light of private entity's interests that were distinct from the government's, the court found a stay unwarranted. *See id.* at 579. In *Hicks*, the court also considered the interest of judicial economy, firmly stating that this "interest is usually best served by discouraging motions to stay" because it risked "needlessly delay[ing] resolution of this case." *Hicks*, 268 F. Supp. 2d at 243.

Indeed, the CIA has not cited a single case in which a court has exercised its equitable authority to stay an unrelated civil action involving different, private litigants; not has the CIA pointed to a court that has granted the extraordinary relief of a stay based upon speculative concerns of civil discovery"); *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F.Supp.2d 523, 528 (D.N.J. 1998) (granting a stay of discovery because otherwise the defendants in the civil case seeking a stay "must choose between waiving their Fifth Amendment rights and defending themselves in the civil lawsuit or asserting the privilege and probably losing the civil case"); *Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) (explaining that the government's interest in protecting its criminal investigation warrants a stay because it "will protect the integrity of the Government's investigation and ensure that the Defendants will not use the civil discovery process to obtain discovery that is not authorized in a criminal case") (internal quotations omitted). .

10

about the need to procure untainted statements from potential witnesses in a possible future criminal action. Plaintiffs are not criminal defendants seeking to gain a litigation advantage through civil discovery, and there is no right to self-incrimination at stake. As the United States Supreme Court declared in *Landis*, 299 U.S. at 255, "[o]nly in rare circumstances" will litigants be required to stand aside while unrelated litigation proceeds. This is all the more pertinent when, as here, the statutory framework sets forth explicit provisions to address appropriate delays, 5 U.S.C. § 552(a)(6)(C)(ii) & (iii), and to alleviate the movants' concerns, 5 U.S.C. § 552(b)(7).

### B. The CIA's Concerns Set Forth in the Durham Declaration Do Not Establish Sufficiently Weighty Interests to Create New Circumstances Meriting a Stay.

Through the Declaration of John H. Durham ("Durham Declaration"), dated August 12, 2008, the CIA argues that Items 11 and 13 of Plaintiffs' Specific Documents Request "overlap directly with the scope of" the Durham investigation. Durham Decl. ¶ 6. According to the Durham Declaration, the investigative team is reviewing "whether any federal criminal offenses were committed in connection with the destruction" in 2005 of videotapes of interrogations. *Id.* ¶ 4. The Durham Declaration claims that "individuals who would be involved in the CIA's search for, review of, and processing of records that are potentially responsive to [Items] 11 and 13, and who would have the institutional knowledge necessary for the CIA to determine responsiveness, and, if applicable, to assert any applicable exemptions, are witnesses or potential witnesses for the criminal investigation." *Id.* ¶ 7. The CIA speculates that if these witnesses or potential witnesses have access during the search and processing of the responsive documents or records, even "their own documents and records," "their recollections could be changed with respect to events, or—unintentionally or intentionally—their answers to questions that would be posed by the criminal investigators could be affected." *Id.* ¶ 8. The CIA also acknowledges that some of the responsive records have already been gathered and that some of the witnesses have already been interviewed. *Id.* ¶¶ 7 & 8 n.2.

The Durham Declaration, however, fails to satisfy the CIA's burden to establish "a clear case of hardship" that overcomes the substantial interests of the public and Plaintiffs and the prejudice they will face as a result of a stay. *See Landis*, 299 U.S. at 255. The CIA's burden is also heightened under the particular facts of this case because it seeks to stay the proceedings under novel circumstances, it asserts interests that are addressed by the relevant statutory scheme and it requests a stay against unrelated private parties who do not share the government's interest in criminal proceedings.[6]  In essence, the CIA relies on the Durham Declaration to raise a concern about administrative difficulties in identifying an individual to search and process the responsive records.  Even with respect to this administrative concern, however, the Durham Declaration does not establish that the criminal investigation and this FOIA case are substantially similar. Further, the Durham Declaration does not adequately explain how the CIA will necessarily face prejudice if compelled to comply with its FOIA obligations.  Because the CIA has failed to show that the scope of the investigation and the records responsive to Items 11 and 13 are the same, the agency has also failed to establish that individuals with the institutional knowledge necessary to determine responsiveness are witnesses or potential witnesses.

