UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

AMNESTY INTERNATIONAL USA, CENTER
FOR CONSTITUTIONAL RIGHTS, INC., and
WASHINGTON SQUARE LEGAL SERVICES,
INC.,

                Plaintiffs,

        v.

CENTRAL INTELLIGENCE AGENCY,
DEPARTMENT OF DEFENSE,
DEPARTMENT OF HOMELAND SECURITY,
DEPARTMENT OF JUSTICE, DEPARTMENT
OF STATE, and THEIR COMPONENTS,

                Defendants.
------------------------------------------------------------ x

**ECF CASE**

07 CV 5435 (LAP)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE UNITED STATES' MOTION FOR A PARTIAL STAY OF PROCEEDINGS

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, Third Floor
New York, New York  10007
Telephone No. (212) 637-1579
Facsimile No. (212) 637-2717
emily.daughtry@usdoj.gov

JEANNETTE A. VARGAS
PIERRE G. ARMAND
BRIAN M. FELDMAN
Assistant United States Attorneys
EMILY E. DAUGHTRY
Special Assistant United States Attorney
      -Of Counsel-

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     THE FOIA STATUTE DOES NOT PRECLUDE A STAY  . . . . . . . . . . . . . . . . . . . . 2

II.    THE BALANCE OF INTERESTS WEIGHS STRONGLY IN FAVOR OF A PARTIAL
       STAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            A.    Plaintiffs' Claims of Prejudice to Their Interests Are Not Compelling  . . 7

            B.    The Public Interest in This Particular Criminal Investigation Outweighs
                  Any Public Interest in the Enforcement of FOIA  . . . . . . . . . . . . . . . . . . 8

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

The United States of America (the "United States" or the "Government") respectfully submits this reply memorandum of law in further support of its motion for a four-month, partial stay of proceedings in this action brought under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

## PRELIMINARY STATEMENT

The United States has moved for a partial, temporary stay of the search and processing obligations of the Central Intelligence Agency ("CIA") as to just two out of seventeen categories of the fourth and last FOIA request to be added to this litigation (the "Supplementary CIA Request"). This stay is sought because a federal criminal investigative team has determined that, without such a stay, its investigation into the CIA's destruction of videotaped interrogations will be prejudiced. As established in the Government's opening brief, searching for and processing these records before the conclusion of the investigation could taint the testimony of witnesses or potential witnesses and jeopardize any future prosecutions. *See* Memorandum of Law in Support of the United States' Motion for a Partial Stay of Proceedings ("Moving Brief" or "Moving Br.") at 10. If the Court grants this temporary, narrowly tailored stay, the integrity of the investigation will remain intact and the only prejudice to plaintiffs will be a four-month delay in the resolution of a small portion of this FOIA case.

Plaintiffs' opposition to the stay rests on their fundamental misapprehension of the Government's position. Contrary to plaintiffs' repeated assertion, this is not the CIA's motion. It is not an attempt by the CIA to bypass the FOIA's statutory scheme or creatively tackle staffing issues or "conceal its activities behind a veil of secrecy." Opp. Br. at 19. Rather, the Government moves on behalf of John Durham, the Acting United States Attorney for the Eastern District of Virginia responsible for leading the investigation into the destruction of the

videotapes, and his team of prosecutors and federal agents (the "Durham team").  Other than a

desire to cooperate fully with the criminal investigation, the CIA has no independent interest in

the Government's request for a stay.  Placed in this proper factual framework, the only relevant

question is the proper balance of the public interest between plaintiffs' interest in this case and

the Government's interest in a stay.  Plaintiffs' interest lies in their belief that, although their

FOIA request seeks presumably classified records that would be exempt from disclosure, it may

nonetheless uncover CIA records that "involv[e] potentially unlawful activity that has had a

historical and wide-sweeping impact." *Id.*  Against this speculation, the Government's interest is

in protecting the integrity of an ongoing criminal investigation into potentially unlawful activity

in one of the nation's most sensitive national security programs.  Under the circumstances, the

public interest weighs heavily in favor of the Government's request for a stay, as the integrity of

the Durham team's federal criminal investigation outweighs the prejudice to plaintiffs of a four-

month delay in litigating a discrete subset of records responsive to plaintiffs' Supplementary

CIA Request, many if not all of which are likely to be exempt from disclosure.

## ARGUMENT

## I.    THE FOIA STATUTE DOES NOT PRECLUDE A STAY

Plaintiffs suggest – but, lacking any precedent, never assert – that the FOIA statute

precludes a stay in this case, arguing incorrectly that the "CIA's request for a stay . . . results in

circumvention of the agency's obligations under FOIA's statutory scheme," Opp. Br. at 2.  A

partial stay, however, would not "circumvent" the agency's FOIA obligations; it would simply

postpone the fulfillment of those obligations.  The United States is seeking a partial stay

precisely because the CIA's FOIA obligations are incompatible with the current need of the

Durham team to protect the integrity of its criminal investigation.  Plaintiffs' argument is built upon on several inaccurate factual premises and demonstrates plaintiffs' fundamental misunderstanding of the Government's reasons for seeking a partial stay.

