# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMNESTY INTERNATIONAL USA, CENTER FOR CONSTITUTIONAL RIGHTS, INC. and WASHINGTON SQUARE LEGAL SERVICES, INC., | |
| Plaintiffs, | **ECF CASE** |
| v. | 07 CV 5435 (LAP) |
| CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF JUSTICE, DEPARTMENT OF STATE, AND THEIR COMPONENTS | |
| Defendants. | |

## NOTICE OF SUPPLEMENTAL AUTHORITY ON CONSENT

Amnesty International USA ("AIUSA"), the Center for Constitutional Rights, Inc. ("CCR") and Washington Square Legal Services, Inc. ("WSLS") (collectively "Plaintiffs") respectfully call the Court's attention to the transcript from the August 18, 2008 hearing, Hr'g Tr. (Aug. 18, 2008) (attached as Exh. A) (*hereinafter ACLU* Transcript), and the August 20, 2008 order, Order Regulating Proceedings (Aug. 20, 2008) (attached as Exh. B) (*hereinafter ACLU* Order), in *American Civil Liberties Union, et al., v. Department of Defense, et al.* 04-cv-4151 (S.D.N.Y.). Defendants consent to this notice of supplemental authority. The Transcript and Order are relevant to Defendant's Motion for a Partial Stay of Proceedings filed on August 12, 2008, fully briefed with an argument scheduled for August 29, 2008.

Dated: August 28, 2008

Respectfully submitted,

Margaret L. Satterthwaite (MS-3953)
WASHINGTON SQUARE LEGAL
 SERVICES, INC.
International Human Rights Clinic
245 Sullivan Street
New York, NY 10012
Tel: (212) 998-6657
Fax: (212) 995-4031
Email: margaret.satterthwaite@nyu.edu

*Attorneys for Amnesty International USA and
Washington Square Legal Services, Inc.*

David S. Brown
MORRISON FOERSTER
1290 Avenue of the Americas
New York, NY  10104-0050
Tel :  (212) 336-8640
Fax :  (212) 468-7900
Email :  dbrown@mofo.com

*Attorneys for Center for Constitutional Rights,
Inc., Amnesty International USA, and
Washington Square Legal Services, Inc.*

    ___/s/Gitanjali S. Gutierrez_____
Gitanjali S. Gutierrez (GG-0122)
Emilou MacLean (EM-0121)
Shayana Kadidal (SK-1278)
CENTER FOR CONSTITUTIONAL
 RIGHTS, INC.
666 Broadway, 7th floor
New York, NY 10012
Tel: (212) 614-6485
Fax: (212) 614-6499
Email: ggutierrez@ccrjustice.org

*Attorneys for Center for Constitutional
Rights, Inc.*

# EXHIBIT A

1

88I3ACLC                    Conference
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    AMERICAN CIVIL LIBERTIES
3    UNION, et al.,
4
4                    Plaintiffs,
5
5              v.                        04 CV 4151 (AKH)
6
6    THE DEPARTMENT OF DEFENSE, et
7    al.,
7
8                    Defendants.
8
9    ------------------------------x
9                                       New York, N.Y.
10                                      August 18, 2008
10                                      2:45 p.m.
11
11   Before:
12
12                    HON. ALVIN K. HELLERSTEIN,
13
13                                       District Judge
14
14                    APPEARANCES
15
16   AMRIT SINGH
16   JAMEEL JAFFER
17        Attorneys for Plaintiff ACLU
17       -and-
18   GIBBONS
18        Attorneys for Plaintiff ACLU
19   BY:  MELANCA CLARK
19
20   MICHAEL J. GARCIA
20        United States Attorney for the
21        Southern District of New York
21   PETER SKINNER
22   SEAN LANE
22        Assistant United States Attorneys
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

```
      88I3ACLC                    Conference
 1                (In open court)
 2                THE COURT:  Good afternoon.  Thank you for your
 3    agenda.  Let's use it.  The first item is plaintiff's motion
 4    for contempt and sanctions against the CIA.  I've reread the
 5    affidavit, the declaration of John Durham dated June 24, 2008.
 6    And let me hear the plaintiff's proposals.
 7                MS. SINGH:  Your Honor, as set forth in my letter of
 8    August 8 to this Court, that declaration adds nothing to the
 9    CIA's previous arguments for a stay, which were --
10                THE COURT:  Say that again.
11                MS. SINGH:  That declaration adds nothing to the CIA's
12    previous arguments for a stay which were amply briefed by both
13    sides.
14                THE COURT:  Let me put my issue.  Here is the special
15    prosecutor saying that the witnesses that I have to hear are
16    the same people as the witnesses he has to question and whose
17    testimony he has to take.  And possibly whom he has to put
18    before a grand jury.  On the theory that testifying in
19    different fora on the same subject will inherently interfere
20    with a special investigation, he asks me to postpone my
21    jurisdiction.  And I did.  What's changed?
22                MS. SINGH:  Well, your Honor, just as we said in our
23    briefing, the question of whether or not the CIA should be held
24    in contempt of this Court's order is a pure legal question.
25    Basically it amounts to determining the scope of your orders,
```
                      SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

88I3ACLC                    Conference

1    and whether or not the CIA violate those orders.
2            THE COURT:  Let's say I rule that the order had a
3    certain scope, and that prima facie the videotapes that were
4    destroyed were within that scope.  Isn't there more that goes
5    into the issue of contempt?
6            MS. SINGH:  Your Honor --
7            THE COURT:  If there are no other copies, and it is
8    represented there are no copies, they can't be produced.  If
9    they can't be produced, there are two questions.  Is it
10   innocent, or is it culpable.  If it's innocent, there is no
11   contempt.  If it's culpable, there may be contempt.
12           How can I ascertain culpability without testimony?
13           MS. SINGH:  Your Honor, there are two kinds of
14   contempt that you may consider.  Civil contempt and criminal
15   contempt.  For purposes of a civil contempt motion, the intent
16   of the parties is irrelevant.  The only question is a pure
17   legal question, whether or not there was a violation of this
18   Court's order.  You can rule on that issue without any kind of
19   witnesses.
20           THE COURT:  I've never heard that a failure to produce
21   because of an innocent destruction qualifies as contempt.
22           MS. SINGH:  Your Honor --
23           THE COURT:  I don't think that's the law.
24           MS. SINGH:  We can give you supplemental briefing on
25   that issue.  But, your Honor, as set forth in our briefs, civil

4

88I3ACLC                    Conference
1  contempt does not engage the question of willfulness.  Intent
2  is irrelevant to a finding of civil contempt.
3            THE COURT:  Yes, but if destruction is innocent, and
4  it results in an inability to produce, I don't believe that
5  contempt is the appropriate remedy.  There has been no
6  contempt.  There has been an innocent destruction.
7            MS. SINGH:  But, your Honor --
8            THE COURT:  What is the government's interpretation of
9  that issue, Mr. Lane?  Mr. Skinner?  I always call on the wrong
10 person.
11           MR. SKINNER:  I guess if it's CIA, I'm usually the
12 first one, and DOD is usually Sean.  But it can flip back and
13 forth.
14           THE COURT:  Mr. Skinner.
15           MR. SKINNER:  My understanding of the contempt law is
16 similar to your Honor's.  That what we are talking about here
17 is a Freedom of Information Act case.  The Freedom of
18 Information Act first as an initial point doesn't require the
19 government to produce everything in response to the requests.
20 It just requires us to produce that which is found as a result
21 of a reasonable search.
22           THE COURT:  Yes, but Ms. Singh says it is my
23 interpretation whether the particular item was embraced by the
24 request.  And here the request as I remember it was rather
25 specific.  So, the question is whether something that cannot be
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

