IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMNESTY INTERNATIONAL, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CENTRAL INTELLIGENCE AGENCY, ) <br> et al., ) <br> ) <br> Defendants. ) <br> _____) | **ECF Case** <br><br> 07 CV 5435 (LAP) |

SECOND DECLARATION OF RALPH S. DIMAIO
INFORMATION REVIEW OFFICER
NATIONAL CLANDESTINE SERVICE
<u>CENTRAL INTELLIGENCE AGENCY</u>

I, RALPH S. DIMAIO, pursuant to 28 U.S.C. § 1746, hereby declare and state:

1. I am the Information Review Officer for the National Clandestine Service of the Central Intelligence Agency ("CIA").

2. Through the exercise of my official duties, I am familiar with this civil action. I submit this declaration in further support of the CIA's Motion for Summary Judgment, and in opposition to the Plaintiffs' Cross-Motion for Partial Summary Judgment. This declaration is based on my personal knowledge, information, and belief, and on information disclosed to me in my official capacity.

3. I have previously submitted a declaration in this litigation dated 21 April 2008 ("First DiMaio Declaration"). I hereby incorporate that declaration as if fully stated herein. In this declaration I address several issues raised since the CIA filed its Motion for Summary Judgment.

ADDITIONAL OIG RECORDS

4. In processing Plaintiffs' FOIA requests, the CIA identified certain records created or maintained by, among other offices, the CIA's Office of Inspector General ("OIG") as potentially responsive. The CIA withheld many of these documents based on FOIA Exemptions b(1), b(2), b(3), b(5), b(7)(A), b(7)(C) and b(7)(D), as explained in the First DiMaio Declaration. Pursuant to the Stipulation and Order between the Plaintiffs and the Central Intelligence Agency Regarding Procedures for Adjudicating Summary Judgment Motions ("Stipulation"), which is attached as Exhibit H to the First DiMaio Declaration and described in paragraph 36 of the First DiMaio Declaration, Plaintiffs and CIA agreed that OIG records pertaining to investigations that remained open as of the date Plaintiffs filed their complaint, 7 June 2007, but that had been closed by the date of 1 December 2007, would be addressed at a later date. For the purposes of this declaration, that group of records is identified as "Additional OIG Records."

5. Pursuant to paragraphs 13-15 of the Stipulation, the Additional OIG Records were processed separately from the records described in the First DiMaio Declaration, and I address them herein.

6. The CIA identified more than 2100 responsive Additional OIG Records (which are in addition to the more than 7000 responsive records I described in the First DiMaio Declaration at paragraph 37). In total, 107 records were released in full or in part to Plaintiffs. The remaining records were withheld under FOIA Exemptions b(1), b(2), b(3), b(5), b(7)(A), b(7)(C) and b(7)(D), for the reasons stated in the First DiMaio Declaration.

7. The withheld Additional OIG Records were sorted into four categories: emails, cables, memoranda/reports, and miscellaneous. The sorted records were then each randomly assigned numbers, and from those numbers, Plaintiffs selected 50 of the Additional OIG Records to be included on a draft Vaughn index ("Representative Set of Additional OIG Records").

8. The CIA has agreed to apply this Court's rulings with respect to the CIA's Motion for Summary Judgment, to the extent applicable, to all of the withheld Additional OIG Records. Pursuant to the Stipulation, however, the parties have agreed to limit briefing to only those records from the Representative Set of Additional OIG Records that, based upon the description in

the draft Vaughn index, Plaintiffs identified as raising a new issue. On 13 June 2008, Plaintiffs identified Document 300 as raising such an additional issue.

9. Attached as Exhibit A to this declaration, and incorporated by reference herein, is a Vaughn index entry that contains a detailed description of Document 300. Document 300 is withheld in full pursuant to FOIA Exemptions b(1), b(3), and b(5), for the reasons explained in the First DiMaio Declaration.

10. Document 300, however, is also withheld in full because this record is exempted from disclosure pursuant to Federal Rule of Criminal Procedure 6(e)(2)(B) ("Rule 6(e)"). Rule 6(e) constitutes a withholding statute within the meaning of FOIA Exemption b(3). Rule 6(e) specifically prohibits the disclosure of "matters occurring before the grand jury."

11. Document 300 memorializes a conversation between a member of the OIG's investigative staff and a DOJ prosecutor regarding prosecution strategy before a grand jury, and specifically potential witnesses (who are described but not named) that the prosecutor plans to subpoena to testify before the grand jury. The record also names the target of the grand jury investigation. Accordingly, the release of this record would tend to disclose matters occurring before the grand jury, and is therefore exempt from disclosure pursuant to Exemption 3.

