```
                                                                1
     88T7AMNM
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   AMNESTY INTERNATIONAL USA,
 4   et al.,
 5                 Plaintiffs,
 5
 6          v.                              07 Civ. 5435
 6
 7   CENTRAL INTELLIGENCE AGENCY,
 7   et al.,
 8
 8                 Defendants.
 9
 9   ------------------------------x
10
10                                      August 29, 2008
11                                      9:15 a.m.
11
12   Before:
12                    HON. LORETTA A. PRESKA
13
13                                      District Judge
14
14                       APPEARANCES
15
15   GITANJALI S. GUTIERREZ
16   EMILOU MACLEAN
16       Attorneys for Plaintiff Center for Constitutional Rights
17
17   MORRISON & FOERSTER LLP
18       Attorneys for Plaintiffs Center for Constitutional Rights,
18       Washington Square Legal Services,
19       Amnesty International USA
19   BY:  DAVID S. BROWN
20
20   MICHAEL J. GARCIA
21       United States Attorney for the
21       Southern District of New York
22   BY:  EMILY DAUGHTRY
22       Special Assistant United States Attorney
23       BRIAN FELDMAN
23       JEANNETTE VARGAS
24       PIERRE ARMAND
24       Assistant United States Attorneys
25
25
                   SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

```
 6         As we know we're here today on the motion of the
 7    United States for a partial stay of proceedings in this case.
 8    Specifically, the government seeks a four-month stay of
 9    proceedings with respect to two out of 17 categories of
10    documents included in the plaintiffs' supplemental CIA request,
11    one of several requests at issue in this complex litigation.
12              As counsel have made reference to today, on December
13    6, 2007 CIA director Michael V. Hayden announced that during
14    the initial stage of the CIA's terrorist detention and
15    interrogation program the CIA videotaped certain interrogations
16    and then in 2005 destroyed those tapes.  Shortly after this
17    public announcement, Attorney General Michael B. Mukasey
18    directed a preliminary inquiry and thereafter on January 2,
19    2008 directed a full criminal investigation into the
20    destruction of the tapes.  On that same date the Attorney
21    General appointed John H. Durham to serve as acting United
22    States attorney for the Eastern District of Virginia for the
23    purpose of supervising that investigation.
24              As set out in the Durham declaration, the criminal
25    investigation is currently ongoing, and the Durham team
```

                                                                43
          88T7AMNM
  1    estimates that the investigation will take at least four more
  2    months.
  3              With respect to the supplementary CIA request, as
  4    counsel have discussed here today the CIA began its
  5    investigation of that supplementary request shortly after
  6    receiving it on or about December 28, 2007, to determine
  7    whether it could conduct a search for any of the requested
  8    categories of documents.
  9              As counsel has also discussed today, the agency
 10    determines that a Glomar response would be submitted as to
 11    certain of these categories, but work on the remaining three is
 12    either completed, or in process, or at issue here.
 13              As further set forth in the Durham declaration, the
 14    Durham team has determined that the CIA's continued search for,
 15    review, and processing of documents potentially responsive to
 16    two categories in the CIA supplementary demand, would interfere