Search and processing of Items 11 and 13 will not affect the integrity of the Durham investigation because the records responsive to these items differs from, and is broader than, the conceded subject of the investigation. The Durham investigation is determining whether the destruction of evidence violated the CIA's legal obligation; the investigators are not examining the underlying conduct recorded or memorialized in the destroyed evidence. Durham Decl. ¶ 4.  In contrast, as Plaintiffs' Specific Documents Request makes clear, Items 11 and 13 seek interrogation records of CIA secret detainees openly referenced in a letter sent by the United States Attorney to the court in the *Moussaoui* case, and records related to the Government's coerced interrogations of

---

[6] *Sterling Nat'l Bank*, 175 F.Supp.2d at 579 ("Plaintiff is a private entity, with interests distinct from those of the government. ").

Abu Zubaydah, whom the CIA acknowledged to have held in secret detention and subjected to coerced interrogation techniques, including waterboarding. The Specific Document Request, then, seeks information distinct from the Durham investigation. Moreover, any interrogation records which were not destroyed and remain in the CIA's files are peripheral to the Durham investigation's scope and should be subject to search and processing.

In its attempt to establish a substantial need,, the CIA also relies upon boilerplate and speculative statements in the Durham Declaration that offer few factual details about the actual risk to any potential future prosecution. The Durham Declaration claims that the "highly classified nature of much of the information in this investigation" prevents him from providing further details about any prejudice posed by this FOIA case. Durham Decl. ¶ 14. The vague information set forth in the declaration, however, fails to show: (1) whether any individuals whom the investigators have already interviewed are available to process Items 11 and 13; (2) whether and how the processing of Items 11 and 13 is likely to actually cause any witnesses to change their testimony; (3) whether the CIA has undertaken any efforts to remedy its staffing resources issues that prevent its compliance with FOIA; and (4) the basis for the CIA's assertion in ¶ 11 of the Durham Declaration that compliance with the FOIA statute would increase the risk of additional, unlawful disclosures of information.[7]

Further, the Durham Declaration provides no factual basis for the assertion that many of the individuals who would review responsive records are essential potential witnesses in the criminal investigation. Neither does the Durham Declaration explain how exposing potential witnesses to

---

[7] The CIA has not submitted any factual basis for its speculation that CIA employees are somehow more likely to unlawfully disclose information to the public than the DOJ employees who are currently working on the criminal investigation. The CIA's failure to provide support for this speculation—amounting to an assumption of bad faith on the part of civil servants—further undermines its claim that any prejudice could result to the investigation as a result of processing Items 11 and 13 in compliance with FOIA.

responsive records might affect the answers they would provide when questioned by criminal investigators. Durham Decl. ¶ 8. The CIA fails entirely to explain why no other agency employee is available to perform these tasks.[8] Without this information, the CIA cannot satisfy its burden as a movant for a stay. Indeed, this Court is deprived of any context in which to assess whether the particular individuals would, in fact, be involved in both this FOIA case and the criminal processing, as well as whether other individuals within particular offices of the CIA could fulfill this role to ensure agency compliance with FOIA. The CIA has failed to make a clear showing of a substantial interest that will suffer undue prejudice absent a stay. Accordingly, this Court should deny the motion for a stay.

### C.    The Public Holds a Weighty Interest in Timely Judicial Enforcement of FOIA.

The CIA's speculative and insufficient showing of interest does not overcome the public's heightened interest in timely judicial enforcement of the FOIA statute. The CIA misconstrues the public interest at stake by ignoring the congressionally-recognized purpose of FOIA as a mechanism for government accountability. Properly understood, the public interest in this case is not simply "dissemination of information," as the Government so frames, Mot. at 11, but includes the public interest in enforcement of a statute designed to permit the public to exercise oversight of government activities.