As an initial factual matter, it is not the CIA, but the United States at the request of the Durham Team that is seeking this partial stay.  *See* Moving Br. at 1 ("The *United States of America* respectfully submits this . . . motion for a four-month, partial stay"; "[T]he federal criminal investigative team led by *John Durham* . . .requested that the *Government* seek a partial stay." (emphasis added)).  Thus, the CIA has not made a "unilateral assessment" that disclosure of any responsive records would "interfere with [the] investigation."  Opp. Br. at 3.  Rather, as noted in the Government's opening brief, the Durham team – not the CIA – has made a determination that the particular CIA employees who would be involved in the search for, review of, and processing of these sensitive records are witnesses or potential witnesses in the investigation, and that searching, reviewing, and processing could influence their recollections and statements to the Durham team.  Durham Decl. ¶¶ 7-8.

Furthermore, as is standard in all criminal investigations, the particular course of the investigation will dictate both whether a particular individual's statements will be needed as well as the timing of obtaining those statements.  Although the Durham team has asked the CIA not to show or otherwise make available certain records and documents to certain persons who will be interviewed as witnesses, Durham Decl. ¶ 9, the Durham team has not necessarily identified all potential witnesses or even informed potential witnesses that they have been so identified.  Plaintiffs' claim that "the CIA should be able to identify an individual who is not a potential witness and holds the appropriate credentials to conduct the searching and processing of Items

11 and 13," does not take into account the realities of conducting a criminal investigation or the

classified nature of the documents to be reviewed. Until the investigation has concluded, neither

the Durham team nor the CIA will know which employees will ultimately fall outside the scope

of the investigation. Indeed, even if the Durham team had already comprehensively identified all

those employees outside the scope of the investigation, it should not have to reveal potentially

sensitive details regarding the conduct of its investigation by prematurely identifying those

witnesses to the CIA or to plaintiffs. *Cf.* Durham Decl. ¶ 14 (noting reluctance to "provide

further details concerning how this criminal investigation is being conducted and the impact on

any potential prosecutions [of] the gathering and processing of [these] documents"). It is

because of these concerns for the integrity of the criminal investigation, not "administrative

staffing concerns," Opp. Br. at 5, that the CIA, at the Durham team's request, has delayed the

start of its search for documents responsive to Categories 11 and 13.[1]

---

[1] Plaintiffs misrepresent the CIA's substantial efforts in this case, the timing of the Durham team's stay request, and the care with which the CIA has abided by the Durham team's request for a stay. The CIA has processed approximately 10,000 records in response to plaintiffs' FOIA requests in this case and has already determined whether and for which categories it would need to assert a *Glomar* response to the CIA Supplementary Request. *Compare with* Opp. Br. at 18-19. On July 22, 2008 – just six weeks after plaintiffs added the CIA Supplementary Request to this litigation – the Government informed plaintiffs of both the CIA's determination of its *Glomar* responses and the Durham team's need for a stay of Categories 11 and 13, a determination the Durham team was could only make once it discovered that the CIA had decided to search for records in those two categories, rather than issue a *Glomar* response. *See* Letter dated July 30, 2008, attached as Ex. A to the Declaration of Emily Daughtry, dated August 12, 2008. In light of the Durham team's request that CIA staff not review the records responsive to Categories 11 and 13, the CIA did not commence a search for such records. *Compare with* Opp. Br. at 11, 20 (making unfounded assertions that CIA already began such searches). Plaintiffs' argument that the CIA could search for and process those records consistent with the Durham team's concerns simply by assigning "other personnel" ignores the fact that the requested records are of a type likely limited to a small set of cleared personnel, who would be essential to a search and any processing, *see* Declaration of Ralph S. DiMaio, dated April 21, 2008, ("DiMaio Decl.") ¶¶ 114-116; Opp. Br. at 14 & n.8; more