5

88I3ACLC                    Conference
1  produced because it is, let us say, innocently destroyed, it
2  rises to an issue of contempt.  I hadn't appreciated that could
3  be the case.  But Ms. Singh says it is.
4          MR. SKINNER:  The law of contempt, I think we agree
5  upon, I think we both quoted the same case, Paramedics
6  Electromedicina Comercial, and it goes on and on.  I'll give
7  the cite.  369 F.3d 645.  And it says that the movant must
8  establish that (1) The order that the contemnor failed to
9  comply with is clear and unambiguous; (2) The proof of
10  non-compliance is clear and convincing; and (3) The contemnor
11  has not diligently attempted to comply in a reasonable manner.
12          And the way I see it is that if the destruction of the
13  videotape --
14          THE COURT:  It is the second factor that I think
15  suggests some element of intention.  Maybe less than
16  willfulness, but some element of intention.  That's always been
17  my understanding.
18          But, let's abstract the issue.  I can certainly make a
19  ruling whether an arguable innocent failure to produce, whether
20  an innocent destruction qualifies as a contempt.  If that's
21  what is requested, I could do that.
22          MS. SINGH:  May I be heard on that?
23          THE COURT:  Yes.
24          MS. SINGH:  Yes, certainly that is within the scope of
25  the relief that we are seeking from this Court.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

6

88I3ACLC                    Conference

1           THE COURT:  But you are asking for much more.
2           MS. SINGH:  We are asking for more.  But at a minimum
3     we are entitled to that, your Honor.  CIA --
4           THE COURT:  I can do that, Ms. Singh.  I don't think
5     that's going to satisfy.
6           MS. SINGH:  But, your Honor, just to -- the very same
7     case that Mr. Skinner cited just now also specifically says,
8     Paramedics Electromedicina Comercial says at page 655 that it
9     need not be established that the violation of the Court's order
10    was willful in order for the Court to find that the agency was
11    in contempt.  So, I think that the law is very clear that
12    intent is not relevant for --
13          THE COURT:  There is a jump.  And that's what you want
14    me to cite.  Okay, I'm agreeable to deciding the issue that you
15    pose.  And I put the definition the way I put it.  Whether an
16    innocent destruction of an item that is clearly called for
17    qualifies as a contempt.  But there is more to the issue.  And
18    let's say that we want to know what was the state of mind, what
19    was the thinking of the person who destroyed these videotapes.
20    The question is, can I allow the attorneys to get into that if
21    Mr. Durham is carrying on an investigation now eight months
22    old?
23          MS. SINGH:  Your Honor, I think that there may be
24    some -- to the extent that there are some issues that interfere
25    with an ongoing investigation, this Court has the authority to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

88I3ACLC                         Conference

1  stay those parts of the relief sought by plaintiffs that would
2  interfere with the investigation, while allowing other parts of
3  the relief sought by plaintiffs to go forward.
4        THE COURT:  What do you think would be an appropriate
5  division?
6        MS. SINGH:  It may be the case that certain questions,
7  to the extent there is an overlap in witnesses, your Honor,
8  it's very hard for me to say in the abstract what the overlap
9  would be.
10        THE COURT:  How should I go about it?  If it's hard
11  for you to describe, having thought about it intensively for so
12  long --
13        MS. SINGH:  At a minimum -- I'm sorry for interrupting
14  you.
15        THE COURT:  I started you, so, just acquired my bad
16  habits.
17        MS. SINGH:  At a minimum we would request that the
18  Court issue an order finding the CIA in contempt of its orders,
19  in civil contempt of its orders, require the CIA to identify
20  all records that have been destroyed, all other -- and also
21  order the CIA to reconstruct, to the extent possible, records
22  that have been destroyed.
23        THE COURT:  Well, in other words, something beyond the
24  request.  The request has the categories that have not been
25  responded to by production.  Presumably because they've been,

8

```
88I3ACLC                    Conference
1    documents or videotapes have been destroyed.  So you say there
2    has not been a catalog of all items that qualify for the
3    production or would've qualified for the production, but which
4    have been destroyed.  Okay.  I think that's an important point.
5    And one would suppose that that would have a minimal
6    interference, if any --
7              MS. SINGH:  That's correct, your Honor.
8              THE COURT:  -- with the ongoing investigation.
9              Now, what beyond that?
10             MS. SINGH:  The reconstruction of these documents,
11   your Honor.  To the extent that the CIA intends to withhold
12   these records, they can produce Vaughn declarations for what
13   they intend to withhold.  But at a minimum, identification and
14   production either of the record or of the Vaughn declaration
15   indicating why the record cannot be produced to plaintiffs.
16             THE COURT:  What record are you talking about?
17             MS. SINGH:  The reconstructive records, your Honor.
18             THE COURT:  What do you mean by reconstructive
19   records?
20             MS. SINGH:  To the extent there are individuals who
21   have witnessed the tapes, to the extent that there are
22   transcripts of the tapes, to the extent there are other kinds
23   of approximations of the tapes.
24             Your Honor, one additional issue that I'd like to draw
25   to your attention to is the fact that it may be that other
```

88I3ACLC                    Conference

1   defendants in this lawsuit may be in possession of transcripts
2   or approximations of the tapes.  And that's set forth in our
3   supplemental motion for a clarification of relief, which we
4   attach as Exhibit I and J.  Evidence that the FBI may be in
5   possession of certain transcripts that we would doubtless be
6   entitled to.
7            THE COURT:  What else?
8            MS. SINGH:  Your Honor, attorneys' fees.
9            THE COURT:  Those are remedies.  I'm talking now about
10  describing what's been destroyed.  You want a catalog of that
11  which has been destroyed and which otherwise would've either
12  been produced or as to which an exemption would have been
13  claimed.  You want to know if there are any transcripts.  You
14  want to know if there have been memos or summaries.  And you
15  want to identify witnesses who at one time saw or had the
16  tapes.  Anything else?
17           MS. SINGH:  Your Honor, the relief that we have asked
18  for is set forth in detail in our motion, and it certainly
19  includes what your Honor has just listed.  We also ask for --
20  and I'm looking at pages 19 and 20 of our opening brief.  We
21  also ask for an order from this Court prohibiting the defendant
22  from destroying, removing or tampering with all other
23  potentially responsive records currently in its possession.
24  And there is an equivalent request with respect to other
25  defendant agencies who may have approximations of the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

88I3ACLC                    Conference

1    videotapes in their possession or discoverable information in
2    their possession.
3              THE COURT:  You want an order against further
4    destruction, not only of the items that were destroyed, but of
5    all responsive documents?
6              MS. SINGH:  That's correct, your Honor.  And also, the
7    preservation of records not just relating to the videotapes,
8    but also the preservation of information that is potentially
9    discoverable.  If your Honor were to not proceed with discovery
10   at this point, at a minimum you would want to ensure that the
11   information that would potentially be relevant by way of
12   discovery remains intact.
13             THE COURT:  Are we limited now to that which was
14   destroyed?  What do you want?  It seems to me, I don't think
15   you want me, with respect to each and all of the tens of
16   thousands of documents that were produced, to put on a freeze
17   order to it though.
18             MS. SINGH:  No, your Honor.  Let me be clear.  We're
19   asking for the Court to issue an order prohibiting the CIA and
20   other defendant agencies from destroying records that are
21   responsive to plaintiff's FOIA requests.
22             THE COURT:  I think that's what you're telling me.
23   You don't want to limit it.  What's the government's position,
24   Mr. Lane?  Mr. Skinner?  Mr. Skinner.
25             MR. SKINNER:  Well, your Honor, with regard to a
                        SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