## OPEN OIG INVESTIGATIONS

12. As I stated in the First DiMaio Declaration at paragraph 162, the records compiled by the OIG in its open investigative files all relate to pending law enforcement proceedings. I understand that Plaintiffs have suggested that these files might relate to OIG investigations that were conducted for auditing or employee oversight purposes. This, however, is not the case. Although the exact subject matter of these OIG investigations is classified, I have been informed that each of the open OIG investigations was focused upon specific allegations of potentially unlawful activity, for the purpose of determining if there had been a violation of criminal law.

13. Moreover, in the First DiMaio Declaration at paragraph 163, I explained how processing records from the open OIG investigative files would compromise the confidentiality of those records. As an initial matter, the OIG does not have staff or counsel with experience in making release and withholding decisions for Freedom of Information Act requests. Accordingly, OIG staff could not competently process these records to determine which exemptions would apply to those records.

14. Plaintiffs suggest that the thousands of records contained in the open OIG investigative files could be processed

by a limited number of staff from Information Management Services (IMS) subject to nondisclosure agreements. As an initial matter, any disclosure of records from an open OIG investigation to IMS staff for purposes of processing of records under FOIA could interfere with the confidentiality of the investigation. Moreover, in order to review and process FOIA requests, IMS personnel must be able to consult with subject matter experts outside of IMS, as I described in the First DiMaio Declaration at paragraphs 26-27. The process of determining which exemptions apply to a particular record often involves consultations with other CIA components. If records contain information originated by or pertaining to other federal agencies, the records are sent through IMS in consultation with IMS and OGC counsel for coordination with FOIA review personnel from the other federal agencies. IMS personnel would not reasonably be able to conduct such consultations relating to responsive records from open OIG investigations without interfering with the confidentiality of the law enforcement proceedings, even if the records were initially disclosed only to a small number of IMS personnel.

## FOIA EXEMPTIONS b(7)(C) AND b(7)(D)

15. I have been informed that Plaintiffs have challenged the CIA's withholding of information pursuant to Exemptions b(7)(C) and 7(D) on the ground that the CIA has not established

the nature of the OIG investigations at issue. Specifically, I understand that, as with the open OIG investigations, Plaintiffs have suggested that the records withheld under FOIA Exemptions b(7)(C) and b(7)(D) were compiled as part of OIG investigations conducted for auditing or employee oversight purposes. Again, this is not the case. Each of the OIG investigations described in paragraphs 165-71 was focused upon specific allegations of potentially unlawful activity, for the purpose of determining if there had been a violation of criminal law. Thus, the OIG records at issue were compiled in the course of a criminal investigation.

AUTHORIZATION FROM THE DNI TO ASSERT FOIA EXEMPTION b(3)

16. In the First DiMaio Declaration, I explained that the Director of National Intelligence ("DNI") personally has authorized the Director of the CIA to take all steps necessary to protect intelligence sources and methods from disclosure in this litigation pursuant to the National Security Act as amended, 50 U.S.C. § 403-1(i). Attached to this declaration as Exhibit B is a true and correct copy of the memorandum from the DNI to the Director of the CIA, dated 11 April 2008, memorializing that authorization.

ADOPTION OF MEMORANDA

17. In connection with the CIA's assertion of the deliberative process privilege, I explained in paragraph 147 of

7

the First DiMaio Declaration that, to the extent some of the records contained specific policy recommendations, these documents do not indicate that the recommendation itself or the underlying reasoning in support of such recommendation was ever adopted by the appropriate decisionmaker.

18. I understand that Plaintiffs nonetheless suggest that the memoranda authored by the Department of Justice Office of Legal Counsel referenced in paragraph 138 of the First DiMaio Declaration ("OLC memoranda") have been adopted by a final decisionmaker at the CIA. As an initial matter, the OLC memoranda that have been withheld in this litigation do not contain any policy recommendations. Rather, the OLC memoranda provide legal advice and analysis to the CIA for the purpose of assisting CIA policymakers arrive at a policy decision. In any event, the analysis, advice and reasoning contained in the OLC memoranda have not been adopted by the CIA in any final decision memoranda as final CIA policy, nor do the OLC memoranda state final CIA policy.

19. With respect to Document 3, I would also like to clarify that the one-page cover memorandum, dated 11 August 2005 (11 August Cover Memo) states that the recommendations in the attached four-page memorandum (identical to Document 4) were adopted by policymakers. However, the 11 August Cover Memo does

8

not indicate that the policymakers adopted the memorandum in full or any of the reasoning of the four-page memorandum.