 17    with the criminal investigators' ability to conduct a complete,
 18    thorough and untainted federal criminal investigation.  Such
 19    taint in turn, according to Mr. Durham, could jeopardize the
 20    successful prosecution of any criminal case brought against any
 21    individuals who were found to have violated federal law in
 22    connection with the destruction of the CIA videotapes.
 23              Specifically, as set forth in Mr. Durham's
 24    declaration, he has determined that proceeding with respect to
 25    these two categories of records would interfere with the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

44
```
          88T7AMNM
 1    integrity of the Durham team's criminal investigation due to
 2    the overlap between the information contained in the
 3    potentially responsive records and the central questions raised
 4    by the criminal investigation.
 5          Here, the requests at issue are numbers 11 and 13 in
 6    the supplementary CIA request.  Number 11 requests "the cables
 7    between Deputy Director of Operations at the CIA (or other
 8    agency official(s) and the operative(s) in the field discussing
 9    and/or approving the use of waterboarding on Abu Zubaydah.  The
10    existence of such cables was acknowledged by former CIA
11    employee John Kiriakou during an NBC news program on
12    December...."
13          Number 13 requests "videotapes, audiotapes and
14    transcripts of materials related to interrogations of detainees
15    that were acknowledged to exist during the case of United
16    States v. Zacharias Moussaoui and described in a letter from
17    the United States Attorney Chuck Rosenberg to Chief Judge Karen
18    Williams, United States Court of Appeals for the Fourth
19    circuit, and Judge Leonie Brinkema, United States District
20    Court, Eastern District of Virginia, dated October 25, 2007,
21    including, but not limited to two videotapes and one audiotape
22    of interrogations of detainees, the transcripts of those tapes
23    submitted for the court's review in the Moussaoui case, and the
24    intelligence cables summarizing the substance of those tapes
25    ...."
```

88T7AMNM

1          The parties agree that this court has the authority to
2     issue a stay of proceedings.  As the Supreme Court has held,
3     "the power to stay proceedings is incidental to the power
4     inherent in every court to control the disposition of the
5     causes on its docket with economy of time and effort for
6     itself, for counsel, and for litigants."  Landis v. North
7     American Co., 299 U.S. 248, 254 (1936).  This discretionary
8     authority has been held to be properly exercised when a civil
9     action threatens to interfere with a related criminal
10    proceeding, See, e.g., United States v. Kordel, 397 U.S. 1, 12
11    n. 27 (1970); Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir.
12    1986).
13          Indeed, courts have stayed civil proceedings related
14    to ongoing criminal investigations prior to the issuance of
15    indictments.  See, e.g., SEC v. Downe, 92 Civ. 4092 (PKL), 1993
16    WL 22126, at *14 (S.D.N.Y. January 26, 1993), Board of
17    Governors of Federal Reserve System v. Pharaon, 140 F.R.D. 634,
18    641 (S.D.N.Y. 1991), SEC v. Control Metals Corp., 57 F.R.D. 56,
19    58 (S.D.N.Y. 1972).
20          The Fifth Circuit has commented that this need to stay
21    related civil proceedings in the face of an ongoing criminal
22    investigation arises from the fundamental differences between
23    civil and criminal proceedings, and that court commented on the
24    compelling public interest in facilitating the enforcement of
25    the criminal laws.  It stated:

88T7AMNM