The public has an overwhelming interest in the CIA's compliance with FOIA—an interest Congress has specifically safeguarded. In enacting FOIA, Congress "intended to permit citizens access to information in the possession of the federal government that is unnecessarily sheltered

---

[8] The assignment of other personnel to meet the agency's legal obligations is the same type of substitution of personnel DOJ is utilizing in the Durham investigation. For example, as the Durham Declaration recognizes, Mr. Durham is serving as the United States Attorney for the Eastern District of Virginia solely in an "Acting" capacity in place of the actual United States Attorney, Chuck Rosenberg. Durham Decl. ¶ 1. The CIA gives no reason why a similar, less extraordinary, measure cannot be adopted here to meet its FOIA obligations, particularly when the CIA has already identified and searched many, if not most, of the documents relevant for the criminal investigation. Durham Decl. ¶¶ 7, 9.

14

from public view." *Halpern v. Dep't of Defense*, 181 F.3d 279, 284-85 (2d Cir. 1999). FOIA's statutory scheme recognizes that the public's need for information is often time sensitive, as it is in this case. *See* 5 U.S.C. § 552(a)(6)(E)(iii); *see also EPIC v. Dep't of Justice*, 416 F. Supp.2d 30, 40 (D.D.C. 2006)("Not only is public awareness a necessity, but so too is *timely* public awareness." (emphasis in original)); *ACLU v. Dep't of Defense*, 339 F.Supp.2d 501, 504 (S.D.N.Y. 2004). For this reason, Congress has "evinced an increasing concern over the timeliness of disclosure, recognizing that delay in complying with FOIA requests may be 'tantamount to denial.'" *ACLU*, 339 F.Supp.2d at 504 (quoting H. Rep. No. 93-876, at 6 (1974)), *reprinted in* 1974 U.S.C.C.A.N.6267, 6271).

Here, the need for enforcement of FOIA to facilitate the accountability of government officials for rendition, secret detention and coerced interrogation practices that may have been unlawful is as strong, if not stronger, than the public interest in enforcement of criminal laws related to the potential destruction of evidence. As the Durham investigation is not investigating the legality of the underlying coercive interrogation tactics and secret detention practices recorded by the destroyed evidence, the FOIA statute and congressional inquiries provide the sole avenues for the public to seek accountability for any impropriety associated with the program. The balance of interests here does not involve, for example, private civil litigants in a dispute over narrow private interests and the public concern for the effective enforcement of criminal law. Rather, this FOIA litigation seeks records related to a national program, involving potentially unlawful activity that has had a historical and wide-sweeping impact. The public's interest in effective criminal law enforcement and judicial enforcement of FOIA against government agencies can both be vindicated; one should not be sacrificed at the expense of the other.

Moreover, in describing the public's interest as merely "dissemination" of information, the CIA disregards FOIA's underlying substantive mandate to provide the public with information by

which government conduct can be measured.  The public has a paramount interest in seeing illegal,

ineffective or improper government conduct cease.  Public disclosure, through FOIA litigation and

public scrutiny, of records related to the military's abuse of detainees, for example, has lead to

numerous internal reviews, congressional hearings and, ultimately, legislation that vindicated the

public's interest in the military's adherence to our Nation's legal values and military traditions.[9]

This is precisely the same public concern at stake here.  The public's interest in safeguarding an

unknown number of witnesses or potential witnesses' statements from speculative concerns about

improper refreshment of recollection for a potential prosecution in the future, in fact, pales in

comparison to the public's broader interest in effecting changes in the CIA's rendition, secret