Plaintiffs argue, without citation to any precedent, that because FOIA includes a statutory exemption for law enforcement investigations, 5 U.S.C. § 552 (b)(7)(A), the Government's basis for protecting the Durham team's investigation is limited to the invocation of exemption 7(A) to prevent the disclosure of records to plaintiffs. *See* Opp. Br. at 3. But plaintiffs' argument misreads both the facts and the law. The harm here is not the release of information but, rather, the searching and processing itself. This is the rare situation in which one arm of the U.S. Government is investigating another arm of the U.S. Government, and the investigating agency needs to prevent potential witnesses at the agency being investigated from reviewing documents that go to the heart of the investigation. Thus, although the animating principle behind exemption 7(A) is the protection of open law enforcement investigations, exemption 7(A) itself does not address the concerns at issue here regarding the search for and processing of documents. FOIA nowhere deprives this Court of its inherent authority to enter a stay. *See Landis v. North American Co.,* 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket"). Rather, it is well established that Courts have the broad discretion to stay civil proceedings in the interests of justice, including where those proceedings may interfere with a pending criminal investigation. *See* Moving Br. at 5-8 (citing cases), Opp. Br. at 5 (same). Furthermore, although plaintiffs selectively quote *Landis* for the proposition that "'only in rare

---

fundamentally, that argument fails to comprehend that the Durham Team seeks this stay, not the CIA, and only the Durham Team, not the CIA, knows who is and who is not a potential witness. Thus, contrary to plaintiffs' assertions, the CIA is not seeking to evade processing a portion of the CIA Supplementary Request, *see* Opp. Br. at 5; instead, the CIA has abided by the instructions of a criminal investigative team of the Department of Justice in an effort to cooperate with that investigation and preserve the Durham team's ability to seek an effective stay from this Court.

5

circumstances' will litigants be required to stand aside while unrelated litigation proceeds," Opp. Br. at 11, in fact, *Landis* explicitly cautions against plaintiffs' myopic views of the power of courts to enter stays of civil proceedings: it notes that "[a]n application for a stay in suits so weighty and unusual will not always fit within the mould appropriate to an application for such relief in a suit upon a bill of goods," and thus "[w]e must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions."  *Id.* at 256.

Consistent with that principle of flexibility, the Government is seeking a partial, narrowly tailored, four-month stay in order to postpone the CIA's FOIA obligations with respect to a small portion of this litigation to ensure the integrity of the Durham team's investigation.  There is nothing in the FOIA statute that precludes the Government from doing so.

## II.    THE BALANCE OF INTERESTS WEIGHS STRONGLY IN FAVOR OF A PARTIAL STAY

Plaintiffs do not challenge this Court's broad discretion to grant a stay of proceedings where the interests of justice so require.  *See* Opp. Br. at 5; *see also Landis,* 299 U.S. at 254, *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986).  Furthermore, the parties agree that in considering whether to partially stay this civil FOIA action, the Court must balance "the interests of the moving party against the interests of both the public and the non-movant and consider any prejudice that will ensue from the stay."  Opp. Br. at 6.  *Compare with* Moving Br. at 8.[2]  The

---

[2]  Plaintiffs argue strenuously that the particular facts of precedents are inapposite to the facts at issue here.  *See* Opp. Br. at 6-11.  The Government concedes that there are no cases that are precisely on point, which is unsurprising given the unique character of this investigation. Durham Decl. ¶ 12.  However, the reasoning of the cited cases – that concern for the integrity of an ongoing criminal investigation justifies a stay –  applies here in full force.  *See* Moving Br. at 6 (citing cases).

parties' fundamental disagreement, then, turns only on the relative weight here of the interests of

the Government, the interests of plaintiffs, and the interests of the public.  As articulated in the

Government's opening brief, *see* Moving Br. at 11-12, the Government and the public have a

weighty interest in the integrity of the Government's criminal investigation, and plaintiffs are

unable to demonstrate any significant prejudice to their interests.

**A.**     **Plaintiffs' Claims of Prejudice to Their Interests Are Not Compelling**

Plaintiffs' arguments that they will be prejudiced by a temporary, partial stay are not

compelling.  First, plaintiffs argue that the requested stay will prevent them from obtaining "any

and all information related to the interrogations of Abu Zubaydah and the *Moussaoui* records,"

Opp. Br. at 17, and thus prevent them from "engag[ing] in the public dialogue about the

propriety of this individual's treatment at the hands of U.S. personnel." *Id.* at 18.  This is simply

wrong.  A temporary stay will merely postpone plaintiffs' ability to litigate the CIA's response to

two items of the Supplementary CIA Request regarding cables "discussing and/or approving the

use of waterboarding on Abu Zubaydah" (Category 11) and the specific records referred to in an

October 25, 2007 letter to the court in the *Moussaoui* litigation (Category 13).  Once the stay is

lifted, plaintiffs will have exactly the same ability to obtain any such records.

Second, plaintiffs claim that a stay would prevent them from contributing to relevant

congressional hearings and public debates for the duration of the stay.  Opp. Br. 18-19. *Id.*  Yet

all four of plaintiffs' FOIA requests in this litigation are related to issues of secret detention, and

the parties are moving this litigation forward on multiple fronts over the next several months.

Furthermore, general public debate on these issues is continuing.