8813ACLC                    Conference

1   catalog of the destroyed information, I believe that really
2   falls within the scope of the information covered by paragraph
3   77 of the special review report.  Which Mr. Durham has
4   specifically asked that the Court stay the release of that
5   information until after his investigation is closed.  Now, we
6   are not saying we would not ever release that information.  We
7   are not objecting to it out of whole cloth.  We are saying wait
8   until the investigation is closed.  At which point we'll
9   release that particular information.
10          THE COURT:  It's hard for me to understand why a
11   catalog of documents is covered by some sensitivity with regard
12   to a co-terminus study or investigation by a special
13   prosecutor.
14          MR. SKINNER:  I believe Mr. Durham's concern was
15   related to what knowledge, what information there may be out
16   there in the public realm about the actual videotapes that were
17   destroyed.  What he was saying in his declaration was, you
18   know, I have to interview a number of witnesses, there may be
19   witnesses testifying during different types of proceedings, and
20   I want the best independent recollection of those witnesses.  I
21   don't want recollection that is informed in one way or another
22   by information that's out in the public record.
23          What he is saying is that to the best of his
24   knowledge, specific information as to the videotapes that were
25   destroyed, the catalog of those videotapes is not part of the

12

88I3ACLC                    Conference
1   public record right now.  And he would prefer that the
2   witnesses not have access to that information, information
3   gleaned from the special review report, until his investigation
4   is complete.
5          So, I think the information that's in paragraph 77 is
6   more of an aggregate description of those tapes.  And what the
7   plaintiffs are asking for is something much more specific.  A
8   catalog of those tapes, which I imagine they would want some
9   level of identification, identifying each specific tape.  I
10  don't know what that would be.  Dates, lengths, whatever they
11  might come up with.
12         THE COURT:  I can't believe that a catalog would
13  complicate or confuse or compromise a special investigation or
14  influence testimony in any way.  I just can't see that,
15  Mr. Skinner.  The next thing that is --
16         MS. SINGH:  May I be heard very briefly on one small
17  point?
18         MR. SKINNER:  Can --
19         THE COURT:  By way of supplementing what you said
20  before?
21         MS. SINGH:  Yes.  To the extent you wish to undertake
22  an assessment of intent, you have the option of taking
23  testimony of witnesses.
24         THE COURT:  I know.
25         MS. SINGH:  In camera.
                   SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

13

88I3ACLC                    Conference

1          THE COURT:  I know.  Thank you, Ms. Singh.
2          MR. SKINNER:  Just to follow up.  It's paragraph 8 of
3     Mr. Durham's declaration.
4          THE COURT:  I have it in front of me.
5          MR. SKINNER:  In that paragraph he is saying in his
6     opinion as the prosecutor leading his criminal investigation,
7     the information contained in paragraph 77, which is the
8     specific type of information plaintiffs are asking for with
9     regard to a catalog of the tapes destroyed, would threaten his
10    criminal investigation, and he explains why.
11         THE COURT:  I read what he says in paragraph 8 as a
12    concern about disclosure of the documents themselves.  But, a
13    list that catalogs what documents there are doesn't seem to me
14    to be his concern.
15         MR. SKINNER:  As we acknowledged on the public record
16    and we've explained to plaintiffs, some of the information
17    Mr. Durham is concerned about, the special review report
18    identifies the number of tapes that were destroyed.
19         THE COURT:  I can't see why a number is important.
20         MR. SKINNER:  He is saying the number is not out there
21    on the public record.  And I don't want witnesses changing
22    their testimony, whether intentionally or unintentionally,
23    about the number of tapes that exist in order to conform with a
24    number that comes out in the public record through the civil
25    proceedings.

14
88I3ACLC                    Conference
1              THE COURT:  Unless Mr. Durham can show me specifically
2     why a catalog would make his job more difficult, I'm not going
3     to -- to express a double negative.  I am going to order the
4     government to catalog.
5              MR. SKINNER:  Your Honor, we would then respectfully
6     request -- I'll pass on to Mr. Durham and we'll give him a copy
7     of the transcript your Honor's concerns and your Honor's order
8     with regard to the catalog, and we just request the opportunity
9     that if Mr. Durham wants to supplement --
10             THE COURT:  How much time?
11             MR. SKINNER:  Two weeks, 10 business days?
12             THE COURT:  10 business days.
13             MR. LANE:  Your Honor, if I may, at one point
14    something Ms. Singh said relates to other defendants, and if I
15    could be heard on that point for just a moment.
16             THE COURT:  Go ahead.
17             MR. LANE:  It addresses what the Court just raised a
18    few minutes ago about the limits, and what exactly you would
19    want stayed and you'd want preserved.
20             THE COURT:  I am trying to deal with it item by item,
21    Mr. Lane, and maybe you could make your remarks to me at the
22    item.
23             The only thing I've tentatively ruled on so far is
24    whether or not a catalog should be created.  And my tentative
25    ruling is it should.  But I'd like to hear Mr. Durham.
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

15

88I3ACLC                    Conference

1   Mr. Durham will have to be very specific with respect to a
2   catalog.
3           MR. LANE:  Your Honor, the point I was going to make
4   as to other defendants sort of links the whole issue of
5   contempt in a broader focus.  That is, plaintiffs here -- we
6   are talking about remedy, as I understand it.  And --
7           THE COURT:  We're not there yet.  Ms. Singh is there.
8           MR. LANE:  Well, for purposes of plaintiff's proposal
9   as to remedy.  And the concern from a broader point of view
10  where eventually the remedy further down the list gets into
11  other agencies, given what the Court said about the standard
12  here for contempt, having some issue as it pertains to what
13  exactly happened and why it happened, that is the standard
14  talking about whether diligent efforts were made or not --
15          THE COURT:  That's not what I had been thinking,
16  Mr. Lane.  I had been thinking about a request that I rule on
17  an abstract issue.  If there is innocent destruction of
18  something requested in a court proceeding, subsumed let us say
19  in a court order or in the equivalent of a court order, that
20  would in and of itself justify a civil contempt.  My intuitive
21  belief is the answer is no.  But Ms. Singh challenges it.
22  There is a dispute between the two of you, and I said I could
23  rule on that.  But I don't think that rule is going to advance
24  us very much.
25          MR. LANE:  Your Honor, I understand that.  I guess

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8813ACLC                    Conference
1    what I am saying is to the extent that we are talking about
2    remedy here and the context of what the Court is going to
3    order, which would be remedial, that is designed to say well
4    something here didn't happen the way it should, as a result
5    certain other thing should occur, it does --
6              THE COURT:  I'm not getting there.
7              MR. LANE:  Thank you, your Honor.
8              THE COURT:  Having stated the issue, I'm not very
9    happy about it because it doesn't strike me as a case of
10   controversy.  It is an abstract ruling.  And the question that
11   I will come to, but I'm not there yet --
12             MS. SINGH:  May I be heard very briefly?
13             THE COURT:  Let me phrase what I want, and take notes,
14   and I haven't reached your point, you'll remind me.
15             The second thing that Ms. Singh wants is a
16   reconstruction of the documents.  And by that she means a
17   listing of who has witnessed the creation of the tapes or seen
18   the tapes.  She asks if there are transcripts of the tapes or
19   summaries or memoranda about the tapes.
20             Again, I have trouble thinking that these kinds of
21   requests will interfere with the investigation.  We are asked
22   for a list of witnesses and identification of whether or not
23   there are transcripts or summaries or memos about the tapes.
24   We're not asked for the contents.  We're asked for a list, just
25   that catalog.  And my tentative ruling would be the same,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