OFFICIAL DISCLOSURES

20. In the First DiMaio Declaration, I provided a general description of the damage to the national security that reasonably could be expected to result from the disclosure or official acknowledgement of classified information. I understand that Plaintiffs have catalogued numerous instances of media reports containing information they believe is relevant to the documents at issue. Media reports such as these do not constitute official acknowledgements of classified information.

21. The CIA typically does not confirm or deny media reports that claim to reveal classified information. Unauthorized disclosures of classified information, whether intentional or inadvertent, are an unfortunate reality for the CIA that complicates, and sometimes completely defeats, U.S. intelligence collection activities. After such a disclosure occurs, however, the CIA typically does not confirm or deny the classified information that was disclosed. To confirm an unauthorized disclosure of classified information would merely exacerbate the harm caused by the initial disclosure, while routine denials would only serve to identify instances where classified information was revealed in media reports.

22. In contrast to media reports, public statements by certain senior government officials do constitute official disclosures. To the extent that the following statements by the Director of the Central Intelligence Agency, the Office of the Director of National Intelligence, President George W. Bush, Secretary of State Condoleeza Rice, White House Press Secretary Scott McClellan, or White House Press Secretary Tony Snow disclose or reveal previously classified information, such statements constitute an official disclosure of such information:

- President Discusses Creation of Military Commissions To Try Suspected Terrorists, dated 6 September 2006

- Office of the Director of National Intelligence, "Summary of the High Value Terrorist Detainee Program"

- A Conversation with Michael Hayden Before the Council on Foreign Relations, dated 7 September 2007

- Transcript of Director Michael Hayden's Interview with Charlie Rose, dated 22 October 2007

- Press Conference of President George W. Bush, dated 16 March 2005

- Testimony of Director Porter J. Goss Before the Senate Armed Services Committee, dated 17 March 2005

- Press Conference of President George W. Bush, dated 28 April 2005

- Secretary of State Condoleeza Rice's Remarks Upon Her Departure for Europe, dated 5 December 2005

- Press Briefing by Scott McClellan, dated 6 December 2005

- Press Gaggle by Tony Snow, dated 16 November 2006

- Statement to Employees by Director of the Central Intelligence Agency, General Michael V. Hayden, on the CIA's Terrorist Interrogation Program, dated 5 October 2007

- Statement to Employees by Director of the Central Intelligence Agency, General Michael Hayden on the Taping of Early Detainee Interrogations, dated 6 December 2007

- Press Gaggle with Scott McClellan and a Senior Administration Official, dated 14 August 2003

- Testimony of Director Michael Hayden Before the Senate Select Committee on Intelligence Holds a Hearing on the Annual Threat Assessment: Hearing Before the Senate Select Committee on Intelligence, dated 2008

- Director Michael Hayden's Statement on the Past Use of Diego Garcia, dated 21 February 2008

- Press Conference of President George W. Bush, dated 15 September 2006

- Statement to Employees by Director of the Central Intelligence Agency, General Michael V. Hayden on Lawful Interrogation, dated 13 February 2008

23. The CIA released all reasonably segregable information from the responsive records, including segregable information regarding the CIA's Terrorist Detention and Interrogation Program that had been officially disclosed or otherwise declassified at the time the CIA processed the records in question.

ERRATA

11

24. Finally, I would like to correct the following errors in the First DiMaio Declaration. First, in paragraph 154, I mistakenly included Document 62 in a list of records that were "authored by CIA officials in preparation for NSC Principals and Deputy Committee Meetings . . . ." In fact, as described in the Vaughn index attached as Exhibit A to the First DiMaio Declaration ("Vaughn Index"), Document 62 is a National Security Council ("NSC") agenda for an upcoming Principals Committee meeting. Document 62 also includes a summary of a previous NSC Principals Committee meeting, which was authored by NSC staff.

25. Second, in the Vaughn Index, I mistakenly indicated that portions of Document 114 are exempt from disclosure pursuant to the deliberative process privilege. The CIA is not withholding any portion of Document 114 pursuant to the deliberative process privilege. However, the document remains withheld in full pursuant to FOIA Exemptions b(1), b(2), and b(3).

26. Third, the entry in the Vaughn Index for Document 143 incorrectly states that the classification level of the document is "SCI, Top Secret." In fact, as indicated in the document description, the document is classified at the Secret level. In light of this classification and as further indicated in the document description, Document 143 is exempt from disclosure pursuant to FOIA Exemption b(1).

27. Fourth, the entry in the Vaughn Index for Document 158 incorrectly states that the classification level of the document is "SCI, Secret." In fact, the document is unclassified, which is why the document was not withheld from disclosure on the basis of FOIA Exemption b(1).

\* \* \* \*

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of September, 2008.

_Ralph S. DiMaio_
Ralph S. DiMaio
Information Review Officer
National Clandestine Service
Central Intelligence Agency