```
 1            "The very fact that there is a clear distinction
 2    between civil and criminal actions requires a government policy
 3    determination of priority:  Which case should be tried first.
 4    Administrative policy gives priority to the public interest in
 5    law enforcement.  This seems so necessary and wise that a trial
 6    judge should give substantial weight to it in balancing the
 7    policy against the right of a civil litigant to a reasonably
 8    prompt determination of his civil claims or liabilities."
 9            Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir.
10    1962); see also In re Ivan F. Boesky Securities Litigation, 128
11    F.R.D. 47, 49 (S.D.N.Y. 1989).
12            As our respected colleague on this court, the late
13    Milton Pollack observed, "Neither criminal nor civil procedure,
14    in the Federal Rules, has a provision that explicitly addresses
15    the problem of parallel proceedings ....  In all cases, the
16    court must carefully balance the interests of the private
17    litigants against those of the public."  Milton Pollack,
18    Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 212
19    (S.D.N.Y. 1989).
20            The parties here agree that this is not the ordinary
21    case.  Plaintiffs note that they are not ordinary private
22    litigants.  They seek disclosure for the purpose of
23    dissemination to the public to further public understanding of
24    government conduct and particularly to contribute to the
25    current debate around the rendition and secret detention
```

47

88T7AMNM
```
 1    policies and programs put in place by the CIA.  Thus, these
 2    plaintiffs stand in the shoes of the public they seek to
 3    inform.
 4            As plaintiffs point out, this public interest is
 5    embodied in the Freedom of Information Act.  In enacting FOIA,
 6    Congress "intended to permit citizens access to information in
 7    the possession of the federal government that is unnecessarily
 8    sheltered from public view."  Halpern v. Department of Defense,
 9    181 F.3d 279, 284-85 (2d Cir. 1999).
10            FOIA's statutory scheme recognizes that the public's
11    need for information is often times sensitive.  See 5 U.S.C.
12    Section 552 (a)(6)(E)(iii).  See also Epic v. Department of
13    Justice, 416 F. Supp. 2d 30, 40 (DDC 2006), ACLU v. Department
14    of Defense, 339 F. Supp. 2d 501, 504 (S.D.N.Y. 2004).
15            For this reason Congress has "evinced an increasing
16    concern over the timeliness of disclosure, recognizing that
17    delay in complying with FOIA requests may be 'tantamount to
18    denial'".  ACLU, 339 F. Supp. 2d at 504 (quoting H. Rep. No.
19    93-876 at 6 (1974).
20            On the other side, this is also not the normal
21    situation where the producing agency requests relief from its
22    obligations under the Freedom of Information Act.  Rather, this
23    is the rare situation where one arm of the government is
24    investigating another arm of the government, and the
25    investigating arm -- here the Department of Justice -- through
```

48

88T7AMNM
```
 1    acting United States Attorney Durham, has determined that the
 2    search for review and processing of documents responsive to
 3    these two requests will taint its criminal investigation of the
 4    producing agency, here the CIA.
 5             More specifically, as set forth in the Durham
 6    declaration, the criminal investigation is broad, essentially
 7    looking into all aspects of the destruction of the videotaped
 8    interrogations, including whether anyone obstructed justice,
 9    made false statements or acted in contempt of court or Congress
10    in connection with the destruction of the videotapes.
11             The investigation also includes determining whether
12    any materially false or misleading statements were made in
13    connection with the Moussaoui trial and, if so, what the
14    speaker's knowledge, motive and/or intent was in making those
15    false statements.  These inquiries involve questions regarding
16    what if any knowledge, motive or intent there was to destroy
17    videotapes made by the CIA and/or to make materially false and
18    misleading statements in connection with the Moussaoui trial.
19             As further set out in the Durham declaration, after
20    reviewing the supplemental CIA request, the Durham team
21    determined that as written several categories of the requested
22    documents were closely intertwined with the inquiries of the
23    federal criminal investigation.
24             As noted, the CIA currently intends to search for,
25    review and process documents responsive to categories 11 and
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