---

[9] For example, the litigation, *ACLU v. Dep't of Defense*, sought records regarding the abuse of detainees in U.S. custody overseas.  When the request was filed in 2003, the government refused to release the majority of responsive records and sought to withhold written, photographic and video documentation of detainee abuse.  Pursuant to FOIA litigation, however, over 100,000 pages of records have been released, including descriptions of detainee abuse by U.S. personnel in overseas prison facilities.  *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501 (S.D.N.Y. 2004); *ACLU v. Dep't of Defense*, 389 F. Supp. 2d 547 (S.D.N.Y. 2005).  The intense media interest in this released information is demonstrative of the relevance of FOIA litigation to the public debate.  *See, e.g.,* Thomas Ricks, *Detainee Abuse by Marines is Detailed*, Wash. Post, Dec. 15 2004, at A1; Julia Preston, *ACLU Gains in Its Quest for CIA Documents on Detainees*, N.Y. Times, Feb. 3, 2005; *FBI Records: Detainees Allege Quran Abuse*, CNN, May 26, 2005.  The public availability of this information has been instrumental in forcing accountability for detainee abuse.  *See, e.g.,* Dep't of Justice Office of the Inspector General, *A Review of the FBI's Involvement in and Observations of Detainee Interrogations in Guantanamo Bay, Afghanistan, and Iraq* (2008); Dep't of Defense, *Article 15-6 Investigation of the 800th Military Police Brigade* (2004) (the "Taguba Report" on treatment of prisoners at Abu Ghraib prison in Iraq).  There have been numerous congressional hearings into abuse, including hearings that have explicitly emphasized the role the FOIA litigation played in ensuring the release of information about government misconduct.  *See, e.g., Oversight Hearing on Torture and the Cruel, Inhuman, and Degrading Treatment of Detainees: the Effectiveness and Consequences of American Civil Liberties "Enhanced" Interrogation, Hearing Before the Subcomm. on Const., Civil Rights, and Civil Liberties of the H. Comm. on the Judiciary,* 110th Cong. (2007) (statement of Amrit Singh, Staff Attorney, ACLU); *From the Department of Justice to Guantanamo Bay: Administration Lawyers and Administration Interrogation Rules, Parts I-V, Hearings Before the H. Comm. on the Judiciary,* 110th Cong. (2008) (including testimony by former Attorney General John Ashcroft, former Solicitor General Walter Dellinger, and former Justice Department counsel Douglas Feith).  This year, in response to the attention raised by the FOIA litigation, Congress passed legislation that would have required all U.S. interrogators to abide by the Army Field Manual's prohibitions on coercive interrogations.  Scott Shane, *Lawmakers Back Limits on Interrogation Tactics*, N.Y. Times, Dec. 7, 2007; Intelligence Authorization Act for Fiscal Year 2008, H.R. 2082, 110th Cong., § 327 (2007) (bill vetoed by the President).

detention and coerced interrogation practices, which currently threaten the integrity of our criminal justice system, our nation's national security and our diplomatic relations.

**D.      Further Delay by CIA in Responding to Plaintiffs' Request Will Prejudice Plaintiffs' Right to Timely Enforcement of FOIA.**

In addition to the public's own interest in effective judicial enforcement of FOIA, the public also shares Plaintiffs' interests in the prompt resolution of this FOIA litigation and both Plaintiffs and the public will be prejudiced by further delay. The CIA claims that the stay it seeks will not cause prejudice because it will only affect a small portion of this FOIA case, is tailored to affect only two Items of the request, and is an "initial stay of only four months." The CIA's arguments must be rejected.

First, the stay will substantially prejudice the Plaintiffs' ability to obtain records specifically responsive to Items 11 and 13. The CIA's proposed stay would prevent Plaintiffs and the public from pursuing any and all information related to the interrogations of Abu Zubaydah and the *Moussaoui* records. In cases when the courts have found no prejudice to the nonmovants, courts have often emphasized that some other means of discovery was available for the party to obtain comparable information. *See, e.g., Jones*, 216 F.R.D. at 451 (noting that civil litigant "may proceed with discovery" related to the events at issue in the case by deposing witnesses not involved in the criminal investigation). The circumstances surrounding Abu Zubaydah's interrogations and the interrogation records identified in the *Moussaoui* case have been the focus of multiple news reports, congressional inquiries, Inspector General investigations and other public queries, perhaps more than any other records related to the Administration's rendition, secret detention and coerced interrogation program. Yet, the CIA proposes to withhold all records responsive to Items 11 and 13, even those that have been searched or are not involved in the Durham Investigation. While the records responsive to Items 11 and 13 may or may not be voluminous—only the CIA knows the volume of records under discussion—denial of this information has a substantial prejudicial impact

upon the ability of the public and Plaintiffs to engage in the public dialogue about the propriety of this individual's treatment at the hands of U.S. personnel.