Moreover, it is misleading and highly speculative for plaintiffs to suggest that in the

absence of a stay they would likely receive any actual documents.  In the absence of a stay, plaintiffs would receive the CIA's response to their FOIA request regarding Categories 11 and 13, a *Vaughn* index of any exemptions claimed to withhold records in part or in full, and the ability to litigate those exemptions.  Although the Government is not in a position to make any representations as to the exemptions that the CIA will eventually invoke as to these documents, the nature of the documents – cables and interrogation records pertaining to the CIA's Terrorist Detention and Interrogation Program – suggests that these documents would be highly classified and thus exempt from disclosure under FOIA exemptions 1 and 3. *See* DiMaio Decl., ¶¶ 111-127, Ex. A, Doc Nos. 48 -57 (withholding all cables in full as classified); *id.* ¶ 109 (explaining why interrogation records must be classified); *id.* ¶¶ 119-120 (explaining why alternative questioning procedures must be classified).  Given the absence of any concrete explanation as to how plaintiffs' interests will be prejudiced by postponing searching and processing of these records by four months, plaintiffs' arguments are insufficient to overcome the strong public interest in preserving the integrity of the ongoing criminal investigation.

**B.     The Public Interest in This Particular Criminal Investigation Outweighs Any Public Interest in Enforcement of FOIA**

In opposing a partial stay, plaintiffs cite "the public interest in enforcement of a statute designed to permit the public to exercise oversight of government activities."  Opp. Br. at 14. But in the context of this complex FOIA case involving four separate FOIA requests and five different agencies, a four-month, narrowly tailored stay will not prejudice the public's interest in the enforcement of FOIA.  The parties have been actively litigating these FOIA requests for more than a year, and have court-ordered schedules in place for summary judgment briefing on fifteen out of seventeen categories of the Supplementary CIA Request that will go forward this

8

fall even if the Government's request for a stay is granted.[3]  Plaintiffs cannot credibly maintain

that a four-month stay of the searching and processing of just two categories of the multitude of

their pending FOIA requests submitted to one out of five agencies in this litigation will thwart

the public's interest in timely judicial enforcement of the FOIA statute.

Plaintiffs also argue that the public interest in enforcement of FOIA in this case is

particularly strong because the requested records involve "potentially unlawful activity that has

had a historical and wide-sweeping impact," and contend that "[t]he public has a paramount

interest in seeing illegal, ineffective or improper government conduct cease."  Opp. Br. at 15-16.

In doing so, they are essentially articulating the law enforcement interest that is furthered by a

stay protecting the integrity of the Durham team's criminal investigation. *See* Moving Br. at 11-

12 (citing cases).  Although plaintiffs attempt to downplay the public interest of the Government

by characterizing it simply as the general interest "in enforcement of criminal laws related to the

potential destruction of evidence," Opp. Br. at 15, and "speculative concerns about improper

refreshment of recollection for a potential future prosecution," *id.* at 16, the overriding public

interest at stake here is the interest in the integrity of this particular criminal investigation.  As

the Supreme Court has recognized:

---

[3]  For example, the issues regarding one of the five defendant agencies, the Department of Homeland Security, have already been fully litigated and decided by the Court.  In addition, many of the key issues at the very heart of this litigation are being litigated in the CIA's motion for summary judgment with respect to the original three FOIA requests, and will be fully briefed in less than 30 days.  Furthermore, the parties are in the process of negotiating a schedule for moving forward with respect to a third defendant agency, the Department of Justice, that will likely result in additional briefing over the course of the next four months.

> Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted.

*Landis*, 299 U.S. at 256.  The Durham team's investigation was initiated at the request of the Attorney General, and grew out of a Department of Justice inquiry following a public disclosure by the Director of the CIA that certain videotaped interrogations had been destroyed.  *See* Declaration of John Durham ("Durham Decl.") ¶ 3(a) - 3(c).  There is more at stake in this important criminal investigation than the general public interest in law enforcement; rather, there is a "compelling national interest in ensuring that this criminal investigation is conducted in a manner that will engender public trust."  Id. ¶12.

## CONCLUSION

For the above-stated reasons, and for those set forth in the United States' Moving Brief, the Court should grant an initial four-month stay, until December 31, 2008, of the CIA's search for, review of, and processing of Categories 11 and 13 of the Supplementary CIA Request.

10

Dated: New York, New York
      August 26, 2008

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York,
Attorney for the United States


By:           /s/
      JEANNETTE A. VARGAS
      PIERRE G. ARMAND
      BRIAN M. FELDMAN
      Assistant United States Attorneys
      EMILY E. DAUGHTRY
      Special Assistant United States Attorney
      86 Chambers Street, Third Floor
      New York, New York 10007
      Telephone No. (212) 637-1579
      Facsimile No. (212) 637-2717
      emily.daughtry@usdoj.gov

11