88I3ACLC                    Conference
1    subject to a specific demonstration by Mr. Durham filed within
2    10 business days that giving this information would interfere
3    with his investigation.  These are dry lists.  They are not
4    contents.
5          MR. SKINNER:  Your Honor, I frankly don't know what
6    Mr. Durham would say about the identity of witnesses.
7          THE COURT:  Let's see.
8          MR. SKINNER:  Or the listing of transcripts or
9    summaries or memoranda.  We had been asked by the Court
10   previously to identify transcripts.  I believe I'll have to go
11   back --
12         THE COURT:  That was eight months ago.  He's been
13   investigating this since January he says, so it's now
14   August 18.  It's my order that's involved here.  And it seems
15   to me that I shouldn't be so relaxed if my order has been
16   either flouted or not heeded.  It is a pretty serious thing.
17   It may not be the most serious thing.  Issues of national
18   security are certainly more important.  But, in the realm of
19   things, flouting or being indifferent to a judge's order is
20   rather serious.
21         MR. SKINNER:  Whether the CIA is in compliance with
22   the Court's order is one of the things that Mr. Durham is
23   considering as part of his criminal investigation.  I think all
24   that he is asking this Court to do is to hold its hand with
25   regard to the production of any information concerning that

18

88I3ACLC                    Conference
1    investigation until it's complete.
2            THE COURT:  I understand.  But I am less willing to
3    agree at this point in time than I was before, because a lot of
4    time has passed.  And on analysis, I can't see how giving the
5    information that we've touched upon so far can complicate
6    anybody's investigation.
7            So, I hear what you say, Mr. Skinner, but I am not
8    persuaded.  And I'll wait for 10 days to see what specific
9    arguments Mr. Durham has.
10           MS. SINGH:  Your Honor, may I just be heard briefly?
11   I just like to draw your attention to page 12 and 13 of our
12   opening brief which cites the CIA director's own admission that
13   the destruction of the CIA interrogation tapes was not
14   inadvertent, but premeditated and deliberate.  And I quote
15   according to his statement, he says:  The agency destroyed the
16   tapes in 2005, only after it was determined they were no longer
17   of intelligence value and not relevant to any internal,
18   legislative or judicial inquiries.  The decision to destroy the
19   tapes was made within the CIA itself.  The leaders of our
20   oversight committees in Congress were informed of the videos
21   years ago and the agency's intention to dispose of the
22   material.  Our oversight committees have also been told that
23   the videos were in fact destroyed.
24           THE COURT:  I am aware of that.  I remember reading
25   it.  But, as a statement in and of itself, it is not
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

19

88I3ACLC                    Conference
1   sufficient.  I think individuals' testimony is required.
2           You have the admission for whatever it's worth,
3   Ms. Singh.  But you're asking for something beyond that, and if
4   you're asking the Court to act, the Court is curious why this
5   happened.  This is not enough of an answer.
6           MS. SINGH:  Your Honor, plaintiffs appreciate the fact
7   that strong measures must be taken in this case.  But at a
8   minimum, your Honor is entitled to make certain rulings
9   which --
10          THE COURT:  I took your point before, Ms. Singh.  And
11  I gave you my observation.
12          What's the next point?  So you are going to win on
13  these catalogs, unless Mr. Durham persuades me otherwise.
14          MR. SKINNER:  I want to note that essentially, if I am
15  understanding this correctly, what we are contemplating here,
16  unless Mr. Durham were to persuade you otherwise, is the
17  granting of some form of relief to the plaintiffs with regard
18  to their contempt motion, before there is ever a finding that
19  the government violated the Court's order.
20          THE COURT:  Yes.  The reason is, Mr. Skinner, that
21  certain things should have been produced, certain things were
22  not produced.  The Court's curious why that happened, and it
23  would be very useful to have some definitions of exactly what
24  was involved.  I don't know.  All I know is a generic term
25  "videotapes."  But I'd like to know how many there were and the
                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

20

8813ACLC                        Conference

1   other kinds of information that Ms. Singh is saying, some
2   details about what they were.
3           MR. SKINNER:  During our previous in camera
4   presentation back in May, we showed the Court how many tapes
5   there were.  And we can give you that information again in
6   camera, ex parte.
7           THE COURT:  I am not interested in having that in
8   camera.  That's information that should be public, it seems to
9   me, unless there is some reason.  What am I going to do with it
10  in camera?
11          MR. SKINNER:  Your Honor, this is a Freedom of
12  Information Act case.  We are required to produce documents
13  that are responsive to plaintiff's FOIA request.  We have done
14  that to the best of our ability.
15          THE COURT:  The videotapes were responsive.  And they
16  are not produced.  So Ms. Singh wants to know why, and the
17  Court wants to know why.
18          I think I've ruled on that issue.  The next point is
19  Ms. Singh wants an order against further destruction.  Why?
20          MS. SINGH:  Your Honor, because the evidence before
21  this Court is, as you've just noted, that the videotapes were
22  responsive to plaintiff's FOIA requests, and they were
23  destroyed, they were not produced.  So, plaintiffs at a minimum
24  are entitled to an order that ensures that there is no further
25  destruction of records responsive to their FOIA requests.

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

21

88I3ACLC                    Conference

1        THE COURT:  I think that what was supposed to be
2    produced has been produced, except for certain things that have
3    been claimed to be exempt, which I've upheld.  I don't see any
4    point on making another order on the same order.  Having one
5    order be flouted, having another one is not going to change
6    anything.  If the flouting has been wrong, I can adjudicate
7    that on the single instance.
8        I decline.  That is just a useless auditory addition
9    of paper, of documents and injunctions when one is enough.
10       Documents obviously that should have been produced,
11   should have been produced.  Adding another injunction won't
12   change it.
13       Then there is the special review report.  What's the
14   status on that, Mr. Skinner?
15       MR. SKINNER:  Your Honor, the special review report
16   has been produced in redacted form.  The only information that
17   the Court had ordered the government disclose from that report
18   that has not been produced is the information from paragraph 77
19   that Mr. Durham has asked the Court to stay the release of that
20   information until the conclusion of his investigation.
21       So at this point in time, we've requested a stay with
22   regard to that information, and it has not been produced.
23       THE COURT:  Let me raise this issue.  It's now eight
24   months.  How do I know that I am not being asked to stay
25   something indefinitely?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

88I3ACLC                    Conference
1                 MR. SKINNER:  Mr. Durham says in his declaration,
2    which was filed in June, that he anticipates needing at least
3    six more months to complete his investigation.  We are not
4    anticipating an unending criminal investigation.  It has been
5    going on for eight months.  As your Honor notes, it does relate
6    to rather serious charges, and I believe there are quite a few
7    things that Mr. Durham is looking into.  So it's going to take
8    some time.
9                 So it will not go on forever.  But we would ask that
10   the Court in this civil contempt proceeding stay its hand until
11   the criminal investigation is concluded.
12                THE COURT:  I think there ought to be a tighter
13   timetable.  I think by, let us say, the end of October, I
14   should have another declaration from Mr. Durham that will
15   review the requests of the plaintiff, it will request to learn
16   more why it was not produced, and why the information should
17   not then be given because of some continuing need by
18   Mr. Durham.  And how long he is going to have that continuing
19   need as best as he can estimate at the time.
20                So let me get that the last Wednesday of October.
21                MR. SKINNER:  Just so I'm clear, that will be with
22   regard to whether at that point in time Mr. Durham feels there
23   is a continued need for a stay with regard to the information
24   in paragraph 77?
25                THE COURT:  And everything else about this report.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