49

88T7AMNM

1    13.  Because many of the individuals who would be involved in
2    the search for, review and processing of potentially responsive
3    documents are witnesses, or potential witnesses in the criminal
4    investigation, such searching, review and processing could
5    influence the recollections of these individuals and cause
6    them, intentionally or unintentionally, to change their
7    testimony, to conform their version of events to those in the
8    records.
9            Similarly, if there was any public release of
10   nonexempt responsive records or information contained in those
11   records, such a release could also affect the recollections and
12   testimony of witnesses and potential witnesses in that
13   investigation.
14           Indeed, as mentioned during oral argument, because of
15   these concerns about influencing recollection and testimony,
16   the Durham team has already asked appropriate authorities
17   within the CIA not to show records and documents or otherwise
18   make certain records and documents available to individuals who
19   will be interviewed as witnesses in connection with the
20   criminal investigation.  In the absence of a stay, these
21   witnesses and potential witnesses would be required to review
22   documents that the Durham team has already taken affirmative
23   steps to prevent them from seeing.
24           To the extent that plaintiffs argue that it is
25   possible for a person outside of the zone of potential

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
                                                                  50
          88T7AMNM
 1    witnesses in the Durham investigation to undertake the review
 2    and processing of documents responsive to categories 11 and 13,
 3    that argument ignores the reality of the search process and the
 4    need for a producing agency to proffer a good faith basis for
 5    the invocation of any exemption.
 6             The FOIA processing mechanism requires consultation
 7    with individuals who have substantive knowledge of the
 8    documents at issue before any exemption may be claimed,
 9    otherwise the processor is merely guessing.
10             Similarly, to the extent that there might be
11    responsive documents to categories 11 or 13 that are not
12    involved in the Durham investigation, that speculative fact
13    does not undercut the danger posited by the review process.
14    Again, individuals with substantive knowledge would have to
15    review all of the documents that are responsive in order to
16    determine responsiveness and the basis or lack of basis for any
17    exemption claimed.  Separating out the documents that are
18    subject to the investigation or not would require the review
19    that might result in a taint of recollection or testimony.
20             Thus, the substantive overlap between the
21    supplementary CIA request embodied in categories 11 and 13, and
22    the ongoing criminal investigation, and the corresponding risk
23    of interference with that criminal investigation, strongly
24    supports a partial stay of this FOIA case.
25             To the extent that plaintiffs characterize
                      SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

51

88T7AMNM

1    Mr. Durham's objection as merely a staffing issue that can be
2    circumvented by selecting an individual who is not a potential
3    witness, to search for, review and process potentially
4    responsive documents, that argument also ignores the realities
5    and the uncertainties of an ongoing criminal investigation and
6    the obviously classified nature of the documents at issue.
7            Until the investigation has concluded, neither the
8    Durham team nor the CIA will know which employees will
9    ultimately fall outside the scope of the investigation.
10            Indeed, even if the Durham team had already identified
11   all those employees outside the scope of the investigation,
12   revealing those potentially sensitive details regarding the
13   conduct of the investigation prematurely could well taint the
14   gathering and processing of the documents by providing further
15   details concerning how the criminal investigation is being
16   conducted.  Thus, these concerns for the integrity of the
17   criminal investigation, not administrative staffing concerns,
18   weigh heavily on the public interest.
19            In balancing these competing interests then, as
20   proscribed by Judge Pollack, and the cases cited by the
21   parties, the balance here tips decidedly in favor of the
22   request of the United States.
23            First, the general priority given to the public
24   interest in law enforcement operates here to favor the
25   government over the nonlaw enforcement public interest in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

52

88T7AMNM
```
 1    timely disclosure embodied by the FOIA.  This is particularly
 2    true here where the prejudice from a tainted criminal
 3    investigation is permanent.
 4            I take plaintiff's view that timeliness is next to
 5    godliness, and any delay of disclosure of the information is a
 6    delay that can never be recalled or remedied.  The permanent
 7    prejudice to a criminal investigation is actually the end of
 8    the story.
 9            Secondly, the unique nature of the Department of
10    Justice's investigation, and the exceedingly important issues
11    at hand, also counsel in favor of a stay.
12            As the Supreme Court noted in Landis, "Especially in
13    cases of extraordinary public moment, the individual may be
14    required to submit to delay not immoderate in extent and not
15    oppressive in its consequences if the public welfare or
16    convenience will thereby be promoted."  299 U.S. at 256.
17            This case is undoubtedly one of extraordinary public
18    moment.  As counsel have noted, significant congressional
19    investigations are underway and several federal judges have
20    raised legitimate concerns about the actions the Durham team is
21    investigating.
22            Thus, I find that the government interest in the
23    integrity of its ongoing criminal investigation on a matter of
24    intense public congressional and judicial interest, outweighs
25    the plaintiffs' interest in a prompt response to its FOIA
```

53
```
88T7AMNM
1    request.  Accordingly, the request of the United States for a
2    four-month stay with respect to categories 11 and 13 of the
3    CIA's supplemental request is granted.
```