Second, the CIA has already engaged in substantial delay and makes clear that it will seek to extend the current stay when an indictment is brought, further preventing any access to records related to Abu Zubaydah or the *Moussaoui* records. Plaintiffs' Specific Documents Request has already been pending for eight months. Although aware in January 2008 of the Durham investigation, and its intention to seek a stay in related FOIA litigation, the CIA waited until late July to notify Plaintiffs and the Court of its intention to seek a stay in this case. As the CIA concedes, the nature of the information contained in the records is currently the subject of numerous congressional inquiries, policy discussions and public debate.[10] Had the CIA provided a timely response to the Request in the last eight months, Plaintiffs and other interested public parties would have been able to contribute in a more meaningful and democratic manner in numerous

---

[10] Durham Decl. ¶ 12; *See also* Sen. Judiciary Committee Hearing, "How the Administration's Failed Detainee Policies Have Hurt the Fight Against Terrorism: Putting the Fight Against Terrorism on Sound Legal Foundations," July 16, 2008 (evaluating the impact of the administration's detention and interrogation policies), *available at* http://judiciary.senate.gov/hearing.cfm?id=3458; Letter from Congressman John Conyers to The Honorable Michael Mukasey (July 10, 2008) (requesting that a special counsel be appointed to investigate and prosecute any violation of federal criminal laws related to the rendition of Canadian citizen Maher Arar to Syria by U.S. personnel), *available at* http://ccrjustice.org/files/Conyers-Nadler-Delahunt.pdf; Letter from Jan Schakowsky, John Conyers, *et al.*, (56 Members of Congress) to The Honorable Michael Mukasey (June 6, 2008) (requesting that a special counsel be appointed to "investigate whether the Bush Administration's policies regarding the interrogation of detainees have violated federal criminal laws," including the authorization for and implementation of CIA interrogation practices), *available at* http://media.washingtonpost.com/wp-srv/politics/documents/mukasey_letter_060708.pdf?sid= ST2008060701260; Scott Shane, *Waterboarding Focus of Inquiry by Justice Dept.*, N.Y. Times, Feb. 23, 2008, *available at* http://www.nytimes/com/2008/02/23/washington/23justice.html (discussing Justice Department inquiry into the legal authorization for waterboarding and potential public disclosure of an unclassified version of its final report); Joby Warrick, *Lawmakers Urge Special Counsel Probe of Harsh Interrogation Tactics*, Wash. Post, June 8, 2008, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2008/6/07/AR2008 06071194_pf.html (reporting that "[n]early 60 House Democrats yesterday urged the Justice Department to appoint a special counsel to examine whether top Bush administration officials may have committed crimes in authorizing the use of harsh interrogation tactics" again CIA detainees).

congressional hearings and public debates concerning the government's rendition, secret detention and coerced interrogation program. *See Electronic Frontier Found. v. Office of Dir. Of Nat'l Intelligence*, 2007 WL 4208311 (N.D. Cal. Nov. 27, 2007) (finding that "irreparable harm can exist in FOIA cases . . . [when] ongoing public and congressional debates about issues of vital national importance cannot be restarted or wound back") (internal quotations omitted). Instead, the CIA continues to conceal its activities behind a veil of secrecy, hindering public and congressional oversight of its activities, including it's ongoing secret detention program. Congress, the media and the public remain deeply concerned and intent on examining the nature and legality of the program in the upcoming months. Plaintiffs should not be deprived of their statutory right to the timely and meaningful enforcement of FOIA as a result of government concerns unrelated to this litigation and that, in any event, would be adequately safeguarded against under FOIA.