23

88I3ACLC                      Conference

 1  Why the Court should continue to stay its hand before trying to
 2  find out why its order was not heeded.
 3          MR. SKINNER:  Just with regard to the special review
 4  report, there is nothing else that he's asked for a stay on.
 5          THE COURT:  Well, there's testimony of witnesses,
 6  right?
 7          MR. SKINNER:  Well, there is a document.  The final
 8  report from the Central Intelligence Agency's Office of
 9  Inspector General.  We've resolved all of that document in
10  camera with your Honor with regard to --
11          THE COURT:  Everything I've said that is exempt is
12  exempt, and I don't know if we've issued an order on that.  I
13  am not changing my rulings on exemptions.  But where things
14  need to be produced with regard to this overall subject of the
15  failure to produce with regard to these videotapes, the special
16  review report is only one aspect of it.
17          MR. SKINNER:  Right.  I apologize, your Honor, if I am
18  getting confused.
19          THE COURT:  Am I wrong on this?  Am I missing the
20  mark?
21          MR. SKINNER:  I thought we were talking a moment ago
22  about Ms. Singh's request for a list of witnesses.
23          THE COURT:  I broke it down.  I started with a
24  definite and now I am going into the more general.
25          MR. SKINNER:  Okay.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

24

88I3ACLC                    Conference

1          THE COURT:  Look, if this were a civil contempt, I
2   would want to know what's the universe, and then I would want
3   to know what people say about that universe.  And I so far have
4   done nothing because I've deferred to the special
5   investigation.  I am on thinking about it some more, I think
6   I'm wrong in not advancing this, at least to find out what the
7   universe is.
8          MR. SKINNER:  Okay.
9          THE COURT:  I want to know the universe.  And then,
10  and with that I've said that if I don't get a persuasive and
11  specific document from Mr. Durham within 10 days, I am going to
12  issue an order that essentially tells the government to produce
13  the catalog in the respects Ms. Singh has mentioned.  And I
14  will probably give, what, 30 days, Ms. Singh, for the
15  government to do that?
16         MS. SINGH:  Your Honor, that's too much time.
17         THE COURT:  What do you say?  You probably say two
18  days.
19         MS. SINGH:  Your Honor, it's been five years since we
20  filed the FOIA request.
21         THE COURT:  What's a reasonable time now?
22         MS. SINGH:  10 days, your Honor.
23         THE COURT:  I don't think so.  What do you say,
24  Mr. Skinner?
25         MR. SKINNER:  Your Honor, I think we would need at

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

25

88I3ACLC                    Conference

1  least 30 days.  First of all, what I would say is the only
2  specific thing I know that's included within the universe is
3  the information destroyed, the actual tapes themselves, list
4  them in some way.  Okay.
5           THE COURT:  I think that if there is the need for
6  deferring my interest, that's because Mr. Durham and his staff
7  are moving forward, and if Mr. Durham and his staff are moving
8  forward, the information is readily available.
9           I'll give you 30 days from the date of my order, and I
10  am not going to adjourn it.  At least I don't think I will
11  adjourn it.
12           MR. SKINNER:  I understand now we are talking about
13  first identifying the universe of documents or witnesses that
14  may be in issue, and later in October talking about whether
15  there is a need to continue any further proceedings by the
16  Court.
17           Just so I can be clear so I can explain to Mr. Durham
18  what needs to be addressed in this declaration --
19           THE COURT:  Ms. Singh is going to produce a very
20  specific form of order which is going to track her motion.
21           MR. SKINNER:  It's going to specifically identify what
22  it is she want us to include in this catalog?
23           THE COURT:  It is a list of everything that was
24  destroyed and therefore not produced.  Then a list of the
25  witnesses who witnessed the tapes in some fashion, an

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

8813ACLC                    Conference
1   identification of any transcript of the tapes, an
2   identification of any summaries of the tapes, or memoranda
3   about the tapes, and these memoranda I am not saying there are
4   tapes, but I'm looking for memos that were involved in trying
5   to recreate that which was in the tapes.
6           Anything else I've missed, Ms. Singh?
7           MS. SINGH:  Your Honor, we can use the term
8   "approximation" to broadly encompass any other forms that might
9   come close --
10          THE COURT:  I don't know.  I want to be specific in
11  this order.  It's really a catalog of documents and witnesses.
12          MS. SINGH:  Your Honor, it would also relate to
13  information on the destruction of the tapes themselves.
14  Because that would be relevant.
15          THE COURT:  Information about what?
16          MS. SINGH:  There may be memos about the destruction
17  of the tapes themselves, which you would certainly want --
18          THE COURT:  I think what he said is sufficient.  I am
19  not going beyond that.  All right.  And then by the end of
20  October why there should be any stay at all.
21          MR. SKINNER:  Is this going --
22          THE COURT:  Given the fact that there's 10 months that
23  has gone by.
24          MR. SKINNER:  Just so I'm clear about who would be
25  producing this information to the plaintiff.  We're talking
                SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

88I3ACLC                    Conference
1    about the Central Intelligence Agency.
2              THE COURT:  You are.
3              MR. SKINNER:  I don't know.  Mr. Durham is not
4    actually -- his investigative teams, there been no FOIA request
5    to him that's been part of this litigation.  We are talking
6    about a FOIA request from 2004 that was given to the Central
7    Intelligence Agency.
8              THE COURT:  If the CIA has this information and gave
9    it to Durham, I feel sure that there is a list of what they
10   gave.  It's the CIA that's been producing it.  It is the same
11   thing that has to do with the investigative exception.
12             We are past this now.  Those are my rulings.  Let's go
13   on to the next point on the agenda.  Plaintiff's motion for a
14   preliminary injunction ordering the Office of Legal Counsel to
15   produce outstanding document responsive to plaintiff's FOIA
16   requests.
17             This has to do with the fact that what we did in
18   camera was a sample method.  So how do we extend that to cover
19   everything?
20             MR. LANE:  If I may, item number two is a separate
21   motion that plaintiffs brought.  It is the motion relating to
22   three documents that plaintiffs saw in the press that they said
23   should have been included in this lawsuit.
24             THE COURT:  Which you didn't find?
25             MR. LANE:  No.  Which we established in our brief come
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

88I3ACLC                    Conference

1    after the date that OLC searched for documents and that was
2    separate.
3            THE COURT:  The issue is whether there should be a
4    continuing -- there is two issues.  How did we establish a cut
5    off date, and second, whether there is an obligation to go
6    beyond the cut off date in some definition of continuing.
7            MR. LANE:  Your Honor, I believe that motion was
8    argued at the end of the first day of hearings in January so it
9    is the January 16 transcript at the very end.
10           THE COURT:  I never ruled.
11           MR. LANE:  You did not rule.  But all the explanation
12   as to both sides' positions are contained in that transcript.
13           MS. CLARK:  Your Honor, hi.  I would only add that
14   it's not with respect to a continuing cut off date, but
15   plaintiffs have specifically asked for a June 30 cut off date
16   based on the representations made by defendants which turned
17   out to be in error about the nature of their search.  And so,
18   we are asking for a cut off date that would include and
19   encompass the three memoranda that are at issue which were
20   authored in March of 2005.
21           THE COURT:  Give me a minute.
22           MS. CLARK:  Sure.
23           THE COURT:  We'll issue a ruling within the week, if
24   we can.  Say by Friday of next week.
25           What is the third point?  Plaintiff's third motion for