## III.   EVEN IF ITEMS 11 AND 13 OVERLAP WITH THE DURHAM INVESTIGATION, THE CIA'S STAY REQUEST IS NOT NARROWLY TAILORED

Even if this Court finds that the CIA has raised a legitimate concern that processing some of the records responsive to Items 11 and 13 might interfere with the Durham investigation, the CIA's stay request is unnecessary and not narrowly tailored to address those concerns. Because a stay is an extraordinary remedy that delays enforcement of a plaintiff's rights, a court should impose it only when alternative remedies are ineffective and should construe the stay as narrowly as possible.

Here, the CIA makes no mention of alternative remedies that would enforce the public interest and Plaintiffs' rights while safeguarding the integrity of the Durham investigation. The CIA gives no reason why it cannot assign alternative staff to enable the agency to meet its legal obligations. It is well within this Court's authority to enforce FOIA's mandate and require the CIA to process these records. If the CIA is required to employ alternative classification review authority personnel in order to complete its processing, that is an internal agency challenge that is not for the

19

plaintiffs or the Court to solve. The CIA's staffing failures cannot justify a stay of proceedings. If an agency was permitted to avoid processing records under these circumstances, it would eviscerate FOIA's mandate to hold public officials accountable for government activity under circumstances when FOIA is most critical. If even after processing, the CIA remains concerned that public disclosure of records will compromise an investigation, it has given no reason why it cannot then invoke the statutory exemption for law enforcement investigation records, 5 U.S.C. § 552(b)(7)(A). A temporary protective order, rather than a complete stay of proceedings, could also be narrowly tailored to ensure that the parties can promptly resolve their disputes and that any delay in the future public disclosure following the close of the investigation will be minimal. The CIA proposes, instead, that nothing be done until the investigation is finalized, and even then, extensive further delay could ensue if indictments and criminal prosecutions are brought.

Finally, even if this Court were to impose a stay, it should be narrowly crafted to cover only those specific records implicating the CIA's stated concerns. The CIA concedes that it has already searched some portion of the responsive records for Items 11 and 13 and that the investigators have already interviewed some of the potential witnesses. Durham Decl. ¶¶ 7 & 8 n.2. These facts must be considered. Any searched records should be processed promptly. Any staff who have already been interviewed should be identified as individuals available to process Plaintiffs' FOIA request. Further, if the CIA has already interviewed potential witnesses, no risk exists that these witnesses' recollection will be tainted. If any records have been withheld from processing due to concerns about tainting the recollections of only these interviewed individuals, that risk evaporated once these potential witnesses were interviewed. These records, if any, should be subject to processing. Finally, any *Moussaoui* records or records related only to Abu Zubaydah's rendition, secret detention or coerced interrogations that were not destroyed should also be processed and not subject to a stay.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the CIA's motion for a partial stay and order the agency to process Items 11 and 13 of the Plaintiffs' CIA Specific Documents Request on or before October 31, 2008.

Respectfully submitted,

　　  /s/Gitanjali S. Gutierrez　　　
Gitanjali S. Gutierrez (GG-0122)
Emilou MacLean (EM-0121)
Shayana Kadidal (SK-1278)
CENTER FOR CONSTITUTIONAL
 RIGHTS, INC.
666 Broadway, 7th floor
New York, NY 10012
Tel: (212) 614-6485
Fax: (212) 614-6499
Email: ggutierrez@ccrjustice.org

Margaret L. Satterthwaite (MS-3953)
WASHINGTON SQUARE LEGAL
 SERVICES, INC.
International Human Rights Clinic
245 Sullivan Street
New York, NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
Email: margaret.satterthwaite@nyu.edu

*Attorneys for Amnesty International USA and Washington Square Legal Services, Inc.*

*Attorneys for Center for Constitutional Rights, Inc.*

August 20, 2008

21