88I3ACLC                    Conference
1   partial summary judgment.
2           MS. SINGH:  Yes, your Honor.  This is the third
3   summary judgment motion on which there's been briefing and
4   argument was held in January.
5           I'm pleased to say that the parties have been able to
6   resolve the issue presented by the first bullet point, which
7   concerns the status of disclosure of outstanding CIA document.
8   So we can move to the next bullet which is the status of
9   disclosure of DOD CID reports.
10          Your Honor, the issue there is that the Defense
11  Department had previously told us in December of last year,
12  December of 2007, that they will complete producing all
13  responsive records to plaintiffs by approximately June of 2008.
14  And, since then, plaintiff's counsel has repeatedly approached
15  Defense Department for confirmation that they will in fact be
16  completed on time, but we are now in August of 2008, and the
17  Defense Department's own self-professed deadline has not been
18  met.
19          I draw your attention again to the fact that our FOIA
20  request was filed in October 2003.  It's been almost five
21  years.
22          THE COURT:  You've gotten a lot of documents.  You
23  haven't received them all, but you've received a lot.
24          Let's ask Mr. Skinner, why can't production be
25  completed?

```
      8813ACLC                    Conference
 1              MR. LANE:  This is a DOD issue, so I'll take the floor
 2    on this one.
 3              THE COURT:  Yes.
 4              MR. LANE:  We are -- DOD --
 5              THE COURT:  Mr. Lane, excuse me.
 6              MR. LANE:  These are our CID reports, the Department
 7    of Defense has produced dozen and dozens and dozens among the
 8    145,000 pages of documents produced in connection with this
 9    litigation.
10              What we've told the plaintiffs and it's contained in
11    our brief, particularly our reply brief, is the CID reports
12    here that are sought are beyond the cut off date in this
13    litigation.
14              THE COURT:  It a cut off issue again?
15              MR. LANE:  But, your Honor, I will say the following,
16    which is what we said in our reply brief.  As DOD is processing
17    these -- these documents that plaintiffs have requested in the
18    ordinary course of business from other requesters, that we are
19    happy to provide them to plaintiffs at the same time we provide
20    them to everybody else.
21              THE COURT:  What does that mean, that these documents
22    are being requested by others?
23              MR. LANE:  Yeah.  DOD has many FOIA requests for
24    information.  So what I have told -- what I have confirmed with
25    DOD is they will finish -- we have produced some CID reports,
```

31

8813ACLC                    Conference
1    and in this category we will finish producing the rest of them.
2    We will produce two this month, eight next month, and the
3    remaining two in October.
4            And the reason, again we apologize for the delay that
5    this had to get in front of the Court at all.  The problem is
6    during the course of this FOIA litigation, as your Honor
7    probably remembers, is the Army separately staffed an entire
8    office to deal with FOIA requests, particularly this
9    litigation.  And these documents, which were not included in
10   the FOIA requests because they were after a cut off date set by
11   an order of the Court and agreement of the parties, that office
12   has been dissolved, and it is a question of people power in
13   terms of essentially being processed like a normal FOIA
14   request.
15           We will get this done.  We apologize it had to get in
16   front of the Court at all, and we think it will be moot by the
17   middle of October.
18           THE COURT:  Ms. Singh?
19           MS. SINGH:  Your Honor, I would reiterate that it's
20   been far too long.  The Defense Department in December told us
21   they would be done in June.
22           THE COURT:  I don't understand the relevance of the
23   cut off date, Mr. Lane.  If you told Ms. Singh that it would be
24   done.
25           MR. LANE:  Well, your Honor, it's not part of this
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

32

88I3ACLC                    Conference
1   litigation.  We are doing it essentially separate and apart
2   from the government's obligations.
3           THE COURT:  You told Ms. Singh outside of this
4   litigation?
5           MR. LANE:  Yes.
6           THE COURT:  Is that true, Ms. Singh?
7           MS. SINGH:  Well, you know, your Honor, I think it was
8   part of this litigation.  I attached the letter from Mr. Lane.
9           THE COURT:  Did Mr. Lane say, look, I assure you it
10  will be done by X and X date, but by the way, it is not part of
11  the litigation?
12          MS. SINGH:  No, your Honor.  I have the highest record
13  for Mr. Lane.  But I don't think that there was a meeting of
14  the minds on that issue.
15          MR. LANE:  Well, your Honor, all I can say is what we
16  represented, which is that --
17          THE COURT:  You know what, I don't like voluntary
18  activity and neither do you, because you never know where you
19  stand.
20          Given the fact that you told Ms. Singh that you'd
21  produce these materials, produce them.
22          MR. LANE:  We are happy to do so, your Honor.
23          THE COURT:  Okay.  Produce them without prejudice to
24  the issue of the cut off date.
25          MR. LANE:  Certainly, your Honor.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

33

88I3ACLC                              Conference

1           THE COURT:  What date would you say?
2           MR. LANE:  We'll have two done the end of this month,
3      eight done next month, and the remaining two done in October,
4      and we are happy to submit an order memorializing that.
5           THE COURT:  Please do.
6           MR. LANE:  Thank you, your Honor.
7           THE COURT:  Next, Ms. Singh.  Clarification on final
8      rulings for documents at issue and adequacy of search claims,
9      including three categories, rulings on documents withheld under
10     multiple exemptions.
11          What have I not done?
12          MS. SINGH:  Your Honor, you've done an enormous amount
13     and we are very grateful for that.
14          THE COURT:  Thank you.  I very much appreciate that.
15          MS. SINGH:  But from examining the transcripts, it is
16     not obvious always to plaintiffs for documents which are being
17     withheld on grounds of multiple exemptions.
18          THE COURT:  Usually if I found one exemption, I rule
19     without going into the others.
20          MS. SINGH:  You may not have reached the issue --
21          THE COURT:  I am not going to go beyond that.  If I'm
22     wrong, then we'll worry about it then.  But I am not going to
23     retrace my steps.
24          MS. SINGH:  Your Honor, we are not asking you to
25     retrace your steps.  All we need for purpose of determining

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
       88I3ACLC                   Conference
 1   whether or not we are going to appeal is to know the ground,
 2   the particular exemption on which you either upheld our right
 3   to disclosure or rejected it.
 4            THE COURT:  How would I do that now?  I must have done
 5   that on the transcript.  Is this the question of extending the
 6   sample I've ruled on?
 7            MS. SINGH:  Your Honor, it does --
 8            THE COURT:  Every document that was given to me, I
 9   ruled on.
10            MS. SINGH:  That's correct, your Honor.
11            THE COURT:  So, what --
12            MS. SINGH:  It is a slightly different issue.
13            THE COURT:  It is a good issue, Ms. Singh.  If I took
14   let's say 15 documents out of the field of 75, 20 percent, and
15   I ruled on 15, how do we extend my rulings to the 75 so that
16   the aggrieved side could appeal?
17            Mr. Lane.
18            MR. LANE:  Well, your Honor, we thought about this a
19   bit, and we think that probably the appropriate thing to do is
20   a short order which essentially sets forth a few things about
21   various clauses about what the Court has done and does not need
22   to be redone.
23            THE COURT:  Can you do that?
24            MR. LANE:  I would be happy to do that, your Honor.
25   And it essentially would contain the magic words about the
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

88I3ACLC                    Conference

1    rulings on the summary judgment motions.  And my understanding
2    is that what the Court did is look at samples, and consistent
3    with its rulings that are transcribed in camera and its
4    comments on the record at the hearings, make certain rulings.
5    To the extent that those rulings were made, the government
6    complied with those rulings.  Those rulings were then applied
7    to any other appropriate documents for purposes of a sample or
8    not, and then that essentially means that the plaintiff's
9    motion has been granted to the extent you've ordered
10   disclosure, and it's been denied to the extent you upheld the
11   exemptions.
12              THE COURT:  Will that satisfy, Ms. Singh?
13              MS. SINGH:  Just to draw your attention to a
14   particular --
15              THE COURT:  Frankly, it's beyond my capability to rule
16   specifically on each document.
17              MS. SINGH:  We understand that.  There was, we've
18   talked --
19              THE COURT:  It would be good to say about a word about
20   the sampling technique.  I think, if I remember correctly, the
21   government gave the plaintiff a listing of all the documents
22   that were affected, and the plaintiff chose the numbers that
23   were to be sampled.  Am I remembering correctly?
24              MS. SINGH:  That's correct, your Honor.
25              MR. LANE:  We would be happy to --
                   SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

36

88I3ACLC                    Conference
1           THE COURT:  So include that.  Because the point of
2      that sampling method is the party affected by the ruling did
3      not choose the sample.  An adverse relationship.
4           MR. LANE:  That would essentially be memorialized in
5      the correspondence we've provide to the Court already on that
6      issue.
7           THE COURT:  Yes.  I think there was also agreement on
8      the adequacy of the sample.
9           MS. SINGH:  That's correct, your Honor.
10          THE COURT:  Because I remember I wanted to sample
11     fewer but --
12          MS. SINGH:  Right.
13          THE COURT:  Okay.
14          MS. SINGH:  Just a quick point.  Your Honor made some
15     favorable rulings --
16          THE COURT:  What am I going to do when this is over?
17     I won't have you before me.  I've grown so fond of both sides
18     of the case.
19          MS. SINGH:  On exemption 5, you had ruled in
20     plaintiff's favor with respect to a certain set of Office of
21     Legal Counsel documents, and we just wanted to ensure that your
22     Honor's aware that plaintiffs would like to ensure that to the
23     extent the exemption 5 rulings are applicable to other
24     documents, that the order that Mr. Lane is going to draft will
25     reflect that application of the exemption 5 rulings to other
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

37

8813ACLC                    Conference
1   documents.
2           MR. SKINNER:  I don't understand that.  That sounds
3   really broad.
4           THE COURT:  Mr. Skinner is going to answer.
5           MR. SKINNER:  Because --
6           THE COURT:  What Ms. Singh wants to do is make sure
7   there is a ruling on each document in the universe that we've
8   been dealing with.
9           MR. SKINNER:  It is our understanding that your Honor
10  ordered something disclosed, we are to apply those rulings
11  across the scope of the sample where the document your Honor
12  looked at was a sample, and that's what we'll do.
13          For instance, your Honor ordered that certain records
14  that the CIA had provided or OLC documents numbers 12 and 70
15  that we needed to release portions of those documents that were
16  not classified.  That's what we did.  And it is my
17  understanding that the CIA is applying that ruling to other
18  similar documents.
19          But what Ms. Singh -- what I thought Ms. Singh was
20  saying was that kind of all OLC memoranda or something like
21  that would be covered by certain of the judge's rulings, and I
22  don't know which of the Court's rulings would actually apply to
23  a broad scope of --
24          THE COURT:  I don't know either.  And I think
25  Ms. Singh is working under a handicap because she doesn't

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
       88I3ACLC                    Conference
  1    really know the documents.
  2            MS. SINGH:  Actually, your Honor, it's your rulings on
  3    document number 70 and item 29.  It is as simple as that.
  4            THE COURT:  Why don't you and Mr. Skinner and Mr. Lane
  5    discuss these aspects, and if you need more specific rulings,
  6    you'll come and get them.
  7            MS. SINGH:  Yes, your Honor.
  8            MR. SKINNER:  Item 29 -- we'll talk.
  9            THE COURT:  My understanding that the rulings that I
 10    was making would wrap up that issue in the case.
 11            MS. SINGH:  Yes, your Honor.  Just to refresh your
 12    recollection, the particular rulings I'm referring to on
 13    document 70 and item 29 relate to the question of whether or
 14    not a legal memorandum can be withheld when it has been adopted
 15    as policy by the agency in question.
 16            And to the extent that there are other Office of Legal
 17    Counsel memoranda that are responsive to our requests, they
 18    would be governed by your exemption 5 rulings on item 29 and
 19    document number 70.
 20            THE COURT:  Do you understand what Ms. Singh is
 21    talking about?
 22            MR. SKINNER:  I do.
 23            THE COURT:  Why don't you both discuss it, and if
 24    there are more rulings you'll need, make an appointment.
 25            MR. SKINNER:  I'm sure we will.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

39

88I3ACLC                        Conference
1           MS. SINGH:  I think there is a difference we may not
2     be able to resolve.
3           THE COURT:  That's an issue that's hard to apply on a
4     universal basis.  If that's the case, I'll have to be
5     responsive to it.  All right.
6           Deadlines for taking appeal.
7           MS. SINGH:  Just the last point three.
8           THE COURT:  Rulings on documents in categories for
9     which no sample documents were reviewed.  We just discussed
10    one.
11          MS. SINGH:  Yes, your Honor.  There are other Defense
12    Department documents.  For example, Defense Intelligence Agency
13    documents and CITF documents which your Honor did not review in
14    camera, and we just request that there be rulings on those
15    documents as well.
16          MR. LANE:  I think we can accomplish that by virtue of
17    the order that we discussed.  And again, it was our
18    understanding that what your Honor did, at the request of the
19    plaintiffs, is you had some general observations about
20    exemption 1 and exemption 2, for example, and we were generally
21    inclined to the government position.  They raised a few
22    particular issues that they said, well, we'd like you to review
23    in camera.  Issues, detainee deaths, and the other issue
24    pertaining to deviations from protocol.  You reviewed those.
25    What you ordered released is released, and that's been applied.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

40

8813ACLC                    Conference
1    Although I think most of those releases were unique for one
2    reason or another.  And that as to the remainder of the
3    documents and the issues, what you ordered released has been
4    released, and what you did not order released, you've upheld
5    the government's exemption.  I think what your Honor --
6                THE COURT:  Ms. Singh is interested and I'm interested
7    in disclosing all the rulings.
8                MR. LANE:  We are happy to do that.
9                THE COURT:  If you need more rulings, I'll give it to
10   you.  But work together.
11               We're down to item number four -- the end of last
12   bullet in three.  Deadlines for taking appeal.
13               What do you want, Ms. Singh?
14               MS. SINGH:  Your Honor, we'd ask for 15 days from the
15   issuance of an order for every single document.
16               THE COURT:  I think that's fine.  But your question is
17   whether or not a issue of final judgment.
18               MS. SINGH:  Right.  And we had proposed that
19   defendants' counsel would prepare a proposed order, we would
20   review it, we would submit it to the Court for signature.  And
21   then within 15 days of that order we would decide.
22               THE COURT:  Sounds reasonable to me.
23               MS. SINGH:  Thank you, your Honor.
24               MR. LANE:  Your Honor, we'd like if we could then
25   address the issue of framework for an entry of final judgment
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

```
        88I3ACLC                    Conference
 1      in the context of this.  Obviously there is a motion
 2      outstanding as to CIA.  The Court said it is going to rule on
 3      the OLC motion, which is the subject of number two and we'll
 4      propose an order to the Court.  Hopefully that will sort of
 5      wrap up number three which is the summary judgment motions.
 6              At that point, the only thing that will be before this
 7      Court is the CIA motion.  And what we would like to do I guess
 8      is figure out where to go from here in terms of the defendants
 9      who are not the CIA.
10              THE COURT:  This is what, the contempt?  No.
11              MR. LANE:  That would be the only thing that would be
12      left would be the contempt motion.  Once you rule on number two
13      and there is a ruling on number three.  We do have clients --
14              THE COURT:  Why don't we take out the issue of
15      contempt.  It's really collateral to everything else.  I'll
16      reserve jurisdiction on that.  And I'll give you a 54(b)
17      certificate on everything else.  So you can take immediate
18      appeal.
19              Would that satisfy?
20              MR. LANE:  Well, your Honor, I guess the idea would be
21      we'd like to get the other defendants dismissed in the case.
22              THE COURT:  Right.  Well, I want to finish the case.
23              MR. LANE:  Right.  You're preaching to the choir, your
24      Honor.
25              THE COURT:  I want to finish the case.  I think the
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

only thing that's going to be left is the issue of contempt. So let's sever it. I'll retain jurisdiction over it, and I'll give you a 54(b) certificate if there is any doubt. I don't think there should be. But if there is, there is no reason for delay. You should be able to take appeal.

MR. LANE: I'm happy in the proposed order that we can work with plaintiffs on to include that language as well. To try to make it essentially one-stop shopping.

THE COURT: Right. I think an issue of a contempt is an independent issue. We don't have to solve it. Because in any event, I think there is no reason.

MR. LANE: I did have one or two minor housekeeping issues.

THE COURT: Yes.

MR. LANE: I think this is just an issue of the electronic document system of the court. In the May 28 order that your Honor issued, for some reason, we wanted to alert the Court that while I can read the entire content of it on the docket sheet, I can't when I pull it up, the document is missing some parts. So I thought the Court might want to clarify that and clean that up to the extent there is an appeal.

THE COURT: Would you take that up with Ms. Nagaraj.

MR. LANE: I'm happy to do so, your Honor. I think -- the only other issue, your Honor, I think it's really subsumed

43
88I3ACLC                    Conference
1    in number three, is plaintiff specifically mentioned the
2    adequacy of search issues, and I'm sure the Court is aware the
3    issue came up in January.
4           THE COURT:  I'll answer.  I've been following this for
5    a long time and I think the efforts of the government have
6    been, except for the issue in the contempt, have been very
7    good.  I don't think they are criticizable.
8           MR. LANE:  Thank you, your Honor.
9           THE COURT:  I think the government did a diligent, as
10   far as I can see, a diligent job.  Did it get everything?  I
11   don't know.  Maybe you didn't.  But I think if it didn't
12   produce it, there are specific reasons, one is cut off date.
13   And another one is destruction.  And we are dealing with both.
14   The first by a ruling I have to make, and the second by the
15   contempt proceeding.
16          MR. LANE:  For the assistance of the Court after the
17   issue came up in January, as I'm sure you are aware, your
18   Honor, we submitted a declaration with Mr. Aly to address the
19   one issue that plaintiffs had concern about.  It was submitted
20   April 15, a 10-page declaration which addressed the issue the
21   plaintiffs had raised about documents from Afghanistan and
22   Special Forces, and made clear those were included here and
23   there was never any effort to exclude them.  So I just wanted
24   to clarify that I think we can also include that by way of
25   implication in the proposed order.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

44
88I3ACLC                           Conference
1            THE COURT:  Ms. Singh, is that all right?
2            MS. SINGH:  Your Honor, we rested in our briefs.  We
3      did make a claim that we have not received what we think we are
4      entitled to.
5            THE COURT:  Apart from those two reasons, do you have
6      other complaints?
7            MS. SINGH:  There are no further issues that we would
8      raise at this point.
9            THE COURT:  You are being very polite.  You can tell
10     me.  You've made the issue.  I remember reading it.  What is it
11     specifically that you are complaining about?
12           MS. SINGH:  Your Honor, we did not receive documents
13     relating to Special Operations task forces, and we did not
14     receive numerous documents that specifically set forth
15     interrogation methods that were authorized and used in
16     Afghanistan.
17           THE COURT:  I think the latter, the government's
18     claimed exemption on.  I remember that was one of the issues
19     that were covered.  Am I right?
20           MR. LANE:  Yes, your Honor.  That's actually one of
21     the things Mr. Aly's declaration addresses, is that some of the
22     documents we did include and process were in fact from
23     Afghanistan or relate to Afghanistan, and in fact you looked at
24     several reports in camera that addressed that issue.
25           THE COURT:  I think the government has been diligently
                      SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

45

88I3ACLC                        Conference
1    comprehensive in its efforts.  Except for those two areas where
2    we still have reservations, the cut off date and the contempt.
3            Thanks very much.  When can I expect this order?
4            MR. LANE:  Your Honor, I will endeavor to draft
5    something as soon as possible and then discuss it with
6    Ms. Singh, so we hope to get it done fairly quickly.
7            THE COURT:  By Friday of next week?
8            MR. LANE:  Certainly, your Honor.
9            MS. SINGH:  Yes, certainly.
10           THE COURT:  Thanks very much.
11           MS. SINGH:  Thank you.
12           MR. LANE:  Thank you.
13                            o0o
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x

AMERICAN CIVIL LIBERTIES UNION, et al.        :

                                        Plaintiffs,        :

        -against-        :

DEPARTMENT OF DEFENSE, et al.        :

                                        Defendants.        :

--------------------------------------------------------------- x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/20/08

**ORDER REGULATING**
**PROCEEDINGS**

04 Civ. 4151 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

On August 18, 2008, the parties appeared before me to discuss the remaining issues still pending in this case, including plaintiffs' pending motion for contempt and sanctions against defendant CIA, for the CIA's alleged failure to comply with my Order of September 15, 2004. Plaintiffs claim that Gen. Michael Hayden's statement on December 6, 2007, indicating that videotapes of 2002 CIA interrogations were destroyed in 2005, requires this Court to find the CIA in contempt. Plaintiffs argue that the destroyed videotapes were responsive to plaintiffs' FOIA requests yet were not produced or listed on the relevant Vaughn declarations provided to plaintiffs by the Government, thus plainly violating my Sept. 15, 2004 Order. Defendant CIA claims that the CIA's Office of Inspector General ("OIG") never took custody of the tapes, which were reviewed at an overseas National Clandestine Service ("NCS") facility in May 2003. As a result, the CIA argues that the destruction of the videotapes did not violate this Court's orders because they were never identified or produced to the CIA's Office of Inspector General.

After hearing argument on plaintiff's contempt motion on January 16-17, 2008, and August 18, 2008, I defer any finding of contempt by defendant CIA at this time. I find that the facts before me are insufficient to justify a holding of civil contempt. Plaintiffs cite Paramedics

1

Electromedicina Comercial, LTDA v. GE Medical Systems Information Technologies, Inc., 369
F.3d 645, 655 (2d Cir. 2004), in support of their argument that the willfulness of the violation need
not be established for a finding of contempt, and that I can therefore hold the CIA in contempt even
if it appears there was only an innocent destruction.  That case, however, is distinguishable, because
the trial court's finding of contempt arose from a party's refusal to act in a specific manner – that is,
refrain from filing suit per the court's orders.  Here, I find that there has yet to be any such "clear
and convincing evidence" of noncompliance on the CIA's part.  Accordingly, as stated at the
conference, I order the Government to submit a supplemental declaration from Special Prosecutor
John H. Durham, who is leading the criminal investigation into the destruction of the videotapes.
The investigation began on January 2, 2008, and has been ongoing for the past eight months.  The
declaration should address, with as much specificity as possible, how and why the production of a
catalog of the following information regarding the destroyed records would interfere with the
criminal investigation:

1)  A list identifying and describing each of the destroyed records;

2)  A list of any summaries, transcripts, or memoranda regarding the records,
    and of any reconstruction of the records' contents; and

3)  Identification of any witnesses who may have viewed the videotapes or
    retained custody of the videotapes before their destruction.

The declaration is to be submitted by September 10, 2008.

SO ORDERED.

New York, New York
August 20, 2008

ALVIN K. HELLERSTEIN
United States District Judge

2